## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WYETH and ELAN PHARMA                )
INTERNATIONAL LIMITED,               )
                                     )
            Plaintiffs,              )
                                     )      Civil Action No. 07-1492 (JR)
      v.                             )
                                     )
HON. JON W. DUDAS,                   )
Under Secretary of Commerce          )
for Intellectual Property            )
and Director of the                  )
United States Patent and             )
Trademark Office                     )
                                     )
            Defendant.               )
_____  )

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant respectfully

moves this Honorable Court for an order granting summary judgment in his favor. As set forth

more fully in the accompanying memorandum, summary judgment is appropriate because the

administrative record unmistakably shows that the Plaintiffs are not entitled to further

adjustments of the terms of their U.S. Patents Nos. 7,179,892 ('892 patent) and 7,189,819 ('819

patent). Defendant accepts plaintiffs' statement of material facts not in genuine dispute. Defen-

dant's statement of material facts not in genuine dispute is part of the memorandum in support of

defendant's motion for summary judgment and in opposition to plaintiffs' motion for summary

judgment.  A draft order reflecting the relief requested  by defendant is also attached.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
(202) 514-7201

Of Counsel:

STEPHEN WALSH
Acting Solicitor

THOMAS V. SHAW
BENJAMIN WOOD
Associate Solicitors
United States Patent and Trademark Office
Alexandria, Virginia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WYETH and ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-1492 (JR) |
| HON. JON W. DUDAS, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office | ) ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

### ORDER

Upon consideration of the cross-motions for summary judgment, and the entire record in this case, it is this _____ day of _____, 2008,

ORDERED that plaintiffs' motion for summary judgment is denied; and it is further

ORDERED that defendant's motion for summary judgment is granted; and it is further

ORDERED that this case is dismissed from the docket of this Court with prejudice. This is a final, appealable order.

UNITED STATES DISTRICT JUDGE

Copies to counsel of record

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WYETH and ELAN PHARMA           )
INTERNATIONAL LIMITED,          )
                                )
                  Plaintiffs,   )
        v.                      )          Civil Action No. 07-1492 (JR)
                                )
HON. JON W. DUDAS,              )
Under Secretary of Commerce     )
for Intellectual Property       )
and Director of the             )
United States Patent and        )
Trademark Office                )
                                )
                  Defendant.    )
_____)

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND
## MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iv

INTRODUCTION .............................................................................................. 1

STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE ...................... 3

BACKGROUND ................................................................................................ 6

I.    Background on Relevant Patent Law and Regulations ............................ 6
      A.    GATT Legislation ...........................................................................7
      B.    American Inventors Protection Act of 1999 (AIPA) .........................8
            1.    Legislative History ...............................................................9
            2.    Types of Adjustments for Delays under AIPA .....................10
            3.    AIPA Changes to Section 154 .............................................11
      C.    The AIPA Granted the Director the Authority to Prescribe
            Regulations Establishing Procedures for the Determination of Patent
            Term Adjustments ..........................................................................13
II.   The Final Agency Actions Under Review are the Petition Decisions of
      September 13, 2007 and September 27, 2007 ....................................... 15
SUMMARY OF THE ARGUMENT ..................................................................... 16

ARGUMENT .................................................................................................... 17

I.    Standards of Review ........................................................................... 17
      A.    The USPTO is Entitled to Summary Judgment .............................17
      B.    The USPTO's Exercise of Its Rulemaking Authority Qualifies for
            Chevron Deference ........................................................................18
II.   The Statute Specifies Periods of Delay but is Ambiguous as to Overlap;
      Therefore Deference must be Given to the USPTO's Interpretation ................. 20
      A.    The USPTO's Interpretation of Section 154(b) Resolves the
            Ambiguity and Prevents Double Counting of Overlapping Delays ..........21
      B.    The USPTO's Interpretation Complies with Normal Rules of
            Statutory Construction ...................................................................22

       C.    The USPTO's Interpretation of Section 154(b) Results in at Least a
17 Year Term for Diligent Applicants .................................................................23

       D.    The Patent Term Adjustments to Plaintiffs' Patents Meet or Exceed
the Statutory Goals of the AIPA and Section 154(b)..........................................27

  III.  Plaintiffs' Argument Regarding Consistency is Flawed.................................................... 29

CONCLUSION........................................................................................................................... 29

# TABLE OF AUTHORITIES

## CASES

Bowles v. Seminole Rock & Sand Co.,
   325 U.S. 410 (1945)........................................................................................ 18

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)........................................................................................ 16

Chemical Mfrs. Ass'n v. Natural Res. Def. Council, Inc.,
   470 U.S. 116 (1985)........................................................................................ 18

*Chevron USA, Inc. v. NRDC, Inc.,
   467 U.S. 837 (1984)............................................................................. 16, 17, 18

Custom Computer Servs., Inc. v. Paychex Props., Inc.,
   337 F.3d 1334 (Fed. Cir. 2003)....................................................................... 17

FDA v. Brown & Williamson Tobacco Corp.,
   529 U.S. 120 (2000)........................................................................................ 20

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986)........................................................................................ 16

Morganroth, In re,
   885 F.2d 843 (Fed. Cir. 1989).......................................................................... 18

N.L.R.B. v. United Food and Commercial Workers Union, Local 23, AFL-CIO,
   484 U.S. 112 (1987)........................................................................................ 17

National Ass'n of Home Builders v. Defenders of Wildlife,
   127 S. Ct. 2518 (2007)..................................................................................... 20

*National Cable & Telecommunications Ass'n v. Brand X Internet Services,
   545 U.S. 967 (2005)........................................................................................ 17

North Haven Bd. of Ed. v. Bell,
   456 U.S. 512 (1982)........................................................................................ 18

Pauley v. BethEnergy Mines, Inc.,
   501 U.S. 680 (1991)........................................................................................ 17

iv

Powerex Corp. v. Reliant Energy Services, Inc.,
  127 S. Ct. 2411 (2007) ................................................................................................ 21

United States v. Mead Corp.,
  533 U.S. 218 (2001) ..................................................................................................... 17

**STATUTES**

5 U.S.C. § 701 ................................................................................................................... 2

35 U.S.C. § 2(b)(2) ........................................................................................................... 17

35 U.S.C. § 111 ................................................................................................................... 6

35 U.S.C. § 112 ................................................................................................................... 6

35 U.S.C. § 154 ................................................................................................................... 7

35 U.S.C. § 154(a) ............................................................................................................. 7

35 U.S.C. § 154(b) ..................................................................................................... passim

35 U.S.C. § 154(b)(1) ............................................................................................. 8, 18, 21

35 U.S.C. § 154(b)(1)(A) .......................................................................................... passim

35 U.S.C. § 154(b)(1)(A)(i) .............................................................................. 19, 23

35 U.S.C. § 154(b)(1)(A)(ii) ........................................................................................... 19

35 U.S.C. § 154(b)(1)(A)(iii) .......................................................................................... 19

35 U.S.C. § 154(b)(1)(A)(iv) .......................................................................................... 19

35 U.S.C. § 154(b)(1)(B) .......................................................................................... passim

35 U.S.C. § 154(b)(1)(C) .......................................................................................... passim

35 U.S.C. § 154(b)(2) ......................................................................................................... 7

*35 U.S.C. § 154(b)(2)(A) ........................................................................................ passim

35 U.S.C. § 154(b)(3) .................................................................................................. 3, 12

35 U.S.C. § 154(b)(3)(A) ................................................................................................ 12

**REGULATIONS**

37 C.F.R. § 1.701 .......................................................................................................... 7

37 C.F.R. § 1.703(f) ................................................................................................ 13, 19

37 C.F.R. § 1705(d) ................................................................................................. 4, 5

**RULES**

Fed. R. Civ. P. 56(c) .................................................................................................... 16

Fed. R. Civ. P. 56(e) .................................................................................................... 16

LEGISLATIVE MATERIALS

American Inventors Protection Act of 1999, Pub. L. No. 106-113, §4402,
    113 Stat. 1501 (1999) ......................................................................................... passim

Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994) ....................... 6, 9

145 CONG. REC. H6944 (1999) ................................................................................. 9, 21

145 CONG. REC. S13258 (1999) ............................................................................... 9, 21

145 CONG. REC. S14708-26 (1999) ............................................................................. 22

H.R. Rep. No. 106-287(I) (1999) .................................................................................. 22

**FEDERAL REGISTER**

Changes to Implement Patent Term Adjustment under Twenty-Year Patent Term;
    Final Rule, 65 Fed. Reg. 56366 (Sept. 18, 2000) ......................................................... 12

Explanation of 37 CFR 1.703(f) and of the United States Patent and Trademark Office
    Interpretation of 35 U.S.C. § 154(b)(2)(A), 69 Fed. Reg. 34283 (June 21, 2004) ........ 12, 13, 19

Revision of Patent Term Extension and Patent Term Adjustment Provisions; Final Rule;
    69 Fed. Reg. 21704 (April 22, 2004) ......................................................................... 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WYETH and ELAN PHARMA INTERNATIONAL LIMITED, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 07-1492 (JR) |
| | ) |
| HON. JON W. DUDAS, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office | ) ) ) ) ) ) ) |
| | ) |
| Defendant. | ) ) ) |

**INTRODUCTION**

This case involves adjustments to patent terms. Defendant, the United States Patent and Trademark Office ("USPTO"), issued two patents, now owned by Plaintiffs Wyeth and Elan Pharma International Limited ("Plaintiffs"), for "humanized antibodies that recognize beta amyloid peptide" ("the '819 and '892 patents")[1]. Under the American Inventors Protection Act of 1999, Pub. L. No. 106-113, §4402, 113 Stat. 1501, 1501A-552 - 1501A-591 (1999) ("AIPA"), Plaintiffs are entitled to patent term adjustments to compensate for certain administrative delays that occurred during the prosecution of Plaintiffs' patent applications that issued as the '819 and '892 patents. Further, to encourage diligent prosecution of patent applications, if an applicant

---

[1] The '819 and '892 patents, i.e., U.S. Patent Nos. 7,179,892 and 7,189,819, like the majority of patents, are "utility" patents, as opposed to "plant" or "design" patents. Unless otherwise specified, the term "patent" as used herein refers to a utility patent.

fails "to engage in reasonable efforts to conclude prosecution of the application," the applicant's delays are deducted from the term adjustments given for the USPTO's delays. The USPTO calculated the combined adjustments for USPTO delays and Plaintiffs' delays to be 492 days for the '819 patent and 462 days for the '892 patent. Plaintiffs want even longer adjustments of 722 days and 756 days, respectively.

Plaintiffs bring this action for declaratory relief under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, challenging the USPTO's determinations of patent term adjustments under 35 U.S.C. § 154(b), with respect to the '819 patent and the '892 patent. (Compl. ¶¶ 1-2).[2] Plaintiffs ask for a judgment that the USPTO acted unlawfully in failing to correctly adjust the terms of the '892 and '819 patents and for an order requiring that the USPTO extend the term of the patents. (Compl. ¶¶ 25-27). Plaintiffs claim that the USPTO acted in a manner that was arbitrary, capricious, and contrary to law by improperly construing 35 U.S.C. § 154(b)(2)(A) in denying Plaintiffs' application for patent term adjustments. (Compl. ¶¶ 19-20).

The USPTO is entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that there are no material facts in dispute and Defendant is entitled to judgment as a matter of law. Specifically, 35 U.S.C. § 154(b) allows for the adjustment of a patent term following delays in examination caused by the USPTO, less the time caused by the applicant's delays, but clearly prohibits granting an adjustment that exceeds the actual number of days the patent was delayed. The USPTO's determination of the patent term adjustment for the '819 and '892 patents takes this prohibition into account, unlike the determination put forward

---

[2] "Compl." refers to Plaintiffs' Complaint, "PSJ" refers to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, and "Exh." refers to Defendant's attached exhibits.

by Plaintiffs. Further, the USPTO's patent term adjustment determinations were lawfully made by the USPTO under the authority provided for in 35 U.S.C. § 154(b)(3), which requires the Director to both "prescribe regulations establishing procedures for the application for and determination of patent term adjustments" and "make a determination of the period of any patent term adjustment under this subsection."

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

1. On December 6, 2001, Guriq Basi and Jose William Saldanha filed with the USPTO application serial no. 10/010,942, entitled "humanized antibodies that recognize beta amyloid peptide" (the '942 application). This application issued as U.S. Patent No. 7,189,819 on March 13, 2007 (the '819 patent). (Compl. ¶ 10).

2. On March 12, 2003, Guriq Basi and Jose William Saldanha filed with the USPTO continuation-in-part application serial no. 10/388,389, based on the '942 application, entitled "humanized antibodies that recognize beta amyloid peptide" (the '389 application). This application issued as U.S. Patent No. 7,179,892 (the '892 patent) on February 20, 2007. (Compl. ¶ 9).

3. The 20-year term of the '892 patent runs from the effective filing date of December 6, 2001 because it was filed as a continuation in part of the '942 application. 35 U.S.C. § 154(a)(2).

4. The '892 patent is subject to a terminal disclaimer which disclaims the terminal part of the patent extending beyond the term of the '819 patent, including any adjustments granted to the '819 patent. (Compl. ¶ 25).

5. Both the '819 and the '892 patents were assigned to the Plaintiffs. (Compl. ¶ 11).

3

6. The '819 patent included a patent term adjustment determined by the USPTO under section 154(b), (35 U.S.C. § 154(b)), extending the patent term by 492 days based on the following delays:

     a.   230 days for the delay in not issuing an initial action within 14 months from the filing date of the application (not included due to overlap),

     b.   14 days for the delay in not responding within 4 months after a response was filed (not included due to overlap),

     c.   92 days for the delay in not issuing the patent within 4 months of payment of the issue fee (not included due to overlap),

     d.   827 days for the delay in not issuing the patent within three years of the filing date, and

     e.   335 days for the Plaintiffs' delays in failing "to engage in reasonable efforts to conclude prosecution of the application."

(Compl. ¶ 30).

7. Except for the adjustment for the Plaintiffs' 335 days of delay in responding, the '819 patent would have a term of exactly 17 years. 35 U.S.C. § 154(b).

8. On April 20, 2007, Plaintiffs filed a timely Request for Reconsideration of Patent Term Adjustment for the '892 patent under 37 C.F.R. §1705(d) seeking an adjustment of 756 days, not 462 days. (Compl. ¶ 24). The request for an additional adjustment was denied in a petition decision dated September 13, 2007. (PSJ at 13).

4

9. The '892 patent included a patent term adjustment determined by the USPTO under section 154(b), (35 U.S.C. § 154(b)), extending the patent term by 462 days based the following delays:

    a.   559 days for the delay in not issuing an initial action within 14 months from the filing date of the application,

    b.   51 days for the delay in not issuing the patent within 4 months of payment of the issue fee,

    c.   345 days for the delay in not issuing the patent within three years of the filing date (not included due to overlap), and

    d.   148 days for the Plaintiffs' delays in failing "to engage in reasonable efforts to conclude prosecution of the application."

(Compl. ¶ 16).

10. Except for the adjustment for the Plaintiffs' 148 days of delay in responding, the effect of the terminal disclaimer and the effect of the fact that the application was a continuation in part, the '892 patent would have a term of 17 years and 265 days. 35 U.S.C. § 154.

11. On May 14, 2007, Plaintiffs filed a timely Request for Reconsideration of Patent Term Adjustment for the '819 patent under 37 C.F.R. §1705(d) seeking an adjustment of 722 days, not 492 days. (Compl. ¶ 36). The request for an additional adjustment was denied in a petition decision dated September 25, 2007. (PSJ at 13).

12. On August 17, 2007, Plaintiffs timely filed this lawsuit challenging the USPTO's calculation of the 492-day and 462-day patent term adjustments. Docket entry No. 1 of this case.

## BACKGROUND

### I.    Background on Relevant Patent Law and Regulations

In order to receive a patent, an inventor must first file a patent application with the USPTO. There are generally two parts to a patent application: the specification or "disclosure" and the claims. See 35 U.S.C. §§ 111, 112. Prosecution of a patent application can take several years.

When the USPTO does issue a patent, the result is a grant to the patentee of the right to exclude others from making, using, selling, or offering for sale the claimed invention throughout the United States for a limited period of time, i.e., the "term" of the patent. 35 U.S.C. § 154(a). When the patent term expires, the public is free to practice the invention. This case involves the terms of Plaintiffs' '819 and '892 patents, and in particular, the time added on to the statutorily prescribed term to account for agency delays in prosecution.

The term of a patent was historically seventeen years. Since the 17-year term did not start to run until the patent issued, the time it took to prosecute the patent (from application to issuance) did not diminish the term of the patent. Thus, even if prosecution took a decade, the patentee would still receive a 17-year term starting on the issue date of the patent.

In 1994, the United States entered into international agreements under the General Agreement on Tariffs and Trade (GATT) providing that the United States would harmonize U.S. patent law with much of the world by switching to a 20 year patent term that was measured from a patent application's earliest effective filing date. To implement those agreements into U.S. law, Congress passed the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809

6

(1994) (the GATT legislation), signed by the President on December 8, 1994, now codified in 35

U.S.C. 154.

### A.    GATT Legislation

Of particular relevance to this lawsuit are the changes the 1994 GATT legislation and the

1999 AIPA made to 35 U.S.C. § 154.[3]  Section 532 of the GATT legislation amended 35 U.S.C.

§ 154 so that it read as follows:

> **§ 154 Contents and term of patent**
>     (a)  In General.—
>
>       . . . .
>
>       (2)  Term.—Subject to the payment of fees under this title,
> such grant shall be for a term beginning on the date on which the
> patent issues and ending 20 years from the date on which the
> application for the patent was filed in the United States or, if the
> application contains a specific reference to an earlier filed
> application or applications under section 120, 121, or 365(c) of this
> title, from the date on which the earliest such application was filed.

35 U.S.C. § 154(a) (1994).  Thus, under the heavily revised 1994 version of section 154, a patent

term still began on the issue date, but ended on a date twenty years from the earliest effective

filing date of the patent application.  This term is commonly referred to as a "20-year term,"

though an actual term of twenty years is impossible because prosecution necessarily takes more

than one day.

Because the GATT legislation had the effect of subtracting from a patent's term the time

spent during prosecution at the USPTO, 35 U.S.C. § 154 initially was also amended to give back

to patentees, in the form of a "term adjustment," the time associated with three very specific

delays that can occur during prosecution: (1) delays caused by secrecy orders; (2) delays caused

---

[3] Prior to the GATT legislation, 35 U.S.C. § 154 simply provided a 17-year term from issue.  See
35 U.S.C. § 154 (1993).

by interferences; and (3) delays caused by successful appeals. See 35 U.S.C. § 154(b)(1)-(2) (1994). After enactment of the GATT legislation, the USPTO issued 37 C.F.R. § 1.701, which provided for a day-for-day adjustment of patent term for those patents issued from applications filed after June 8, 1995 to account for delays covered by the newly revised section 154.

### B.    American Inventors Protection Act of 1999 (AIPA)

#### 1.    Legislative History

During the years after enactment of the GATT legislation, it became apparent that the limited provisions for patent term adjustments did not account for many other delays occurring during patent prosecution, thus leaving some applicants with terms less than the traditional 17 years.

Partly as a result of those concerns, Congress passed the AIPA in 1999, which substantially revised patent law and expanded patent term adjustments. During Congressional consideration of the AIPA, Representative Rohrabacher, a sponsor of the act, placed the following comments in the Congressional Record regarding the goals of the AIPA:

TITLE III--PATENT TERM GUARANTEE ACT

My goal all along has been to assure a minimum patent term of 17 years from the date a patent is granted. Failing that, I have insisted on a guarantee that the PTO will extend the patent term as necessary to assure a term of 17 years from filing [sic] for non-dilatory applicants. The language of this bill clearly codifies this approach.

As everyone is aware, the current law governing patent term is 20 years from the date of file. Since June 8, 1995, when the 17-years-from-grant was changed, patents have been losing precious time under the current law. Inventors can no longer rely on a guaranteed term of protection. In some cases, several years of effective post-grant protection is lost due to Patent and Trademark Office (PTO) administrative delay. This title represents an opportunity to recapture some of the reliance of pre-GATT standards.

By codifying what constitutes PTO delay, this title can compensate the patent applicant for lost time on a day-for-day basis without time limitation. Furthermore, if the PTO does not issue a patent within 3 years from the date of original file, the patent term will be compensated day-for-day until the patent issues, minus any time the applicant has delayed prosecution by engaging in dilatory behavior.

This approach effectively eliminates the claimed submarine patent dilemma while providing a specific framework from which the Patent and Trademark Office must monitor and compensate the loss of any patent term due to delay for which the applicant has no responsibility.

This approach essentially gives back to the non-dilatory patent holder what I have fought so hard for--a guaranteed 17 year patent term. The patentee once again will have the right to exclude the public from using his invention for a limited time--a time that is guaranteed and clearly defined. This Title essentially regains what GATT gave away. It has been my core initiative and now I am proud to say that it is my most significant success in this bill.

145 CONG. REC. H6944 (1999) (Exh. D).

In the Senate, Senator Hatch made similar comments upon the introduction of the

Senate's version of the AIPA, Senate bill 1798.

Like the House bill, our legislation will achieve a number of important substantive patent reforms, consistent with the principles of protecting American inventors, our national competitiveness, and the integrity of our patent system.

. . . .

Fourth, the bill will guarantee a minimum 17-year patent term for diligent applicants, addressing concerns that have been expressed since the United States went to a 20-year from filing term of protection with the adoption of the Uruguay Round Agreements Act in 1994.

145 CONG. REC. S13258-13259 (1999) (Exh. E).  As can be seen from Representative

Rohrabacher's and Senator Hatch's comments, the goal of the changes was to restore the 17 year

minimum patent term for non-dilatory patent applicants.

9

### 2.     Types of Adjustments for Delays under AIPA

Section 4402 of the AIPA provided for adjustment of patent terms for a number of delays that can occur during prosecution, thus providing diligent applicants at least a 17 year patent term. In order to calculate the total patent term adjustment, USPTO delays are added to the patent term adjustment, while delays due to applicant's failure to respond in a timely manner are deducted from the patent term adjustment.

The three main bases for adjusting the term of a patent due to USPTO delay under AIPA are: (1) if the USPTO fails to take certain actions within specified time frames, (2) if the USPTO fails to issue a patent within three years of the actual filing date of the application, and/or (3) delays due to interference, secrecy orders, or successful appellate review. To encourage diligent prosecution by applicants, AIPA also provided that the patent term adjustment is reduced by a period equal to the period during which a dilatory applicant failed to engage in reasonable efforts to conclude prosecution of the application. See AIPA, § 4402 (1999) (Exh. F); 35 U.S.C. § 154(b) (1999).

### 3.     AIPA Changes to Section 154

Section 4402 of the AIPA amended 35 U.S.C. § 154(b) to provide adjustments for the foregoing three types of USPTO delays. It now reads, in pertinent part:

> (b) *Adjustment of patent term.*—
>   (1) *Patent term guarantees.*—
>     (A) *Guarantee of prompt Patent and Trademark Office responses.*—Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to the failure of the Patent and Trademark Office to—
>
>       (i) provide at least one of the notifications under section 132 of this title or a notice of allowance under section 151 of this title not later than 14 months after—

10

(I) the date on which an application was filed under section 111(a) of this title; or

(II) the date on which an international application fulfilled the requirements of section 371 of this title;

(ii) respond to a reply under section 132, or to an appeal taken under section 134, within 4 months after the date on which the reply was filed or the appeal was taken;

(iii) act on an application within 4 months after the date of a decision by the Board of Patent Appeals and Interferences under section 134 or 135 or a decision by a Federal court under section 141, 145, or 146 in a case in which allowable claims remain in the application; or

(iv) issue a patent within 4 months after the date on which the issue fee was paid under section 151 and all outstanding requirements were satisfied,

the term of the patent shall be extended 1 day for each day after the end of the period specified in clause (i), (ii), (iii), or (iv), as the case may be, until the action described in such clause is taken.

(B) *Guarantee of no more than 3-year application pendency.*—Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to the failure of the United States Patent and Trademark Office to issue a patent within 3 years after the actual filing date of the application in the United States, not including—

(i) any time consumed by continued examination of the application requested by the applicant under section 132(b);

(ii) any time consumed by a proceeding under  section 135(a), any time consumed by the imposition of an order under section 181, or any time consumed by appellate review by the Board of Patent Appeals and Interferences or by a Federal court; or

(iii) any delay in the processing of the application by the United States Patent and Trademark Office requested by the applicant except as permitted by paragraph (3)(C),

the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued.

(C) *Guarantee or adjustments for delays due to interferences, secrecy orders, and appeals.*—Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to—

(i) a proceeding under section 135(a);

(ii) the imposition of an order under section 181; or

11

> (iii) appellate review by the Board of Patent Appeals and Interferences or by a Federal court in a case in which the patent was issued under a decision in the review reversing an adverse determination of patentability,

the term of the patent shall be extended 1 day for each day of the pendency of the proceeding, order, or review, as the case may be.

> (2) *Limitations.*—
>
> (A) *In general.*—To the extent that periods of delay attributable to grounds specified in paragraph (1) overlap, the period of any adjustment granted under this subsection shall not exceed the actual number of days the issuance of the patent was delayed.

35 U.S.C. § 154(b) (1999).

### C.    The AIPA Granted the Director the Authority to Prescribe Regulations Establishing Procedures for the Determination of Patent Term Adjustments

The Director of the USPTO was empowered by Section 154(b)(3)(A) to establish

regulations by which patent terms are determined and contested.  Section 154(b)(3) reads:

> (3) *Procedures for patent term adjustment determination.*—
>
> (A) The Director shall prescribe regulations establishing procedures for the application for and determination of patent term adjustments under this subsection.
>
>    . . . .

35 U.S.C. § 154(b)(3)(A) (1999).[4]

Beginning in 2000, the Director issued regulations under Section 154(b)(3)(A) to

establish procedures for the determination of patent term adjustments.  See Changes to

Implement Patent Term Adjustment under Twenty-Year Patent Term; Final Rule, 65 Fed. Reg.

56366, 56368 (Sept. 18, 2000) (Exh. G); Revision of Patent Term Extension and Patent Term

Adjustment Provisions; Final Rule, 69 Fed. Reg. 21704, 21706 (April 22, 2004) (Exh. H); and

---

[4] 35 U.S.C. § 154(b)(2)(C)(iii) gives the Director even broader powers to determine what constitutes applicant delay and empowers the Director to "prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application."

Explanation of 37 CFR 1.703(f) and of the United States Patent and Trademark Office

Interpretation of 35 U.S.C. § 154(b)(2)(A), 69 Fed. Reg. 34283 (June 21, 2004) (USPTO 2004

Interpretation) (Exh. I).

The current applicable regulation relevant to Plaintiffs' adjustments is 37 C.F.R. §

1.703(f), ("Rule 703(f)") which reads:

> (f) The adjustment will run from the expiration date of the patent as set forth in 35 U.S.C. 154(a)(2). To the extent that periods of delay attributable to the grounds specified in §1.702 overlap, the period of adjustment granted under this section shall not exceed the actual number of days the issuance of the patent was delayed. The term of a patent entitled to adjustment under § 1.702 and this section shall be adjusted for the sum of the periods calculated under paragraphs (a) through (e) of this section, to the extent that such periods are not overlapping, less the sum of the periods calculated under § 1.704.

This rule and the USPTO's interpretation of section 154(b) were further clarified in a notice of

interpretation published in the Federal Register which states:

> [T]he Office has consistently taken the position that if an application is entitled to an adjustment under the three-year pendency provision of 35 U.S.C. 154(b)(1)(B), the entire period during which the application was pending before the Office (except for periods excluded under 35 U.S.C. 154(b)(1)(B)(i)-(iii)), and not just the period beginning three years after the actual filing date of the application, is the relevant period under 35 U.S.C. 154(b)(1)(B) in determining whether periods of delay "overlap" under 35 U.S.C. 154(b)(2)(A).

USPTO 2004 Interpretation at 34283. This interpretation has been followed in more than

200,000 patents filed since May 29, 2000[5] and issued more than three years later, since May 29,

2003, wherein issuance of the patent has occurred more than 3 years from the date of filing.[6]

---

[5] The date that section 154(b) took effect.
[6] See USPTO Performance and Accountability Report FY 2007, Workload Tables 1-6 (2007). (Exh. J).

**II.     The Final Agency Actions Under Review are the Petition Decisions of September 13, 2007 and September 27, 2007**

Plaintiffs do not dispute the calculation of the number of days of adjustment for each of the delays. Rather, Plaintiffs argue that the three year issue delay should not be considered to overlap with the other delays. In essence, Plaintiffs want more than the actual number of days of delay in issuing the patent, which is contrary to section 154(b)(2)(A).

In the September 13, 2007, petition decision (Exh. B), the USPTO determined that Plaintiffs' '892 patent was entitled to 462 days of term adjustment, not 756 days as requested. This adjustment was based on the 1999 AIPA legislation and subsequent regulations that provide for term adjustments for specific administrative delays occurring during prosecution. Specifically, the USPTO determined the '892 patent was entitled under section 154(b)(1)(A) to 462 days of adjustment to compensate for two delays: (1) the USPTO delay in not issuing an initial action within 14 months from the filing date of the application and (2) the USPTO delay in not issuing the patent within 4 months of payment of the issue fee. The USPTO delay in not issuing the patent within three years of the filing date was considered to be overlapping with the foregoing delays and was not counted. That is, pursuant to section 154(b)(2)(A) and Rule 703(f), the delay in issuing the patent within three years overlapped with the other two USPTO delays and this time cannot be counted twice. Thus, only the first and second agency delays supported adjustments under section 154(b).

Similarly, in the September 25, 2007, petition decision (Exh. A), the USPTO determined that Plaintiffs' '819 patent was entitled to 492 days of term adjustment, not 722 days as requested. Specifically, the USPTO determined that the '819 patent was entitled under section 154(b)(1)(A) to 492 days of adjustment to compensate for three delays: (1) the USPTO delay in

14

not issuing an initial action within 14 months from the filing date of the application, (2) the

USPTO delay in not responding within 4 months after a response was filed, and (3) the USPTO

delay in not issuing the patent within 4 months of payment of the issue fee. Again, pursuant to

section 154(b)(2)(A) and Rule 703(f), the delay in issuing the patent within three years

overlapped with the other three USPTO delays and this time cannot be counted twice. However,

since the three year issue delay was greater than the sum of the other three delays, only the three

year issue delay (less the Plaintiffs' delays) was used to calculate adjustment under section

154(b).

## SUMMARY OF THE ARGUMENT

The sole issue before the Court is whether the Director's determination of the patent term

adjustments was arbitrary, capricious, or contrary to law. It was not. Section 154(b)(2)(A)

clearly prohibits granting adjustments which exceed the actual number of days the patent was

delayed. Because delay in prosecution under section 154(b)(1)(A) also delays the issuance of the

patent for purposes of calculating the 3 year pendency delay under section 154(b)(1)(B), the

USPTO interprets section 154(b)(2)(A) as permitting the greater of either patent term adjustment

under section 154(b)(1)(A), or the patent term adjustment under section 154(b)(1)(B), but not

both. To do otherwise would grant adjustments exceeding the actual number of days the

issuance of the patent was delayed, which is clearly contrary to section 154(b)(2)(A).

Accordingly, the Office implements the overlap provision as follows. If an application is

entitled to an adjustment for greater than three year pendency under 35 U.S.C. § 154(b)(1)(B),

the entire period during which the application was pending and not just the period beginning

three years after the actual filing date of the application is the period of delay under section

15

154(b)(1)(B) for determining whether periods of delay overlap under section 154(b)(2)(A). This interpretation is consistent with the statute, USPTO regulations, and Federal Register Notices.

Plaintiffs' incorrect interpretation of section 154(b) confuses periods of delay, for calculating whether grounds for delay overlap, with periods of adjustment, for determining how many days of adjustment are granted. Using this incorrect interpretation, Plaintiffs double-count the periods of delay in contravention of section 154(b)(2)(A) and seek to obtain double patent term adjustments under both section 154(b)(1)(A) and section 154(b)(1)(B).

**ARGUMENT**

## I.    Standards of Review

### A.    The USPTO is Entitled to Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). In determining whether a genuine issue of material fact exists, a court must view all facts, and draw all reasonable inferences, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B.    The USPTO's Exercise of Its Rulemaking Authority Qualifies for Chevron Deference

The USPTO qualifies for Chevron deference in its interpretation of the Patent Act because it acted well within its statutory grant of rulemaking authority in enacting the Final Rules. See Chevron USA, Inc. v. NRDC, Inc., 467 U.S. 837 (1984). Under Chevron, if

16

Congress "has directly spoken to the precise question at issue" and its intent is clear, then "the court, as well as the agency, must give effect to [that] unambiguously expressed intent." Id. at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue," the court must defer to the agency's rule as long as it is "based on a permissible construction of the statute." Id. at 843. As the Supreme Court recognized in National Cable & Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967, 982 (2005), "Chevron's premise is that it is for agencies, not courts, to fill statutory gaps." This is because such gap-filling "involves difficult policy choices that agencies are better equipped to make than courts," id. at 981, especially in "technical and complex" fields, Chevron, 467 U.S. at 865.

Regulations that are "promulgated pursuant to congressional authority" are reviewed under the Chevron framework. N.L.R.B. v. United Food and Commercial Workers Union, Local 23, AFL-CIO, 484 U.S. 112, 123 (1987); see also Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 696 (1991) ("When Congress, through express delegation or the introduction of an interpretive gap in the statutory structure, has delegated policy-making authority to an administrative agency, the extent of judicial review of the agency's policy determinations is limited."). As the Supreme Court has recognized, "express congressional authorizations to engage in the process of rulemaking" are "a very good indicator of delegation meriting Chevron treatment." United States v. Mead Corp., 533 U.S. 218, 229 (2001). Congress has expressly delegated to the USPTO rulemaking authority. See 35 U.S.C. § 2(b)(2).

Likewise, the USPTO's interpretation of its own regulations is entitled to substantial deference. See Custom Computer Servs., Inc. v. Paychex Props., Inc., 337 F.3d 1334, 1336 (Fed. Cir. 2003) ("[T]he [US]PTO's interpretation must be given controlling weight unless it is

17

plainly erroneous or inconsistent with the regulation.") (internal quotes and citation omitted) (citing <u>Bowles v. Seminole Rock & Sand Co.</u>, 325 U.S. 410, 414 (1945)). When interpreting "narrow technical and specialized statutory and regulatory provisions" the USPTO's interpretation is entitled to "considerable deference." <u>In re Morganroth</u>, 885 F.2d 843, 848 (Fed. Cir. 1989). This Court also must accord particular deference to an agency interpretation of 'longstanding' duration. <u>North Haven Bd. of Ed. v. Bell</u>, 456 U.S. 512, 522 n. 12 (1982). The USPTO's interpretation need not be the only possible construction. <u>Chemical Mfrs. Ass'n v. Natural Res. Def. Council, Inc.</u>, 470 U.S. 116, 125 (1985).

## II.    The Statute Specifies Periods of Delay but is Ambiguous as to Overlap; Therefore Deference Must be Given to the USPTO's Interpretation

If the statute is silent or ambiguous with respect to an issue, this Court should sustain the USPTO's interpretation of the statute if it is based on a permissible construction. <u>Chevron</u>, 467 U.S. at 843. Moreover, this Court should accord particular deference to the USPTO's interpretation of 'longstanding' duration which has been in place since 2000 and has been applied to over 200,000 patents issued. <u>See</u> <u>North Haven</u>, 456 U.S. at 522.

Section 154(b)(2)(A) is the critical section for understanding the relationship between the three types of USPTO delays listed in section 154(b)(1) and determining the appropriate period of adjustment. It states:

> (A) *In general.*—To the extent that periods of delay attributable to grounds specified in paragraph (1) overlap, **the period of any adjustment granted under this subsection shall not exceed the actual number of days the issuance of the patent was delayed.**

35 U.S.C. § 154(b)(2)(A) (emphasis added). The statute does not expressly define "periods of delay," "overlap," or "delayed."

18

The language of section 154(b) is ambiguous because the broad three-year pendency protection of section 154(b)(1)(B), must also encompass any delays under either sections 154(b)(1)(A) or 154(b)(1)(C). However, the language in section 154(b)(2)(A) provides contradictory guidance for calculating the actual number of days the patent is delayed. For example, a delay in issuing a 14 month action under section 154(b)(1)(A) also will delay the issue of the patent under section 154(b)(1)(B). Facially, the statute does not acknowledge allowing the possibility the delay could be counted twice as Plaintiffs would contend. However, section 154(b)(2)(A) clarifies there is no double counting by prohibiting adjustments for more than the actual number of days of the delay. Thus a delay event can be counted only once. In order to address this ambiguity, USPTO regulations and interpretations state that the 3 year pendency calculations begin with the filing date so that all delays overlapping with section 154(b)(1)(B) delays can be counted only once. 37 C.F.R. § 1.703(f).

### A.    The USPTO's Interpretation of Section 154(b) Resolves the Ambiguity and Prevents Double Counting of Overlapping Delays

As explained in the USPTO 2004 Interpretation, 69 Fed. Reg. at 34283, in order to ensure that any adjustment under this subsection does not exceed the "actual number of days" of the delay, the USPTO interprets 35 U.S.C. § 154(b)(2)(A) as permitting either patent term adjustment under 35 U.S.C. § 154(b)(1)(A)(i)-(iv), or patent term adjustment under 35 U.S.C. § 154(b)(1)(B), but not as adding both together. 69 Fed. Reg. at 34284. All prosecution delays under 154(b)(1)(A) or 154(b)(1)(C) necessarily delay the issuance of the patent under section 154(b)(1)(B). Thus, a failure to meet the 14 month time clock under 154(b)(1)(A)(i) will also delay the issuance of the patent under 154(b)(1)(B), but the delays are treated as overlapping

19

under section 154(b)(2)(A) so that the total adjustment <u>does not exceed the actual number of days of delay</u>.

**B.    The USPTO's Interpretation Complies with Normal Rules of Statutory Construction**

The USPTO's interpretation of "periods of delay" in section 154(b)(2)(A) is consistent with the normal rules of statutory construction. "[T]he meaning-or ambiguity-of certain words or phrases may only become evident when placed in context .... It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" National Ass'n of Home Builders v. Defenders of Wildlife, 127 S. Ct. 2518, 2534 (2007) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000)).

Sections 154(b)(1)(A), (B), and (C) all provide adjustments if patent issue is delayed. Sections 154(b)(1)(A) and (C) list a number of specific grounds which may delay the issuance of a patent, thus leading to adjustment of the patent term. For example, agency delay in issuing an action within 14 months or agency delay in issuing a response within 4 months will lead to adjustments. However, section 154(b)(1)(B) is different and does not list any specific grounds causing the delay in issuing a patent. In fact, the language and logic of section 154(b)(1)(B) are circular, providing for an adjustment only "if the issue . . . is delayed due to the failure . . . to issue . . . ." That is, the delay in issuing the patent is both the grounds for the delay and the end result of the delay. Given this circular language, the only way section 154(b)(1)(B) can be reconciled with sections 154(b)(1)(A), 154(b)(1)(C), and section 154(b)(2)(A) which prohibits double counting, is to count the entire period of examination pendency for purposes of calculating the 3 year delay. This interpretation is consistent with the apparent congressional

20

intent to guarantee a 17-year patent term to non-dilatory applicants. 145 CONG. REC. S13258-13259 (1999), 145 CONG. REC. H6944 (1999).

Plaintiffs' reliance on <u>Powerex</u> for the premise that "period of delay" is being given multiple definitions by the USPTO is misplaced. <u>Powerex Corp. v. Reliant Energy Services, Inc.</u>, 127 S. Ct. 2411, 2417 (2007). <u>Powerex</u>, which did not involve patent delay issues, held that identical words and phrases appearing multiple times within the same statute should normally be given the same meaning. The term "periods of delay" only appears once in section 154(b). Nor is the term "delay" given more than one meaning. Only the determination of the beginning and ending dates of time periods for calculating delays differ in section 154(b)(1). These differences in calculating the length of delays are appropriate in light of the need to ensure that the total adjustment does not exceed the actual number of days the issuance of the patent was delayed, as required by section 154(b)(2)(A).

C.     The USPTO's Interpretation of Section 154(b) Results in at Least a 17 Year Term for Diligent Applicants

The USPTO's interpretation of periods of delay and overlap is both logical and consistent with the intent to permit a 17 year term to diligent applicants. 145 CONG. REC. S13258-13259 (1999), 145 CONG. REC. H6944 (1999). Both the statute and the legislative history speak in terms of compensating for specific grounds for delay but not for overlapping grounds for delay. A section by section analysis of 35 U.S.C. § 154(b)(2)(A) as provided in the Congressional Record states:

> Section 4402 imposes limitations on restoration of term. In general, pursuant to new § 154(b)(2)(A)-(C) of the bill, total adjustments granted for restorations under (b)(1) are reduced as follows: (1) To the extent that there are multiple grounds for extending the term of a patent that may exist simultaneously (e.g., delay due to a secrecy order under section 181 and administrative delay under

21

section 154(b)(1)(A)), **the term should not be extended for each ground of delay but only for the actual number of days that the issuance of a patent was delayed.**

See 145 CONG. REC. S14,718 (1999) (emphasis added).[7]  In other words, simultaneous delays are

not added together.  Plaintiffs are incorrect in treating the relevant period as beginning 3 years

after the actual filing date of the applications because this approach ignores the possibility that

the same ground for delay may be counted twice, in clear violation of section 154(b)(2)(A).

Plaintiffs misinterpret congressional intent regarding the length of patent terms.  Plaintiffs

exaggerate the last clause in the following excerpt from the House Report for their theory that

Congress intended section 154(b)(1)(A) delays to be added to 3 year delays under section

154(b)(1)(B) in order to maximize patent terms:

> Accordingly, subtitle D removes the 10-year caps from the existing provisions, adds a new provision to compensate applicants fully for USPTO-caused administrative delays, and, for good measure, includes a new provision guaranteeing diligent applicants at least a 17-year term by extending the term of any patent not granted within three years of filing. Thus, no patent applicant diligently seeking to obtain a patent will receive a term of less than the 17 years as provided under the pre-GATT standard; in fact, most will receive considerably more.

H.R. Rep. No. 106-287(I) at 49 (1999) (Exh. C).  Contrary to Plaintiffs' interpretation, the

closing remark "most will receive considerably more" simply observes that under the 20-year

term system (not just the patent term adjustment rules), most applicants would get considerably

more patent term as compared to the pre-GATT 17-year system.  In 1999, when the AIPA was

---

[7]  The AIPA is title IV of the Intellectual Property and Communications Omnibus Reform Act of 1999 (S. 1948), which was incorporated and enacted as law as part of Pub. L. 106-113.  The Conference Report for H.R. 3194, 106th Cong., 1st Sess. (1999), which resulted in Pub. L. 106-113, does not contain any discussion (other than the incorporated language) of S. 1948.  A

passed, USPTO average pendency for patent applications was 25 months to issue.  Thus, pendency was well under 36 months and meant an average patent term of 17 years and 11 months.  USPTO Performance and Accountability Report FY 1999, Workload Table 4 (1999) (Exh. K).

Plaintiffs' argument that the USPTO's interpretation is unreasonable ignores the most important language of section 154(b)(2)(A) which states: "the period of any adjustment granted under this subsection **shall not exceed the actual number of days the issuance of the patent was delayed.**" (Emphasis added).  This language requires that the USPTO determine both the grounds for delay and duration of delay to ensure the resulting adjustment does not exceed the number of days the patent was actually delayed.  For example, if there is a one year delay in issuing an action within 14 months under 154(b)(1)(A)(i) and the action issues 26 months after the application was filed, and the patent issues exactly 4 years after the original filing date, there has been only one delay in the application and the applicant is entitled to only one adjustment of one year.  The Plaintiffs' reading of the statute would incorrectly interpret this as two separate delays and would yield an adjustment of two years, rather than the actual one-year delay, thus exceeding the "actual number of days the issuance of the patent was delayed."  This would grant the patent an adjustment of two years for an actual delay of only one year and is clearly contrary to the wording of section 154(b)(2)(A).

---

section-by-section analysis of S. 1948, however, was printed in the Congressional Record at the request of Senator Lott, See 145 Cong. Rec. S14,708-26 (daily ed. Nov. 17, 1999).

**D.    The Patent Term Adjustments to Plaintiffs' Patents Meet or Exceed the Statutory Goals of the AIPA and Section 154(b)**

Examination of the '819 patent took 3 years and 827 additional days until issue. In calculating the patent term adjustment, the USPTO subtracted the Plaintiffs' delay of 335 days from the Office's delay of 827 days for an adjustment of 492 days.[8] The USPTO patent term adjustments to the '819 patent are shown graphically below.



Similarly, examination of the '892 patent took 3 years and 345 additional days until issue. The section 154(b)(1)(A) delays add up to 610 days which exceed the section 154(b)(1)(B) delay of 345 days. In calculating the patent term adjustment, the USPTO subtracted the Plaintiffs'

---

[8] With only the adjustment for agency delays, the '819 patent has a term of exactly 17 years.

delay of 148 days from the Office's delay of 610 days for an adjustment of 462 days.[9] The USPTO patent term adjustments to the '892 patent are shown graphically below.



In both the '819 and the '892 patents, the adjustments for agency delays provide patent terms at least as long, if not longer, than the 17 years terms provided by the AIPA and section 154(b). Plaintiffs' claim for additional time simply seeks to improperly extend the duration of the patent by double counting periods of delay.

## III.    Plaintiffs' Argument Regarding Consistency is Flawed

Plaintiffs argue that the USPTO's interpretation is "unreasonable because it leads to inconsistent treatment of patent applicants." (PSJ at 20). They are mistaken. Upon closer examination, Plaintiffs' interpretation of section 154(b) leads to inconsistent treatment. For

---

[9] With only the adjustment for agency delays, the '892 patent has a term of 17 years and 265 days.

example, compare applicant A, who receives a first action at 14 months and a patent issued at 36 months, with applicant B, who receives a first action at 15 months (one month late) and a patent issued at 37 months. Assuming all prosecution times after first action are identical, Plaintiffs would give applicant B a term that expires 2 months after that of applicant A, even though the "delays" of applicant B resulted only in a 1-month prosecution delay relative to applicant A. Thus, Plaintiffs' interpretation of section 154 would compel inconsistencies in treatment of similar applicants.

## CONCLUSION

The parties agree, by cross-motions for summary judgment, that there are no material facts in dispute: Plaintiffs own two patents for "humanized antibodies that recognize beta amyloid peptide," the USPTO calculated patent term adjustments for both patents, and Plaintiffs disagree with the patent term adjustments as calculated by the USPTO. For the reasons explained in our memorandum, the USPTO's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Summary judgment for the Defendant should therefore be entered.

February 19, 2007

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/S/
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110

26

Washington, D.C. 20530
(202) 514-7201

Of Counsel:

STEPHEN WALSH
Acting Solicitor

THOMAS V. SHAW
BENJAMIN WOOD
Associate Solicitors

United States Patent and Trademark Office
Alexandria, Virginia

27

UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

Paper No.

LAHIVE & COCKFIELD, LLP
ONE POST OFFICE SQUARE
BOSTON MA 02109-2127

**COPY MAILED**

SEP 2 5 2007

**OFFICE OF PETITIONS**

In re Patent No. 7,189,819     :
Basi et al.                    :    DECISION DENYING
Application No. 10/010,942     :    REQUEST FOR
Issue Date:  March 13, 2007    :    RECONSIDERATION OF
Filed: December 6, 2001        :    PATENT TERM ADJUSTMENT
Attorney Docket No. ELN-002    :    UNDER 37 CFR 1.705(d)


This is a decision on the "REQUEST FOR RECONSIDERATION OF PATENT
TERM ADJUSTMENT UNDER 37 CFR §1.705(d)," filed May 14, 2007,
requesting that the patent term adjustment determination for the
above-identified patent be changed from four hundred ninety-two
(492) days to at minimum seven hundred twenty-two (722) days.

The request for reconsideration is granted to the extent that
the determination has been reconsidered; however, the request
for reconsideration of patent term adjustment is **DENIED** with
respect to making any change in the patent adjustment
determination under 35 U.S.C. § 154(b) of 492 days.  This
decision may be viewed as a final agency action within the
meaning of 5 U.S.C 704 and for purposes of seeking judicial
review.  See MPEP § 1002.02(b).

### BACKGROUND

On May 11, 2006, the Office mailed the Determination of Patent
Term Adjustment under 35 U.S.C. 154(b) in the above-identified
application.  The Notice stated that the patent term adjustment
(PTA) to date is 0 days.



EXHIBIT

A

Patent No. 7,189,819    Application No. 10/010,942              Page 2

On August 10, 2006[1], patentees timely filed a request for
reconsideration of patent term adjustment pursuant to 37 CFR
§ 1.705(b), requesting that the initial determination of patent
term adjustment be corrected from zero days to at least five
hundred eight (508) days.  By decision mailed December 26, 2006,
the request was granted only to the extent that the patent term
adjustment determination at the time of the mailing of the
notice of allowance was changed to zero days, including an
additional period of reduction of twelve (12) days for applicant
delay[2] and an additional period of reduction of sixty-nine (69)
days for applicant delay pursuant to 37 CFR 1.704(c)(7).  It is
noted that the issue of entry of a period of adjustment for the
Office taking in excess of three years to issue the patent was
not addressed[3].

On February 26, 2007, patentees filed a request for
reconsideration of the decision mailed December 26, 2006.

Prior to a decision being rendered, on March 13, 2007, the
application matured into U.S. patent No. 7,189,819, with a
revised patent term adjustment of four hundred twenty-three
(423) days. This revised determination included entry of an
additional period of adjustment of four hundred ninety-one (491)
days for the Office taking in excess of three years to issue the
patent.

By decision mailed April 2, 2007, the request for
reconsideration was granted only to the extent that the disputed
period of reduction of 69 days previously entered pursuant to 37
C.F.R. §1.704(c)(7) was removed.  The revised patent term
adjustment was corrected to four hundred ninety-two (492) days
(423 + 69) by way of issuance of a Certificate of Correction on
May 1, 2007.

---

[1]  A copy of this request was resubmitted on October 26, 2006.

[2]  Patentees had disclosed that an additional period of reduction of 12 days should have been
entered pursuant to 37 CFR 1.704(c)(8) and the Office agreed.

[3]  It appears that this issue was overlooked on review of the application for patent term
adjustment filed August 10, 2006.  This was of no consequence to the decision rendered.  As
knowledge of the actual date of issuance of the patent is necessary to determine this period, it
is Office practice to hold the decision on this issue in abeyance until after the actual patent
date.  Had this issue not been overlooked, the decision mailed December 26, 2006 would have
additionally stated that as to this issue a "decision is being held in abeyance until after the
actual patent date" and set a two-month period from the date of issuance of the patent for
patentees to request that the Office address this issue.

Patent No. 7,189,819    Application No. 10/010,942          Page 3

As the patent had not issued when the request was filed, patentees' request for reconsideration filed February 26, 2007 only addressed the initial determination of patent term adjustment and not the additional period of adjustment of four hundred ninety-one (491) days.  In turn, the decision did not directly address patentees' original contention with respect to the period of adjustment for the Office taking in excess of three years to issue the patent.  Nonetheless, the revised patent term adjustment determination was reviewed in *toto* and the additional period of adjustment of four hundred ninety-one (491) days found to be correct.

On May 14, 2007, this request for reconsideration of the revised patent term adjustment indicated in the patent was timely filed.

Prior to this decision being rendered, a civil action was filed.

### STATUTE AND REGULATION

35 U.S.C. § 154(b) as amended by § 4402 of the American Inventors Protection Act of 1999[4] (AIPA) provides that:

ADJUSTMENT OF PATENT TERM. —
(1)   PATENT TERM GUARANTEES. —
(A)   GUARANTEE OF PROMPT PATENT AND TRADEMARK OFFICE RESPONSES. — Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to the failure of the Patent and Trademark Office to —
(i)     provide at least one of the notifications under section 132 of this title or a notice of allowance under section 151 of this title not later than 14 months after —
(I)     the date on which an application was filed under section 111(a) of this title; or
(II) the date on which an international application fulfilled the requirements of  section 371 of this title;
(ii)   respond to a reply under  section 132, or to an appeal taken under section 134, within 4  months after the date on which the reply was filed or the appeal was taken;

---

[4]   Public Law 106-113, 113 Stat. 1501, 1501A-557 through 1501A-560 (1999).

(iii) act on an application within 4 months after the date of a decision by the Board of Patent Appeals and Interferences under section 134 or 135 or a decision by a Federal court under section 141, 145, or 146 in a case in which allowable claims remain in the application; or

(iv) issue a patent within 4 months after the date on which the issue fee was paid under section 151 and all outstanding requirements were satisfied, the term of the patent shall be extended 1 day for each day after the end of the period specified in clause (i), (ii), (iii), or (iv), as the case may be, until the action described in such clause is taken.

(B) GUARANTEE OF NO MORE THAN 3-YEAR APPLICATION PENDENCY. — Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to the failure of the United States Patent and Trademark Office to issue a patent within 3 years after the actual filing date of the application in the United States, not including —

(i) any time consumed by continued examination of the application requested by the applicant under section 132(b);

(ii) any time consumed by a proceeding under section 135(a), any time consumed by the imposition of an order under section 181, or any time consumed by appellate review by the Board of Patent Appeals and Interferences or by a Federal court; or

(iii) any delay in the processing of the application by the United States Patent and Trademark Office requested by the applicant except as permitted by paragraph (3)(C), the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued.

(C) GUARANTEE OR ADJUSTMENTS FOR DELAYS DUE TO INTERFERENCES, SECRECY ORDERS, AND APPEALS. — Subject to the limitations under paragraph (2), if the issue of an original patent is delayed due to —

(i) a proceeding under section 135(a);

(ii) the imposition of an order under section 181; or

(iii) appellate review by the Board of Patent Appeals and Interferences or by a Federal court in a case in which the patent was issued under a decision in the review reversing an adverse determination of patentability, the

term of the patent shall be extended 1 day for each day of
the pendency of the proceeding, order, or review, as the
case may be.

    (2)    LIMITATIONS. —
    (A)    IN GENERAL. — To the extent that periods of
delay attributable to grounds specified in paragraph (1)
overlap, the period of any adjustment granted under this
subsection shall not exceed the actual number of days the
issuance of the patent was delayed.

The implementing regulation, 37 CFR § 1.702, provides grounds
for adjustment of patent term due to examination delay under the
Patent Term Guarantee Act of 1999 (original applications, other
than designs, filed on or after May 29, 2000).

    (a)    Failure to take certain actions within specified
time frames.  Subject to the provisions of 35 U.S.C. 154(b)
and this subpart, the term of an original patent shall be
adjusted if the issuance of the patent was delayed due to
the failure of the Office to:
    (1)    Mail at least one of a notification under 35
U.S.C. 132 or a notice of allowance under 35 U.S.C. 151 not
later than fourteen months after the date on which the
application was filed under 35 U.S.C. 111(a) or fulfilled
the requirements of 35 U.S.C. 371 in an international
application;
    (2)    Respond to a reply under 35 U.S.C. 132 or to an
appeal taken under 35 U.S.C. 134 not later than four months
after the date on which the reply was filed or the appeal
was taken;
    (3)    Act on an application not later than four months
after the date of a decision by the Board of Patent Appeals
and Interferences under 35 U.S.C. 134 or 135 or a decision
by a Federal court under 35 U.S.C. 141, 145, or 146 where
at least one allowable claim remains in the application; or
    (4)    Issue a patent not later than four months after
the date on which the issue fee was paid under 35 U.S.C.
151 and all outstanding requirements were satisfied.

    (b)    Failure to issue a patent within three years of
the actual filing date of the application.  Subject to the
provisions of 35 U.S.C. 154(b) and this subpart, the term
of an original patent shall be adjusted if the issuance of

the patent was delayed due to the failure of the Office to
issue a patent within three years after the date on which
the application was filed under 35 U.S.C. 111(a) or the
national stage commenced under 35 U.S.C. 371(b) or (f) in
an international application, but not including[5]:

In pertinent part, 37 CFR § 1.703 provides for calculation of
the periods, as follows:

Period of adjustment of patent term due to examination delay.
        (a)   The period of adjustment under § 1.702(a) is the
sum of the following periods:
        (1)   The number of days, if any, in the period
beginning on the day after the date that is fourteen months
after the date on which the application was filed under
35 U.S.C. 111(a) or fulfilled the requirements of 35 U.S.C.
371 and ending on the date of mailing of either an action
under 35 U.S.C. 132, or a notice of allowance under 35
U.S.C. 151, whichever occurs first;
        (2)   The number of days, if any, in the period
beginning on the day after the date that is four months
after the date a reply under § 1.111 was filed and ending
on the date of mailing of either an action under 35 U.S.C.
132, or a notice of allowance under 35 U.S.C. 151,
whichever occurs first;
        (3)   The number of days, if any, in the period
beginning on the day after the date that is four months
after the date a reply in compliance with § 1.113(c) was
filed and ending on the date of mailing of either an action
under 35 U.S.C. 132, or a notice of allowance under 35
U.S.C. 151, whichever occurs first;
        (4)   The number of days, if any, in the period
beginning on the day after the date that is four months
after the date an appeal brief in compliance with § 41.37
of this title was filed and ending on the date of mailing
of any of an examiner's answer under § 41.39 of this title,
an action under 35 U.S.C. 132, or a notice of allowance
under 35 U.S.C. 151, whichever occurs first;

---

[5]        (1)  Any time consumed by continued examination of the application under 35
U.S.C. 132(b);
        (2)  Any time consumed by an interference proceeding under 35 U.S.C. 135(a);
        (3)  Any time consumed by the imposition of a secrecy order under 35 U.S.C. 181;
        (4)  Any time consumed by review by the Board of Patent Appeals and Interferences or a
Federal court; or
        (5)  Any delay in the processing of the application by the Office that was requested by
the applicant.

Patent No. 7,189,819    Application No. 10/010,942        Page 7

     (5)  The number of days, if any, in the period beginning on the day after the date that is four months after the date of a final decision by the Board of Patent Appeals and Interferences or by a Federal court in an appeal under 35 U.S.C. 141 or a civil action under 35 U.S.C. 145 or 146 where at least one allowable claim remains in the application and ending on the date of mailing of either an action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151, whichever occurs first; and

     (6)  The number of days, if any, in the period beginning on the day after the date that is four months after the date the issue fee was paid and all outstanding requirements were satisfied and ending on the date a patent was issued.

     (b) The period of adjustment under § 1.702(b) is the number of days, if any, in the period beginning on the day after the date that is three years after the date on which the application was filed under 35 U.S.C. 111(a) or the national stage commenced under 35 U.S.C. 371(b) or (f) in an international application and ending on the date a patent was issued, but not including the sum of the following periods[6]:

---

[6] (1) The number of days, if any, in the period beginning on the date on which a request for continued examination of the application under 35 U.S.C. 132(b) was filed and ending on the date the patent was issued;

  (2)(i) The number of days, if any, in the period beginning on the date an interference was declared or redeclared to involve the application in the interference and ending on the date that the interference was terminated with respect to the application; and (ii) The number of days, if any, in the period beginning on the date prosecution in the application was suspended by the Office due to interference proceedings under 35 U.S.C. 135(a) not involving the application and ending on the date of the termination of the suspension;

  (3)(i) The number of days, if any, the application was maintained in a sealed condition under 35 U.S.C. 181; (ii) The number of days, if any, in the period beginning on the date of mailing of an examiner's answer under § 41.39 of this title in the application under secrecy order and ending on the date the secrecy order was removed; (iii) The number of days, if any, in the period beginning on the date applicant was notified that an interference would be declared but for the secrecy order and ending on the date the secrecy order was removed; and (iv)  The number of days, if any, in the period beginning on the date of notification under § 5.3(c) of this chapter and ending on the date of mailing of the notice of allowance under 35 U.S.C. 151; and,

  (4) The number of days, if any, in the period beginning on the date on which a notice of appeal to the Board of Patent Appeals and Interferences was filed under 35 U.S.C. 134 and § 41.31 of this title and ending on the date of the last decision by the Board of Patent Appeals and Interferences or by a Federal court in an appeal under 35 U.S.C. 141 or a civil action under 35 U.S.C. 145, or on the date of mailing of either an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first, if the appeal did not result in a decision by the Board of Patent Appeals and Interferences.

Patent No. 7,189,819    Application No. 10/010,942         Page 8

37 CFR 1.703(f) provides that:

> The adjustment will run from the expiration date of
> the patent as set forth in 35 U.S.C. 154(a)(2). To the
> extent that periods of delay attributable to the grounds
> specified in §1.702 overlap, the period of adjustment
> granted under this section shall not exceed the actual
> number of days the issuance of the patent was delayed. The
> term of a patent entitled to adjustment under § 1.702 and
> this section shall be adjusted for the sum of the periods
> calculated under paragraphs (a) through (e) of this
> section, to the extent that such periods are not
> overlapping, less the sum of the periods calculated under
> § 1.704. The date indicated on any certificate of mailing
> or transmission under § 1.8 shall not be taken into account
> in this calculation.

## OPINION

On March 13, 2007, this patent issued with a revised patent term
adjustment of four hundred twenty-three (423) days. Pursuant to
the decision mailed April 2, 2007, on May 1, 2007, the Office
issued a Certificate of Correction correcting the patent term
adjustment in this patent from 423 to 492 days. Patentees argue
that the determination of 492 days remains in error in that
pursuant to 35 U.S.C. § 154(b) the Office failed to issue a
patent within three years of the actual filing date of the
above-referenced application in accordance with 37 CFR
§ 1.702(b) **and** failed to take certain action within the time
frames specified in 37 CFR § 1.702(a).

Specifically, patentees argue that the period of adjustment due
to the Three Year Delay by the Office, pursuant to 37 CFR
§ 1.703(b), is 827 days. This 827 day period is calculated
based on the application having been filed under 35 U.S.C.
111(a) on December 6, 2001, and the patent having not issued
until March 13, 2007, three years and 827 days later. Patentees
maintain that in addition to this 827 day period, they are
entitled to a period of adjustment due to examination delay,
pursuant to 37 CFR §1.702(a), totalling 336 days. This 336 day
period is the sum of:

- a period of delay of 230 days for the failure by the
  Office to mail at least one of a notification under 35
  U.S.C. 132 not later than fourteen months after the

Patent No. 7,189,819    Application No. 10/010,942         Page 9

          date on which the application was filed under
          35 U.S.C. 111(a), pursuant to § 1.702(a)(1);

- a period of delay of 14 days for the failure by the Office to respond to a reply under 35 U.S.C. 132 not later than four months after the date on which the reply was filed, pursuant to § 1.702(a)(2);
- a period of delay of 92 days for the Office's failure to issue a patent not later than four months after the date on which the issue fee was paid under 35 U.S.C. 151 and all outstanding requirements were satisfied, pursuant to § 1.702(a)(4).

Patentees further state, citing 37 CFR § 1.703(f), that they are entitled to a period of patent term adjustment equal to the period of delays based on the grounds set forth in 37 CFR §1.702 reduced by the period of time equal to the period of time during which patentees failed to engage in reasonable efforts to conclude prosecution pursuant to 37 CFR §1.704. In other words, the period of Office delay reduced by the period of applicant delay. The period of reduction of 335 days for applicant delay is not in dispute[7]. Patentees maintain that the total period of Office delay is the sum of the period of Three Years Delay (827 days) and the period of Examination Delay (336 days) **to the extent that these periods of delay are not overlapping.** Patentees contend that:

    As the period of 14 month delay ended on September 24, 2003, prior to the first day of the period of Three Years Delay, i.e., December 7, 2004, Patentees submit that these periods are not overlapping. Patentees note, however, that both the 14 day period of 4 month examination delay (September 20, 2005 to October 3, 2005) and the 92 day period of 4 month issue delay (December 12, 2006 to March 13, 2007) overlap with portions of the Three Year Delay period (December 7, 2004 to March 13, 2007). Accordingly, patentees submit that the total period of Office Delay is 1057 days, which is the sum of the period of Three Year Delay (827 days) and the period of Examination Delay (336 days), reduced by the period of overlap (14 days + 92 days = 106 days). See pp. 3-4 of petition filed May 14, 2007.

---

[7] The periods of reduction include pursuant to 37 CFR 1.704(b), 79 days for response filed March 12, 2004, 92 days for response filed November 26, 2004, 30 days for response filed May 19, 2005, 59 days for response filed March 3, 2006, and as corrected by decision of December 26, 2006, 38 days (not 107 days) for the response filed July 9, 2002; and pursuant to 37 CFR 1.704(c)(8), 20, 5, and 12 days for supplemental papers filed December 16, 2004, May 24, 2005, and March 12, 2006 (The 12 days was also corrected by decision of December 26, 2006).

As such, patentees assert entitlement to a patent term adjustment of 722 days (827 + 336 - 106 reduced by 335).

The Office agrees that the patent issued 3 years and 827 days after its filing date.  The Office agrees that the actions detailed above were not taken within the specified timeframes, and thus, the entries of periods of adjustment of 230, 14 and 92 days respectively are correct.  At issue is whether patentees should accrue 827 days of patent term adjustment for the Office taking in excess of three years to issue the patent, as well as, 336 days for Office failure to take certain actions within specified time frames (or examination delay) with only a period of 106 days considered to overlap.

The Office does not agree and contends that the entire period of 336 days overlap.  Patentees' interpretation of the period of overlap has been considered and found to be incorrect.  Patentees' calculation of the period of overlap is inconsistent with the Office's interpretation of this provision.  35 U.S.C. 154(b)(2)(A) limits the adjustment of patent term, as follows:

> to the extent that the periods of delay attributable to grounds specified in paragraph (1) overlap, the period of any adjustment granted under this subsection shall not exceed the actual number of days the issuance of the patent was delayed.

Likewise, 37 CFR 1.703(f) provides that:

> To the extent that periods of delay attributable to the grounds specified in §1.702 overlap, the period of adjustment granted under this section shall not exceed the actual number of days the issuance of the patent was delayed.

As explained in *Explanation of 37 CFR 1.703(f) and of the United States Patent and Trademark Office Interpretation of 35 U.S.C. 154(b)(2)(A)*, 69 Fed. Reg. 34283 (June 21, 2004), the Office interprets 35 U.S.C. 154(b)(2)(A) as permitting either patent term adjustment under 35 U.S.C. 154(b)(1)(A)(i)-(iv), or patent term adjustment under 35 U.S.C. 154(b)(1)(B), but not as permitting patent term adjustment under both 35 U.S.C. 154(b)(1)(A)(i)-(iv) and 154(b)(1)(B).  Accordingly, the Office implements the overlap provision as follows:

If an application is entitled to an adjustment under 35
U.S.C. 154(b)(1)(B), the entire period during which the
application was pending (except for periods excluded under
35 U.S.C. 154(b)(1)(B)(i)-(iii)), and not just the period
beginning three years after the actual filing date of the
application, is the period of delay under 35 U.S.C.
154(b)(1)(B) in determining whether periods of delay
overlap under 35 U.S.C. 154(b)(2)(A). Thus, any days of
delay for Office issuance of the patent more than 3 years
after the filing date of the application, which overlap
with the days of patent term adjustment accorded prior to
the issuance of the patent will not result in any
additional patent term adjustment. See 35 U.S.C.
154(b)(1)(B), 35 U.S.C. 154(b)(2)(A), and 37 CFR
§ 1.703(f). See *Changes to Implement Patent Term
Adjustment Under Twenty Year Term; Final Rule*, 65 Fed. Reg.
54366 (Sept. 18, 2000). See also *Revision of Patent Term
Extension and Patent Term Adjustment Provisions; Final
Rule*, 69 Fed. Reg. 21704 (April 22, 2004), 1282 Off. Gaz.
Pat. Office 100 (May 18, 2004). See also *Explanation of 37
CFR 1.703(f) and of the United States Patent and Trademark
Office Interpretation of 35 U.S.C. 154(b)(2)(A)*, 69 Fed.
Reg. 34283 (June 21, 2004).

The current wording of § 1.703(f) was revised in response to the
misinterpretation of this provision by a number of applicants.
The rule was slightly revised to more closely track the
corresponding language of 35 U.S.C. 154(b)(2)(A). The relevant
portion differs only to the extent that the statute refers back
to provisions of the statute whereas the rule refers back to
sections of the rule. This was not a substantive change to the
rule nor did it reflect a change of the Office's interpretation
of 35 U.S.C. 154(b)(2)(A). As stated in the *Explanation of 37
CFR 1.703(f) and of the United States Patent and Trademark
Office Interpretation of 35 U.S.C. 154(b)(2)(A)*, the Office has
consistently taken the position that if an application is
entitled to an adjustment under the three-year pendency
provision of 35 U.S.C. 154(b)(1)(B), the entire period during
which the application was pending before the Office (except for
periods excluded under 35 U.S.C. 154(b)(1)(B)(i)-(iii)), and not
just the period beginning three years after the actual filing
date of the application, is the relevant period under 35 U.S.C.
154(b)(1)(B) in determining whether periods of delay "overlap"
under 35 U.S.C. 154(b)(2)(A).

This interpretation is consistent with the statute.  Taken
together the statute and rule provide that to the extent that
periods of delay attributable to grounds specified in 35 U.S.C.
154(b)(1) and in corresponding §1.702 overlap, the period of
adjustment granted shall not exceed the actual number of days
the issuance of the patent was delayed.  The grounds specified
in these sections cover the A) guarantee of prompt Patent and
Trademark Office responses, B) guarantee of no more than 3 year
application pendency, and C) guarantee or adjustments for delays
due to interference, secrecy orders and appeals.  A section by
section analysis of 35 U.S.C. 154(b)(2)(A) specifically provides
that:

> Section 4402 imposes limitations on restoration of
> term.  In general, pursuant to [35 U.S.C.] 154(b)(2)(A)-
> (C), total adjustments granted for restorations under [35
> U.S.C. 154](b)(1) are reduced as follows:  (1) To the
> extent that there are multiple grounds for extending the
> term of a patent that may exist simultaneously (e.g., delay
> due to a secrecy order under [35 U.S.C.] 181 and
> administrative delay under [35 U.S.C.] 154(b)(1)(A)), the
> term should not be extended for each ground of delay but
> only for the actual number of days that the issuance of a
> patent was delayed; See 145 Cong. Rec. S14,718[8]

As such, the period for over 3 year pendency does not as argued
by patentees overlap only to the extent that the actual dates in
the period beginning three years after the date on which the
application was filed overlap with the actual dates in the
periods for failure of the Office to take action within
specified time frames.  In other words, consideration of the
overlap does not begin three years after the filing date of the
application.  Patentees are incorrect in treating the relevant
period as starting on December 7, 2004, the date that is 3 years
after the actual filing date of the application.

In this instance, the relevant period under 35 U.S.C.
154(b)(1)(B) in determining whether periods of delay "overlap"
under 35 U.S.C. 154(b)(2)(A) is the entire period during which

---

[8]  The AIPA is title IV of the Intellectual Property and Communications Omnibus Reform Act of
1999 (S. 1948), which was incorporated and enacted as law as part of Pub. L. 106-113.  The
Conference Report for H.R. 3194, 106th Cong. 1st Sess. (1999), which resulted in Pub. L. 106-113,
does not contain any discussion (other than the incorporated language) of S. 1948.  A section-by-
section analysis of S. 1948, however, was printed in the Congressional Record at the request of
Senator Lott, See 145 Cong. Rec. S14,708-26 (1999) (daily ed. Nov. 17, 1999).

Patent No. 7,189,819    Application No. 10/010,942          Page 13

the application was pending before the Office, December 6, 2001 to April 2, 2007.  (There were no periods excluded under 35 U.S.C. 154(b)(1)(B)(i)-(iii)).  336 days of patent term adjustment were accorded prior to the issuance of the patent for the Office failing to respond within specified time frames during the pendency of the application.  All of these 336 days overlap with the 827 days for Office delay in issuing the patent.  Accordingly, at issuance,  the Office properly entered 491 days (827 - 336 days) additional days of patent term adjustment for the Office taking in excess of 3 years to issue the patent.

In view thereof, the Office maintains that the correct revised determination of patent term adjustment at the time of the issuance of the patent is 492 days.  The Certificate of Correction was properly issued and no further action is required.

### CONCLUSION

The request for reconsideration of the revised patent term adjustment is denied.  This decision may be viewed as a final agency action.  See MPEP § 1002.02(b).

The Office acknowledges that patentees previously submitted the $200 fee set forth in §1.18(e) on application for patent term adjustment filed August 10, 2006.  As this request pertains only to the over 3-year delay issue raised in the application for patent term adjustment, no additional fees are required.

Telephone inquiries specific to this matter should be directed to Nancy Johnson, Senior Petitions Attorney, at (571) 272-3219.

Robert W. Bahr
Senior Patent Counsel
Office of the Deputy Commissioner
   for Patent Examination Policy



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

## COPY MAILED

SEP 1 3 2007

OFFICE OF PETITIONS

LaHive & Cockfield, LLP
One Post Office Square
Boston, Massachusetts 02109

In re Application of                          :
Basi et al.                                   :
Application No. 10/388,389                    : DECISION DENYING PTA REQUEST
Patent No. 7,179,892                          :
Filed: March 12, 2003                         :
Attorney Docket: ELN-002CP

This decision is in response to Patentees' "REQUEST FOR RECONSIDERATION OF PATENT TERM ADJUSTMENT under 37 CFR 1.705(d)" timely[1] filed on April 20, 2007 requesting that the Patent Term Adjustment be adjusted from a determination of 462 days to a determination of 756 days. Patentees initially filed an application for Patent Term Adjustment on August 30, 2006 requesting that the Office provide patentees with a minimum of 583 days partially based upon the Office failure to issue the application within three years as required under 35 U.S.C. 154(b)(1)(B) 37 CFR 1.702(b).

The Office's decision on November 13, 2006 stated that it would hold the "petition" in abeyance until the date the patent issued at which time the Office would ascertain whether or not the Office had met the three-year requirement as well as determine whether the periods were overlapping under 35 U.S.C. 154(b)(2)(A) and 37 CFR 1.703(f). The Office advised patentees that if they were not satisfied with the determination at the time of the issuance of the patentee that they could request reconsideration of the patent term adjustment within two months of issuance of patent.

Patentees' petition is **DENIED**. The PTA determination of 462 days is correct.

Patentees argue that the Office erred in failing to provide an adjustment for over 3 years to issue from the from the filing of the application under 37 CFR 1.704(b). Patentees assert that the proper amount of PTA related to the 3-year provision is three hundred and forty-five (345) days. Patentees assert that none of the days of the three year time frame overlap with any of the days of the fourteen month requirements of 37 CFR 1.702(a)(1); however, patentees assert the three hundred and forty-five (345) days of PTA overlap with the fifty-one (51) days of PTA accrued under 37 CFR 1.702(a)(4). Accordingly, patentees believe that the correct amount of Office delay is nine hundred and four (559 + 345=904)[2] and that the proper amount of applicant delay is

---

[1]Patent issued on February 20 2007.

[2]Since the 51 days are considered overlapping the 345 days no additional time is being sought for the failure to meet the requirements of 37 CFR 1.702(a)(4).



EXHIBIT

B

Application No. 10/388,389

days is one hundred and forty-eight days (148) as determined by the Office in the PTA calculation.

Patentees arguments are not persuasive. Patentees are advised that if an application is entitled to an adjustment under 35 U.S.C. 154(b)(1)(B), the entire period during which the application (except for periods excluded under 35 U.S.C. 154(b)(1)(B)(i)-(iii)), and not just the period beginning three years after the actual filing date of the application, is the period of delay under 35 U.S.C. 154(b)(1)(B) in determining whether periods of delay overlap under 35 U.S.C. 154(b)(2)(A). Thus, any days of delay for Office issuance of the patent more than 3 years after the filing date of the application which overlap with the days of patent term adjustment accorded prior to the issuance of the patent will not result in any additional patent term adjustment. See 35 U.S.C. 154(b)(1)(B), 35 U.S.C. 154(b)(2)(A), and 37 CFR § 1.703(f). See *Changes to Implement Patent Term Adjustment Under Twenty Year Term; Final Rule*, 65 Fed. Reg. 54366 (Sept. 18, 2000). See also *Revision of Patent Term Extension and Patent Term Adjustment Provisions; Final Rule*, 69 Fed. Reg. 21704 (April 22, 2004). See also *Explanation of 37 CFR 1.703(f)and of the United States Patent and Trademark Office Interpretation of 35 U.S.C. 154(b)(2)(A)* 69 Fed. Reg. 34283 (June 21, 2004). Since the Office delays under 37 CFR 1.702(a)(1) and (a)(4) are greater than the delay for 37 CFR 1.702(b), applicants will receive no additional PTA time.

Accordingly, the Office maintains that the proper amount of PTA at the time of the issuance of the patent is **four hundred and sixty two days**. The Office delay is calculated by the accrual of five hundred and fifty-nine (559) days under 37 CFR 1.702(a)(1) and fifty-one days under 37 CFR 1.702(a)(4) reduced by 122 days under 37 CFR 1.702(b) and 26 days pursuant to 37 CFR 1.704(c)(8).

The Office notes that in accordance with 37 CFR 1.705(b)(2)(iii) patentees have advised the Office that a terminal disclaimer has been filed in this application that would disclaim the terminal part of the patent which would extend beyond the last day of the statutory term of patent 7,189,819. The Office does not determine the expiration date of the patents but notes on the front of all patents that "Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by *** days." Accordingly, it is the responsibility of the patentees to ascertain whether any of the PTA determination can be included when ascertaining the patent expiration date.

After review of this decision, this application will be forwarded to the file repository for storage of such patented file.

The Office acknowledges that applicant has previously submitted the $200 application fee. No additional fees are required in rendering this decision.

Any questions concerning the issuance of this patent should be directed to Kery A. Fries, Office of Patent Legal Administration, Office of Deputy Commissioner for Patent Examination Policy at 571-272-7757

Robert W. Bahr
Senior Patent Counsel
Office of the Deputy Commissioner
for Patent Examination Policy

2

106TH CONGRESS ⎱
1st Session ⎰   HOUSE OF REPRESENTATIVES   ⎰ REPT. 106–287
                                            ⎱ Part 1

## AMERICAN INVENTORS PROTECTION ACT OF 1999

AUGUST 3, 1999.—Committed to the Committee of the Whole House on the State
of the Union and ordered to be printed

Mr. COBLE, from the Committee on the Judiciary,
submitted the following

## R E P O R T

[To accompany H.R. 1907]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill
(H.R. 1907) to amend title 35, United States Code, to provide en-
hanced protection for inventors and innovators, protect patent
terms, reduce patent litigation, and for other purposes, having con-
sidered the same, reports favorably thereon with an amendment
and recommends that the bill as amended do pass.Table of Con-
tents for Reports:

### TABLE OF CONTENTS

|  | Page |
|---|---|
| The Amendment | 2 |
| Purpose and Summary | 30 |
| Background and Need for the Legislation | 31 |
| Hearings | 33 |
| Committee Consideration | 33 |
| Committee Oversight Findings | 33 |
| Committee on Government Reform Findings | 34 |
| New Budget Authority and Tax Expenditures | 34 |
| Congressional Budget Office Cost Estimate | 34 |
| Constitutional Authority Statement | 39 |
| Section-by-Section Analysis | 39 |
| Changes in Existing Law Made by the Bill, as Reported | 70 |

The amendment is as follows:



EXHIBIT

C

2

Strike out all after the enacting clause and insert in lieu there-of the following:

SECTION 1. SHORT TITLE.

This Act may be cited as the "American Inventors Protection Act of 1999".

SEC. 2. TABLE OF CONTENTS.

The table of contents is as follows:

Sec. 1. Short title.
Sec. 2. Table of contents.

TITLE I—INVENTORS' RIGHTS

Sec. 101. Short title.
Sec. 102. Invention promotion services.
Sec. 103. Effective date.

TITLE II—FIRST INVENTOR DEFENSE

Sec. 201. Short title.
Sec. 202. Defense to patent infringement based on earlier inventor.
Sec. 203. Effective date and applicability.

TITLE III—PATENT TERM GUARANTEE

Sec. 301. Short title.
Sec. 302. Patent term guarantee authority.
Sec. 303. Continued examination of patent applications.
Sec. 304. Technical clarification.
Sec. 305. Effective date.

TITLE IV—UNITED STATES PUBLICATION OF PATENT APPLICATIONS PUBLISHED ABROAD

Sec. 401. Short title.
Sec. 402. Publication.
Sec. 403. Time for claiming benefit of earlier filing date.
Sec. 404. Provisional rights.
Sec. 405. Prior art effect of published applications.
Sec. 406. Cost recovery for publication.
Sec. 407. Conforming amendments.
Sec. 408. Effective date.

TITLE V—PATENT LITIGATION REDUCTION ACT

Sec. 501. Short title.
Sec. 502. Definitions.
Sec. 503. Reexamination procedures.
Sec. 504. Conforming amendments.
Sec. 505. Report to Congress.
Sec. 506. Estoppel effect of reexamination.
Sec. 507. Effective date.

TITLE VI—PATENT AND TRADEMARK OFFICE

Sec. 601. Short title.

Subtitle A—United States Patent and Trademark Office

Sec. 611. Establishment of Patent and Trademark Office.
Sec. 612. Powers and duties.
Sec. 613. Organization and management.
Sec. 614. Personnel flexibility.
Sec. 615. Public Advisory Committees.
Sec. 616. Patent and Trademark Office funding.
Sec. 617. Conforming amendments.
Sec. 618. Trademark Trial and Appeal Board.
Sec. 619. Board of Patent Appeals and Interferences.
Sec. 620. Annual report of Director.
Sec. 621. Suspension or exclusion from practice.
Sec. 622. Pay of Director.

Subtitle B—Effective Date; Technical Amendments

Sec. 631. Effective date.
Sec. 632. Technical and conforming amendments.

Subtitle C—Miscellaneous Provisions

Sec. 641. References.
Sec. 642. Exercise of authorities.
Sec. 643. Savings provisions.
Sec. 644. Transfer of assets.
Sec. 645. Delegation and assignment.
Sec. 646. Authority of Director of the Office of Management and Budget with respect to functions transferred.
Sec. 647. Certain vesting of functions considered transfers.
Sec. 648. Availability of existing funds.
Sec. 649. Definitions.

TITLE VII—MISCELLANEOUS PATENT PROVISIONS

Sec. 701. Provisional applications.

49

machinery to a third party unless the entire commercial establishment is transferred as well.

Subsection (b)(7) limits the sites for which the defense may be asserted when the defense has been transferred along with the enterprise or line of business to which the defense relates, as permitted by subsection (b)(6). Specifically, when the enterprise or line of business to which the defense relates has been transferred, the defense may be asserted only for uses at those sites where the subject matter was used before the later of the patent filing date or the date of transfer of the enterprise or line of business. A site is a factory site or other major facility in which an enterprise or line of business has made a significant capital investment, and does not include, for example, offsite locations for development of software components or manufacture of parts or ingredients.

Subsection (b)(8) states that a person who fails to demonstrate a reasonable basis for asserting the defense may be held liable for attorneys fees under §285 of the Patent Act.

Subsection (b)(9) specifies that the successful assertion of the defense does not mean that the affected patent is invalid. Paragraph (9) eliminates a point of uncertainty under current law concerning the validity of patents, and strikes a balance between the rights of a later inventor who obtains a patent and an earlier inventor who continues to use its method or process in the conduct of its business. Under current law, although the matter has seldom been litigated, a party who commercially used an invention in secrecy before the patent filing date and invented the subject matter before the patent owner's invention may argue that the patent is invalid under §102 (g) of the Patent Act. Arguably, commercial use of an invention in secrecy is not suppression or concealment of the invention within the meaning of §102(g), and therefore the party's earlier invention will invalidate the patent.[2] The bill provides that a party who a uses a process or business method commercially in secrecy before the patent filing date and establishes a §273 defense is not an earlier inventor for purposes of invalidating the patent.

*Sec. 203. Effective date and applicability.* The effective date for Title II is the date of enactment, except that the title does not apply to any infringement action pending on the date of enactment or to any subject matter for which an adjudication of infringement, including a consent judgment, has been made before the date of enactment.

### TITLE III—PATENT TERM GUARANTEE

*Generally.* Title III amends the provisions in the Patent Act that compensate patent applicants for certain reductions in patent term that are not the fault of the applicant. The provisions that were initially included only provided adjustments for up to 10 years for secrecy orders, interferences, and successful appeals. Not only are these adjustments too short in some cases, but no adjustments were provided for administrative delays caused by the PTO that were beyond the control of the applicant. Accordingly, Title III removes the 10-year caps from the existing provisions, adds a new provision to compensate applicants fully for PTO-caused adminis-

---

[2] See *Dunlop Holdings* v. _____, _____ F.2d _____ (7th Cir. 19___).

50

trative delays, and, for good measure, includes a new provision guaranteeing diligent applicants at least a 17-year term by extending the term of any patent not granted within three years of filing. Thus, no patent applicant diligently seeking to obtain a patent will receive a term of less than the 17 years as provided under the pre-GATT[3] standard; in fact, most will receive considerably more. Only those who purposely manipulate the system to delay the issuance of their patents will be penalized under Title III, a result that the Committee believes entirely appropriate.

*Sec. 301. Short title.* Title III may be cited as the "Patent Term Guarantee Act."

*Sec. 302. Patent term guarantee authority.* Section 302 amends §154(b) of the Patent Act covering term. First, new subsection (b)(1)(A)(i)–(iv) guarantees day-for-day restoration of term lost as a result of delay created by the PTO when the agency fails to

(1) make a notification of the rejection of any claim for a patent or any objection or argument under §132, or give or mail a written notice of allowance under §151, within 14 months after the date on which a non-provisional application was actually filed in the PTO;

(2) respond to a reply under §132, or to an appeal taken under §134, within four months after the date on which the reply was filed or the appeal was taken;

(3) act on an application within four months after the date of a decision by the Board of Patent Appeals and Interferences under §134 or §135 or a decision by a Federal court under §§141, 145, or 146 in a case in which allowable claims remain in the application; or

(4) issue a patent within four months after the date on which the issue fee was paid under §151 and all outstanding requirements were satisfied.

Further, subject to certain limitations, *infra*, §154(b)(1)(B) guarantees a total application pendency of no more than three years. Specifically, day-for-day restoration of term is granted if the PTO has not issued a patent within three years after "the actual date of the application in the United States." This language was intentionally selected to exclude the filing date of an application under the Patent Cooperation Treaty (PCT).[4] Otherwise, an applicant could obtain up to a 30-month extension of a U.S. patent merely by filing under PCT, rather than directly in the PTO, gaining an unfair advantage in contrast to strictly domestic applicants. Any periods of time

(1) consumed in the continued examination of the application under §132(b) of the Patent Act as added by Sec. 303 of this Act;

---

[3] General Agreement on Tariffs and Trade, Pub. L. No. 103–465. The framework for international trade since its inception in 1948, GATT is now administered under the auspices of the World Trade Organization (WTO) (*see* note 19, *infra*).

[4] *See* HERBERT F. SCHWARTZ, PATENT LAW & PRACTICE (2d ed., Federal Judicial Center,1995), note 72 at 22. The PCT is a multilateral treaty among more than 50 nations that is designed to simplify the patenting process when an applicant seeks a patent on the same invention in more than one nation. *See also* 35 U.S.C.A. chs. 35–37 and PCT Applicant's Guide (1992, rev. 1994).

51

    (2) lost due to an interference under §135(a), a secrecy order under §181, or appellate review by the Board of Patent Appeals and Interferences or by a Federal court (irrespective of the outcome); and

    (3) incurred at the request of an applicant in excess of the three months to respond to a notice from the Office permitted by §154(b)(2)(C)(ii) unless excused by a showing by the applicant under §154(b)(3)(C) that in spite of all due care the applicant could not respond within three months shall not be considered a delay by the PTO and shall not be counted for purposes of determining whether the patent issued within three years from the actual filing date.

Day-for-day restoration is also granted under new §154(b)(1)(C) for delays resulting from interferences,[5] secrecy orders,[6] and appeals by the Board of Patent Appeals and Interferences or a Federal court in which a patent was issued as a result of a decision reversing an adverse determination of patentability.

Section 302 imposes limitations on restoration of term. In general, pursuant to new §154(b)(2)(A)–(C) of the bill, total adjustments granted for restorations under (b)(1) are reduced as follows:

    (A) To the extent that there are multiple grounds for extending the term of a patent that may exist simultaneously (e.g., delay due to a secrecy order under §181 and administrative delay under §154(b)(1)(A)), the term should not be extended for each ground of delay but only for the actual number of days that the issuance of a patent was delayed.

    (B) The term of any patent which has been disclaimed beyond a date certain may not receive an adjustment beyond the expiration date specified in the disclaimer.

    (C) Adjustments shall be reduced by a period equal to the time in which the applicant failed to engage in reasonable efforts to conclude prosecution of the application, based on regulations developed by the Director, and an applicant shall be deemed to have failed to engage in such reasonable efforts for any periods of time in excess of three months that are taken to respond to a notice from the Office making any rejection or other request.

New §154(b)(3) sets forth the procedures for the adjustment of patent terms. Paragraph (3)(A) empowers the Director to establish regulations by which term extensions are determined and contested. Paragraph (3)(B) requires the Director to send a notice of any determination with the notice of allowance and to give the applicant one opportunity to request reconsideration of the determination. Paragraph (3)(C) requires the Director to reinstate any time the applicant takes to respond to a notice from the Office in excess of three months that was deducted from any patent term extension that would otherwise have been granted if the applicant can show that he or she was, in spite of all due care, unable to respond within three months. In no case shall more than an additional three months be reinstated for each response. Paragraph

---

[5] 35 U.S.C. §135(a).
[6] 35 U.S.C. §181.

52

(3)(D) requires the Director to grant the patent after completion of determining any patent term extension irrespective of whether the applicant appeals.

New §154(b)(4) regulates appeals of term adjustment determinations made by the Director. Paragraph (4)(A) requires a dissatisfied applicant to seek remedy in the District Court for the District of Columbia under the Administrative Procedures Act[7] within 180 days after the grant of the patent. The Director shall alter the term of the patent to reflect any final judgment. Paragraph (4)(B) precludes a third party from challenging the determination of a patent term prior to patent grant.

Section 302(b) makes certain conforming amendments to §282 of the Patent Act and the appellate jurisdiction of the U.S. Court of Appeals for the Federal Circuit.[8]

*Sec. 303. Continued examination of patent applications.* Section 303 amends §132 of the Patent Act to permit an applicant to request that an examiner continue the examination (reexamine) an application following a notice of rejection by the examiner. New §132(b) authorizes the Director to prescribe regulations for the continued examination of an application notwithstanding a "final" rejection, at the request of the applicant. The Director may also establish appropriate fees for continued examination proceedings, and shall provide a 50% fee reduction for small entities which qualify for preferential treatment under §41(h)(1) of the Patent Act.

*Section 304. Technical clarification.* Section 304 of the bill coordinates technical term adjustment provisions set forth in §156(b) with those in §156(a) of the Patent Act.

*Section 305. Effective date.* The effective date for the amendments in §§302 and 304 is the date of enactment and, with the exception of design applications (the terms of which are not measured from filing), applies to any application filed on or after that date. The amendments made by §303 take effect six months after date of enactment to allow the PTO to prepare implementing regulations.

### TITLE IV—UNITED STATES PUBLICATION OF PATENT APPLICATIONS FILED ABROAD

*Generally.* Title IV provides for the publication of pending patent applications which have a corresponding foreign counterpart. Any pending U.S. application filed only in the United States (e.g., one that does not have a foreign counterpart) will not be published if the applicant so requests. Thus, an applicant wishing to maintain her application in confidence may do so merely by filing only in the United States and requesting that the PTO not publish the application. For those applicants who do file abroad or who voluntarily publish their applications, provisional rights will be available for assertion against any third party who uses the claimed invention between publication and grant provided that substantially similar claims are contained in both the published application and granted patent. This change will ensure that American inventors will be

---

[7] 5 U.S.C. §§551–559, 701–706, 1305, 3105, 3344, 5372, 7521.
[8] 28 U.S.C. §1295.

**H6940**

**CONGRESSIONAL RECORD — HOUSE**

*August 3, 1999*

from, available to, or to be made available in connection with such functions, as may be necessary to carry out the provisions of this title. The Director shall provide for the termination of the affairs of all entities terminated by this title and for such further measures and dispositions as may be necessary to effectuate the purposes of this title.

**SEC. 647. CERTAIN VESTING OF FUNCTIONS CONSIDERED TRANSFERS.**

For purposes of this title, the vesting of a function in a department or office pursuant to reestablishment of an office shall be considered to be the transfer of the function.

**SEC. 648. AVAILABILITY OF EXISTING FUNDS.**

Existing appropriations and funds available for the performance of functions, programs, and activities terminated pursuant to this title shall remain available, for the duration of their period of availability, for necessary expenses in connection with the termination and resolution of such functions, programs, and activities, subject to the submission of a plan to the Committees on Appropriations of the House and Senate in accordance with the procedures set forth in section 605 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1999, as contained in Public Law 105–277.

**SEC. 649. DEFINITIONS.**

For purposes of this title—
(1) the term "function" includes any duty, obligation, power, authority, responsibility, right, privilege, activity, or program; and
(2) the term "office" includes any office, administration, agency, bureau, institute, council, unit, organizational entity, or component thereof.

**TITLE VII—MISCELLANEOUS PATENT PROVISIONS**

**SEC. 701. PROVISIONAL APPLICATIONS.**

(a) ABANDONMENT.—Section 111(b)(5) of title 35, United States Code, is amended to read as follows:
"(5) ABANDONMENT.—Notwithstanding the absence of a claim, upon timely request and as prescribed by the Commissioner, a provisional application may be treated as an application filed under subsection (a). Subject to section 119(e)(3) of this title, if no such request is made, the provisional application shall be regarded as abandoned 12 months after the filing date of such application and shall not be subject to revival thereafter.".

(b) TECHNICAL AMENDMENT RELATING TO WEEKENDS AND HOLIDAYS.—Section 119(e) of title 35, United States Code, is amended by adding at the end the following:
"(3) If the day that is 12 months after the filing date of a provisional application falls on a Saturday, Sunday, or Federal holiday within the District of Columbia, the period of pendency of the provisional application shall be extended to the next succeeding secular or business day.".

(c) ELIMINATION OF COPENDENCY REQUIREMENT.—Section 119(e)(2) of title 35, United States Code, is amended by striking "and the provisional application was pending on the filing date of the application for patent under section 111(a) or section 363 of this title".

(d) EFFECTIVE DATE.—The amendments made by this section shall take effect on the date of the enactment of this Act and shall apply to any provisional application filed on or after June 8, 1995, except that the amendments made by subsections (b) and (c) shall have no effect with respect to any patent which is the subject of litigation in an action commenced before such date of enactment.

**SEC. 702. INTERNATIONAL APPLICATIONS.**

Section 119 of title 35, United States Code, is amended—
(1) in subsection (a)—

(A) by inserting "in a WTO member country or" after "patent for the same invention"; and
(B) by inserting "such WTO member country or" after "first filed in";
(2) in subsection (c), by inserting "WTO member country or" after "application in the same"; and
(3) by adding at the end the following:
"(f) Applications for plant breeder's rights filed in a WTO member country (or in a foreign UPOV Contracting Party) shall have the same effect for the purpose of the right of priority under subsections (a) through (c) of this section as applications for patent, subject to the same conditions and requirements of this section as apply to applications for patents.

"(g) As used in this section—
"(1) the term 'WTO member country' has the meaning given that term in section 2(10) of the Uruguay Round Agreements Act; and
"(2) the term 'UPOV Contracting Party' means a member of the International Convention for the Protection of New Varieties of Plants.".

**SEC. 703. CERTAIN LIMITATIONS ON DAMAGES FOR PATENT INFRINGEMENT NOT APPLICABLE.**

Section 287(c)(4) of title 35, United States Code, is amended by striking "before the date of enactment of this subsection" and inserting "based on an application the earliest effective filing date of which is prior to September 30, 1996".

**SEC. 704. ELECTRONIC FILING AND PUBLICATIONS.**

(a) PRINTING OF PAPERS FILED.—Section 22 of title 35, United States Code, is amended by striking "printed or typewritten" and inserting "printed, typewritten, or on an electronic medium".

(b) PUBLICATIONS.—Section 11(a) of title 35, United States Code, is amended by amending the matter preceding paragraph 1 to read as follows:
"(a) The Director may publish in printed, typewritten, or electronic form, the following:".

(c) COPIES OF PATENTS FOR PUBLIC LIBRARIES.—Section 13 of title 35, United States Code, is amended by striking "The Commissioner may supply printed copies of specifications and drawings of patents" and inserting "The Director may supply copies of specifications and drawings of patents in printed or electronic form".

(d) MAINTENANCE OF COLLECTIONS.—Section 41(i)(1) of title 35, United States Code, is amended by striking "The Commissioner shall maintain, for use by the public, paper or microform" and inserting "The Director shall maintain, for use by the public, paper, microform, or electronic".

**SEC. 705. STUDY AND REPORT ON BIOLOGICAL DEPOSITS IN SUPPORT OF BIOTECHNOLOGY PATENTS.**

(a) IN GENERAL.—No later than 6 months after the date of the enactment of this Act, the Comptroller General of the United States, in consultation with the Director of the United States Patent and Trademark Office, shall conduct a study and submit a report to the Congress on the potential risks to the United States biotechnology industry relating to biological deposits in support of biotechnology patents.

(b) CONTENTS.—The study conducted under this section shall include—
(1) an examination of the risk of export and the risk of transfers to third parties of biological deposits, and the risks posed by the change to 18-month publication requirements made by this Act;
(2) an analysis of comparative legal and regulatory regimes; and
(3) any related recommendations.

(c) CONSIDERATION OF REPORT.—In drafting regulations affecting biological deposits (in-

cluding any modification of title 37, Code of Federal Regulations, section 1.801 et seq.), the Patent and Trademark Office shall consider the recommendations of the study conducted under this section.

**SEC. 706. PRIOR INVENTION.**

Section 102(g) of title 35, United States Code, is amended to read as follows:
"(g)(1) during the course of an interference conducted under section 135 or section 291, another inventor involved therein establishes, to the extent permitted in section 104, that before such person's invention thereof the invention was made by such other inventor and not abandoned, suppressed, or concealed, or (2) before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it. In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.".

**SEC. 707. PRIOR ART EXCLUSION FOR CERTAIN COMMONLY ASSIGNED PATENTS.**

(a) PRIOR ART EXCLUSION.—Section 103(c) of title 35, United States Code, is amended by striking "subsection (f) or (g)" and inserting "one or more of subsections (e), (f), and (g)".

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall apply to any application for patent filed on or after the date of the enactment of this Act.

The SPEAKER pro tempore. Pursuant to the rule, the gentleman from North Carolina (Mr. COBLE) and the gentlewoman from California (Ms. LOFGREN) each will control 20 minutes.

Ms. KAPTUR. Mr. Speaker, I would like to ask if the gentlewoman from California is opposed to the resolution that will be under consideration.

The SPEAKER pro tempore. The gentlewoman from California opposed to the bill?

Ms. LOFGREN. Mr. Speaker, if necessary to claim the time representing the Democratic part of the aisle, but I think, pursuant to the rule, I have been designated as the member of the minority on the committee to represent our side. But I will certainly yield time to the gentlewoman from Ohio to express her opinion.

The SPEAKER pro tempore. Is the gentlewoman from Ohio challenging the gentlewoman from California for the right to control the time?

Ms. KAPTUR. I would like to claim time in opposition, and I would like to know if the gentlewoman is opposed to the measure before us.

The SPEAKER pro tempore. Is the gentlewoman from Ohio opposed to the bill?

Ms. KAPTUR. The gentlewoman from Ohio is opposed.

The SPEAKER pro tempore. Is the gentlewoman from California opposed to the bill?

Ms. LOFGREN. Mr. Speaker, the gentlewoman from Ohio is not a member of the committee of jurisdiction and is not, therefore, eligible to manage our time. I would ask for a ruling.

The SPEAKER pro tempore. The gentlewoman from Ohio is eligible if the gentlewoman from California is not opposed.



**EXHIBIT**

**D**

Ms. LOFGREN. Then I will claim opposition.

The SPEAKER pro tempore. The gentlewoman from California is opposed?

Ms. LOFGREN. I will claim opposition and the time.

The SPEAKER pro tempore. Then the gentlewoman from California qualifies since the gentlewoman is opposed to the bill.

The gentlewoman from California will then be recognized for 20 minutes.

POINT OF ORDER

Mr. ROHRABACHER. Point of order, Mr. Speaker. With all fairness here, claiming opposition is not what the question is. If the gentlewoman from Ohio is indeed opposed to the bill, she deserves to have this time as compared to someone who is unwilling to say that they are opposed to the bill.

Ms. LOFGREN. Mr. Speaker, if I may, I have reservations about the changes made today. I hope that I can be convinced that they are adequately made by the time the debate is over.

The SPEAKER pro tempore. At this point, the Chair does not question the motives of the Member. The Member has stated she is in opposition to the bill.

The Chair recognizes the gentleman from North Carolina (Mr. COBLE).

Mr. ROHRABACHER. Continuing my point of order, Mr. Speaker, does the Member not just claiming opposition, does she oppose the bill?

Ms. LOFGREN. I believe the Chair has ruled.

Mr. ROHRABACHER. If not, if she cannot state this, I would state as a point of order, the gentlewoman from Ohio (Ms. KAPTUR), who does say she is opposed to the bill, this is not in my interest to do this, this is in the interest of fairness, we should make sure the time is allotted to someone who opposes the bill.

The SPEAKER pro tempore. The gentlewoman from California has stated that she is in opposition to the bill; is that correct?

Is the gentlewoman from California in opposition to the bill?

Ms. LOFGREN. Until convinced about the changes made, yes.

The SPEAKER pro tempore. At this point the gentlewoman from California is in opposition to the bill. The gentlewoman qualifies.

POINT OF ORDER

Ms. KAPTUR. Point of order, Mr. Speaker.

Mr. Speaker, do I take it, then, that under your ruling, I, as someone who is opposed to this measure, will not be allowed my own time during debate this evening?

The SPEAKER pro tempore. Under a motion to suspend the rules, only two Members may control the time. The gentlewoman from California has qualified to claim the time in opposition. She will, of course, be able to yield time if she is so inclined.

Ms. LOFGREN. Mr. Chairman, if I may, I plan to expansively yield time to the gentlewoman from Ohio.

Ms. KAPTUR. I wanted to ask, Mr. Speaker, how much time would that be of the total time allotted, then?

The SPEAKER pro tempore. Each side has 20 minutes. The gentlewoman from California will control 20 minutes.

PARLIAMENTARY INQUIRY

Mr. HOYER. Mr. Speaker, I have a parliamentary inquiry.

The SPEAKER pro tempore. The gentleman will state it.

Mr. HOYER. Am I correct that under the rules as they now exist, that if in fact the gentlewoman from Ohio (Ms. KAPTUR) were recognized in opposition, she would receive half of the time allotted to the minority side of 20 minutes? Is that correct?

The SPEAKER pro tempore. Only one Member may control time in opposition. The gentlewoman from California, a member of the committee, controls the time because she is opposed.

Mr. HOYER. So if she were in opposition, she would receive the entire 20 minutes?

The SPEAKER pro tempore. If the gentlewoman from California were not in opposition, someone else could seek that time.

Mr. HOYER. Further parliamentary inquiry. If that in fact occurred, could the gentlewoman from Ohio (Ms. KAPTUR) yield to the gentlewoman from California (Ms. LOFGREN) 10 minutes?

The SPEAKER pro tempore. Any Member in control of time can yield time to anyone else.

Mr. HOYER. In other words, there would be nothing to preclude her from doing so?

The SPEAKER pro tempore. Repeat your question, please.

Mr. HOYER. The Speaker's response was, as I take it, if the gentlewoman from Ohio (Ms. KAPTUR) were recognized as an opponent to the legislation, she could yield such time as she desired to the gentlewoman from California (Ms. LOFGREN) who obviously has been asked by the committee to represent the minority side of the committee in this action.

The SPEAKER pro tempore. That would be possible. But the gentlewoman from California, a member of the committee, has claimed the time because in opposition and will have the 20 minutes and will be able to yield that time as she so desires.

Mr. HOYER. I understand.

Ms. KAPTUR. Mr. Speaker, could I ask unanimous consent to control my own 10 minutes?

The SPEAKER pro tempore. Is there objection to the request of the gentlewoman from Ohio?

Ms. LOFGREN. Mr. Speaker, I object.

The SPEAKER pro tempore. Objection is heard.

The gentlewoman from California (Ms. LOFGREN) controls the time.

POINT OF ORDER

Mr. ROHRABACHER. Mr. Speaker, I have a point of order.

The SPEAKER pro tempore. The gentleman will state his point of order.

Mr. ROHRABACHER. Mr. Speaker, the point of order is such that it seems to me that by being a little heavy-handed here, we are undermining this process.

Ms. LOFGREN. Will the gentleman yield?

The CHAIRMAN. The gentleman will state his point of order first.

Mr. ROHRABACHER. I withdraw my point of order.

Ms. LOFGREN. Mr. Speaker, I ask unanimous consent for a 10-second statement that will save us all a lot of time.

After I make my opening statement, it is my intention to yield 10 minutes to the gentlewoman from Ohio.

The SPEAKER pro tempore. The gentlewoman may take 10 seconds of her time and solve the problem.

Ms. LOFGREN. I think we just solved it, Mr. Speaker.

The SPEAKER pro tempore. Very well.

The Chair recognizes the gentleman from North Carolina (Mr. COBLE).

GENERAL LEAVE

Mr. COBLE. Mr. Speaker, I ask unanimous consent that all Members may have 5 legislative days to revise and extend their remarks and include extraneous material on the bill under consideration.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from North Carolina?

There was no objection.

Mr. COBLE. Mr. Speaker, I yield myself such time as I may consume.

Mr. Speaker, I want to say to my friend from California and to my friend from Ohio, the gentlewoman from California's comments, I think, make it clear that no one is trying to roll anyone. I think that has been made clear by the gentlewoman from California's comment subsequent to the beginning of the debate.

I rise tonight, Mr. Speaker, in support of H.R. 1907, the American Inventors Protection Act, and urge the House to adopt the measure.

Mr. Speaker, a coalition of Members, staff, administration officials and other contributors have negotiated in good faith into the early evening to clarify what few outstanding issues remain in this 100-plus-page bill. I now anticipate overwhelming support for this complex, important and often misunderstood measure which will bring our patent and trademark system into the 21st century to the benefit of American inventors and American consumers.

Mr. Speaker, H.R. 1907 is a product of compromise and negotiation. It is comprised of several provisions that have been suggested by the gentleman from California (Mr. ROHRABACHER), the gentleman from California (Mr. CAMPBELL), each of whom opposed this the last session, the gentleman from Illinois (Mr. MANZULLO) and the gentleman from Indiana (Mr. BURTON), in addition to other administration and industry officials.

The gentlewoman from California (Ms. LOFGREN), the gentleman from California (Mr. BERMAN), the ranking member of the subcommittee, among others, have been very helpful in this process. I want to thank all the participants and others too numerous to name for their patience and insight as we have labored to bring this bill finally to the floor.

Mr. Speaker, with a bill this complex and lengthy, no one who participates in its construction can get everything he or she wants. I think we have all done a good job, however, of addressing those legitimate concerns registered by independent inventors while retaining the core protections of the legislation. There is no doubt in my mind that H.R. 1907 will make our patent and trademark system, already the world's best, even better in the new millennium.

Mr. Speaker, I place an exchange of letters in the RECORD concerning committee jurisdiction on the bill H.R. 1907 between Chairman BURTON and Chairman HYDE.

U.S. HOUSE OF REPRESENTATIVES,
COMMITTEE ON GOVERNMENT REFORM,
*Washington, DC, August 3, 1999.*
Hon. HENRY J. HYDE,
*Chairman, Committee on the Judiciary,
Washington, DC.*

DEAR MR. CHAIRMAN: I am writing with regard to H.R. 1907, the American Inventors Protection Act of 1999.

As you know, under House Rule X of the Committee on Government Reform and Oversight has jurisdiction over the federal civil service and the overall economy, efficiency, and management of government operations and activities. Sections 612, 613, 614, and 621 of the amended bill address matters that are within the jurisdiction of this Committee.

In the interest of expediting floor consideration for this measure, the Committee on Government Reform will agree not to exercise its jurisdiction over those sections on the understanding that you have agreed to amend the bill as follows:

1. Section 613 will be revised to provide that the total compensation of the Commissioner for Patents and the Commissioner for Trademarks may not exceed the salary of the Vice President. (It is our understanding that the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office and the Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office will not be eligible for bonuses under a revised version of the bill that your committee has already agreed to.)

2. Section 614 will be further revised to require the Patent and Trademark Office to submit to Congress a legislative proposal to retain patent and trademark examiners for the purpose of training other patent and trademark examiners rather than allow the Office to develop and implement such a program without congressional intervention.

Our decision not to exercise our jurisdiction over this measure is not intended or designed to waive or limit our jurisdiction over any future consideration of related matters.

Sincerely,
DAN BURTON,
*Chairman.*

U.S. HOUSE OF REPRESENTATIVES,
COMMITTEE ON THE JUDICIARY,
*Washington, DC, August 3, 1999.*
Hon. DAN BURTON,
*Chairman, Committee on Government Reform,
Washington, DC.*

DEAR MR. CHAIRMAN: Thank you for your letter regarding H.R. 1907, the "American Inventors Protection Act." This letter will serve to acknowledge your jurisdiction over sections 612, 613, 614, and 621 of the amended bill, and to confirm our understanding that we have agreed to amend the bill as follows:

1. Section 613 will be revised to provide that the total compensation of the Commissioner for Patents and the Commissioner for Trademarks may not exceed the salary of the Vice President. (You are correct in your understanding that the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, and the Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office will not be eligible for bonuses under the amendment.)

2. Section 614 will be further revised to require the Patent and Trademark Office to submit to Congress a legislative proposal to retain certain patent and trademark examiners for the purpose of training other patent and trademark examiners rather than allow the Office to develop and implement such a program without congressional intervention.

I understand that your decision not to conduct a markup over the provisions over which you have jurisdiction does not serve to waive your jurisdiction over these provisions or over any future consideration of related matters.

Sincerely,
HENRY HYDE,
*Chairman.*

Mr. Speaker, I reserve the balance of my time.

Ms. LOFGREN. Mr. Speaker, I yield myself such time as I may consume.

I would like to inquire of the chairman of the committee, rising in opposition to the bill, I need to explore the changes that have been made to this bill to understand why it is worthy of my support.

□ 2145

In title II there is a first inventor defense that is limited to methods of doing or conducting business, and I need to understand why, what the impact of that would be and why it merits our support.

Mr. COBLE. Mr. Speaker, will the gentlewoman yield?

Ms. LOFGREN. I yield to the gentleman from North Carolina.

Mr. COBLE. Mr. Speaker, it is limited, I say to the gentlewoman from California, to the State Street Bank case. There was some discussion early on that. Perhaps the first inventive defense should apply to processes as well as methods. But we finally concluded that we would restrict it to methods only, and that, by having done that, we were able to satisfy some folks who were opposed to the bill otherwise.

Ms. LOFGREN. All right. So that is an accommodation that we have done, given that legislation is sausage making, to move this whole process forward.

On title IV there is a provision permitting applicants to request the issuance of a patent as soon as one claim was allowed with the remaining claims to be added later, and that was deleted. I am concerned that this would change the bill as passed by the Committee on the Judiciary, but there may be some good reason that I am not aware of for the change that is proposed.

Can the gentleman convince me as to why this should be supported?

Mr. COBLE. Mr. Speaker, will the gentlewoman yield?

Ms. LOFGREN. I yield to the gentleman from North Carolina.

Mr. COBLE. This deletion was done at the request of the Patent and Trademark Office, and the reason given by PTO was that it considered it a constitution of an additional administrative burden, and for that reason that change was made.

Ms. LOFGREN. On title V, and this is something of actual considerable concern to me, the bill was amended to retain existing law for ex parte reexaminations. For inter parte's reexamination the basic framework in the bill was retained under title V but with the limitation that a third party requestor cannot appeal an adverse decision to the court of appeals for the Federal circuit court.

I am wondering if the gentleman can convince us why this change made after the bill was reported from the committee was necessary and why it should compel our support.

Mr. COBLE. If the gentlewoman from California would continue to yield?

Ms. LOFGREN. I yield to the gentleman from North Carolina.

Mr. COBLE. Primarily this was done for the benefit of the independent inventors to balance the interest of a third party with those of a patent need, patentee, by allowing a third party to pursue reexamination under the existing system or opting for a strictly limited ex parte reexamination while assuring that a patentee would not be subject to harassment in such proceedings.

Ms. LOFGREN. Mr. Speaker, under title VI the Public Advisory Committee for Patents has been altered to provide a quarter of the representation to independents, so-called independent inventors. There is concern that institutional inventors, including universities, might be disadvantaged by this change. Can the gentleman advise us as to the wisdom of this proposal?

Mr. COBLE. If the gentlewoman would yield?

Ms. LOFGREN. I yield to the gentleman from North Carolina.

Mr. COBLE. This title VI, as the gentlewoman knows, came in for much discussion. It was part of the cause for the delay. The distinguished gentleman from Indiana (Mr. BURTON) chairs a committee that has jurisdiction over this title. He asserted that jurisdiction, and we were in exchange with him since May, to be specific, for the desired language that he preferred; and we finally were able to get that language handed to us late today, and the

*August 3, 1999*         CONGRESSIONAL RECORD — HOUSE         **H6943**

purpose for his insisting upon that, and probably a good idea, was to ensure that independent inventors are not without a voice in the oversight of the operation of the PTO as far as sitting on one of the boards is concerned.

Ms. LOFGREN. Finally at this point, Mr. Speaker, I note that one change that I think I support but I have some concerns about is that the Patent and Trademark Office would be authorized to publish documents electronically. That makes sense, but because of the lack of vigorous encryption involved in the world and in government offices, I do have concerns as to the security of such publication. I do not know whether that can be addressed in the bill, but I do want to raise the issue, and my 5 minutes is expired. I want to reserve the time for the gentlewoman from Ohio (Ms. KAPTUR), so I will leave that out for a later answer.

Mr. COBLE. We will get to that substantively.

Mr. Speaker, I yield 5 minutes to the gentleman from California (Mr. ROHRABACHER).

Mr. ROHRABACHER. Mr. Speaker, I rise in strong support of H.R. 1907, as amended. This bill is the culmination of a long process of negotiations that followed floor battles in the last Congress between the leadership of the Committee on the Judiciary and a group of Members led by myself. It was far more than sausage making because we have people with honest beliefs on both sides, and I certainly can see where people can have honest differences on something as complicated as patent law.

I began this fight in 1994 when I fought against provisions that were inserted into the GATT trade agreement implementation bill to eliminate our Nation's traditional guarantee of a 17-year patent term in an attempt to harmonize our patent law with those of other nations with a 20-year-from-filing limit that was imposed through that legislation, thus taking away a guaranteed patent term that had been the right of every American inventor. This change, by the way, would have resulted in decreasing the patent term of every application held in the Patent Office for more than 3 years, which is a common occurrence with breakthrough technologies.

I was further energized in this fight when additional changes in our patent system were proposed, including the publishing of all patent applications 18 months after filing, even when no patent had been issued, and establishing prior user rights for all inventions, opening up new opportunities to challenge already-granted patents through reexamination and the turning of the Patent Office into a government corporation. These things caused me great pain and concern.

The battles we had ultimately resulted in a standoff in the Senate in which no patent legislation was adopted, and I am pleased to note that the negotiations I referred to earlier have resulted in a bill that is very much different than the patent bills that went through the Committee on the Judiciary last year and the fights we have had in the last 4 years.

Instead of making minor, tenuous extensions in the patent term, H.R. 1907 goes most of the way in reversing the 1994 patent term reduction by extending patent term completely to compensate for delays in the processing of the Patent and Trademark Office or any other delay resulting from actions taken by anyone else other than the patent applicant. Instead of publishing all patent applications after 18 months, 1907 publishes only, only the pending applications that have been published abroad, and thus they are already published abroad and already known to the people and only to the extent that they are published abroad.

Instead of a prior user defense that applies to all inventions which we just heard a question about a moment ago, H.R. 1907 contains a very limited prior user defense that applies only to those business methods which have only been considered patentable in the last few years, and this, of course, flows from an adverse case before the court that changed patent law.

We want to have our say in what is going on here, and we are correcting it in this legislation; and instead of corporatizing the Patent Office and removing civil service protection from patent examiners, H.R. 1907 leaves the PTO as an agency within the Department of Commerce while including valuable provisions keeping patent revenue within the Patent Office and providing for enhanced training and professional development for patent examiners and retaining their civil service status.

Mr. Speaker, although as in all compromises both sides have to give up something, maybe a little, I would say that my Committee on the Judiciary colleagues will not mind that I am stating for the RECORD that I believe that H.R. 1907 represents a major victory for the independent inventor whose interests I have vigorously defended these past 5 years.

I ask my colleagues to give H.R. 1907 their overwhelming support and to join me in urging the other body to take up this compromise as is and send it to the President for his signature without change.

Mr. Speaker, I have some more detailed comments, and I will be inserting them at this point in the RECORD, but I would not want to let this moment go by without thanking the gentleman from North Carolina (Mr. COBLE) who has, as my colleagues know, stepped forward in a spirit of compromise, and we have worked really hard on this; the gentleman from Illinois (Mr. HYDE) who also played an important role in this. Their spirit of goodwill and the negotiations we have had have resulted in a superior bill that is going to do great things for America and to keep us technologically ahead.

I also thank the gentleman from Illinois (Mr. MANZULLO). In his late-breaking contributions to this fight he has greatly improved this legislation, and he can be justly proud he has done a good job for America in doing so. Finally, I would like to thank the gentleman from California (Mr. CAMPBELL) and the gentlewoman from Ohio (Ms. KAPTUR), and Ms. KAPTUR has been deeply involved in these negotiations from the beginning.

Ms. KAPTUR has been very deeply involved in this whole fight from the very beginning, and over the last 4 years she stood firm with us, and in fact in the last month we have had meetings in her office trying to negotiate these details out. We have been working with her staff, and I do not know, it sounds like we have not satisfied all of her concerns, but she has certainly played an important role in this process, and the gentleman from Ohio (Mr. KUCINICH) and the gentleman from California (Mr. HUNTER).

All of these people played such a significant role along with, of course, the gentleman from North Carolina (Mr. COBLE) and the gentleman from Illinois (Mr. HYDE) in giving us this incredible piece of legislation that I believe is going to do great things for America. Also, my staff members Rick Dykema and Wayne Paugh and other science fellows who worked with me, Paul Crilly, John Morgan, Biff Kramer, Dick Backe and Richard Cowan, for all the hard work they have put in on this piece of legislation.

I urge my colleagues to support it.

Mr. Speaker, for the last several years, this is a day I had hoped would come. I have fought long and hard to protect the products of our nation's independent inventors. I have fought diligently to strengthen our patent system and to prevent changes in the name of harmonization. Now, after the continued competition and polarization of the past, this was finally a time for cooperation. Chairman COBLE and I have both spent many hours of individual effort pursuing our respective goals for patent reform the past several years, and indeed the time was ripe to work together toward a unified effort. It was time to have an open-ended process in which everyone had an opportunity to come to the table.

With that, I am proud to say that after a long and successful negotiation period with my friend from North Carolina, Chairman COBLE, and with the invaluable help of my fellow colleague from California, Mr. CAMPBELL and with late-breaking help from my friend from Illinois, Mr. MANZULLO, we were finally able to reach agreement on the issues. As was always the case, the devil has been in the details. Therefore, this has been a carefully crafted effort, but has resulted in a resounding victory for the United States patent system and the American inventor.

TITLE II—FIRST TO INVENT DEFENSE ACT

With regard to Title II, the First Inventor Defense, I have always held that we simply cannot champion trade secret protection over patent protection for clearly patentable subject matter. We cannot betray our Founding Fathers by abandoning the foundation upon which our patent system is based. We cannot

openly advocate secrecy when our patent system calls for us to vigorously promote the progress of science through the sharing of critical technology.

In the patent bill that passed the House last year, all patents were subjected to prior user rights. This Congress, we were initially able to limit this title to processes and methods only. More recently, however, we were able to even further limit this section to business methods only. This is an important limitation in scope to take note of because now Title II will not affect the vast majority of independent inventors and small businesses.

A first inventor defense that is strictly limited to business methods will severely reduce its applicability. Furthermore, the defense applies only to business methods that have been reduced to practice at least one year prior to the effective filing date of the patent in question. Even further, to successfully use this defense a litigant must satisfy a clear and convincing evidentiary standard and risk being subjected to paying reasonable attorney fees to the prevailing party. Bottom line, the best defense to a charge of patent infringement will remain the successful assertion of invalidity, and not a first inventor defense.

TITLE III—PATENT TERM GUARANTEE ACT

My goal all along has been to assure a minimum patent term of 17 years from the date a patent is granted. Failing that, I have insisted on a guarantee that the PTO will extend the patent term as necessary to assure a term of 17 years from filing for non-dilatory applicants. The language of this bill clearly codifies this approach.

As everyone is aware, the current law governing patent term is 20 years from the date of file. Since June 8, 1995, when the 17-years-from-grant was changed, patents have been losing precious time under the current law. Inventors can no longer rely on a guaranteed term of protection. In some cases, several years of effective post-grant protection is lost due to Patent and Trademark Office (PTO) administrative delay. This title represents an opportunity to recapture some of the reliance of pre-GATT standards.

By codifying what constitutes PTO delay, this title can compensate the patent applicant for lost time on a day-for-day basis without time limitation. Furthermore, if the PTO does not issue a patent within 3 years from the date of original file, the patent term will be compensated day-for-day until the patent issues, minus any time the applicant has delayed prosecution by engaging in dilatory behavior.

This approach effectively eliminates the claimed submarine patent dilemma while providing a specific framework from which the Patent and Trademark Office must monitor and compensate the loss of any patent term due to delay for which the applicant has no responsibility.

This approach essentially gives back to the non-dilatory patent holder what I have fought so hard for—a guaranteed 17 year patent term. The patentee once again will have the right to exclude the public from using his invention for a limited time—a time that is guaranteed and clearly defined. This Title essentially regains what GATT gave away. It has been my core initiative and now I am proud to say that it is my most significant success in this bill.

TITLE IV—PUBLICATION OF FOREIGN APPLICATIONS ACT

As I supported last year, this bill includes a provision similar in spirit to the amendment successfully offered last year to H.R. 400 by my friend from Ohio, MARCY KAPTUR. Essentially, this year's effort only permits early publication of U.S. patent applications that are filed abroad in a country that also publishes early. Additionally, the U.S. application will not be published before the foreign application, and in no greater content.

Curiously, this title has generated an abundance of controversy, although its provisions are of a positive nature. There are over 170 patent systems that currently exist globally. Our nation cannot control foreign policies on early publication. A majority of foreign nations choose to publish patent applications prior to granting a patent. The published patent application is also normally printed in the home language of each respective foreign patent system.

Generally, this title will affect large corporations, because they are more likely to file abroad than the independent inventor community. Since American patent applications filed abroad are indeed published early and are in a foreign language, foreign nations have a chance to view them at their leisure. This is the reality and the argument from the other side in the last Congress that was the hardest to counter.

Thus we have agreed to permit the PTO to publish after 18 months only those applications that are filed internationally. If an applicant files an application only domestically, he will have the unqualified right to maintain confidentiality of his patent application. If an applicant files abroad and domestically, he will have the right to limit the content of early domestic publication to that content which the foreign entity has published. In no event will America publish prior to the actual publication date in a foreign patent system. It's that simple.

Also included, for those applications published early, is a provisional right which allows the patent holder to recover royalties for infringement activity during the pre-issuance period. There will also be no pre-issuance 3rd party opposition to the patent application permitted. Finally, the costs derived from early publication will be applied only to those applicants who are actually subjected to publication.

Essentially, this title is reactive to circumstances beyond our control already present in many foreign patent systems, while going to lengths to protect the American inventor community.

TITLE V—PATENT LITIGATION REDUCTION ACT

Considering both the patent holder and third party, reexamination is a seldom used process in proportion to the number of patent applications filed each year. Yet, when Congress originally enacted the reexamination statute it had an important public purpose in mind: to restore confidence in the validity of patents issued by the PTO.

Specifically, three principal benefits were noted: 1. Resolve patent validity disputes more quickly and less expensively than litigation; 2. Permit courts to defer issues of patent validity to the expertise of the PTO; and 3. Reinforce investor confidence in the certainty of patents.

Reexamination was enacted as an important step to permitting the PTO to better serve the public interest. As the Supreme Court stated in Graham v. Deere, "it must be remembered that the primary responsibility for sifting out unpatentable material lies in the Patent Office. To await litigation is—for all practical purposes—to debilitate the patent system."

The current statute permits any patent holder or third party to submit prior art in the form of prior patents and printed publications throughout the term of the patent for the PTO to determine whether a substantial new question of patentability exists. Reexam procedures currently limit a third party's participation to arguing why there is a substantial new question of patentability.

This title was an attempt to provide an alternative to existing law and to further encourage potential litigants to use the PTO as an avenue to resolve patentability issues without expanding the process into one resembling courtroom proceedings. Fundamentally, in addition to the reexam process in law today, this title creates an additional reexam option that permits a 3rd party requestor to file additional written briefs. The price paid by those who would challenge a patent, however, is that the 3rd party requestor is barred from any appeals outside of the PTO and from subsequently litigating the same issues in a district court or making a second reexam request. This estoppel is the insulation that effectively protects patent holders.

Ultimately, the expanded reexam option does not subject the patent to any greater challenge in scope than currently exists today. It merely allows a reexam requestor the option to further explain why a particular patent should not have been granted.

Mr. Speaker, this bill does not create new opportunities to pursue litigation and does not create additional ways to invalidate patents. In fact, the bill seeks to provide even further ways to reduce the incentive for litigation in the courts and to protect against the needless wasting of dollars independent inventors don't have.

CONCLUSION

Certainly, last year's bill was an exercise in harmonization brought about by the interests of large corporations. In contrast, this year's bill, H.R. 1907, is designed to protect the products of our nation's inventors and to help sustain our unprecedented technological leadership. I saw to that through many intense negotiations with my colleagues. Unfortunately, there are still those who cannot recognize victory even when it stares them in the face.

I assure you, Mr. Speaker, that if H.R. 1907 was similar to either H.R. 400 or S. 507 last Congress, my views would not have changed this Congress. But that is not the case. H.R. 1907 is a brand new effort reached through an open-ended and fair debate, and it is a bill I am unequivocally supporting today. It is also a bill that I will stand firmly behind as it moves through the Senate.

I know it is up to Congress to carry on the tradition of Thomas Jefferson, Benjamin Franklin, and the will of our Founding Fathers. It was they who provided our newly formed nation with a foundation for freedom and the power to protect the achievements of our inventors.

I have been intimately involved in these issues because I want to ensure that our patent system continues to respect the fundamentals of our Founding Fathers while at the same time enhancing its operability in modern society. We have a chance this Congress to enhance a system that better provides a stronger protection for our nation's inventors.

Our patent system always has—and always will—stimulate the creation of jobs, advance our technological leadership, and help sustain our standard of living. It has helped to fortify our economic success, strengthen our national defense, and reinforce our global leadership.

I look forward to passing this bill with the resounding support of my colleagues on the House side and I look forward to the unshakeable support for its text when it is reported in the Senate.

I want to make sure that we will firmly stand behind the text of this bill in the event of contrary action by the Senate. But I am confident that the other noble body of this Congress will accept the House's efforts in patent reform and will move our version of the bill forward without delay.

Mr. Speaker, I applaud my colleagues who have endured a labor-intensive process to reach the final accord we have today. I know it was not an easy thing to do and that it was a long time coming, but it is the American people who will ultimately benefit.

This body can rest assured knowing we faithfully served American technology. Mr. Speaker, although I know there is much work left to do by way of vigilance and continued involvement, I am pleased looking back and realizing all the good work that has been accomplished so far.

Ms. LOFGREN. Mr. Speaker, I yield 10 minutes to the gentlewoman from Ohio (Ms. KAPTUR), and I ask unanimous consent that she be permitted to further yield time.

The SPEAKER pro tempore (Mr. MILLER of Florida). Is there objection to the request of the gentlewoman from California?

There was no objection.

The SPEAKER pro tempore. The gentlewoman from Ohio (Ms. KAPTUR) will now control 10 minutes of time.

Ms. KAPTUR. Mr. Speaker, I yield myself such time as I may consume.

Mr. Speaker, I must say I find it very interesting here close to 10 p.m. Washington time that we have had walked to the floor less than a half an hour ago the bill that we are going to be asked to vote on tomorrow. This is likely to be the last item of business tonight. This bill is 105 pages long, and I must say I am extremely disappointed that I could not even get 20 minutes to talk about a measure that has been worked on in this Congress for several years, and now under the unusual, unusual procedure of bringing up a major bill like this with constitutional implications it is brought up under suspension, and I, as the only person in opposition here with perhaps the exception of one other are allowed 10 minutes. Mr. Speaker, I will not yield time at this point, having so few minutes myself.

Mr. Speaker, any reasonable person would ask why the silence. Why are we being silenced and not allowed to explore some of the questions that have troubled us over several years?

I listened very carefully to those that have been involved in these negotiations: the gentleman from Indiana (Mr. BURTON), the gentleman from Illinois (Mr. MANZULLO), the gentleman from California (Mr. ROHRABACHER), the gentleman from California (Mr. CAMPBELL).

Frankly I was not involved in the negotiations that have been occurring here over the last several weeks. There were two meetings I think in my office where we tried to gain clarification of language that never came back, and I would like to ask the chairman of the full committee, if I might, my good friend, the gentleman from North Carolina (Mr. COBLE), if this bill before us, H.R. 1907, is the same bill that was voted out of the Committee on the Judiciary on May 24 of this year, 1999.

Is this the same bill?

Mr. COBLE. Mr. Speaker, will the gentlewoman yield?

Ms. KAPTUR. I yield to the gentleman from North Carolina.

Mr. COBLE. It has been amended many times for the benefit of independent inventors, many of the people the gentlewoman from Ohio (Ms. KAPTUR) represents, and that is one of the reasons why it has taken awhile for it to get here, because there have been countless hours that have been put into this.

Ms. KAPTUR. Excuse me, on that point where the gentleman says it has been amended, in what formal process on the record has it been amended?

Mr. COBLE. There is a manager's amendment now.

Ms. KAPTUR. There is a manager's amendment now which was walked to the floor at 9:17 p.m., which I could only get up to Page 54 reading very quickly here this evening. There are 105 pages in the bill.

So the manager's amendment is the bill that was walked to the floor tonight, so it has not come through any subcommittee; it has not come through any full committee. It is going to be offered here and then voted on tomorrow; is that correct?

Mr. COBLE. That is correct, and if the gentlewoman would yield, for the people, for the very people she represents, we have done this for them.

Ms. KAPTUR. I would say to the gentleman I have many fewer minutes than he does here this evening, and I hate to reclaim my time, but I am going to do that and say to the gentleman that for me, and again I have not had to study this bill every single word as the gentleman has over the last several weeks, but the reason for my objection is this:

□ 2200

The Constitution of the United States sets up a very precious right of property. I am going to read it. It is only 32 words. It says in article I, section 8. "The Congress shall have power to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right"—exclusive right—"to their respective writings and discoveries."

Now, this is not some little amendment that is part of a manager's effort. This is the Constitution of the United States. Therefore, when a 105-page bill comes before us on suspension, those of us who value this document and devote much of our lives to preserving it under the oath that we take are very suspicious of any bill of such consequence that comes before us on suspension when we are allowed only 10 minutes to debate.

I also would say that with all due respect to the excellent minds that were involved in crafting this manager's amendment, it is only a handful of Members of this institution. This bill is not up on the web. I cannot ask the inventors I represent back home to go to any site to look at it so I can be advised on how to vote tomorrow morning.

I know a fast ball when I see one. I have been here long enough to know that. I am offended by this, simply because I think the constitutional issues are so very important. I am not afraid of sunshine on this issue or any other issue, and I would say to my good friends from California, some of whom are on the floor tonight, I understand a little bit about industry differences, and I know that there are some industries that will benefit more than others from the publication in foreign locales of some of these patents.

I would say, and I have only marked one paragraph that I will read here, because the public will know nothing of this bill before it is voted on tomorrow, but on page 33 there is this section that is called "United States publications of applications published abroad." It says, "Subject to paragraph (2), each application for patent except applications for design patents filed under chapter 16 and provisional applications filed under section 111(b) shall be filed in accordance with procedures determined by the Director, promptly upon the expiration of a period of 18 months after the earliest filing date for which a benefit is sought under this title."

Now, that is an interesting set of words there, but I guess I would want to take sections like that and let the sun shine in, let those back home whose livelihoods and futures, and, frankly, the future of this country depend on, have an opportunity to think and comment before this particular vote.

I agree with the chairman; this is complex, it is very important, and it is often misunderstood. I would have to say as a Member, I take some offense that some professor from MIT, and I attended MIT, had more influence with the committee and more ability to review these sections than Members like myself. You must understand this frustration.

So I do really feel that we are being closed out. That means that some interests are being looped in, and it means that we are not to be given the chance to review this extremely important measure with constitutional consequences before we are asked to vote on it tomorrow.

By Mr. SPECTER (for himself and Mr. BIDEN):

S. 1808. A bill to reauthorize and improve the drug court grant program; to the Committee on the Judiciary.

By Mr. JEFFORDS (for himself, Mr. KENNEDY, Mr. HARKIN, Mr. FRIST, Ms. COLLINS, Mr. WELLSTONE, Mr. REED, Mr. DODD, and Mrs. MURRAY):

S. 1809. A bill to improve service systems for individuals with developmental disabilities, and for other purposes; to the Committee on Health, Education, Labor, and Pensions.

By Mrs. MURRAY (for herself, Mr. JEFFORDS, Mr. CONRAD, Mr. KERREY, Mr. DORGAN, Mr. BINGAMAN, and Mr. SARBANES):

S. 1810. A bill to amend title 38, United States Code, to clarify and improve veterans' claims and appellate procedures; to the Committee on Veterans' Affairs.

By Mr. LEVIN:

S. 1811. A bill for the relief of Sophia Shiklivsky and her husband Vasili Chidiivski; to the Committee on the Judiciary.

By Mr. WARNER:

S. 1812. A bill to establish a commission on a nuclear testing treaty, and for other purposes; to the Committee on Foreign Relations.

By Mr. KENNEDY (for himself, Mr. FRIST, Mr. JEFFORDS, Ms. MIKULSKI, Mrs. MURRAY, Mr. DURBIN, and Mr. COCHRAN):

S. 1813. A bill to amend the Public Health Service Act to provide additional support for and to expand clinical research programs, and for other purposes; to the Committee on Health, Education, Labor, and Pensions.

By Mr. SMITH of Oregon (for himself, Mr. GRAHAM, Mr. CRAIG, Mr. CLELAND, Mr. McCONNELL, Mr. COVERDELL, Mr. MACK, Mr. COCHRAN, Mr. HELMS, Mr. GRAMS, Mr. CRAPO, Mr. BUNNING, and Mr. VOINOVICH):

S. 1814. A bill to establish a system of registries of temporary agricultural workers to provide for a sufficient supply of such workers and to amend the Immigration and Nationality Act to streamline procedures for the admission and extension of stay of nonimmigrant agricultural workers, and for other purposes; to the Committee on the Judiciary.

By Mr. GRAHAM (for himself and Mr. SMITH of Oregon):

S. 1815. A bill to provide for the adjustment of status of certain aliens who previously performed agricultural work in the United States to that of aliens who are lawfully admitted to the United States to perform that work; to the Committee on the Judiciary.

## SUBMISSION OF CONCURRENT AND SENATE RESOLUTIONS

The following concurrent resolutions and Senate resolutions were read, and referred (or acted upon), as indicated:

By Mr. BAUCUS (for himself and Mr. GRASSLEY):

S. Res. 207. A resolution expressing the sense of the Senate regarding fair access to Japanese telecommunications facilities and services; to the Committee on Finance.

By Mr. SCHUMER (for himself and Mr. MOYNIHAN):

S. Con. Res. 62. A concurrent resolution recognizing and honoring the heroic efforts of the Air National Guard's 109th Airlift Wing and its rescue of Dr. Jerri Nielsen from the South Pole; to the Committee on Armed Services.

## STATEMENTS ON INTRODUCED BILLS AND JOINT RESOLUTIONS

By Mr. HATCH (for himself and Mr. LEAHY):

S. 1798. A bill to amend title 35, United States Code, to provide enhanced protection for investors and innovators, protect patent terms, reduce patent litigation, and for other purposes; to the Committee on the Judiciary.

THE AMERICAN INVENTORS PROTECTION ACT OF 1999

Mr. HATCH. Mr. President, I am pleased to rise today, along with the Ranking Member on the Judiciary Committee, Senator LEAHY, to introduce the American Inventors Protection Act of 1999. Simply put, this legislation reflects several years of discussions and consensus-building efforts in the Senate and the House, and represents the most important and most comprehensive reforms to our nation's patent system in nearly half a century. As we prepare to enter a new millennium built on high-tech growth, the Internet, and electronic commerce, in which American competitiveness will depend on the strength of the patent system and the protections it affords, this legislation could not be more timely.

The last time the Patent Act underwent a significant update was in 1952. Since then, our Nation has experienced an unprecedented explosion of technology growth and a tremendous expansion of the global market for the fruits of American ingenuity. Yet our patent laws have remained largely unchanged in the face of the new demands engendered by these developments. This legislation—which many of my colleagues will recognize as a compromise version of the Omnibus Patent Act passed by the Judiciary Committee with near unanimity more than 2 years ago—will effect targeted changes to the patent code to equip the patent system to meet the challenges of new technology and new markets as we approach the new millennium, while at the same time promoting American competitiveness and ensuring adequate protection for American innovators, both at home and abroad.

As many of my colleagues know, this legislation is the product of several years of discussion and extensive efforts to reach agreement on a responsible package of patent reforms. The Senate made significant progress toward consensus during the last Congress when several key compromises were reached in the Judiciary Committee to strengthen the bill's protections for small businesses and independent inventors and to preserve America's competitive edge in the face of increasing global competition. I was pleased this year to see those efforts continued in the House, where the supporters and former opponents of the bill agreed to sit down and work through their differences to produce a constructive patent reform bill. The result is H.r. 1907, which has 59 cosponsors in the House—including the most ardent opponents of prior reform measures—and was passed in the House by a 376–43 vote.

In many ways, the House-passed "American Inventors Protection Act" builds upon the compromises reached in the Senate during the last Congress. For example, the widespread agreement on 18-month publication of patent applicants is centered around the Senate compromise that allowed inventors to avoid disclosure of their applications by not filing their application abroad, where 18-month publication is now the rule. Similarly, estoppel provisions similar to those agreed to in the Senate form a key component on the broad-based agreement on patent reexamination reform. I am pleased to see these compromises preserved and to see that the House has built upon them to reach the sort of broad consensus on patent reform that I have long advocated.

The bill Senator LEAHY and I are introducing today in the Senate preserves these important compromises and adds to them a number of important provisions. For example, our bill includes a title not in the House bill to reduce patent fees for only the second time in history (the first time fees were reduced was last year in a bill Senator LEAHY and I ushered through the Senate), to ensure that trademark fees are spent only for trademark-related operations, and to require a study of alternative fee structures to encourage maximum participation by the American inventor community. Our bill also adds important provisions to enhance protections for our national security by preventing disclosure of sensitive and strategic patent-related information and by helping to identify national security positions at the Patent and Trademark Office (PTO) and obtain appropriate security clearances for PTO employees. The bill also prohibits the Commissioner of Patents and Trademarks from entering into an agreement to exchange U.S. patent data with certain foreign countries without explicit authorization from the Secretary of Commerce. Also in our bill is a requirement that GAO conduct a study on patents issued for methods of doing or conducting business, which have been the subject of a 75 percent increase in applications at the PTO/

Like the House bill, our legislation will achieve a number of important substantive patent reforms, consistent with the principles of protecting American inventors, our national competitiveness, and the integrity of our patent system.

First, the bill provides inventors with enhanced protections against invention promotion scams by creating a private right of action for inventors harmed by deceptive and fraudulent practices and by requiring invention promoters to disclose certain information in writing prior to entering into a contract for invention promotion services. An inventor who is harmed by any

EXHIBIT E

material false or fraudulent statement or representation, or any omission of material fact, by an invention promoter, or by the invention promoter's failure to make the required disclosures, may recover actual damages or, at the plaintiff's election, statutory damages in an amount up to $5,000, as the court considers just, plus reasonable costs and attorneys' fees. A court may award increased damages, up to treble damages, where it finds such conduct to have been intentional and done with the intent to deceive the inventor. And, in an effort to provide better access to information for inventors, the Patent and Trademark Office is required to make publicly available all complaints received involving invention promoters, along with any response of the invention promoter.

Second, as noted above, the bill will reduce patent fees, protect trademark fees from being diverted to non-trademark uses, and require the PTO to study alternative fee structures to encourage maximum participation by American inventors.

Third, the bill provides a "first inventor defense" to an action for patent infringement for someone who has reduced an invention to practice at least one year before the effective filing date of the patent and commercially used the subject matter before the effective filing date of such patent. The bill responds to recent changes in PTO practice and the Federal Circuit's 1998 decision in *State Street Bank & Trust Co.* v. *Signature Financial Group,* 149 F.3d 1360 (Fed Cir. 1998), in which it formally did away with the so-called "business methods" exception to statutory patentable subject matter. As a result, patent filings for business methods are up by 75 percent this year, and many who have been using business methods for many years pursuant to trade secret protection—believing such methods were not patentable—are now faced with potential patent infringement suits from others who, while they may have come later to the game, were first to reach the patent office after the bar to patentability for business methods was lifted.

Fourth, the bill will guarantee a minimum 17-year patent term for diligent applicants, addressing concerns that have been expressed since the United States went to a 20-year from filing term of protection with the adoption of the Uruguay Round Agreements Act in 1994.

Fifth, the bill will place American inventors on a level playing field with their foreign competitors by providing for domestic publication in English of those patent applications that are now subject to foreign publication by foreign patent offices, while still retaining the option inventors now enjoy of preserving the secrecy of their application by not filing abroad. It also protects American inventors from broader disclosure of their invention through domestic publication than occurs in foreign publications by allowing the

patent applicant to submit a redacted copy of their application for publication. This provision will effectively facilitate access to information that will enable inventors to target their resources more effectively while also providing, for the first time, effective interim protection for inventors during patent pendency.

Sixth, the bill is designed to reduce litigation in district courts and make reexamination a viable, less-costly alternative to patent litigation by giving third-party requesters the option of inter-partes reexamination procedures (in addition to the current ex parte reexamination procedures). Under this optional procedure, the third party is afforded an expanded, although still limited, role in the reexamination process through an opportunity to respond, in writing, to an action by a patent examiner when, but only when, the patent owner does so. These expanded rights for third parties are carefully balanced with incentives to prevent abusive reexamination requests, including broad estoppel provisions and severe restrictions on appeals.

Finally, the bill will make a number of miscellaneous, yet important patent reforms.

In short, the provisions of this bill now enjoy widespread bipartisan and bicameral support. The total package of changes that have been made to this legislation over the past several years are both responsive and comprehensive. The time to act on this package of reforms is now. Intellectual property, and patents in particular, are among our nation's greatest assets in this technology-dominated age. Our patent system must be equipped to handle the challenges of the new millennium and to protect our nation's creators into the next century. The strength of our economy depends upon it. If we do not, we will lose our edge in the ongoing race for technological and economic leadership in the world economy.

In the most simple of terms, we must have a patent system that is state of the art. The bill Senator LEAHY and I are introducing today will help to provide just that. I hope that my colleagues will join with me in giving their overwhelming support for this measure.

Mr. LEAHY. Mr. President, I am very pleased to join with Senator HATCH in introducing the "American Inventors Protection Act of 1999," which I hope can be enacted into law this year.

This patent bill is important to America's future. I have heard from inventors, from businesses large and small, from hi-tech to low-tech firms that this bill will give American inventors and businesses an improved competitive edge now enjoyed by many European countries.

We should be on a level playing field with them.

This bill reduces patent fees for only the second time in history. The first time that was done was also in a

Hatch-Leahy bill passed by the Senate in the 105th Congress.

All the concepts in this bill—such as patent term guarantees, domestic publication of patent applications filed abroad, first inventor defense—have been thoroughly examined. Indeed, they have been included in several bills that the Congress has carefully studied.

Chairman HATCH and I have worked closely on this bill. I believe that we can get a good patent bill to the President before we go out of session this year. I look forward to working with the House on these issues and appreciate the hard work and careful crafting that went into their bill—H.R. 1907.

I wish to point out that the Senate Judiciary Committee last year also developed a strong bill—S. 507—which contained many of the same concepts and approaches found in H.R. 1907 and S. 1798.

It is long past time for the Senate to consider and pass this patent reform legislation. Our patent bill will be good for Vermont, good for Utah and every state in the Nation, good for American innovators of all sizes, and good for America.

We will be working with the Administration, the full Senate and with the House to move this bill along quickly. I hope we can keep this bipartisan coalition together because otherwise this bill will die, as past efforts have.

The patent bill will reform the U.S. patent system in important ways.

It will reduce legal fees that are paid by inventors and companies; eliminate duplication of research efforts and accelerate research into new areas; increase the value of patents to inventors and companies; and facilitate U.S. inventors and companies' research, development, and commercialization of inventions.

In Vermont, we have a number of independent inventors and small companies. It is, therefore, especially important to me that this bill will be one that helps them as well as the larger companies in Vermont like IBM.

Over the past several years, Congress has held eight Congressional hearings with more than 80 witnesses testifying about the various proposals incorporated in the bill. Republican and Democratic Administrations alike, reaching back to the Johnson Administration, have supported these similar reforms.

I also thank Secretary Daley and the administration for their unflagging support of effective patent reform. I also know that they worked closely with the House on H.R. 1907. I will submit a more detailed statement on S. 1798 before we proceed to Senate consideration.

———

By Mrs. FEINSTEIN:

S. 1799. A bill for the relief of Sergio Lozano; to the Committee on the Judiciary.

83

# TITLE IV—INVENTOR PROTECTION

3  **SEC. 4001. SHORT TITLE.**

4  This title may be cited as the "American Inventors
5  Protection Act of 1999".

## Subtitle A—Inventors' Rights

7  **SEC. 4101. SHORT TITLE.**

8  This subtitle may be cited as the "Inventors' Rights
9  Act of 1999".

10  **SEC. 4102. INTEGRITY IN INVENTION PROMOTION SERV-**
11  **ICES.**

12  (a) IN GENERAL.—Chapter 29 of title 35, United
13  States Code, is amended by adding at the end the fol-
14  lowing new section:

15  **"§ 297. Improper and deceptive invention promotion**

16  "(a) IN GENERAL.—An invention promoter shall
17  have a duty to disclose the following information to a cus-
18  tomer in writing, prior to entering into a contract for in-
19  vention promotion services:

20  "(1) the total number of inventions evaluated
21  by the invention promoter for commercial potential
22  in the past 5 years, as well as the number of those
23  inventions that received positive evaluations, and the
24  number of those inventions that received negative
25  evaluations;



96

1    this title solely because a defense is raised or estab-

2    lished under this section.".

3    (b) CONFORMING AMENDMENT.—The table of sec-

4    tions at the beginning of chapter 28 of title 35, United

5    States Code, is amended by adding at the end the fol-

6    lowing new item:

"273. Defense to infringement based on earlier inventor.".

7    **SEC. 4303. EFFECTIVE DATE AND APPLICABILITY.**

8    This subtitle and the amendments made by this sub-

9    title shall take effect on the date of the enactment of this

10    Act, but shall not apply to any action for infringement

11    that is pending on such date of enactment or with respect

12    to any subject matter for which an adjudication of in-

13    fringement, including a consent judgment, has been made

14    before such date of enactment.

15    # Subtitle D—Patent Term

16    # Guarantee

17    **SEC. 4401. SHORT TITLE.**

18    This subtitle may be cited as the "Patent Term Guar-

19    antee Act of 1999".

20    **SEC. 4402. PATENT TERM GUARANTEE AUTHORITY.**

21    (a) ADJUSTMENT OF PATENT TERM.—Section

22    154(b) of title 35, United States Code, is amended to read

23    as follows:

24    "(b) ADJUSTMENT OF PATENT TERM.—

25    "(1) PATENT TERM GUARANTEES.—

97

1         "(A) GUARANTEE OF PROMPT PATENT

2     AND TRADEMARK OFFICE RESPONSES.—Subject

3     to the limitations under paragraph (2), if the

4     issue of an original patent is delayed due to the

5     failure of the Patent and Trademark Office

6     to—

7         "(i) provide at least one of the notifi-

8         cations under section 132 of this title or a

9         notice of allowance under section 151 of

10        this title not later than 14 months after—

11           "(I) the date on which an appli-

12           cation was filed under section 111(a)

13           of this title; or

14           "(II) the date on which an inter-

15           national application fulfilled the re-

16           quirements of section 371 of this title;

17         "(ii) respond to a reply under section

18         132, or to an appeal taken under section

19         134, within 4 months after the date on

20         which the reply was filed or the appeal was

21         taken;

22         "(iii) act on an application within 4

23         months after the date of a decision by the

24         Board of Patent Appeals and Interferences

25         under section 134 or 135 or a decision by

98

1           a Federal court under section 141, 145, or
2           146 in a case in which allowable claims re-
3           main in the application; or

4                "(iv) issue a patent within 4 months
5                after the date on which the issue fee was
6                paid under section 151 and all outstanding
7                requirements were satisfied,

8           the term of the patent shall be extended 1 day
9           for each day after the end of the period speci-
10          fied in clause (i), (ii), (iii), or (iv), as the case
11          may be, until the action described in such
12          clause is taken.

13               "(B) GUARANTEE OF NO MORE THAN 3-
14          YEAR APPLICATION PENDENCY.—Subject to the
15          limitations under paragraph (2), if the issue of
16          an original patent is delayed due to the failure
17          of the United States Patent and Trademark Of-
18          fice to issue a patent within 3 years after the
19          actual filing date of the application in the
20          United States, not including—

21                "(i) any time consumed by continued
22                examination of the application requested
23                by the applicant under section 132(b);

24                "(ii) any time consumed by a pro-
25                ceeding under section 135(a), any time

99

1                 consumed by the imposition of an order

2                 under section 181, or any time consumed

3                 by appellate review by the Board of Patent

4                 Appeals and Interferences or by a Federal

5                 court; or

6                      "(iii) any delay in the processing of

7                 the application by the United States Pat-

8                 ent and Trademark Office requested by the

9                 applicant except as permitted by paragraph

10                (3)(C),

11         the term of the patent shall be extended 1 day

12         for each day after the end of that 3-year period

13         until the patent is issued.

14            "(C) GUARANTEE OR ADJUSTMENTS FOR

15         DELAYS DUE TO INTERFERENCES, SECRECY OR-

16         DERS, AND APPEALS.—Subject to the limita-

17         tions under paragraph (2), if the issue of an

18         original patent is delayed due to—

19                "(i) a proceeding under section

20                135(a);

21                "(ii) the imposition of an order under

22                section 181; or

23                "(iii) appellate review by the Board of

24                Patent Appeals and Interferences or by a

25                Federal court in a case in which the patent

100

1      was issued under a decision in the review

2      reversing an adverse determination of pat-

3      entability,

4   the term of the patent shall be extended 1 day

5   for each day of the pendency of the proceeding,

6   order, or review, as the case may be.

7   "(2) LIMITATIONS.—

8      "(A) IN GENERAL.—To the extent that pe-

9   riods of delay attributable to grounds specified

10  in paragraph (1) overlap, the period of any ad-

11  justment granted under this subsection shall

12  not exceed the actual number of days the

13  issuance of the patent was delayed.

14     "(B) DISCLAIMED TERM.—No patent the

15  term of which has been disclaimed beyond a

16  specified date may be adjusted under this sec-

17  tion beyond the expiration date specified in the

18  disclaimer.

19     "(C) REDUCTION OF PERIOD OF ADJUST-

20  MENT.—

21        "(i) The period of adjustment of the

22     term of a patent under paragraph (1) shall

23     be reduced by a period equal to the period

24     of time during which the applicant failed

101

1        to engage in reasonable efforts to conclude

2        prosecution of the application.

3            "(ii) With respect to adjustments to

4        patent term made under the authority of

5        paragraph (1)(B), an applicant shall be

6        deemed to have failed to engage in reason-

7        able efforts to conclude processing or ex-

8        amination of an application for the cumu-

9        lative total of any periods of time in excess

10       of 3 months that are taken to respond to

11       a notice from the Office making any rejec-

12       tion, objection, argument, or other request,

13       measuring such 3-month period from the

14       date the notice was given or mailed to the

15       applicant.

16           "(iii) The Director shall prescribe reg-

17       ulations establishing the circumstances

18       that constitute a failure of an applicant to

19       engage in reasonable efforts to conclude

20       processing or examination of an applica-

21       tion.

22       "(3) PROCEDURES FOR PATENT TERM ADJUST-

23   MENT DETERMINATION.—

24           "(A) The Director shall prescribe regula-

25       tions establishing procedures for the application

102

1      for and determination of patent term adjust-
2      ments under this subsection.
3              "(B) Under the procedures established
4      under subparagraph (A), the Director shall—
5                      "(i) make a determination of the pe-
6              riod of any patent term adjustment under
7              this subsection, and shall transmit a notice
8              of that determination with the written no-
9              tice of allowance of the application under
10             section 151; and
11                     "(ii) provide the applicant one oppor-
12             tunity to request reconsideration of any
13             patent term adjustment determination
14             made by the Director.
15             "(C) The Director shall reinstate all or
16     part of the cumulative period of time of an ad-
17     justment under paragraph (2)(C) if the appli-
18     cant, prior to the issuance of the patent, makes
19     a showing that, in spite of all due care, the ap-
20     plicant was unable to respond within the 3-
21     month period, but in no case shall more than
22     three additional months for each such response
23     beyond the original 3-month period be rein-
24     stated.

103

1     "(D) The Director shall proceed to grant

2   the patent after completion of the Director's de-

3   termination of a patent term adjustment under

4   the procedures established under this sub-

5   section, notwithstanding any appeal taken by

6   the applicant of such determination.

7    "(4) APPEAL OF PATENT TERM ADJUSTMENT

8 DETERMINATION.—

9    "(A) An applicant dissatisfied with a de-

10   termination made by the Director under para-

11   graph (3) shall have remedy by a civil action

12   against the Director filed in the United States

13   District Court for the District of Columbia

14   within 180 days after the grant of the patent.

15   Chapter 7 of title 5, United States Code, shall

16   apply to such action. Any final judgment result-

17   ing in a change to the period of adjustment of

18   the patent term shall be served on the Director,

19   and the Director shall thereafter alter the term

20   of the patent to reflect such change.

21    "(B) The determination of a patent term

22   adjustment under this subsection shall not be

23   subject to appeal or challenge by a third party

24   prior to the grant of the patent.".

25 (b) CONFORMING AMENDMENTS.—

104

1    (1) Section 282 of title 35, United States Code,
2    is amended in the fourth paragraph by striking "156
3    of this title" and inserting "154(b) or 156 of this
4    title".

5    (2) Section 1295(a)(4)(C) of title 28, United
6    States Code, is amended by striking "145 or 146"
7    and inserting "145, 146, or 154(b)".

8  SEC. 4403. CONTINUED EXAMINATION OF PATENT APPLICA-
9              TIONS.

10    Section 132 of title 35, United States Code, is
11  amended—

12    (1) in the first sentence by striking "Whenever"
13    and inserting "(a) Whenever"; and

14    (2) by adding at the end the following:

15    "(b) The Director shall prescribe regulations to pro-
16  vide for the continued examination of applications for pat-
17  ent at the request of the applicant. The Director may es-
18  tablish appropriate fees for such continued examination
19  and shall provide a 50 percent reduction in such fees for
20  small entities that qualify for reduced fees under section
21  41(h)(1) of this title.".

22  SEC. 4404. TECHNICAL CLARIFICATION.

23    Section 156(a) of title 35, United States Code, is
24  amended in the matter preceding paragraph (1) by insert-
25  ing ", which shall include any patent term adjustment

105

1 granted under section 154(b)," after "the original expira-

2 tion date of the patent".

**SEC. 4405. EFFECTIVE DATE.**

4 (a) AMENDMENTS MADE BY SECTIONS 4402 AND

5 4404.—The amendments made by sections 4402 and

6 4404 shall take effect on the date that is 6 months after

7 the date of the enactment of this Act and, except for a

8 design patent application filed under chapter 16 of title

9 35, United States Code, shall apply to any application

10 filed on or after the date that is 6 months after the date

11 of the enactment of this Act.

12 (b) AMENDMENTS MADE BY SECTION 4403.—The

13 amendments made by section 4403—

14 (1) shall take effect on the date that is 6

15 months after the date of the enactment of this Act,

16 and shall apply to all applications filed under section

17 111(a) of title 35, United States Code, on or after

18 June 8, 1995, and all applications complying with

19 section 371 of title 35, United States Code, that re-

20 sulted from international applications filed on or

21 after June 8, 1995; and

22 (2) do not apply to applications for design pat-

23 ents under chapter 16 of title 35, United States

24 Code.



Monday,
September 18, 2000

Part II

# Department of Commerce

Patent and Trademark Office

37 CFR Part 1
Changes To Implement Patent Term
Adjustment Under Twenty-Year Patent
Term; Final Rule

EXHIBIT

exhibit    G

**DEPARTMENT OF COMMERCE**

**Patent and Trademark Office**

**37 CFR Part 1**

**RIN 0651–AB06**

**Changes To Implement Patent Term Adjustment Under Twenty-Year Patent Term**

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Final rule.

**SUMMARY:** The United States Patent and Trademark Office (Office) is revising the rules of practice in patent cases to implement certain provisions of the American Inventors Protection Act of 1999. These provisions of the American Inventors Protection Act of 1999 provide patent term adjustment to compensate patentees for certain delays in the application examination process.

**DATES:** *Effective Dates:* Sections 1.702 through 1.705 and the amendment to § 1.701 are effective October 18, 2000. The amendment to § 1.18 is effective November 17, 2000.

*Applicability Date:* Section 1.701 applies to original (non-reissue) patents issued on applications (other than for a design patent) filed on or after June 8, 1995, and before May 29, 2000. Sections 1.702 through 1.705 apply to original applications (other than for a design patent) filed on or after May 29, 2000, and to patents issued on such applications.

**FOR FURTHER INFORMATION CONTACT:** Karin L. Tyson, Robert W. Bahr, or Robert A. Clarke by telephone at (703) 305–1383, or by mail addressed to: Box Comments—Patents, Commissioner for Patents, Washington, D.C. 20231, or by facsimile to (703) 872–9411 or (703) 308–6916, marked to the attention of Karin L. Tyson.

**SUPPLEMENTARY INFORMATION:** The American Inventors Protection Act of 1999 (Title IV of the Intellectual Property and Communications Omnibus Reform Act of 1999 (S. 1948) as introduced in the 106th Congress on November 17, 1999) was incorporated and enacted into law on November 29, 1999, by § 1000(a)(9), Division B, of Pub. L. 106–113, 113 Stat. 1501 (1999). The American Inventors Protection Act of 1999 contains a number of changes to title 35, United States Code. This final rule changes the rules of practice to implement the provisions of §§ 4401 and 4402 of the American Inventors Protection Act of 1999. These provisions are effective on the date that is six months after the date of enactment of

the American Inventors Protection Act of 1999 (May 29, 2000) and apply to original (non-reissue) applications, other than for a design patent, filed on or after the date that is six months after the date of enactment of the American Inventors Protection Act of 1999 (May 29, 2000).

Section 532(a)(1) of the Uruguay Round Agreements Act (Pub. L. 103–465, 108 Stat. 4809 (1994)) amended 35 U.S.C. 154 to provide that the term of patent protection begins on the date of patent grant and ends on the date twenty years from the filing date of the application, or the earliest filing date for which a benefit is claimed under 35 U.S.C. 120, 121, or 365(c). Pub. L. 103–465 also contained provisions, codified at 35 U.S.C. 154(b), for patent term extension due to certain examination delays.

Section 4402 of the American Inventors Protection Act of 1999 amends 35 U.S.C. 154(b)(1) to provide day-by-day patent term adjustment if the Office fails, within specified time periods, to: (1) initially act on the application; (2) respond to a reply or appeal to the Board of Patent Appeals and Interferences by the applicant; (3) act on an application after a decision by the Board of Patent Appeals and Interferences or a Federal court where at least one allowable claim remains in the application; or (4) issue the application after the issue fee is paid in reply to a notice of allowance and all outstanding requirements are satisfied (35 U.S.C. 154(b)(1)(A)). Section 4402 of the American Inventors Protection Act of 1999 also amends 35 U.S.C. 154(b)(1) to provide day-by-day patent term adjustment if, subject to a number of limitations, the Office fails to issue a patent within three years of the actual filing date of the application (35 U.S.C. 154(b)(1)(B)). Section 4402 of the American Inventors Protection Act of 1999 also amends 35 U.S.C. 154(b)(1) to provide day-by-day patent term adjustment for delays due to interference proceedings under 35 U.S.C. 135(a), imposition of a secrecy order under 35 U.S.C. 181, or successful appellate review by the Board of Patent Appeals and Interferences or a Federal court (35 U.S.C. 154(b)(1)(C)).

Section 4402 of the American Inventors Protection Act of 1999 amends 35 U.S.C. 154(b)(2) to place limitations on the period of patent term adjustment granted under 35 U.S.C. 154(b)(1). First, to the extent that the periods of delay attributed to the grounds specified in 35 U.S.C. 154(b)(1) overlap, the period of adjustment shall not exceed the actual number of days the issuance of the patent was delayed.

Second, no patent, the term of which has been disclaimed beyond a specified date, may be adjusted under 35 U.S.C. 154(b) beyond the expiration date specified in the disclaimer. Third, the period of patent term adjustment under 35 U.S.C. 154(b)(1) shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution (or processing or examination) of the application. Section 4402 of the American Inventors Protection Act of 1999, however, does not contain any limit (*e.g.,* of five or ten years) on the total extension or adjustment that may be granted under 35 U.S.C. 154(b).

An applicant is deemed to have failed to engage in reasonable efforts to conclude prosecution of an application with respect to any patent term adjustment under 35 U.S.C. 154(b)(1)(B) (failure to issue a patent within three years of the actual filing date of the application) for the cumulative total of any periods of time in excess of three months that are taken to reply to a notice of any rejection, objection, argument, or other request, measuring the three-month period from the date the notice was mailed or given. In addition, 35 U.S.C. 154(b)(2) directs the Office to prescribe regulations establishing the circumstances that constitute a failure of the applicant to engage in reasonable efforts to conclude processing or examination of an application.

Section 4402 of the American Inventors Protection Act of 1999 also amends 35 U.S.C. 154(b)(3) to establish procedures for patent term adjustment determinations. 35 U.S.C. 154(b)(3) directs the Office to prescribe regulations establishing procedures for the application for and determination of patent term adjustment under 35 U.S.C. 154(b). 35 U.S.C. 154(b)(3), however, requires the Office to: (1) Make a patent term adjustment determination and transmit a notice of that determination with the notice of allowance; and (2) provide the applicant with one opportunity to request reconsideration of that patent term adjustment determination. 35 U.S.C. 154(b)(3) also provides that the Office shall reinstate all or part of the cumulative period of time of an adjustment reduced under 35 U.S.C. 154(b)(2)(C) (for failure to reply to a notice of any rejection, objection, argument, or other request within three months of the date the notice was mailed or given) if, prior to issuance of the patent, the applicant makes a showing that, in spite of all due care, the applicant was unable to reply within the three-month period, except that the

Office may not reinstate more than three additional months for each reply beyond the original three-month period. Section 4402 of the American Inventors Protection Act of 1999 also amends 35 U.S.C. 154(b)(3) to provide that the Office shall proceed to grant the patent after completing its patent term adjustment determination and amends 35 U.S.C. 154(b)(4) to provide for judicial review in the event that the applicant is dissatisfied with that patent term adjustment determination.

Section 4405(a) of the American Inventors Protection Act of 1999 provides that § 4402 shall take effect on the date that is six months after the date of enactment of the American Inventors Protection Act of 1999 (May 29, 2000) and shall apply to any application (other than for a reissue or design) filed on or after the date that is six months after the date of enactment of the American Inventors Protection Act of 1999 (May 29, 2000). Therefore, patents (other than reissue or design) issued on applications filed on or after June 8, 1995, but before May 29, 2000, are subject to the patent term extension provisions of 35 U.S.C. 154(b) as amended by § 532(a)(1) of Pub. L. 103–465 and § 1.701, whereas patents (other than reissue or design) issued on applications filed on or after May 29, 2000, are subject to the patent term adjustment provisions of 35 U.S.C. 154(b) as amended by § 4402 of the American Inventors Protection Act of 1999.

The filing date of a continued prosecution application (CPA) under § 1.53(d) is the date that the request for CPA is filed (§ 1.53(d)(2)), even though the Office uses the filing date of the prior application for identification purposes. Therefore, the patent term adjustment provisions of 35 U.S.C. 154(b) as amended by § 4402 of the American Inventors Protection Act of 1999 apply to any CPA filed on or after May 29, 2000, regardless of the filing date of the prior application of the CPA. While an applicant may file a continuing application under § 1.53(b) on or after May 29, 2000, for the application to be subject to the patent term adjustment provisions of 35 U.S.C. 154(b) as amended by § 4402 of the American Inventors Protection Act of 1999, an applicant need only file a CPA under § 1.53(d) on or after May 29, 2000, for the application to be subject to the patent term adjustment provisions of 35 U.S.C. 154(b) as amended by § 4402 of the American Inventors Protection Act of 1999. The filing of a CPA on or after May 29, 2000, does not, however, entitle an applicant to receive term adjustment

for Office delays before the filing date of the CPA (*i.e.*, before May 29, 2000).

The Office published a notice proposing changes to the rules of practice to implement the provisions of § 4402 of the American Inventors Protection Act of 1999. *See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term,* Notice of Proposed Rulemaking, 65 FR 17215 (Mar. 31, 2000), 1233 *Off. Gaz. Pat. Office* 109 (Apr. 25, 2000) (notice of proposed rulemaking). This final rule adopts changes to the rules of practice to implement the provisions of § 4402 of the American Inventors Protection Act of 1999.

Section 4732 of the American Inventors Protection Act of 1999 changed (among other things) the title "Commissioner" to "Director." The title "Commissioner," however, is not being changed to "Director" where it appears in the rules of practice involved in this final rule because legislation is pending before Congress that (if enacted) would restore the former title "Commissioner." *See* Intellectual Property Technical Amendments Act of 2000, H.R. 4870, 106th Cong. (2000).

### Discussion of Specific Rules

Sections 1.18(e) and (f) are added to set forth the fees for filing an application for patent term adjustment under § 1.705, and for filing a request for reinstatement of all or part of the term reduced pursuant to § 1.704(b) in an application for patent term adjustment under § 1.705. The fees in § 1.18(e) and (f) are set to recover the estimated average cost to the Office for processing and evaluating an application for patent term adjustment under § 1.705, and for processing and evaluating a request under 35 U.S.C. 154(b)(3)(C) for reinstatement of the term reduced under 35 U.S.C. 154(b)(2)(C), respectively. *See* 35 U.S.C. 41(d).

Section 1.18(e) is added to provide a $200 fee for filing an application for patent term adjustment under § 1.705. An application for patent term adjustment under § 1.705(b) requires the Office to calculate the applicable patent term adjustment to determine the correct patent term adjustment. Handling such applications for patent term adjustment will involve careful record review and date calculation, but not a great deal of legal analysis. The Office expects them to be as burdensome as petitions of medium level complexity. Based upon activity-based cost estimates (using the costs of treating similar petitions, that is, petitions of medium level burden), a $200 fee was determined to be the

appropriate fee amount for cost-recovery as provided for in 35 U.S.C. 41(d).

Section 1.18(f) is added to provide a $400 fee for filing a request for reinstatement of all or part of the term reduced pursuant to § 1.704(b) in an application for patent term adjustment under § 1.705. The request for reinstatement provided for in § 1.705(c) requires the Office to evaluate the merits of the applicant's showing that at least one delay occurred in spite of all due care. Evaluating such "due care" showings is expected to be as burdensome as evaluating the "unavoidable" delay petitions provided for in §§ 1.137(a) and 1.378(b), which are some of the most burdensome petitions. Thus, based upon activity-based cost estimates (using the costs of treating "unavoidable" delay petitions), a $400 fee was determined to be the appropriate fee amount for cost-recovery as provided for in 35 U.S.C. 41(d).

The Office initially proposed a $450 fee for filing a request for reinstatement of all or part of the term reduced pursuant to § 1.704(b) in an application for patent term adjustment under § 1.705. The Office, however, has since further refined its cost estimates for processing and evaluating such requests for reinstatement and has determined that $400 is the appropriate fee amount for cost-recovery as provided for in 35 U.S.C. 41(d).

Subpart F of 37 CFR Part 1 is amended to include a first undesignated center heading to read "Adjustment of Patent Term Due to Examination Delay" followed by an amended § 1.701 and newly added §§ 1.702 through 1.705 concerning patent term adjustment under 35 U.S.C. 154(b), and a second undesignated center heading to read "Extension of Patent Term Due to Regulatory Review" followed by current § 1.710 *et seq.* concerning patent term extension under 35 U.S.C. 156.

Section 1.701 is amended by revising its heading to indicate that its provisions concern the patent term extension provisions of the Uruguay Round Agreements Act (Pub. L. 103–465 and to add a paragraph (e) to specify that the provisions of § 1.701 apply only to original patents issued on applications filed on or after June 8, 1995, and before May 29, 2000. As discussed above, the provisions of 35 U.S.C. 154(b) as amended by § 532(a)(1) of Pub. L. 103–465 and § 1.701 apply to applications (other than for a reissue or design patent) filed on or after June 8, 1995, but before May 29, 2000, and the provisions of § 4402 of the American Inventors Protection Act of 1999 and §§ 1.702 through 1.705 apply to applications (other than for a reissue or

design patent) filed on or after May 29, 2000.

Section 1.702 is added to set forth the bases for patent term adjustment under 35 U.S.C. 154(b)(1). Section 1.702(a) indicates that a patent is entitled to patent term adjustment if the Office fails to perform certain acts of examination within specified time frames (35 U.S.C. 154(b)(1)(A)). Section 1.702(b) indicates that a patent is entitled to patent term adjustment if, subject to a number of limitations, the Office fails to issue a patent within three years of the actual filing date of the application (35 U.S.C. 154(b)(1)(B)). Section 1.702(c) indicates that a patent is entitled to patent term adjustment if the issuance of the patent was delayed by an interference proceeding (35 U.S.C. 154(b)(1)(C)(i)). Section 1.702(d) indicates that a patent is entitled to patent term adjustment if the issuance of the patent was delayed by the application being placed under a secrecy order under 35 U.S.C. 181 (35 U.S.C. 154(b)(1)(C)(ii)). Section 1.702(e) indicates that a patent is entitled to patent term adjustment if the issuance of the patent was delayed by successful appellate review under 35 U.S.C. 134, 141, or 145 (35 U.S.C. 154(b)(1)(C)(iii)). Section 1.702(f) provides that the provisions of §§ 1.702 through 1.705 apply only to original (*i.e.*, non-reissue) applications, except applications for a design patent, filed on or after May 29, 2000, and patents issued on such applications.

Section 1.703 specifies the period of adjustment if a patent is entitled to patent term adjustment under 35 U.S.C. 154(b)(1) and § 1.702. When a period is indicated (in § 1.703 or 1.704) as "beginning" on a particular day, that day is included in the period, in that such day is "day one" of the period and not "day zero." For example, a period beginning on April 1 and ending on April 10 is ten (and not nine) days in length.

35 U.S.C. 154(b)(1)(A) and (B) provide for an adjustment of one day for each day after the end of the period set forth in 35 U.S.C. 154(b)(1)(A)(i), (ii), (iii), (iv), and (B) until the prescribed action is taken, whereas 35 U.S.C. 154(b)(1)(C) provides for an adjustment of one day for each day of the pendency of the proceeding, order, or review prescribed in 35 U.S.C. 154(b)(1)(C)(i) through (iii). Therefore, the end of the period set forth in §§ 1.703(a) and 1.703(b) (which correspond to 35 U.S.C. 154(b)(1)(A) and (B)) is "day zero" (not "day one") as to the period of adjustment, whereas the first day of the proceeding, order, or review set forth in §§ 1.703(c), 1.703(d), and 1.703(e) (which correspond to 35

U.S.C. 154(b)(1)(C)(i) through (iii)) is "day one" of the period of adjustment.

Section 1.703(a) pertains to 35 U.S.C. 154(b)(1)(A) and indicates that the period of adjustment under § 1.702(a) is the sum of the periods specified in § 1.703(a)(1) through § 1.703(a)(6).

Section 1.703(a)(1) pertains to the provisions of 35 U.S.C. 154(b)(1)(A)(i). Section 1.703(a)(1) specifies that the period is the number of days, if any, beginning on the date after the day that is fourteen months after the date on which the application was filed under 35 U.S.C. 111(a) or fulfilled the requirements of 35 U.S.C. 371 in an international application and ending on the mailing date of either an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first. A written restriction requirement, a written election of species requirement, a requirement for information under § 1.105, an action under *Ex parte Quayle*, 1935 Comm'r Dec. 11 (1935), and a notice of allowability (PTOL–37) are each an action issued as a result of the examination conducted pursuant to 35 U.S.C. 131. As such, each of these Office actions is a notification under 35 U.S.C. 132. Office notices and letters issued as part of the pre-examination processing of an application are not notices issued as a result of an examination conducted pursuant to 35 U.S.C. 131, and thus are not notifications under 35 U.S.C. 132. Examples of such notices are: a Notice of Incomplete Nonprovisional Application (PTO–1123), a Notice of Omitted Item(s) in a Nonprovisional Application (PTO–1669), a Notice to File Missing Parts of Application (PTO–1533), a Notice of Informal Application (PTO–152), a Notice to File Corrected Application Papers Filing Date Granted (PTO–1660), or a Notice to Comply with Requirements for Patent Applications Containing Nucleotide Sequence and/or Amino Acid Sequence Disclosures (PTO–1661).

Section 1.703(a)(2) pertains to the provisions of 35 U.S.C. 154(b)(1)(A)(ii). Section 1.703(a)(2) specifies that the period is the number of days, if any, beginning on the day after the date that is four months after the date a reply under § 1.111 was filed and ending on the mailing date of either an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first.

Section 1.703(a)(3) also pertains to the provisions of 35 U.S.C. 154(b)(1)(A)(ii). Section 1.703(a)(3) specifies that the period is the number of days, if any, beginning on the day after the date that is four months after the date a reply in

compliance with § 1.113(c) was filed and ending on the date of mailing of either an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first. A reply under § 1.113 is a reply to a final Office action, and a reply in compliance with § 1.113 is a reply that cancels all of the rejected claims and removes all outstanding objections and requirements or otherwise places the application in condition for allowance. Any amendment after final that does not cancel all of the rejected claims and remove all outstanding objections and requirements or otherwise place the application in condition for allowance is not a reply in compliance with § 1.113(c).

Section 1.703(a)(4) also pertains to the provisions of 35 U.S.C. 154(b)(1)(A)(ii). Section 1.703(a)(4) specifies that the period is the number of days, if any, beginning on the day after the date that is four months after the date an appeal brief in compliance with § 1.192 was filed and ending on the mailing date of any of an examiner's answer under § 1.193, an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first. As discussed below, the phrase "the date on which" an "appeal was taken" in 35 U.S.C. 154(b)(1)(A)(ii) means the date on which an appeal brief (and not a notice of appeal) was filed. The phrase "appeal brief in compliance with § 1.192" requires that: (1) the appeal brief fee (§ 1.17(c)) be paid (§ 1.192(a)); and (2) the appeal brief complies with § 1.192(c)(1) through (c)(9).

Section 1.703(a)(5) pertains to the provisions of 35 U.S.C. 154(b)(1)(A)(iii). Section 1.703(a)(5) specifies that the period is the number of days, if any, beginning on the day after the date that is four months after the date of a final decision by the Board of Patent Appeals and Interferences or by a Federal court in an appeal under 35 U.S.C. 141 or a civil action under 35 U.S.C. 145 or 146, where at least one allowable claim remains in the application and ending on the mailing date of either an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first.

For a Board of Patent Appeals and Interferences decision to be a "decision by the Board of Patent Appeals and Interferences under [35 U.S.C.] 134" within the meaning of 35 U.S.C. 154(b)(1)(A)(iii) (and § 1.703(a)(5)), the decision must sustain or reverse the rejection(s) of the claim(s) on appeal. For a Board of Patent Appeals and Interferences decision to be a "decision by the Board of Patent Appeals and Interferences under [35 U.S.C.] 135"

within the meaning of 35 U.S.C. 154(b)(1)(A)(iii) (and § 1.703(a)(5)), the decision must include a decision on the patentability of the claims or priority of invention. A remand or other administrative order by the Board of Patent Appeals and Interferences (even if by a merits panel) is not a "decision" within the meaning of 35 U.S.C. 154(b)(1)(A)(iii) (and § 1.703(a)(5)).

The phrase "final decision" in § 1.703(a)(5) means that: **(1)** the decision is the last decision in the review by the Board of Patent Appeals and Interferences (or by a Federal court); and **(2)** the decision does not require further action by the applicant to avoid termination of proceedings as to the rejected claims. Thus, a Board of Patent Appeals and Interferences decision containing a new ground of rejection under § 1.196(b) requires action by the applicant to avoid termination of proceedings as to the rejected claims and is thus not considered a "final decision" for purposes of § 1.703(a)(5). The phrase "final decision," however, does not require that the decision be final for purposes of judicial review (e.g., a Board of Patent Appeals and Interferences decision reversing the rejection of all of the claims on appeal is not "final" for purposes of judicial review, but (absent a subsequent decision by the Board of Patent Appeals and Interferences) is a "final decision" for purposes of § 1.703(a)(5)).

The phrase "allowable claims remain in the application" for purposes of 35 U.S.C. 154(b)(1)(A)(iii) means that after the decision there is at least one pending claim (for purposes of statutory construction, "words importing the plural include the singular" (1 U.S.C. 1)) that is not withdrawn from consideration and is not subject to a rejection, objection, or other requirement. This applies in the following situations: **(1)** At least one claim is allowable (not merely objected to) at the time the examiner's answer is mailed and is not canceled before, or made subject to a rejection as a result of, the appellate review; or **(2)** when all of the rejections applied to at least one claim are reversed, and such claim is not made subject to a rejection, as a result of the appellate review. For example:

**(1)** If claims 1 and 2 (both independent) are pending, the decision affirms the rejection of claim 1, and claim 2 was indicated as allowable prior to the appeal, "allowable claims remain in the application" for purposes of 35 U.S.C. 154(b)(1)(A)(iii).

**(2)** If claims 1 and 2 are pending, the decision affirms the rejection of claim 1, and claim 2 was objected to by the examiner prior to the appeal as being allowable except for its dependency from claim 1, "allowable claims" do not "remain in the application" for purposes of 35 U.S.C. 154(b)(1)(A)(iii) (claim 2 is not allowable because there is an outstanding objection to it).

**(3)** If claims 1 and 2 are pending, the decision affirms the rejection of claim 1 and reverses the rejection of claim 2, "allowable claims remain in the application" for purposes of 35 U.S.C. 154(b)(1)(A)(iii) (claim 2 is "allowable" within the meaning of § 1.703(a)(5) because there is no outstanding objection or requirement as to it until the examiner issues a notice under section 1214.06, paragraph (I)(B) of the *Manual of Patent Examining Procedure* (7th ed.1998) (Rev. 1, Feb. 2000) (*MPEP*)).

Section 1.703(a)(6) pertains to the provisions of 35 U.S.C. 154(b)(1)(A)(iv). Section 1.703(a)(6) specifies that the period is the number of days, if any, beginning on the day after the date that is four months after the date the issue fee was paid and all outstanding requirements were satisfied and ending on the date the patent was issued. The date the issue fee was paid and all outstanding requirements were satisfied is the later of the date the issue fee was paid or the date all outstanding requirements were satisfied. If prosecution in an application is reopened after allowance (*see MPEP* 1308), all outstanding requirements are not satisfied until the application is again in condition for allowance as indicated by the issuance of a new notice of allowance under 35 U.S.C. 151 (*see MPEP* 1308).

Section 1.703(b) pertains to the provisions of 35 U.S.C. 154(b)(1)(B). Section 1.703(b) indicates that the period of adjustment under § 1.702(b) is the number of days, if any, in the period beginning on the day after the date that is three years after the actual filing date of the application and ending on the date a patent was issued. Section 1.703(b) also sets forth the limitations on patent term adjustment specified in 35 U.S.C. 154(b)(1)(B)(i) and (ii). Section 1.703(b) specifically provides that the period of adjustment of the term of a patent under § 1.703(b) shall not include the period equal to the sum of the following periods: **(1)** The period of pendency consumed by continued examination of the application under 35 U.S.C. 132(b) (35 U.S.C. 154(b)(1)(B)(i)); **(2)** the period of pendency consumed by interference proceedings (35 U.S.C. 154(b)(1)(B)(ii)); **(3)** the period of pendency consumed by imposition of a secrecy order (35 U.S.C. 154(b)(1)(B)(ii)); and **(4)** the period of pendency

consumed by appellate review under 35 U.S.C. 134, 141, 145, whether successful or unsuccessful (35 U.S.C. 154(b)(1)(B)(ii)). The provisions of 35 U.S.C. 154(b)(1)(B)(iii) concerning the period of pendency consumed by delays in the processing of the application requested by the applicant are treated in § 1.704 as such delays are also circumstances constituting a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application.

Section 1.703(c) pertains to the provisions of 35 U.S.C. 154(b)(1)(C)(i). Section 1.703(c) indicates that the period of adjustment under § 1.702(c) is the sum of the following periods (to the extent that such periods are not overlapping): **(1)** The number of days, if any, in the period beginning on the date an interference was declared or redeclared to involve the application in the interference and ending on the date that the interference was terminated with respect to the application; and **(2)** the number of days, if any, in the period beginning on the date prosecution in the application was suspended by the Office due to interference proceedings under 35 U.S.C. 135(a) not involving the application and ending on the date of the termination of the suspension.

Section 1.703(d) pertains to the provisions of 35 U.S.C. 154(b)(1)(C)(ii). Section 1.703(d) indicates that the period of adjustment under § 1.702(d) is the sum of the following periods (to the extent that such periods are not overlapping): **(1)** The number of days, if any, the application was maintained in a sealed condition under 35 U.S.C. 181; **(2)** the number of days, if any, in the period beginning on the date of mailing of an examiner's answer under § 1.193 in the application under secrecy order and ending on the date the secrecy order was removed; **(3)** the number of days, if any, in the period beginning on the date applicant was notified that an interference would be declared but for the secrecy order and ending on the date the secrecy order was removed; and **(4)** the number of days, if any, in the period beginning on the date of notification under § 5.3(c) and ending on the date of mailing of the notice of allowance under 35 U.S.C. 151 and § 1.311.

Section 1.703(e) pertains to the provisions of 35 U.S.C. 154(b)(1)(C)(iii). Section 1.703(e) indicates that the period of adjustment under § 1.702(e) is the sum of the number of days, if any, in the period beginning on the date on which a notice of appeal to the Board of Patent Appeals and Interferences was filed under 35 U.S.C. 134 and § 1.191 and ending on the date of a final decision in favor of the applicant by the

Board of Patent Appeals and Interferences or by a Federal court in an appeal under 35 U.S.C. 141 or a civil action under 35 U.S.C. 145. The phrase "in which the patent was issued under a decision in the review reversing an adverse determination of patentability" (a final decision in favor of the applicant) in 35 U.S.C. 154(b)(1)(C)(iii) requires a Board of Patent Appeals and Interferences or Federal court decision in the review that reverses all of the rejections of at least one claim and that such claim is not subject to a rejection under § 1.196(b). For example:

(1) If claims 1 and 2 are pending, claim 1 stands rejected under 35 U.S.C. 103 and claim 2 was indicated as allowable prior to the appeal, the rejection of claim 1 under 35 U.S.C. 103 is affirmed, and a patent is issued (containing claim 2), the patent was not issued under a decision in the review reversing an adverse determination of patentability.

(2) If claims 1 and 2 are pending, claims 1 and 2 stand rejected under 35 U.S.C. 103, as well as 35 U.S.C. 112, ¶ 2, the rejection of claims 1 and 2 under 35 U.S.C. 103 is affirmed but the rejection of claims 1 and 2 under 35 U.S.C. 112, ¶ 2, is reversed, and a patent is issued as a result of continued examination under the provisions of 35 U.S.C. 132(b) and § 1.114, the patent was not issued under a decision in the review reversing an adverse determination of patentability.

(3) If claims 1 and 2 are pending, claims 1 and 2 stand rejected under 35 U.S.C. 102, the rejection of claims 1 and 2 under 35 U.S.C. 102 is reversed, and the decision by the Board of Patent Appeals and Interferences enters a new ground of rejection of claims 1 and 2 under 35 U.S.C. 103 (§ 1.196(b)), and a patent is issued as a result of further prosecution before the examiner, the patent was not issued under a decision in the review reversing an adverse determination of patentability.

(4) If claims 1 and 2 are pending, claims 1 and 2 stand rejected under 35 U.S.C. 103, the rejection of claim 1 under 35 U.S.C. 103 is affirmed but the rejection of claim 2 under 35 U.S.C. 103 is reversed, and a patent is issued (containing claim 2), the patent was issued under a decision in the review reversing an adverse determination of patentability.

The Committee Reports for the predecessors of the American Inventors Protection Act of 1999 in the 105th Congress (the 21st Century Patent System Improvement Act, H.R. 400, 105th Cong. (1997), and The Omnibus Patent Act of 1997, S. 507, 105th Cong. (1997)) indicate that the Office should not determine whether "the patent was issued under a decision in the review reversing an adverse determination of patentability" in a mechanistic way, but should consider the particulars of each application after an appeal to determine whether patent term adjustment (restoration) is appropriate. See H.R. Rep. No. 105–39, at 66–67 (1997), and S. Rep. No. 105–42, at 102–03 (1997). Nevertheless, this language cannot be relied upon in interpreting the phrase "the patent was issued under a decision in the review reversing an adverse determination of patentability" because: (1) while H.R. 400 was passed by the House of Representatives on April 23, 1997, neither H.R. 400 nor S. 507 were enacted into law; and (2) this language is not contained in the section-by-section analysis of the American Inventors Protection Act of 1999 or the Committee or Conference Reports for its predecessors (the Intellectual Property and Communications Omnibus Reform Act of 1999, H.R. 1554, 106th Cong. (1999), and the American Inventors Protection Act of 1999, H.R. 1907, 106th Cong. (1999)) in the 106th Congress. See 145 Cong. Rec. S14,708–26 (1999)(daily ed. Nov. 17, 1999), H.R. Conf. Rep. No. 106–464 (1999), and H.R. Rep. No. 106–287 (1999).

As discussed below, the Office must make its patent term adjustment determinations by a computer program that uses the information recorded in the Office's automated patent application information system (the Patent Application Location and Monitoring system or PALM system). Thus, the Office must determine whether the Board of Patent Appeals and Interferences (or court) decision was of a nature such that "the patent was issued under a decision in the review reversing an adverse determination of patentability" under 35 U.S.C. 154(b)(1)(C)(iii) from information concerning the decision susceptible of being recorded in the PALM system (rather than by a case-by-case review of each decision).

Section 1.703(f) indicates that the adjustment will run from the expiration date of the patent as set forth in 35 U.S.C. 154(a)(2). Section 1.703(f) also indicates that to the extent that periods of adjustment attributable to the grounds specified in § 1.702 overlap, the period of adjustment will not exceed the actual number of days the issuance of the patent was delayed (35 U.S.C. 154(b)(2)(A)). Section 1.703(f) also specifically indicates that the term of a patent entitled to adjustment under § 1.702 and this section shall be adjusted for the sum of the periods calculated under § 1.703(a) through (e), to the extent that such periods are not overlapping, less the sum of the periods calculated under § 1.704. Section 1.703(f) also provides that the date indicated on any certificate of mailing or transmission under § 1.8 shall not be taken into account in this calculation. That is, while the date indicated on any certificate of mailing or transmission under § 1.8 will continue to be taken into account in determining timeliness, the date of filing (§ 1.6) will be the date used in a patent term adjustment calculation. Applicant may wish to consider the use of the "Express Mail Post Office to Addressee" service of the United States Postal Service (§ 1.10) or facsimile transmission (§ 1.6(d)) for replies to be accorded the earliest possible filing date for patent term adjustment calculations.

Section 1.703(g) indicates that no patent, the term of which has been disclaimed beyond a specified date, shall be adjusted under §§ 1.702 and 1.703 beyond the expiration date specified in the disclaimer (35 U.S.C. 154(b)(2)(B)).

Section 1.704 implements the provisions of 35 U.S.C. 154(b)(2)(C). 35 U.S.C. 154(b)(2)(C) specifies certain circumstances as constituting a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application and also provides for the Office to prescribe regulations establishing circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application.

Section 1.704(a) implements the provisions of 35 U.S.C. 154(b)(2)(C)(i) and indicates that the period of adjustment shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution (i.e., processing or examination) of an application.

Section 1.704(b) provides that with respect to the ground for adjustments set forth in §§ 1.702(a) through (e), and in particular § 1.702(b), an applicant shall be deemed to have failed to engage in reasonable efforts to conclude prosecution for the cumulative total of any periods of time in excess of three months that are taken to reply to any notice or action by the Office making any rejection, objection, argument, or other request, measuring such three-month period from the date the notice or action was mailed or given to the applicant. A Notice of Omitted Items in a Nonprovisional Application (PTO–1669), however, is not a notice or action by the Office making a rejection, objection, argument, or other request

within the meaning of 35 U.S.C. 154(b)(2)(C)(ii) or § 1.704(b), since the Office does not require a reply to that notice to continue the processing and examination of an application. Section 1.704(b) indicates that the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date that is three months after the date of mailing or transmission of the Office communication notifying the applicant of the rejection, objection, argument, or other request and ending on the date the reply was filed. As discussed above, a reply is considered filed on the date of its actual receipt in the Office as defined by § 1.6, and the date indicated on any certificate of mailing or transmission under § 1.8 will not be taken into account for patent term adjustment purposes.

The three-month period in § 1.704(b) applies to the Office notices and letters issued as part of the pre-examination processing of an application (except a Notice of Omitted Items in a Nonprovisional Application (PTO–1669) as discussed above). These notices include: (1) A Notice of Incomplete Nonprovisional Application (PTO–1123) (except as to any period prior to the filing date ultimately accorded to the application); (2) a Notice to File Missing Parts of Application (PTO–1533); (3) a Notice of Informal Application (PTO–152); (4) a Notice to File Corrected Application Papers Filing Date Granted (PTO–1660); or (5) a Notice to Comply with Requirements for Patent Applications Containing Nucleotide Sequence and/or Amino Acid Sequence Disclosures (PTO–1661).

In addition, the three-month period in 35 U.S.C. 154(b)(2)(C)(ii) and § 1.704(b) applies regardless of the period for reply set in the Office action or notice. For example, if an Office action sets a one-month period for reply (restriction requirement), the applicant may obtain a two-month extension of time under § 1.136(a) before being subject to a reduction of patent term adjustment under 35 U.S.C. 154(b)(2)(C)(ii) and § 1.704(b). If, however, an Office action sets a six-month period for reply, as is commonly set in applications subject to secrecy orders (see MPEP 130), the applicant is subject to a reduction of patent term adjustment under 35 U.S.C. 154(b)(2)(C)(ii) and § 1.704(b) if the applicant does not reply to the Office action within three months, notwithstanding that a reply may be timely filed six months after the mailing date of the Office action.

Section 1.704(c) establishes further circumstances that constitute a failure of an applicant to engage in reasonable

efforts to conclude processing or examination of an application. Sections 1.704(c)(1) through (c)(11) set forth actions or inactions by an applicant that interfere with the Office's ability to process or examine an application (and thus circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application), as well as the period by which a period of adjustment set forth in § 1.703 shall be reduced if an applicant engages in any of the enumerated actions or inactions.

Sections 1.704(c)(1) through 1.704(c)(11) address situations that occur with sufficient frequency to warrant being specifically provided for in the rules of practice. An attempt to provide an exhaustive listing of actions or inactions that interfere with the Office's ability to process or examine an application is impractical, since there are a myriad of actions or inactions that occur infrequently but will interfere with the Office's ability to process or examine an application (e.g., applicant files and persists in requesting reconsideration of a meritless petition under § 1.10; parties to an interference obtain an extension for purposes of settlement negotiations which do not result in settlement of the interference; and when the scope of the broadest claim in the application at the time an application is placed in condition for allowance is substantially the same as suggested or allowed by the examiner more than six months earlier than the date the application was placed in condition for allowance). Thus, the actions or inactions set forth in § 1.704(c) are exemplary circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. The Office may also reduce a period of adjustment provided in § 1.703 on the basis of conduct that interferes with the Office's ability to process or examine an application under the authority provided in 35 U.S.C. 154(b)(2)(C)(iii), even if such conduct is not specifically addressed in § 1.704(c).

Section 1.704(c)(1) establishes suspension of action under § 1.103 at the applicant's request as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. Obviously, if action is suspended at the applicant's request, the Office is precluded from processing or examining the application as a result of an action by the applicant. Section 1.704(c)(1) also provides that in such a case the

period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the date a request for suspension of action under § 1.103 was filed and ending on the date of the termination of the suspension.

Section 1.704(c)(2) establishes deferral of issuance of a patent under § 1.314 as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. Obviously, if issuance of the patent is deferred under § 1.314, the Office is precluded from issuing the application as a result of an action by the applicant. When a petition under § 1.314 is granted, the petition decision generally states that the application will be held for a period of a month to await the filing of a paper. At the end of the period, the application is returned to the issue process without a further communication from the Office to the applicant. Section 1.704(c)(2) also provides that in such a case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the date a request for deferral of issuance of a patent under § 1.314 was filed and ending on the issue date of the patent.

Section 1.704(c)(3) establishes abandonment of the application or late payment of the issue fee as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. Obviously, if the application is abandoned (either by failure to prosecute or late payment of the issue fee), the Office is precluded from processing or examining the application as a result of an action or inaction by the applicant. Section 1.704(c)(3) also provides that in such a case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the date of abandonment or the date after the day the issue fee was due and ending on the earlier of: (1) The date of mailing of the decision reviving the application or accepting late payment of the issue fee; or (2) the date that is four months after the date the grantable petition to revive the application or accept late payment of the issue fee are filed. The phrase "earlier of * * * [t]he date that is four months after the date the grantable petition to revive the application or accept late payment of the issue fee was filed" is to place a cap (measured from the filing date of the grantable petition) on the reduction if the Office does not act on (grant) the grantable petition to revive within four months of the date it was filed.

**56372**    **Federal Register**/Vol. 65, No. 181/Monday, September 18, 2000/Rules and Regulations

Section 1.704(c)(4) establishes failure to file a petition to withdraw a holding of abandonment or to revive an application within two months from the mailing date of a notice of abandonment as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. Any applicant who considers an application to have been improperly held abandoned (the reduction in § 1.704(c)(3) is applicable to the revival of an application properly held abandoned) is expected to file a petition to withdraw the holding of abandonment (or to revive the application) within two months from the mailing date of a notice of abandonment. *See MPEP* 711.03(c), paragraph (I). Section 1.704(c)(4) also provides that in such a case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date two months from the mailing date of a notice of abandonment and ending on the date a petition to withdraw the holding of abandonment or to revive the application was filed.

Section 1.704(c)(5) establishes conversion of a provisional application under 35 U.S.C. 111(b) to a nonprovisional application under 35 U.S.C. 111(a) (pursuant to 35 U.S.C. 111(b)(5)) as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. Section 4801(a) of the American Inventors Protection Act of 1999, which provides for the conversion of a provisional application under 35 U.S.C. 111(b) and § 1.53(c) to a nonprovisional application under 35 U.S.C. 111(a) and § 1.53(b), is being implemented in a separate rulemaking. Conversion of a provisional application to a nonprovisional application will require the Office to reprocess the application (as a nonprovisional application) up to one year after the filing date that will be accorded to such nonprovisional application as a result of an action by the applicant. Section 1.704(c)(5) also provides that in such a case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the date the application was filed under 35 U.S.C. 111(b) and ending on the date a request in compliance with § 1.53(c)(3) to convert the provisional application into a nonprovisional application was filed.

Section 1.704(c)(6) establishes submission of a preliminary amendment or other preliminary paper less than one month before the mailing of an Office

action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151 that requires the mailing of a supplemental Office action or notice of allowance as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. If the submission of a preliminary amendment or other paper requires the Office to issue a supplemental Office action or notice of allowance, the submission of that preliminary amendment or other paper has interfered with the processing and examination of an application. Section 1.704(c)(6) also provides that in such a case the period of adjustment set forth in § 1.703 shall be reduced by the lesser of the number of days, if any, beginning on the mailing date of the original Office action or notice of allowance and ending on the date of mailing of the supplemental Office action or notice of allowance or four months. The phrase "lesser of * * * or [f]our months" is to provide a four-month cap for a reduction under § 1.704(c)(6) if the Office takes longer than four months to issue a supplemental Office action or notice of allowance.

Section 1.704(c)(7) establishes submission of a reply having an omission (§ 1.135(c)) as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. Submitting a reply having an omission requires the Office to issue an action under § 1.135(c) and await and process the applicant's reply to the action under § 1.135(c) before the initial reply (as corrected) can be treated on its merits. Section 1.704(c)(7) also provides that in such a case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the date the reply having an omission was filed and ending on the date that the reply or other paper correcting the omission was filed. The reference to "§ 1.135(c)" is parenthetical because § 1.704(c)(7) is not limited to Office actions under § 1.135(c) but applies when the Office issues any action or notice indicating that a reply has an omission which must be corrected: *e.g.*, (1) a decision on a petition under § 1.47 dismissing the petition as lacking an item necessary to grant the petition; or (2) a notice indicating that the computer readable format sequence listing filed in reply to a Notice to Comply with Requirements for Patent Applications Containing Nucleotide Sequence and/or Amino Acid Sequence Disclosures (PTO–1661) does not comply with § 1.821 *et seq.*

Section 1.704(c)(8) establishes submission of a supplemental reply or other paper after a reply has been filed as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. The submission of a supplemental reply or other paper (*e.g.*, an information disclosure statement (IDS) or petition) after an initial reply was filed requires the Office to restart consideration of the initial reply in view of the supplemental reply or other paper, which will result in a delay in the Office's response to the initial reply. Section 1.704(c)(8) does not apply to a supplemental reply or other paper that was expressly requested by the examiner. Section 1.704(c)(8) also provides that in such a case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the date the initial reply was filed and ending on the date that the supplemental reply or such other paper was filed.

Section 1.704(c)(9) establishes submission of an amendment or other paper in an application containing allowed claims after a decision by the Board of Patent Appeals and Interferences (other than a decision containing a rejection under § 1.196(b)) or a Federal court less than one month before the mailing of an Office action under 35 U.S.C. 132 or notice of allowance under 35 U.S.C. 151 that requires the mailing of a supplemental Office action or supplemental notice of allowance as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. The submission of an amendment or other paper (e.g., IDS or petition) in an application after a Board of Patent Appeals and Interferences or court decision requires the Office to restart consideration of the application in view of the amendment or other paper, which will result in a delay in the Office's taking action on the application. Section 1.704(c)(9) also provides that in such a case the period of adjustment set forth in § 1.703 shall be reduced by the lesser of the number of days, if any, beginning on the mailing date of the original Office action or notice of allowance and ending on the mailing date of the supplemental Office action or notice of allowance or four months. The phrase "lesser of * * * or [f]our months" is to provide a four-month cap for a reduction under § 1.704(c)(9) if the Office takes longer than four months to issue a

supplemental Office action or notice of allowance.

Section 1.704(c)(10) establishes submission of an amendment under § 1.312 or other paper after a notice of allowance has been given or mailed as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. The submission of amendments (or other papers) after an application is allowed causes substantial interference with the patent issue process. *See Filing of Continuing Applications, Amendments, or Petitions after Payment of Issue Fee,* Notice, 1221 *Off. Gaz. Pat. Office* 14 (Apr. 6, 1999); and *Patents to Issue More Quickly After Issue Fee Payment,* Notice, 1221 *Off. Gaz. Pat. Office* 42 (Mar. 9, 1999). Thus, to continue to permit applicants to submit an amendment or other paper after a notice of allowance is mailed or given, the Office must establish submission of such papers as circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. Section 1.704(c)(10) also provides that in such a case the period of adjustment set forth in § 1.703 shall be reduced by the lesser of: (1) the number of days, if any, beginning on the date the amendment under § 1.312 was filed and ending on the mailing date of the Office action or notice in response to the amendment under § 1.312 or such other paper; or (2) four months. The phrase "lesser of * * * or [f]our months" is to provide a four-month cap for a reduction under § 1.704(c)(10) if the Office takes longer than four months to issue an Office action or notice in response to the amendment under § 1.312 or other paper.

Section 1.704(c)(11) establishes further prosecution via a continuing application as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application. Currently, a continuing application may be used to: (1) Obtain further examination of an invention disclosed and claimed in the prior application (continuation application); (2) obtain examination (for the first time) of an invention disclosed but not claimed or not elected for examination in the prior application (divisional application); or (3) obtain examination of an invention neither disclosed nor claimed in the prior application (continuation-in-part application). The provisions of 35 U.S.C. 132(b) and § 1.114 permit an applicant to obtain further or continued examination of an invention disclosed and claimed in an

application, which renders it unnecessary for an applicant whose application is eligible for patent term adjustment under 35 U.S.C. 154(b) to file a continuing application to obtain further examination of an invention disclosed and claimed in an application. If an applicant is filing a continuing application to obtain examination (for the first time) of an invention disclosed but not claimed or not elected for examination in the prior application or an invention neither disclosed nor claimed in the prior application, it is not appropriate for that applicant to obtain any benefit in the continuing application for examination delays that might have occurred in the prior application. Thus, the Office is establishing further prosecution via a continuing application as a circumstance that constitutes a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application, in that the period of adjustment set forth in § 1.703 shall not include any period that is prior to the actual filing date of the application that resulted in the patent. Thus, if the application that resulted in the patent is a continuing application (including a CPA), the period of adjustment set forth in § 1.703 (if any) will not include any period that is prior to the actual filing date of the application (in the case of a CPA, the filing date of the request for a CPA) that resulted in the patent.

As discussed above, an applicant may file a CPA under § 1.53(d) on or after May 29, 2000, for the application to be subject to the patent term adjustment provisions of 35 U.S.C. 154(b) as amended by § 4402 of the American Inventors Protection Act of 1999. The period of patent term adjustment set forth in § 1.703 (if any), however, will not include any period that is prior to the filing date of the request for that CPA.

Section 1.704(d) provides that a paper containing only an information disclosure statement in compliance with §§ 1.97 and 1.98 will not be considered (result in a reduction) under §§ 1.704(c)(6), 1.704(c)(8), 1.704(c)(9), or 1.704 (c)(10) if it is accompanied by a certification that each item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart application and that this communication was not received by any individual designated in § 1.56(c) more than thirty days prior to the filing of the information disclosure statement. This provision will permit applicants to submit information cited in a

communication from a foreign patent office in a counterpart application to the Office without a reduction in patent term adjustment if an information disclosure statement is promptly (within thirty days of receipt of the communication) submitted to the Office. Obviously, compliance with the certification requirement of § 1.704(d) does not substitute for compliance with any relevant requirement of §§ 1.97 or 1.98. Section 1.704(d) also provides that this thirty-day period is not extendable.

Section 1.704(e) provides that submission of an application for patent term adjustment under § 1.705(b) (with or without request under § 1.705(c) for reinstatement of reduced patent term adjustment) will not be considered a failure to engage in reasonable efforts to conclude prosecution (processing or examination) of the application under § 1.704(c)(10). Due to the time constraints on the Office under 35 U.S.C. 154(b)(1)(A)(iv) and (B) to complete its patent term adjustment determination and issue the patent, the Office must require applicants to follow the specific procedure set forth in § 1.705 for requesting reconsideration of the Office's initial patent term adjustment determination and for requesting reinstatement of patent term adjustment reduced under § 1.704(b). Thus, while submission of an application for patent term adjustment under § 1.705(b) (regardless of whether it contains a request under § 1.705(c) for reinstatement of reduced patent term adjustment) will interfere with the patent printing process, submission of the application will not be considered a failure to engage in reasonable efforts to conclude prosecution (processing or examination) of the application under § 1.704 (c)(10). Other papers concerning patent term adjustment (e.g., status letters, untimely applications for patent term adjustment, requests for reconsideration of the Office's decisions on applications for patent term adjustment, petitions under §§ 1.181, 1.182, or 1.183 concerning patent term adjustment, or miscellaneous letters concerning patent term adjustment), however, will be considered a failure to engage in reasonable efforts to conclude prosecution (processing or examination) of the application under § 1.704(c)(10).

Section 1.705 implements the provisions of 35 U.S.C. 154(b)(3) and (b)(4)(B).

Section 1.705(a) indicates that the notice of allowance will include notification of any patent term adjustment under 35 U.S.C. 154(b) (35 U.S.C. 154(b)(3)(B)(i)). Since the Office now issues over 160,000 patents each year, the only practical way to make the

patent term adjustment determinations required by 35 U.S.C. 154(b)(3)(B)(i) is by a computer program that uses the information (dates of receipt and nature of applicant correspondence and of the dates of mailing and nature of Office actions or notices) recorded in the PALM system.

Section 1.705(b) provides that any request for review or reconsideration of the patent term adjustment indicated in the notice of allowance (except as provided in § 1.705(d)) and any request for reinstatement of all or part of the term reduced pursuant to § 1.704(a) must be filed no later than the payment of the issue fee but may not be filed earlier than the date of mailing of the notice of allowance. Section 1.705(b) provides that any such request must be by way of an application for patent term adjustment accompanied by the fee set forth in § 1.18(e) and a statement of the facts involved. Section 1.705(b) also provides that such statement of facts must specify: (1) The basis or bases under § 1.702 for the adjustment; (2) the relevant dates as specified in §§ 1.703(a) through (e) for which an adjustment is sought and the adjustment as specified in § 1.703(f) to which the patent is entitled; (3) whether the patent is subject to a terminal disclaimer and any expiration date specified in the terminal disclaimer; and (4) any circumstances during the prosecution of the application resulting in the patent that constitute a failure to engage in reasonable efforts to conclude processing or examination of such application as set forth in § 1.704 (or a statement that there were no such circumstances). Since the Office must complete its determination of patent term adjustment before proceeding to issue the patent (35 U.S.C. 154(b)(3)(D)), the Office must require that such application for patent term adjustment be filed within a non-extendable time period and setting forth with particularity why the Office's patent term adjustment determination is not correct. In the absence of these requirements, the issuance of the patent will be further delayed by a protracted patent term adjustment determination proceeding.

Section 1.705(c) implements the provisions of 35 U.S.C. 154(b)(3)(C). Section 1.705(c) specifically provides that a request for reinstatement of all or part of the period of adjustment reduced pursuant to § 1.704(b) for failing to reply to a rejection, objection, argument, or other request within three months of the date of mailing of the Office communication notifying the applicant of the rejection, objection, argument, or other request must include: (1) The fee

set forth in § 1.18(f); and (2) a showing to the satisfaction of the Commissioner that, in spite of all due care, the applicant was unable to reply to the rejection, objection, argument, or other request within three months of the date of mailing of the Office communication notifying the applicant of the rejection, objection, argument, or other request. Section 1.705(c) also provides that the Office shall not grant any request for reinstatement for more than three additional months for each reply beyond three months of the date of mailing of the Office communication notifying the applicant of the rejection, objection, argument, or other request (35 U.S.C. 154(b)(3)(C)).

Since the Office is obligated to provide a determination of patent term adjustment under 35 U.S.C. 154(b) in the notice of allowance (i.e., before the actual patent issue date), the Office must project (or estimate) the actual patent issue date and base its patent term adjustment determination on that projection. Thus, § 1.705(d) provides for the situation in which the patent is issued on a date other than the projected date of issue and this change necessitates a revision of the patent term adjustment indicated in the notice of allowance. Section 1.705(d) specifically provides that if the patent is issued on a date other than the projected date of issue and this change necessitates a revision of the patent term adjustment indicated in the notice of allowance, the patent will indicate the revised patent term adjustment. Section 1.705(d) also provides that if the patent indicates a revised patent term adjustment due to the patent being issued on a date other than the projected date of issue, any request for reconsideration of the patent term adjustment indicated in the patent must be filed within thirty days of the date the patent issued and must comply with the requirements of § 1.705(b)(1) and § 1.705(b)(2).

Section 1.705(e) provides that the periods set forth in this section are not extendable. As discussed above, the Office must set non-extendable time periods in § 1.705 to avoid delay in the issuance of the patent.

Section 1.705(f) implements the provisions of 35 U.S.C. 154(b)(4)(B) and provides that no submission or petition on behalf of a third party concerning patent term adjustment under 35 U.S.C. 154(b) will be considered by the Office, and that any such submission or petition, will be returned to the third party, or otherwise disposed of, at the convenience of the Office.

*Response to comments:* The Office received twenty-three written comments (from Intellectual Property

Organizations, Businesses, Law Firms, Patent Practitioners, and others) in response to the notice of proposed rulemaking. Comments generally in support of a change are not discussed. The comments and the Office's responses to those comments follow:

*Comment 1:* One comment argued that charging a fee as set forth in § 1.18(e) to correct an Office error was unfair. In addition, several comments argued that the fee for a patent term adjustment calculation should be refundable if the Office does not calculate the term adjustment correctly.

*Response:* 35 U.S.C. 154(b)(3) provides for the Office to establish procedures for the application for and determination of patent term adjustment under 35 U.S.C. 154(b). The Office will provide an initial determination of the patent term adjustment in the notice of allowance. If, however, an applicant wishes to request reconsideration of the initial determination in the notice of allowance, the applicant must file an application for patent term adjustment. 35 U.S.C. 41(d) authorizes the Office to establish a fee to recover the estimated average cost of treating applications for patent term adjustment (as well as a fee for treating a request for reinstatement of patent term adjustment), and the cost of treating an application for patent term adjustment is about the same regardless of whether the Office's initial determination of patent term adjustment indicated in the notice of allowance is correct. In any event, refunding the fee under § 1.18(e) when the application for patent term adjustment is correct would: (1) Require the Office to raise the fee set forth in § 1.18(e) (to enable the Office to recover the same aggregate amount); and (2) add further complication to a review process that must take place in a limited period of time.

*Comment 2:* One comment argued that the fees under §§ 1.18(e) and (f) should be reduced for small entities.

*Response:* As discussed above, 35 U.S.C. 41(d) authorizes the Office to establish a fee to recover the estimated average cost of treating applications for patent term adjustment (as well as a fee for treating a request for reinstatement of patent term adjustment). The small entity discount in 35 U.S.C. 41(h)(1) applies only to fees charged under 35 U.S.C. 41(a) and (b). Thus, the Office has no authority to apply the small entity discount to the fees set forth in §§ 1.18(e) and (f).

*Comment 3:* One comment noted that the heading of § 1.701 was inconsistent with § 1.701(e), and suggested that "and before May 29, 2000" be added to the heading of § 1.701.

*Response:* The phrase "and before May 29, 2000" has been added to the heading of § 1.701.

*Comment 4:* Several comments argued that for purposes of § 1.702(a)(1), a restriction requirement or an election of species requirement should not be considered a notification under 35 U.S.C. 132. The comments stated an Office action containing only a restriction requirement or an election of species requirement should be issued only after there has been an attempt to make the restriction requirement or the election of species requirement by telephone, and that treating a restriction requirement or election of species requirement as an action under 35 U.S.C. 132 will further exacerbate a concern of applicants that a restriction requirement is not proper.

*Response:* The comment cannot be adopted. The Office did not "decide" to treat restriction requirements and election of species requirements as notifications under 35 U.S.C. 132; they are notifications under 35 U.S.C. 132.

In considering whether a restriction requirement under 35 U.S.C. 121 was appealable under 35 U.S.C. 134, the Court of Customs and Patent Appeals (CCPA) noted that: (1) 35 U.S.C. 121 denoted its procedure as a "requirement"; (2) 35 U.S.C. 132 stated that the Commissioner shall give notice to the applicant whenever "any claim for a patent is rejected, or any objection or requirement made"; and (3) 35 U.S.C. 134 provided for an appeal only by an applicant whose claims have been "twice rejected." *See In re Hengehold*, 440 F.2d 1395, 1402–03, 169 USPQ 473, 479 (CCPA 1971). Thus, the CCPA concluded that Congress intended to differentiate between objections and requirements (under 35 U.S.C. 132) and actual rejections of claims (under 35 U.S.C. 132) and made appeal applicable only to the latter. *See Hengehold*, 440 F.2d at 1403, 169 USPQ at 479. Since the CCPA discussed and differentiated between rejections, objections, and requirements under 35 U.S.C. 132 in determining whether a restriction requirement was appealable under 35 U.S.C. 134, the CCPA must have considered a restriction requirement to be a requirement under 35 U.S.C. 132, thus making a written restriction (or election) requirement a notification under 35 U.S.C. 132. *See also Digital Equipment Corp. v. Diamond*, 653 F.2d 701, 713 n.13, 210 USPQ 521, 535–36 n.13 (1st Cir. 1981) (citing 35 U.S.C. 132 when noting that the terms "requirement" and "objection" are distinct from "rejection" (as used in title 35, U.S.C.) and that requirements and

objections were not appealable under 35 U.S.C. 134).

In addition, the Office has long considered (at least implicitly) a written restriction requirement containing no action on the merits to be a notice under 35 U.S.C. 132. *MPEP* 710.02(b) instructs examiners to set a shortened statutory period for reply of one month for a written restriction requirement containing no action on the merits under the authority given by 35 U.S.C. 133 (35 U.S.C. 133 would not apply to the period for reply to a written restriction requirement, if a written restriction requirement containing no action on the merits is not a notice under 35 U.S.C. 132).

The Office encourages examiners to make an oral restriction requirement. Many applicants, however, prefer a written restriction requirement because it gives them more time to consider the requirement.

*Comment 5:* One comment requested a definition of the term "original application" as used in § 1.702(f) and asked whether the term refers to a parent application or a divisional or continuation. Several comments expressed confusion as to whether term adjustment for a first-filed application would result in the same term adjustment in a continuation of that application. One comment suggested that the term "applications other than reissue applications" be used instead of "original applications."

*Response:* An "original application" is any application other than a reissue application. *See Guidelines Concerning the Implementation of Changes to 35 U.S.C. 102(g) and 103(c) and the Interpretation of the Term "Original Application" in the American Inventors Protection Act of 1999*, 1233 *Off. Gaz. Pat. Office* 54 (Apr. 11, 2000). Thus, the term "original application" includes a continuing application (continuation, divisional, or continuation-in-part, whether the application is filed under § 1.53(b) or as a continued prosecution application under § 1.53(d)), and the national stage of an international application. Since a request for continued examination under 35 U.S.C. 132(b) and § 1.114 is not an application (but a submission in a previously filed application), the term "original application" does not include a request for continued examination under 35 U.S.C. 132(b) and § 1.114.

While 35 U.S.C. 154(b) does not use the term "original application," its provisions concern the situation in which the issue of an original patent is delayed due to the failure of the Office to take certain actions in the application that issued as the patent. Patent term

adjustment events in one application may not be relied upon as giving rise to patent term adjustment in another application, even if the other application claims the benefit of the first application under 35 U.S.C. 120, 121, or 365(c) (*i.e.*, patent term adjustment events in a parent application do not carry over to a child application).

*Comment 6:* One comment stated that § 1.702(f) should also provide that the provisions apply to international applications in which the requirements of 35 U.S.C. 371 are met on or after May 29, 2000.

*Response:* The date on which an international application fulfills the requirements of 35 U.S.C. 371 is not the filing date, or even relevant to the filing date, of the international application. Section 4405 of the American Inventors Protection Act of 1999 provides that the amendments relating to patent term adjustment shall apply to any application filed on or after May 29, 2000, but does not provide that its patent term adjustment provisions apply to international applications filed before May 29, 2000, that complied with the requirements of 35 U.S.C. 371 on or after May 29, 2000.

*Comment 7:* As to § 1.703(a)(6), one comment requested clarification as to whether the filing of a priority document would be an "outstanding requirement" which would cause a delay in the beginning of the "four months after payment of the issue fee and all outstanding requirements were satisfied" period. The comment argued that filing of a priority document should not be considered an outstanding requirement because if the priority document is not filed the patent simply issues without the priority claim (the application is not abandoned).

*Response:* Section 1.55 has been amended to eliminate the need for a petition to accept a priority document filed after payment of the issue fee, as well as the need for the Office to evaluate the priority claim before a patent is granted. Therefore, the filing of a priority document (and processing fee) is not considered an outstanding requirement under 35 U.S.C. 154(b)(1)(A)(iv) and § 1.703(a)(6).

*Comment 8:* One comment objected to the exclusion from the three-year period in § 1.703(b)(1) of the period of time in which a request for continued examination under 35 U.S.C. 132(b) and § 1.114 is processed. The comment argues that filing a request for continued examination should not preclude an applicant from obtaining a term adjustment for printing delays of a patent.

*Response:* 35 U.S.C. 154(b)(1)(B) provides that an applicant may receive a term adjustment if the application is not issued within three years of the filing date of the application, excluding (among other things) any time consumed by continued examination requested under 35 U.S.C. 132(b). Once a request for continued examination under 35 U.S.C. 132(b) and § 1.114 is filed in an application, any further processing or examination of the application, including granting of a patent, is by virtue of the continued examination given to the application under 35 U.S.C. 132(b) and § 1.114. Nevertheless, if a request for continued examination is filed in an application, the applicant may still accrue patent term adjustment under 35 U.S.C. 154(b)(1)(A) or (C). Accordingly, if two years after the filing date of an application, a request for continued examination is filed, and three years after the filing date of an application, the issue fee is paid (and all outstanding requirements are satisfied), but the patent does not issue as a patent until four years after the application's filing date, applicant may be entitled to an eight-month term adjustment because the application did not issue within four months of payment of the issue fee. Since the request for continued examination was filed within three years of the filing date of the application, applicant cannot accrue any term adjustment under the "three-year" statutory basis (35 U.S.C. 154(b)(1)(B)), but may accrue patent term adjustment under the other bases (*e.g.,* 35 U.S.C. 154(b)(1)(A)(iv)).

*Comment 9:* One comment asked whether "a final decision in favor of applicant" as used in § 1.703(e) and "a decision in the [appellate] review reversing an adverse determination of patentability" as used in 35 U.S.C. 154(b)(1)(C)(iii) is limited to successful appeals on purely statutory grounds or would also include non-statutory grounds (*e.g.,* obviousness-type double patenting).

*Response:* A "final decision in favor of applicant" is understood to include any final decision of the Board of Patent Appeals and Interferences or Federal court that reverses all of the rejections of at least one claim (without subjecting the claim to a new rejection). The type of rejection (i.e., whether the rejection is based upon a statutory or judicial basis) is not relevant.

*Comment 10:* A number of comments objected to the provision in § 1.703(f) that the certificate of mailing date under § 1.8 will not be used for determining when applicant is considered to "respond to a notice from the Office

making any rejection, objection argument or other request." The comments included suggestions, objections, or arguments that: (1) the date set forth in the § 1.8 statement should be used as the date when applicant is considered to have responded within three months of the Office action; (2) applicants should not be compelled to hand-carry papers to the Office or to use the Express Mail service of the United States Postal Service in order to be able to meet the three-month timeliness goal or reduce a period of time in which they are considered to have "failed to engage in reasonable efforts to conclude processing or examination of an application"; (3) a certificate of mailing is now accepted for purposes of a filing date; (4) using the date of receipt rather than the date of mailing by a practitioner would require the Office to keep "separate books" of the date of mailing and date of receipt of papers; and (5) United States Postal Service delays are insignificant compared to Office mailroom delays.

*Response:* The suggestion is not adopted. The date indicated on a certificate of mailing is used only to determine whether the correspondence is timely (including whether any extension of the time and fee are required) so as to avoid abandonment of the application or termination or dismissal of proceedings. The actual date of receipt of the correspondence in the Office is used for all other purposes. *See* § 1.8(a). In addition, a certificate of mailing date under § 1.8 cannot be relied upon for purposes of according a filing date to a patent application. *See* § 1.8(a)(2)(i)(A). Rather, correspondence is considered filed in the Office on the date of its actual receipt in the Office (§ 1.6(a)) or the date it was deposited with the United States Postal Service under § 1.10 as shown by the "date-in" on the Express Mail mailing label. Nevertheless, § 1.8 will continue to be used in determining whether correspondence is timely filed and whether an extension of time and fee for an extension of time are due.

Section 1.703(f) does not compel applicants to hand-carry papers to the Office or to use the Express Mail service of the United States Postal Service to ensure that correspondence is received within three months of an Office action and avoid a reduction in any patent term adjustment. Most correspondence that can be submitted using the benefit of § 1.8 can also be submitted to the Office by facsimile transmission (§ 1.6(d)) to avoid mail delays and ensure that correspondence is received within three months of an Office action

or notice. In addition, applicants can also mail correspondence with sufficient time to ensure that the correspondence is received in the Office (and stamped with a date of receipt) before the expiration of the three-month period. Applicants who chose to use first-class mail at the end of the period for reply instead of a quicker means of submitting correspondence to the Office have no complaint concerning consequences of their decision on patent term adjustment.

The Office practice of using the date of receipt of papers rather than the date of mailing of papers as the filing date of the papers is well established and changing this practice would have undesirable results. For example, when a notice of appeal is filed, the filing date accorded the notice of appeal is the date of receipt of the notice of appeal in the Office, not the certificate of mailing date under § 1.8 indicated on the notice of appeal. An appeal brief must then be filed within two months of the date of receipt of the notice of appeal. *See* § 1.191(a) and *MPEP* 1206. If the suggested change to Office practice were adopted, the date on the certificate of mailing under § 1.8 would be used as the "receipt date" of the notice of appeal to determine whether applicant replied within three months of the Office action for patent term adjustment purposes, and the appeal brief would be required to be filed within two months of the date on the certificate of mailing under § 1.8 (now the "receipt date'), unless the period for reply to the Office action is later. For many applicants, this would lead to the appeal brief being required to be filed several days earlier, which would be an undesirable result.

The certificate of mailing date is not recorded in the Office's PALM system. The Office's PALM system records contain a single date: the date of receipt in the Office (as defined by § 1.6). The certificate of mailing date may be noted on the date received/mailed column of the contents of the application's file wrapper with an entry such as "1–31–00 (c.o.m. 1/26/00)." Thus, adopting the suggested change to § 1.703(f) would require the Office to keep "separate books" of the date of mailing and date of receipt of correspondence.

Finally, whether United States Postal Service delays are insignificant compared to Office mailroom delays is immaterial. The purpose of the patent term adjustment provisions of the American Inventors Protection Act of 1999 is to compensate applicants for certain administrative delays by the Office, and any delays (whether significant or insignificant) by United States Postal Service in delivering

correspondence to the Office is not a delay by the Office.

*Comment 11:* One comment was received objecting to the provision in § 1.703(f) as unfair because applicants were responsible for a reply within a set time from the mailing date by the Office, whereas the Office is held to a standard for reply from the filing date of papers filed by the applicant.

*Response:* 35 U.S.C. 154(b)(2)(C)(ii) establishes the standard of reply by applicants to within three months of the date a notice is given or mailed to applicants. In addition, 35 U.S.C. 154(b)(1)(A)(i) and (ii) measure the deadline for the Office's reply from the date an application or a reply is filed. These different standards established by Congress are considered important because they are both dates that are contained in the Office's PALM system records.

*Comment 12:* One comment also stated that if the certificate of mailing date was not used for establishing a date of receipt under § 1.703(f), the patent term adjustment procedure would be more difficult because applicant would not know when the paper was received by the Office.

*Response:* Applicants may use a postcard receipt to establish when a paper is received by the Office. Not only does a postcard receipt provide evidence of a date of receipt, but it also provides *prima facie* evidence of receipt in the Office of all items listed thereon on the date stamped by the Office. *See* MPEP 503. In addition, applicants may check the Office's PALM system records (which shows the date of receipt of papers) through the Patent Application Information Retrieval (PAIR) system at http://pair.uspto.gov.

If the date of mailing under § 1.8 were to be used for determining if applicant has replied within three months of the date of an Office action, the Office's PALM system would have to record two different dates for patent term adjustment calculation purposes. This is because the measurements of whether the Office has taken action within a set time would not run from the same date (e.g., fourteen months from the filing date of the application or four months of the date on which a reply was filed or an appeal is taken). Such a patent term adjustment calculation would be unnecessarily complex.

*Comment 13:* One comment stated that the reduction in § 1.703(f) for failure to reply within three months even where the Office sets a longer period is a subtle point which should be mentioned in the rules as well as being stated in any communication setting a

period for reply of longer than three months.

*Response:* The suggestion to expressly mention in any communication warning applicants that any reply not received within three months of an Office action may result in a reduction to any patent term adjustment, even where the Office action sets forth a longer period for reply, has been adopted. The Office is planning to modify forms used by patent examiners to include this warning.

*Comment 14:* One comment argued that the phrase "processing or examination" in 35 U.S.C. 154(b)(2)(C)(ii) and (iii) means the same thing as "prosecution" in 35 U.S.C. 154(b)(2)(C)(i).

*Response:* The Office agrees with this interpretation of 35 U.S.C. 154(b)(2)(C). Section 1.704(a) uses the term "prosecution (processing or examination)" for this reason.

*Comment 15:* One comment objected to § 1.704(b), arguing that foreign applicants, especially those from non-English speaking countries, need more time to reply to an Office action than United States applicants and argued that one additional month should be considered as not being a failure to engage in reasonable efforts to conclude prosecution.

*Response:* The language in § 1.704(b) is taken directly from 35 U.S.C. 154(b)(2)(C)(ii), wherein Congress stated that a delay in a reply beyond three months is *per se* a failure to engage in reasonable efforts. Moreover, Congress provided that if applicant makes a showing that in spite of all due care applicant was unable to reply within the three-month period, the adjustment may be reinstated. Since Congress provided that applicants must make a showing explaining that the delay was in spite of all due care for a reply beyond three months not to be a failure to engage in reasonable efforts, the Office cannot by rule provide that a reply within a longer period is not failure to engage in reasonable efforts to conclude prosecution (absent a showing explaining that the delay was in spite of all due care).

*Comment 16:* Another comment objected to the use of "or given" in the phrase "measuring such three-month period from the date the notice or action was mailed or given to the applicant" in § 1.704(b), and argued that § 1.2 requires all correspondence to be in writing, and allowing an oral restriction requirement to start a period for the applicant to reply would not be consistent with § 1.2. In addition, the comment argued that sometimes a message is left on an answering machine and such a message

should not be considered notice of an objection or other requirement.

*Response:* The phrase "measuring such three-month period from the date the notice [or action] was mailed or given to the applicant" (emphasis added) is taken almost directly from 35 U.S.C. 154(b)(2)(C)(ii). The Office is using the statutory language "mailed or given," rather than "mailed," because the Office envisions that it may one day issue (or "give") actions or notices by means other than mailing (e.g., by facsimile transmission or e-mail message over the Internet). The Office, however, does not envision that it would issue (or "give") actions or notices by non-written means (e.g., a telephone conversation). Thus, a telephone message left on an answering machine would not constitute the giving notice of an objection or other requirement.

*Comment 17:* One comment suggested that setting forth "strict examples" in § 1.704(c) of circumstances of when applicant has failed to engage in reasonable efforts to conclude prosecution (or processing or examination) of an application is inconsistent with the legislative intent of Congress in enacting the provisions of 35 U.S.C. 154(b)(2)(C)(iii). The comment suggested that a reduction of patent term adjustment under 35 U.S.C. 154(b)(2)(C) should occur to prevent only "the few applicants who engage in intentional or unjustifiable delay tactics" from abusing the system, such that "only the most egregious and obvious delay tactics will go unrewarded," citing to H.R. Rep. No. 105–39 at 66 (1997). The comment suggested that the regulations are so strict as to require the applicant to be a "perfect" applicant rather than a "diligent" or "reasonable" applicant. The comment suggested that the Office should instead review each application on a case-by-case basis to determine a reduction of patent term adjustment is warranted due to the applicant's failure to engage in reasonable efforts to conclude prosecution (or processing or examination) of an application.

*Response:* 35 U.S.C. 154(b)(2)(C) provides that: (1) The Office is to prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application (35 U.S.C. 154(b)(2)(C)(iii)); and (2) the period of patent term adjustment under 35 U.S.C. 154(b)(1) shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of an application (35 U.S.C.

154(b)(2)(C)(ii)). Thus, promulgating regulations that set forth "strict examples" of circumstances of when applicant has failed to engage in reasonable efforts to conclude prosecution (or processing or examination) of an application (rather than considering applications on an *ad hoc* or case-by-case basis) is not only consistent with 35 U.S.C. 154(b)(2)(C), it is what the Office is required to do under 35 U.S.C. 154(b)(2)(C)(iii).

The cited House Report (H.R. Rep. No. 105–39) is of questionable reliability in interpreting the patent term adjustment provisions of the American Inventors Protection Act of 1999 concerning the Office's authority to prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application (35 U.S.C. 154(b)(2)(C)(iii)). H.R. Rep. No. 105–39 is the Committee Report for the 21st Century Patent System Improvement Act, H.R. 400, 105th Cong., (1997), which was passed by the House of Representatives on April 23, 1997, but was not enacted into law.

The American Inventors Protection Act of 1999 is title IV of the Intellectual Property and Communications Omnibus Reform Act of 1999 (S. 1948), and S. 1948 was incorporated and enacted into law as part of Pub. L. 106–113. The Conference Report for H.R. 3194, 106th Cong., 1st. Sess. (1999), which resulted in Pub. L. 106–113, does not contain any discussion (other than the incorporated language) of S. 1948. *See* H.R. Conf. Rep. No. 106–497, at 37 and 1089–174 (1999). A section-by-section analysis of S. 1948, however, was printed in the Congressional Record at the request of Senator Lott. *See* 145 Cong. Rec. S14,708–26 (1999) (daily ed. Nov. 17, 1999). This section-by-section analysis of the patent term adjustment provisions of the American Inventors Protection Act of 1999 provides, in relevant part, that:

Subtitle D amends the provisions in the Patent Act that compensate patent applicants for certain reductions in patent term that are not the fault of the applicant. The provisions that were initially included in the term adjustment provisions of patent bills in the 105th Congress only provided adjustments for up to 10 years for secrecy orders, interferences, and successful appeals. Not only are these adjustments too short in some cases, but no adjustments were provided for administrative delays caused by the [Office] that were beyond the control of the applicant. Accordingly, subtitle D removes the 10 year caps from the existing provisions, adds a new provision to compensate applicants fully for [Office]-caused administrative delays, and, for good measure, includes a new provision

guaranteeing diligent applicants at least a 17-year term by extending the term of any patent not granted within three years of filing. Thus, no patent applicant diligently seeking to obtain a patent will receive a term of less than the 17 years as provided under the pre-GATT standard; in fact, most will receive considerably more. Only those who purposely manipulate the system to delay the issuance of their patents will be penalized under subtitle D, a result that the Conferees believe entirely appropriate.

\* \* \* \* \*

Section 4402 amends [35 U.S.C.] 154(b) of the Patent Act covering term.

First, new [35 U.S.C.] 154(b)(1)(A)(i)–(iv) guarantees day-for-day restoration of term lost as a result of delay created by the [Office] when the [Office] fails to:

(1) Make a notification of the rejection of any claim for a patent or any objection or argument under [35 U.S.C.] 132, or give or mail a written notice of allowance under [35 U.S.C.] 151, within 14 months after the date on which a non-provisional application was actually filed in the [Office];

(2) Respond to a reply under [35 U.S.C.] 132, or to an appeal taken under [35 U.S.C.] 134, within four months after the date on which the reply was filed or the appeal was taken;

(3) Act on an application within four months after the date of a decision by the Board of Patent Appeals and Interferences under [35 U.S.C.] 134 or 135 or a decision by a Federal court under [35 U.S.C.] 141, 145, or 146 in a case in which allowable claims remain in the application; or

(4) Issue a patent within four months after the date on which the issue fee was paid under [35 U.S.C.] 151 and all outstanding requirements were satisfied.

Further, subject to certain limitations, infra, [35 U.S.C.] 154(b)(1)(B) guarantees a total application pendency of no more than three years. Specifically, day-for-day restoration of term is granted if the [Office] has not issued a patent within three years after "the actual date of the application in the United States." This language was intentionally selected to exclude the filing date of an application under the Patent Cooperation Treaty (PCT). Otherwise, an applicant could obtain up to a 30-month extension of a U.S. patent merely by filing under PCT, rather than directly in the [Office], gaining an unfair advantage in contrast to strictly domestic applicants. Any periods of time—

(1) Consumed in the continued examination of the application under [35 U.S.C.] 132(b);

(2) Lost due to an interference under [35 U.S.C.] 135(a), a secrecy order under [35 U.S.C.] 181, or appellate review by the Board of Patent Appeals and Interferences or by a Federal court (irrespective of the outcome); and

(3) Incurred at the request of an applicant in excess of three months to respond to a notice from the Office permitted by [35 U.S.C.] 154(b)(2)(C)(iii) unless excused by a showing by the applicant under [35 U.S.C.] 154(b)(3)(C) that in spite of all due care the applicant could not respond within three months shall not be considered a delay by

the [Office] and shall not be counted for purposes of determining whether the patent issued within three years from the actual filing date.

Day-for-day restoration is also granted under new [35 U.S.C.] 154(b)(1)(C) for delays resulting from interferences, secrecy orders, and appeals by the Board of Patent Appeals and Interferences or a Federal court in which a patent was issued as a result of a decision reversing an adverse determination of patentability.

Section 4402 imposes limitations on restoration of term. In general, pursuant to [35 U.S.C.] 154(b)(2)(A)–(C), total adjustments granted for restorations under [35 U.S.C.] 154(b)(1) are reduced as follows:

(1) To the extent that there are multiple grounds for extending the term of a patent that may exist simultaneously (*e.g.*, delay due to a secrecy order under [35 U.S.C.] 181 and administrative delay under [35 U.S.C.] 154(b)(1)(A)), the term should not be extended for each ground of delay but only for the actual number of days that the issuance of a patent was delayed;

(2) The term of any patent which has been disclaimed beyond a date certain may not receive an adjustment beyond the expiration date specified in the disclaimer; and

(3) Adjustments shall be reduced by a period equal to the time in which the applicant failed to engage in reasonable efforts to conclude prosecution of the application, based on regulations developed by the Director, and an applicant shall be deemed to have failed to engage in such reasonable efforts for any periods of time in excess of three months that are taken to respond to a notice from the Office making any rejection or other request;

New [35 U.S.C.] 154(b)(3) sets forth the procedures for the adjustment of patent terms. [35 U.S.C. 154(b)](3)(A) empowers the Director to establish regulations by which term extensions are determined and contested. Paragraph (3)(B) requires the Director to send a notice of any determination with the notice of allowance and to give the applicant one opportunity to request reconsideration of the determination. Paragraph (3)(C) requires the Director to reinstate any time the applicant takes to respond to a notice from the Office in excess of three months that was deducted from any patent term extension that would otherwise have been granted if the applicant can show that he or she was, in spite of all due care, unable to respond within three months. In no case shall more than each additional three months be reinstated for each response. Paragraph (3)(D) requires the Director to grant the patent after completion of determining any patent term extension irrespective of whether the applicant appeals.

New [35 U.S.C.] 154(b)(4) regulates appeals of term adjustment determinations made by the Director. Paragraph (4)(A) requires a dissatisfied applicant to seek remedy in the District Court for the District of Columbia under the Administrative Procedures Act within 180 days after the grant of the patent. The Director shall alter the term of the patent to reflect any final judgment. Paragraph (4)(B) precludes a third party from challenging the determination of a patent term prior to patent grant.

*See* 145 Cong. Rec. S14,718 (footnotes omitted).

In addition, since the patent term adjustment provisions of the American Inventors Protection Act of 1999 contained in Pub. L. 106–113 are identical to the patent term adjustment provisions in title IV of the Intellectual Property and Communications Omnibus Reform Act of 1999 (H.R. 1554), the joint statement in the Conference Report for H.R. 1554 may also be useful in interpreting the patent term adjustment provisions of the American Inventors Protection Act of 1999. The joint statement in the Conference Report for H.R. 1554 contains an identical discussion of its patent term adjustment provisions. See H.R. Conf. Rep. No. 106–464, at 125–27 (1999).

The language relied upon for the position that the provisions of § 1.704(c) (establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application) are inconsistent with the legislative intent of Congress in enacting the provisions of 35 U.S.C. 154(b)(2)(C)(iii) is not included in either the section-by-section analysis of S. 1948 by Senator Lott or the Conference Report for H.R. 1554 (H.R. Conf. Rep. No. 106–464). In addition, while H.R. 400 is one of the forerunners of the patent term adjustment provisions enacted into law in the American Inventors Protection Act of 1999, the provision concerning the establishment of circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application contained in the American Inventors Protection Act of 1999 is not the same as the corresponding provision in H.R. 400.

In any event, the provisions of § 1.704(c) do not require an applicant to be "perfect" or even "diligent" when prosecuting an application to avoid a reduction of patent term adjustment; § 1.704(c) simply requires that an applicant refrain from engaging in actions or inactions that prevent or interfere with the Office's ability to process or examine an application. An applicant who is engaging in actions or inactions that prevent or interfere with the Office's ability to process or examine an application cannot reasonably be characterized as "engag[ing] in reasonable efforts to conclude processing or examination of an application" (35 U.S.C. 154(b)(2)(C)(i)).

That conduct (an action or inaction) has been established in § 1.704 as circumstances constituting a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application should not be taken as an indication that such conduct is unreasonable *per se*. If Congress considered taking longer than three months to reply to an Office action or notice to be unreasonable *per se*, Congress would simply have amended title 35, U.S.C., to provide a statutory period of three months to reply to all Office actions or notices. The patent statute (and specifically the fee extension provisions of 35 U.S.C. 41(a)(8)), however, permits applicants to take longer than three months to reply to an Office action or notice even in the absence of showing that, in spite of all due care, the applicant was unable to reply within a three-month period. Nevertheless, 35 U.S.C. 154(b)(2)(C)(ii) provides that an applicant shall be deemed to have failed to engage in reasonable efforts to conclude prosecution for the cumulative total of any periods of time in excess of three months that are taken to reply to any notice or action by the Office making any rejection, objection, argument, or other request. Thus, Congress concluded that there is conduct during the prosecution of an application that is not unreasonable *per se*, but which is a failure to engage in reasonable efforts to conclude processing or examination of an application. Conversely, that conduct is permitted by the patent statute and rules of practice does not imply that such conduct is not a failure to engage in reasonable efforts to conclude processing or examination of an application.

*Comment 18:* One comment objected to § 1.704(c) as being overly broad and not being limited to the situations where applicant's actions or inactions have hindered the Office's ability to process or examine the application. Several other comments argued that § 1.704(c) sets of an applicant delay against unrelated Office delays (*e.g.*, one comment noted that if in an application the Office does not issue a first Office action until fifteen months after the application's filing date and later applicant files a notice of appeal followed by an appeal brief two months later, and an examiner's answer is mailed two months after the appeal brief is filed, the applicant would receive no term adjustment, and argued that there was "no logical reason" for such a setoff). Another comment argued that the result is that applicants are penalized twice for actions which are characterized as a failure to engage in reasonable efforts to conclude prosecution: once because their patent

issues later than it would have had the applicant not delayed and a second time because they receive a lesser term adjustment than they would have without their delay.

*Response:* Section 1.704 as adopted (*i.e.*, not adopting proposed §§ 1.704(c)(6), 1.704(c)(7), 1.704(c)(8), 1.704(c)(9), and 1.704(c)(13)) will result in fewer situations in which patent term adjustment is reduced by an action or inaction that did not cause or contribute to the patent term adjustment.

Nevertheless, 35 U.S.C. 154(b) provides that the period of patent term adjustment under 35 U.S.C. 154(b)(1) "shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application." *See* 35 U.S.C. 154(b)(2)(C)(i). 35 U.S.C. 154(b)(1)(C)(i) does not require the applicant's action or inaction (that amounts to a failure to engage in reasonable efforts to conclude prosecution of the application) to have caused or contributed to patent term adjustment for the period of adjustment to be reduced due to such action or inaction. The patent term adjustment provisions of 35 U.S.C. 154(b) create a balanced system allowing for patent term adjustment due to Office delays for a reasonably diligent applicant. Since the public has an interest in the technology disclosed and covered by a patent being available to the public at the earliest possible date, it is appropriate to reduce patent term adjustment by any period of time during which applicant failed to engage in reasonable efforts to conclude prosecution of the application, regardless of whether the applicant's actions or inactions caused or contributed to patent term adjustment.

*Comment 19:* One comment objected to § 1.704(c) not being limited to the proposed sixteen enumerated events that would result in reduction in term adjustment, but being also applicable to situations where an applicant acts in a manner which would delay the conclusion of prosecution (arguing, *e.g.*, that an applicant should not have to accept a "picture claim" or face a reduction to any term adjustment). In addition, the comment stated that it is unclear what petitions the Office considers meritless since the Office does not publish petition decisions.

*Response:* The Office anticipates that some applicants will seek out ways to manipulate the system to their advantage no matter how exhaustive a listing of circumstances the Office were to set forth in § 1.704(c). Thus, the Office must provide that the enumerated circumstances in § 1.704(c) are

exemplary (and not exhaustive) to avoid always being one step behind such applicants.

As discussed above, the Office plans to calculate patent term adjustment with a computer program that uses the PALM system records of the dates of receipt and nature of applicant correspondence and of the dates of mailing and nature of Office actions or notices. This automated approach will not lend itself to basing a reduction of patent term adjustment on circumstances not enumerated in § 1.704(c) except in the most peculiar situations (*e.g.,* unsuccessfully seeking reconsideration or judicial review of a petition decision designated as final agency action). Finally, while the Office does not submit petition decisions for publication in the United States Patent Quarterly as a matter of course, the Office does post a variety of petition decisions on its Internet Web site (on the FOIA Web page, FOIA Reading Room (http://www.uspto.gov/web/offices/com/sol/foia/readroom.htm), Final Decisions of the Office of the Commissioner).

*Comment 20:* One comment argued that the reduction in § 1.704(c)(1) being equal to the time between the date a request for suspension of action under § 1.103 was filed and ending on the date the suspension was terminated should only be applied against any period where an adjustment is based (*e.g.,* against the three-year period).

*Response:* As discussed above, 35 U.S.C. 154(b)(2)(C)(i) provides that the Office shall reduce any term adjustment by the period of time in which applicant has failed to engage in reasonable efforts to conclude prosecution, regardless of whether the applicant's actions or inactions caused or contributed to patent term adjustment.

*Comment 21:* One comment stated that making the period of reduction in § 1.704(c)(2) equal to the time between the date a request for deferral from issuance is filed to the date of issue of the patent is unfair because it includes the time in which the patent is printed. Another comment argued that the period should only be used to reduce a period of adjustment under § 1.703(a)(6) and (b) (failure to issue a patent within four months of the issue fee and compliance with all formal requirements, and failure to issue a patent within three years of the filing date of the application).

*Response:* An applicant can avoid any reduction of patent term adjustment under § 1.703(c)(2) by refraining from requesting that the Office suspend or defer action in the application. An applicant who affirmatively seeks a

deferral of action by the Office should not complain that such a request has resulted in a reduction of any patent term adjustment due to administrative delays by the Office.

*Comment 22:* One comment stated that the proposal to make the period of reduction in § 1.704(c)(3) run from the date of abandonment to the date a favorable decision is mailed was unfair. The comment suggested that the applicant should not be charged with periods beyond four months from the date a petition is filed (as provided in proposed § 1.704(c)(15)).

*Response:* The suggestion is adopted to the extent described below. In many applications, the first-filed petitions to revive an application or to accept late payment is not grantable and further evidence, a terminal disclaimer or a fee is required before it can be granted. The Office of Petitions may call the applicant and request the necessary item, have the applicant send it by facsimile transmission, and then grant the petition on the same day. Section 1.704(c)(3) has been revised to state that the period of reduction will be the number of days, if any, beginning on the date of abandonment or the date after the date the issue fee was due and ending on the earlier of: (1) the date of mailing of the decision reviving the application or accepting late payment of the issue fee 1.703; or (2) the date that is four months after the date the grantable petition to revive the application or accept late payment of the issue fee was filed.

*Comment 23:* One comment argued that the periods of reduction in § 1.704(c)(3) and (c)(4) should be combined and that the period should be reinstated if the abandonment was not the fault of applicant. Another comment argued that a reduction should apply only if the abandonment was unintentional (not unavoidable).

*Response:* The suggestions are not adopted. The provisions of § 1.704(c)(3) relate to situations in which the application was in fact abandoned, but the abandonment was either unavoidable or unintentional (permitting revival of the application). If an application is not properly held abandoned (is not in fact abandoned), the applicant should not petition to revive under § 1.137, but should petition to have the (improper) holding of abandonment withdrawn. The provisions of § 1.704(c)(4) relate to where the holding of abandonment is withdrawn because applicant has shown, for example, that the application became abandoned because the Office mailed a communication to the incorrect address, or applicant did not

receive the communication. When a petition to withdraw the holding of abandonment is granted, the application is treated as never having been abandoned, but where an application is revived the period in which the application was abandoned is a failure to engage in reasonable efforts to conclude prosecution. Since the two concepts are different, they have been separated into separate paragraphs of § 1.704.

Section 1.704(c)(3) applies regardless of whether the abandonment was unavoidable or just unintentional (but not unavoidable). The abandonment of an application as a result of actions or inactions within the control of applicant (and outside the control of the Office) does not preclude a finding of unavoidable delay. *See, e.g., In re Lonardo,* 17 USPQ2d 1455 (Comm'r Pat. 1990)(delay caused by deception of applicant by applicant's representative); *Ex parte Pratt,* 1887 Dec. Comm'r Pat. 31 (1887)(delay caused by error by representative's clerical staff); *In re Katrapat, A.G.,* 6 USPQ2d 1863 (Comm'r Pat. 1988)(same). Such action, however, is still considered a failure to engage in reasonable efforts to conclude prosecution of the application.

*Comment 24:* Another comment argued that the reduction in § 1.704(c)(4) was unfair because it will generate a need for applicant to file a petition under § 1.705.

*Response:* The Office is mindful that if a petition to withdraw the holding of abandonment is granted, the Office's PALM system records should be checked to ensure that the correct term adjustment determination is made. As discussed above, applicants may check the Office's PALM system records for their applications through PAIR at http://pair.uspto.gov (and are encouraged to do so). For example, if applicant shows that a reply was filed in the Office on March 2, but the March 2 reply was never matched with the file, when the petition to withdraw the holding of abandonment is granted, the receipt of a paper on March 2 should be recorded on the Office's PALM system records. An applicant who receives a Notice of Abandonment and does not request that the holding be withdrawn within two months of the mailing date of the notice, however, is considered to have failed to engage in reasonable efforts to conclude prosecution and it is appropriate to use this period under § 1.704(c)(3) as a reduction.

*Comment 25:* One comment generally agreed with § 1.704(c)(4), but objected to a "blameless applicant" who never received a Notice of Abandonment experiencing a reduction in term

adjustment because they did not reply to the Notice within two months.

*Response:* The Office currently issues over 160,000 patents each year. The only practical way to perform the calculations required by the patent term adjustment provisions of 35 U.S.C. 154 (and its implementation regulations) is by a program using the information contained in the PALM system. If the patent term adjustment were to be manually calculated for each application, the time required for the term adjustment calculation could exceed the time required to otherwise process the application. In order to minimize the cost of the patent term adjustment determination and conserve resources for examination of the application (*e.g.,* the prior art search and a decision of whether the claims are patentable), it is imperative that as much of the computation be done using the Office's automated information systems. The computer program must rely upon the information in the Office's PALM system records for the dates of receipt of applicant correspondence and the dates of mailing of Office actions or notices and of the nature of such applicant correspondence and Office actions or notices. As discussed above, applicants may check the Office's PALM system records for their applications through the PAIR system at http://pair.uspto.gov (and are encouraged to do so).

*Comment 26:* Two comments argued that in § 1.704(c)(5), the reduction for conversion of a provisional application to a non-provisional application should only offset periods of adjustment in § 1.703(a)(1) and (b) (the fourteen-month and three-year provisions).

*Response:* 35 U.S.C. 154(b)(2)(C)(i) provides that the period of adjustment "shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution of the application." In any event, requesting conversion of a provisional application into a nonprovisional application is a poor choice for any applicant interested in maximizing patent term. *See Changes to Application Examination and Provisional Application Practice,* Interim Rule, 65 FR 14865, 14866 (Mar. 20, 2000), 1233 *Off. Gaz. Pat. Office* 47, 47 (Apr. 11, 2000). In addition, converting a provisional application into a nonprovisional application (rather than simply processing a nonprovisional application that claims the benefit of the provisional application's filing date) requires exception processing by the Office. As discussed above, applicants who prosecute applications in a manner that

requires exception handling by the Office have no complaint concerning the negative patent term impacts that result from their poor choices.

*Comment 27:* Several comments argued that the provisions of § 1.704(c)(6) reducing patent term adjustment for all the time taken by an applicant to complete the requirements of a patent application were an unfair penalty. The comments argued that there should be a relationship between the reduction and an adjustment, that the Office should be able to demonstrate that the actions of the applicant resulted in delays in examination of that application, and that it was not unreasonable to file an application as soon as possible and to file an executed oath or declaration, formal drawings or a translation of the application at a later date. Another comment argued that the provisions of § 1.704(c)(6) penalized an applicant for the Office's delay in assigning an application number. Another comment argued that it is better for the Office for the applicant to wait until a Notice to File Missing Parts of Application is received than for the applicant to file the missing parts after filing the application and without a copy of a Notice to File Missing Parts of Application, and that the reduction should be measured from the mailing date of the notice.

*Response:* The Office has revised § 1.704(c)(6), such that missing parts (missing filing fee, oath or declaration, and missing English language translation of a non-English language application) and application formalities (specification on papers in compliance with § 1.52, title and abstract in compliance with § 1.72, drawings in compliance with § 1.84, and sequence listings in compliance with § 1.821 *et seq.*) are treated under § 1.704(b). Thus, any patent term adjustment will be reduced if an applicant does not supply the missing part or correct the informality within three months of the Office action or notice requiring the missing part or correction of the informality.

*Comment 28:* One comment argued that 35 U.S.C. 154(b)(2)(C)(ii) provides that a reply filed within three months of the date of an Office action or notice setting forth a requirement should not result in any patent term adjustment penalty. The comment also argued that since the eighteen-month publication rules permit a redacted application to be filed up to sixteen months from the priority date, the requirement for papers to be filed for purposes any earlier than this date was not justified. Another comment argued that the provisions of

proposed § 1.704(c)(6) were too strict and that applicants should be given three months to complete formal requirements after receiving notice of the necessary formal requirements. The comment argues that a period of three months after the Office makes any rejection, objection or other request should be considered *prima facie* reasonable. Another comment argued that the period in which an applicant is considered to have "failed to engage in reasonable efforts" should begin with the date on which applicant is given notice of the defect.

*Response:* While the Office has revised § 1.704 such that missing parts and application formalities are treated under § 1.704(b) (as discussed above), this revision to § 1.704 is not required by the provisions of 35 U.S.C. 154(b)(2)(C). Since 35 U.S.C. 154(b)(2)(C)(iii) provides for the Office to prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application, 35 U.S.C. 154(b)(2)(C)(ii) cannot be considered exhaustive of the circumstances for which an applicant may be determined to have failed to engage in reasonable efforts to conclude processing or examination of an application. If the Office determines that treating missing parts and application formalities under § 1.704(b) is causing the Office to miss the time periods set forth in 35 U.S.C. 154(b)(1), the Office will need to reconsider its original proposal to treat missing parts and application formalities as a failure to engage in reasonable efforts to conclude processing or examination without regard to whether the applicant has been given a prior reminder or notice to supply the missing part or correct the informality.

As to the provisions for a redacted application to be filed up to sixteen months from the earliest priority date or filing date of the application, these provisions are not relevant to whether filing components of an application after the filing date of the application is a failure to engage in reasonable efforts to conclude processing or examination of an application. The timing of when a redacted application is filed is irrelevant to the prosecution of an application because the filing of a redacted copy of an application is completely unrelated to prosecution of the application.

*Comment 29:* One comment suggested that the missing parts practice in the Office of Initial Patent Examination (OIPE) be expanded to include examination of components required for

**56382**    **Federal Register**/Vol. 65, No. 181/Monday, September 18, 2000/Rules and Regulations

eighteen-month publication so as to minimize any term adjustment reductions.

*Response:* The Office plans to modify the review in OIPE to include items necessary for publication of applications.

*Comment 30:* Another comment argued that proposed § 1.704(c)(6) was in conflict with the diligence requirements of § 1.47 and frustrates a fundamental objective of patent law (*i.e.,* encouraging an applicant to file a patent application as soon as possible). The comment argues that because inventorship is not determined until the claims are finalized and because of the requirement for diligence under § 1.47, it is not possible to file a petition under § 1.47 for months after an application is filed.

*Response:* As discussed above, the Office has revised § 1.704 to eliminate proposed § 1.704(c)(6), such that missing parts (missing filing fee, oath or declaration, and missing English language translation) are treated under § 1.704(b), in that any patent term adjustment will be reduced if an applicant does not supply a missing filing fee, oath or declaration, or English-language translation within three months of the Office notice requiring the filing fee, oath or declaration, or English-language translation.

In the event that one or all of the inventors refuse to execute the oath or declaration, the Office cannot process the application for publication or examine the application until the party filing the application on behalf of the inventor(s) establishes that he or she is the appropriate applicant and that the requirements of 35 U.S.C. 116 and 118 have been met. Thus, if one or all of the inventors refuse to execute the oath or declaration, a grantable petition under § 1.47 must be filed within three months of the Office notice requiring an executed oath or declaration (*e.g.,* a Notice to File Missing Parts of Application (PTO–1533)) to avoid a reduction of any patent term adjustment under § 1.704(b). While the patent law does encourage the filing of a patent application as soon as possible (*e.g.,* to avoid a bar under 35 U.S.C. 102(b)), § 1.47 (35 U.S.C. 116 and 118) was not intended to give applicants a longer time to prepare an application for filing. *See Ex parte Sassin,* 1906 Dec. Comm'r Pat 205, 206 (1906).

*Comment 31:* Several comments argued that the provisions of proposed § 1.704(c)(7) unfairly discriminated against PCT applicants and ignored the legislative history of the Act. These comments suggested that the Office

should define, for purposes of patent term adjustment, the "actual filing date" as the date that all requirements for entry into the national stage are met. Another comment argued that the provisions of proposed § 1.704(c)(7) and (c)(8) undermine the benefits provided by the international phase procedure under the PCT. This comment also: (1) suggested that any period of patent term adjustment under the three-year pendency provision of 35 U.S.C. 154(b)(1)(B) be reduced by the number of days (if any) beginning on the date on which the national phase commences under 35 U.S.C. 371(b) or (f) and ending on the day the applicant completes the requirements for entry into the national phase; (2) observed that events that occur in the international phase advance prosecution because formalities are resolved, a search is conducted, and preliminary examination is begun; (3) argued that proposed § 1.704(c)(7) will force applicants to forgo their entitlements under the treaty or risk a reduction in a term adjustment, and that applicants under the PCT will be in a worse position than regular national applicants; and (4) noted that someone who files a "bypass" application (an application under 35 U.S.C. 111 claiming the benefit of the international application under 35 U.S.C. 120) instead of entering the national phase under 35 U.S.C. 371 will not have the international phase used as a reduction to any term adjustment. The comments also argued that the provisions of proposed § 1.704(c)(8) were unfair for the same reasons as stated for proposed § 1.704(c)(7). Finally, several comments requested clarification of, or made suggestions, for the language of proposed § 1.704(c)(7) and proposed § 1.704(c)(8).

*Response:* The Office is interpreting the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b)(1)(B) to mean the date the national stage commenced under 35 U.S.C. 371(b) or (f) in the case of an international application. The Office originally interpreted the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b)(1)(B) to mean the international filing date of the application under PCT Article 11(3) and 35 U.S.C. 363 in the case of an international application. *See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term,* 65 FR at 17220, 1233 *Off. Gaz. Pat. Office* at 113. Further consideration of this position, however, leads to the conclusion that: (1) the interpretation of the phrase "actual filing date of the application in the United States" in 35

U.S.C. 154(b)(1)(B) to be the filing date of the international application under PCT Article 11(3) and 35 U.S.C. 363 in the case of an international application is inconsistent with the legislative history of 35 U.S.C. 154(b)(1)(B) and is incongruous with the provisions of 35 U.S.C. 154(b)(1)(A)(i)(II) and (B)(iii); and (2) the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b)(1)(B) must mean the date the national stage commenced under 35 U.S.C. 371(b) or (f) in the case of an international application.

Without resort to guides to interpretation (*e.g.,* legislative history, other provisions of title 35, U.S.C., or the PCT), the phrase "actual filing date of the application in the United States" appears to mean that the three-year period specified in 35 U.S.C. 154(b)(1)(B) is measured from the date the application is actually filed (*i.e.,* physically received) in the United States Patent and Trademark Office. That is, the phrase "actual filing date of the application in the United States" appears to mean the date that the application itself is physically received in the United States Patent and Trademark Office, regardless of whether it is an application filed under 35 U.S.C. 111(a) or an international application filed under PCT Article 11.

As discussed above, the American Inventors Protection Act of 1999 was enacted into law as part of Pub. L. 106–113. The Conference Report for H.R. 3194 (which resulted in Pub. L. 106–113) does not contain any discussion (other than the incorporated language) of the American Inventors Protection Act of 1999 (title IV of S. 1948). *See* H.R. Conf. Rep. No. 106–497, at 37 and 1089–174 (1999). A section-by-section analysis of S. 1948, however, was printed in the Congressional Record at the request of Senator Lott. *See* 145 Cong. Rec. S14,708–26 (1999)(daily ed. Nov. 17, 1999). The section-by-section analysis explained that:

day-for-day restoration of term is granted if the [Office] has not issued a patent within three years after "the actual date of the application in the United States." This language was intentionally selected to exclude the filing date of an application under the Patent Cooperation Treaty (PCT). Otherwise, an applicant could obtain up to a 30-month extension of a U.S. patent merely by filing under PCT, rather than directly in the [Office], gaining an unfair advantage in contrast to strictly domestic applicants.

*See* 145 Cong. Rec. at S14,718.

The legislative history of 35 U.S.C. 154(b)(1)(B) is clear that the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b)(1)(B) does not mean (but was

intentionally selected to exclude) the date on which the international application was filed under the PCT. The interpretation of the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b)(1)(B) as meaning the filing date of the application under the PCT (PCT Article 11(3)) would defeat the plain intent of Congress to "exclude the filing date of an application under the [PCT]" and would permit (rather than avoid) the use of the PCT to give an applicant an advantage in obtaining a longer patent term adjustment compared to a similarly processed and examined application filed under 35 U.S.C. 111(a). Therefore, the interpretation of the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b)(1)(B) as not meaning the filing date of the application under the PCT (PCT Article 11(3)) is consistent with the legislative history of 35 U.S.C. 154(b)(1)(B).

In addition, interpretation of the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b)(1)(B) as meaning the filing date of the application under the PCT is incongruous with the provision in 35 U.S.C. 154(b)(1)(B)(iii). 35 U.S.C. 154(b)(1)(B) provides that if the pendency of an application is more than three years from the actual filing date of the application, the term of the patent issuing from the application shall be extended one day for each day after the end of the three-year period, but that certain time periods are excluded from the three-year period. 35 U.S.C. 154(b)(1)(B)(iii) specifically provides that time consumed by delays in the processing of the application by the Office requested by applicant are excluded from this three-year period. The interpretation of the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b)(1)(B) as meaning the "international filing date" under PCT Article 11(3) leads to the result that an applicant is able to obtain a delay in paying fees and filing papers and in the processing of the application by using the PCT (*MPEP* 1893), and obtain term adjustment based upon the three-year period being measured from the international filing date (*i.e.*, without the delay being excluded from the three-year period as with other applicant-elected delays). This result is incongruous with the provisions in 35 U.S.C. 154(b)(1)(B)(iii) that time consumed by delays in the processing of the application by the Office requested by applicant are excluded from this three-year period.

The interpretation of the phrase "actual filing date of the application in the United States" in 35 U.S.C.

154(b)(1)(B) as meaning the filing date of the application under the PCT is also incongruous with the provision in 35 U.S.C. 154(b)(1)(A)(i)(II) where a date later than the filing date of the application under the PCT is used. Each of 35 U.S.C. 154(b)(1)(A)(i) and 154(b)(1)(B) provide that an applicant may be entitled to patent term adjustment if the Office fails to take certain action within a specified time period: (1) provide at least one of an Office action under 35 U.S.C. 132 or notice of allowance under 35 U.S.C. 151 within fourteen months (35 U.S.C. 154(b)(1)(A)(i)); or (2) issue a patent within three years (35 U.S.C. 154(b)(1)(B)). For applications filed under 35 U.S.C. 111(a), the fourteen-month period begins with the filing date of the application (35 U.S.C. 154(b)(1)(A)(i)(I)), but for applications that enter the national stage under 35 U.S.C. 371, the fourteen-month period begins with the date on which the international application fulfilled the requirements of 35 U.S.C. 371 (35 U.S.C. 154(b)(1)(A)(i)(II)), which can be more than thirty months after the international filing date of the application.

As discussed above, Congress recognized that national processing of an international application is delayed by up to thirty months under the PCT filing system. Interpreting the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b)(1)(B) as meaning the filing date of the application under the PCT would require the conclusion that Congress considered the Office's failure to issue a patent within thirty-six months of the filing date of an international application under 35 U.S.C. 363 to constitute an unusual administrative delay (35 U.S.C. 154(b)(1)(B)), but did not consider the Office's failure to initially act on the application to be an unusual administrative delay unless the Office did not issue either an Office action under 35 U.S.C. 132 or notice of allowance under 35 U.S.C. 151 within forty-four (thirty plus fourteen) months of the filing date of an international application under 35 U.S.C. 363 (35 U.S.C. 154(b)(1)(A)(i)(II)). 35 U.S.C. 131 and 151, however, require the Office to examine an application and issue a notice of allowance under 35 U.S.C. 151 before issuing a patent on the application. Thus, the interpretation of the "actual filing date of the application in the United States" to mean the filing date under 35 U.S.C. 363 requires the conclusion that Congress intended an odd if not absurd result: that the Office is expected to be able to issue a patent

quicker (within thirty-six months of the filing date under 35 U.S.C. 363) than it is expected to be able to initially act on the application (within forty-four months of the filing date under 35 U.S.C. 363).

The legislative history of 35 U.S.C. 154(b)(1)(B) specifically indicates that Congress wanted to avoid the situation in which an applicant could gain an extension of "up to" thirty months merely by filing the application under the PCT system. *See* 145 Cong. Rec. at S14,718 ([o]therwise, an applicant could obtain up to a 30-month extension of a U.S. patent merely by filing under PCT, rather than directly in the [Office], gaining an unfair advantage in contrast to strictly domestic applicants). While 35 U.S.C. 154(b)(1)(A)(i)(II) ties its fourteen-month period to fulfillment of the requirements of 35 U.S.C. 371 in the case of an international application, the PCT and 35 U.S.C. 371 permit applicants to delay fulfillment of the requirements of 35 U.S.C. 371 beyond thirty months (rather than "up to" thirty months). The PCT (PCT Article 39(1)(a)), however, allows an applicant to obtain a delay of up to thirty months in commencement of the national stage (35 U.S.C. 371(b)) by the timely filing of a demand for international preliminary examination. Therefore, the legislative history of 35 U.S.C. 154(b)(1)(B) indicates that the phrase "actual filing date of the application in the United States" as used in 35 U.S.C. 154(b)(1)(B) means the date the national stage commenced under 35 U.S.C. 371(b) or (f) in the case of an international application.

In addition, while the international phase of an international application is not entirely devoid of activity, the Office does not (and cannot) begin examination of the application as provided for in 35 U.S.C. 131 and 132 until after it has entered that national stage of processing under 35 U.S.C. 371(b) or (f). *See* PCT Articles 23 and 40. Therefore, it is consistent with the legislative history of 35 U.S.C. 154(b) to not take the period prior to commencement of the national stage into account in determining whether the Office is meeting any of the time frames for examination of the application provided for in 35 U.S.C. 154(b)(1).

35 U.S.C. 363 does provide, in relevant part, that "[a]n international application designating the United States shall have the effect, from its international filing date under [PCT Article 11], of a national application for patent regularly filed in the [Office]." The legislative history of 35 U.S.C. 363 indicates that an international application designating the United

States, regardless of whether it was filed in this or any other contracting country, has the effect, from its international filing date, of a regular national application for patent filed in the United States Patent and Trademark Office, and that the international filing date of an international application would be considered as the actual filing date in the United States Patent and Trademark Office (except as provided in 35 U.S.C. 102(e)). *See* H.R. Rep. No. 94–592, at 9 (1975), *reprinted in* 1975 U.S.C.C.A.N. 1220, 1228. Nevertheless, the phrase "shall have the effect" of having an earlier filing date (the international filing date) as used in the patent statute does not necessarily mean that the actual filing date of the application is the earlier filing date (the international filing date). *See In re Hilmer,* 359 F.2d 859, 149 USPQ 480 (CCPA 1966) (discusses distinction in the patent statute between an actual filing date having the same effect of such a filing date).

In addition, PCT Article 11(3) provides, in relevant part, that "any international application fulfilling the requirements listed in [PCT Article 11(1)(i) through (iii)] and accorded an international filing date shall have the effect of a regular national application in each designated State as of the international filing date, which date shall be considered to be the actual filing date in each designated State." Read in conjunction with the provisions of PCT Article 11(3), the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b)(1)(B) might appear to mean the filing date of the international application under PCT Article 11(3) and 35 U.S.C. 363 in the case of an international application. Nevertheless, it is not appropriate to mechanically interpret the phrase "actual filing date of the application in the United States" in 35 U.S.C. 154(b) in light of PCT Article 11(3) when that interpretation is at odds with the legislative history of this provision of 35 U.S.C. 154(b)(1)(B) and the provisions of 35 U.S.C. 154(b)(1)(A)(i)(II) and (B)(iii).

The Office will continue to interpret the phrase "from the date on which the application for the patent was filed in the United States" in 35 U.S.C. 154(a)(2) (and former 35 U.S.C. 154(b)(3)(B)) as meaning the international filing date under PCT Article 11(3) and 35 U.S.C. 363 in the case of an international application.

If the phrase "actual filing date of the application in the United States" as used in 35 U.S.C. 154(b)(1)(B) were to be interpreted to mean any date other than the date the national stage commenced under 35 U.S.C. 371(b) or (f) in the case

of an international application, the Office would have to consider the failure to fulfill the requirements of 35 U.S.C. 371 to be a circumstance constituting a failure to engage in reasonable efforts to conclude prosecution (or processing or examination) of an application in an international application and reduce the period of any patent term adjustment by the period beginning on the "actual filing date of the application in the United States" of the application and ending on the date the application fulfilled the requirements of 35 U.S.C. 371. The interpretation of the phrase "actual filing date of the application in the United States" as used in 35 U.S.C. 154(b)(1)(B) to mean the date the national stage commenced under 35 U.S.C. 371(b) or (f) in the case of an international application, however, renders it unnecessary to provide that any period of patent term adjustment under the three-year pendency provision of 35 U.S.C. 154(b)(1)(B) be reduced by the number of days (if any) beginning on the date on which the national phase commences under 35 U.S.C. 371(b) and ending on the day the applicant completes the requirements for entry into the national phase. After commencement of national stage processing, delays in fulfilling the requirements of 35 U.S.C. 371 will be treated under § 1.704(b).

Finally, the interpretation of the phrase "actual filing date of the application in the United States" as used in 35 U.S.C. 154(b)(1)(B) to mean the date the national stage commenced under 35 U.S.C. 371(b) or (f) in the case of an international application, rather than establishing the failure to fulfill the requirements of 35 U.S.C. 371 as a circumstance constituting a failure to engage in reasonable efforts to conclude prosecution (or processing or examination) of an application, will not force applicants to forgo their entitlements under the treaty or risk a reduction in a term adjustment, and will place PCT applicants in a similar position to "regular" national applicants or applicants who chose to file a "bypass" application (an application under 35 U.S.C. 111 claiming priority under 35 U.S.C. 120 to the international application) instead of entering the national phase under 35 U.S.C. 371.

*Comment 32:* Several comments argued that the formalities covered by proposed § 1.704(c)(9) (which subjects an applicant to reduction of any term adjustment if, for example, the application papers cannot be scanned, an abstract is not submitted or does not comply with the rules, printable drawings are not filed or a sequence

listing is not filed in appropriate computer readable form) usually do not delay examination. The comments also expressed concern that the defect would not be objected to in initial examination, and only later by the patent examiner. The comments argue that there should be no failure to engage reduction if the defect is not noted during initial examination, especially if the defect only arises after a restriction requirement which makes a revision to the title, for example, necessary. Several comments alleged that the proposed § 1.704(c)(9) required formal drawings to be included on filing.

*Response:* The Office has revised § 1.704 such that application formalities (specification on papers in compliance with § 1.52, title and abstract in compliance with § 1.72, drawings in compliance with § 1.84, and sequence listings in compliance with § 1.821 *et seq.*) are treated under § 1.704(b). Thus, any patent term adjustment will be reduced if an applicant does not correct the informality within three months of the Office action or notice requiring the missing part or correction of the informality.

*Comment 33:* One comment argued that the reduction in proposed § 1.704(c)(10) (§ 1.704(c)(6) as adopted) was excessive because there was no requirement for the Office to treat the preliminary paper within a set time. The comment argues that any time beyond one month from the filing of the preliminary amendment for the Office to issue a supplemental action should not be considered a failure to engage in reasonable efforts to conclude processing of an application. One comment argued that the proposal left an "immense loophole for unlimited PTO delay" and suggested that any reduction be limited to the lesser of (a) the proposed period or (b) the sum of (i) the time between the original Office action and the request for a supplement action plus (ii) the lesser of four months and the time between the filing of the request and the issuance of the supplemental action. Another comment argued that the reduction should be limited to four months.

*Response:* Section 1.704(c)(6) as adopted provides that the period of adjustment set forth in § 1.703 shall be reduced by the lesser of the number of days, if any, beginning on the mailing date of the original Office action or notice of allowance and ending on the date of mailing of the supplemental Office action or notice of allowance or **four months** (emphasis added). An applicant filing a preliminary amendment or other paper at a time close to when a first Office action is

expected is encouraged to check with the Office (e.g., through PAIR at http://pair.uspto.gov) before mailing in the paper. If the application is charged to a patent examiner, the examiner should be informed of the paper and the paper should be submitted to the examiner by facsimile transmission in order to reduce the likelihood of the examiner having to issue a supplemental Office action.

Applicants do not generally ask the Office to issue a supplemental Office action and § 1.704(c)(6) is not directed to this situation. Instead, § 1.704(c)(6) is directed to the situation, for example, in which an amendment is filed in February and then a supplemental amendment is filed in March, but is not in the file when the examiner prepares a reply in April. If the examiner then prepares another Office action in May to treat the March amendment, the reduction under § 1.704(c)(6) would be one month, the time between the April Office action and the May Office action.

*Comment 34:* As to proposed § 1.704(c)(11) (§ 1.704(c)(7) as adopted), the proposal that patent term adjustment will be reduced for the time period between submission of an initial reply and a reply in compliance with § 1.135(c) was criticized as creating an incentive for the examiner to find a reply non-responsive when a four-month deadline is not met. The comment suggests that other options be considered, including setting an upper limit of four months for this situation.

*Response:* Patent examiner performance plans hold examiners responsible for acting on applications within specified time frames. Patent examiner performance plans, however, do not hold examiners responsible for the patent term adjustment that may result in their applications. Thus, an examiner should not be overly mindful of the patent term adjustment implications of their actions. If a reply is filed that does not address each and every objection, rejection or other requirement made by the examiner, then the reply is not responsive to the Office action and the time between the filing of the incomplete reply and the date the omission was supplied is the period of time in which applicant's actions resulted in the Office not being able to complete processing or examination of the application.

While Office practice is to treat a *bona fide* but non-responsive reply by issuing a notice setting a one-month (or thirty-day) period for reply and permitting applicants to obtain up to five additional months under § 1.136(a), the Office could have changed this practice (as part of implementing the patent term

adjustment provisions of the American Inventors Protection Act of 1999) to set a one-month (or thirty-day) non-extendable period for supplying omissions in a reply. The Office elected to retain the relatively liberal practice for treating such non-responsive replies. To provide applicants with this extended period within which to supply an omission, however, the Office must provide that any patent term adjustment will be reduced by the period of time between the date the incomplete reply was filed and the date the omission was supplied. Since both the filing of a reply that is complete and the filing of any supplement necessary to a reply having an omission are within the control of the applicant, there is no need for a four-month upper limit.

*Comment 35:* As to proposed § 1.704(c)(12) (§ 1.704(c)(8) as adopted), one comment argued that the submission of supplemental replies should not be construed as a failure to engage in reasonable efforts because sometimes the supplemental reply expedites resolution of the issues.

*Response:* Section 1.704(c)(8) as adopted contains an exclusion for "a supplemental reply or other paper expressly requested by the examiner." Thus, a supplemental reply or other paper expressly requested by the examiner (e.g., a supplemental amendment carrying into effect agreements reached between the applicant and the examiner) will not be considered a failure to engage in reasonable efforts to conclude processing or examination of an application, where the filing of a supplemental reply or other paper that was not expressly requested by the examiner will be considered a failure to engage in reasonable efforts to conclude processing or examination of an application.

*Comment 36:* Several other comments addressed proposed § 1.704(c)(12), arguing that an information disclosure statement filed within three months of applicant learning of the prior art should not be construed as a failure to engage in reasonable efforts because this event is beyond the control of the applicant.

*Response:* The filing of an information disclosure statement (or supplemental reply) after the filing of a reply will significantly interfere with the Office's ability to meet the time frame set forth in 35 U.S.C. 154(b)(1)(A)(ii) and 154(b)(1)(B) and § 1.702(a)(2) and (b). Nevertheless, the Office considers it appropriate to permit applicants to submit information cited in a communication from a foreign patent office in a counterpart application to the

Office without a reduction in patent term adjustment if an information disclosure statement is submitted to the Office within thirty days (not three months) of the date the communication from the foreign patent office was received by an individual designated in § 1.56(c). While this time period is considerably shorter than the three-month period provided in § 1.97(e), a non-extendable thirty-day time period is necessary to avoid substantial interference with the time frame imposed on the Office by 35 U.S.C. 154(b)(1)(A)(ii).

*Comment 37:* One comment argued that proposed § 1.704(c)(12) would result in a request for filing an assignment being used to reduce the period of adjustment.

*Response:* Assignment papers should be mailed to BOX ASSIGNMENT and should not be placed into an application file. *See MPEP* 303. As a result, the filing of a cover sheet for an assignment and an assignment would not be used in the patent term adjustment determination. Furthermore, a Notice of Non-Recordation (*MPEP* 302.09) is not a notice related to the processing or examination of a patent application and will not be used in the patent term adjustment determination.

*Comment 38:* Several comments stated that it was manifestly unfair for a term adjustment to be reduced by the time between filing a notice of appeal and the appeal brief in proposed § 1.704(c)(13). Several of these comments suggested that the time between two months after the notice of appeal and filing of the appeal brief be used as a failure to engage reduction. One of the comments suggested that applicants be given at least one month between notice of appeal and filing of the appeal brief before further delays begin to be considered a failure to engage. Another comment argued that proposed § 1.704(c)(13) was unfair because a notice of appeal is a desirable means of avoiding paying extension of time fees. The comment further argued that if the appeal is successful, the time taken to file an appeal brief should not be considered a failure to engage in reasonable efforts to conclude processing or examination of the application unless more than a reasonable amount of time is taken to file the appeal brief. Several comments suggested that the taking of an appeal begins with the filing of the appeal brief and not with the filing of a notice of appeal. One of these comments stated that the Office's treating an appeal as having been taken when the notice of appeal is filed but reducing any patent term adjustment by the period between

the filing of the notice of appeal and the filing of an appeal brief will have the effect of having the relevant four-month period run from the filing of the appeal brief and probably reached the result Congress intended, but indicated that such a practice will create client-relation difficulty.

*Response:* The Office is interpreting the phrase "the date on which" an "appeal was taken" in 35 U.S.C. 154(b)(1)(A)(ii) as the date an appeal brief in compliance with § 1.192 was filed. The Office originally interpreted the phrase "the date on which" an "appeal was taken" in 35 U.S.C. 154(b)(1)(A)(ii) to mean the date a notice of appeal to the Board of Patent Appeals and Interferences under 35 U.S.C. 134 and § 1.191 was filed. *See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term,* 65 FR at 17217, 1233 *Off. Gaz. Pat. Office* at 111. The Office has reconsidered this interpretation of the phrase "the date on which" an "appeal was taken" in 35 U.S.C. 154(b)(1)(A)(ii).

Neither the patent statute nor the rules of practice provide any definition (or antecedent basis) for the phrase "appeal was taken" so as to signify whether "the date on which" an "appeal was taken" means the date a notice of appeal to the Board of Patent Appeals and Interferences under 35 U.S.C. 134 and § 1.191 was filed, or whether it means the date the documents and fees from applicant (*i.e.,* an appeal brief in compliance with § 1.192) that are necessary for the appeal to go forward (or be "taken") to the Board of Patent Appeals and Interferences was filed. Therefore, it is necessary to resort to the context of this provision within the scheme of 35 U.S.C. 154(b)(1) and legislative history of 35 U.S.C. 154(b) to ascertain the meaning of this phrase.

The interpretation of the phrase "the date on which" an "appeal was taken" as meaning the date a notice of appeal to the Board of Patent Appeals and Interferences under 35 U.S.C. 134 and § 1.191 was filed (rather than the date an appeal brief in compliance with § 1.192 was filed) is not consistent with the scheme of 35 U.S.C. 154(b)(1) (A) and (B). Both 35 U.S.C. 154(b)(1) (A) and (B) set forth an objective time clock system. 35 U.S.C. 154(b)(1)(A) sets forth an objective clock system that measures the time taken by the Office to perform certain acts of examination when such actions are expected in response to actions by the applicant (*e.g.,* the filing of an application, reply to an Office action, payment of the issue fee) by the applicant, where 35 U.S.C. 154(b)(1)(B) sets forth an objective clock system that measures

overall time taken by the Office to issue the patent.

The Office is not expected to respond to the filing of a notice of appeal to the Board of Patent Appeals and Interferences under 35 U.S.C. 134 and § 1.191 unless and until the applicant files the documents and fees (*i.e.,* an appeal brief in compliance with § 1.192) necessary for the appeal to go forward (or be "taken") to the Board of Patent Appeals and Interferences. Since this provision is included as part of the clock system of 35 U.S.C. 154(b)(1)(A) that measures the time taken by the Office to perform certain acts of examination when such actions are expected in response to actions by the applicant (rather than the overall clock system of 35 U.S.C. 154(b)(1)(B)), it would be inconsistent with the scheme of 35 U.S.C. 154(b)(1) (A) and (B) to have the four-month period in 35 U.S.C. 154(b)(1)(A)(ii) run at a time (between the filing of a notice of appeal to the Board of Patent Appeals and Interferences under 35 U.S.C. 134 and § 1.191 and the filing of an appeal brief in compliance with § 1.192) when the Office is not expected to perform any action in the application.

The interpretation of the phrase "the date on which" an "appeal was taken" as meaning the date a notice of appeal to the Board of Patent Appeals and Interferences under 35 U.S.C. 134 and § 1.191 was filed (rather than the date an appeal brief in compliance with § 1.192 was filed) is also not consistent with the legislative history of 35 U.S.C. 154(b). As discussed above, the provisions in 35 U.S.C. 154(b) (A) and (B) for patent term adjustment on the bases of administrative delays in acting on an application or issuing a patent evolved from legislation introduced in the 104th Congress. *See Patent Application Publication Act of 1995,* H.R. 1733, 104th Cong. (1995). Section 8 of H.R. 1733 simply provided for patent term adjustment (or extension) for "an unusual administrative delay," and authorized the Office to "prescribe regulations to govern the determination of the period of delay and the particular circumstances deemed to be an unusual administrative delay" (35 U.S.C. 154(b)(1)(D)).

The Office proposed to implement this provision of H.R. 1733 through a three-prong objective time clock for certain actions by the Office to determine whether there was "an unusual administrative delay" by the Office. Specifically, the Office proposed to define "an unusual administrative delay" by the Office as failure to: (1) act on a reply under § 1.111 or appeal brief under § 1.192 within six months of the

date it was filed; (2) act on application with six months of the date of a decision under § 1.196 by the Board of Patent Appeals and Interferences where claims stand allowed in an application or the nature of the decision requires further action by the examiner (§ 1.197); or (3) issue a patent within six months of the date the issue fee was paid or all outstanding requirements were satisfied, whichever is later. *See Changes to Implement 18-Month Publication of Patent Applications,* Notice of Proposed Rulemaking, 60 FR 42352, 42369–70, 42385–86 (Aug. 15, 1995), 1177 *Off. Gaz. Pat. Office* 61, 76–77, 91–91 (Aug. 15, 1995].

The 104th Congress replaced H.R. 1733 with H.R. 3460. *See Moorhead-Schroeder Patent Reform Act,* H.R. 3460, 104th Cong. (1996). The patent term adjustment provisions of H.R. 3460 were based upon the objective time clock system proposed by the Office in August of 1995, with two modifications: (1) an additional fourth prong (now the first prong) was added to also define "an unusual administrative delay" by the Office as failure to initially act on an application within fourteen months of its filing date; and (2) the six-month time periods were shortened to four months in the remaining three prongs which correspond to the three prongs proposed by the Office. *See* H.R. Rep. No. 104–784, at 19 and 33 (1996). There is nothing in the Committee Report for H.R. 3460 to indicate that Congress intended the four-month period in the second prong of the objective time clock to run from the date a notice of appeal to the Board of Patent Appeals and Interferences under 35 U.S.C. 134 and § 1.191 was filed, rather than the date an appeal brief under § 1.192 was filed (as proposed by the Office), with regard to measuring whether the time taken by the Office to respond to an appeal constituted "an unusual administrative delay" by the Office.

While 35 U.S.C. 154(b) as ultimately amended by the 106th Congress in Pub. L. 106–113 differs dramatically from 35 U.S.C. 154(b) as it would have been amended by H.R. 3460, the language of 35 U.S.C. 154(b)(1)(A)(ii) as enacted is identical to the language of 35 U.S.C. 154(b)(1)(B)(ii) (the corresponding provision) in H.R. 3460. Since this objective clock system of 35 U.S.C. 154(b)(1)(A) tracks the objective time clock system proposed by the Office in August of 1995, and there is nothing in the legislative history of 35 U.S.C. 154(b) to indicate that Congress meant to alter this prong of the objective time clock (such that the time period would run from the date a notice of appeal to the Board of Patent Appeals and

Interferences under 35 U.S.C. 134 and § 1.191 was filed rather than the date an appeal brief under § 1.192 was filed), it is reasonable to conclude that Congress intended the phrase "the date on which" an "appeal was taken" in 35 U.S.C. 154(b)(1)(A)(ii) to mean the date an appeal brief under § 1.192 was filed.

*Comment 39:* As to proposed § 1.704(c)(14) (§ 1.704(c)(9) as adopted), several comments argued that the comments raised against proposed § 1.704(c)(10) were also relevant. One comment argued that the period defined by the rule was not within the control of the applicant and that an upper limit for the period of adjustment (*e.g.*, four months) should be set.

*Response:* Section 1.704(c)(9) as adopted provides that adjustment set forth in § 1.703 shall be reduced by the lesser of the number of days, if any, beginning on the day after the mailing date of the original Office action or notice of allowance and ending on the mailing date of the supplemental Office action or notice of allowance or four months (emphasis added).

*Comment 40:* Another comment addressed proposed § 1.704(c)(14) (§ 1.704(c)(9) as adopted), stating that the term "designated" in the phrase "[s]ubmission of an amendment or other paper after a decision of the Board of Patent Appeals and Interferences, other than a decision designated as containing a new ground of rejection under § 1.196(b) or a statement under § 1.196(c)" should not be used to arbitrarily deny term adjustment.

*Response:* The phrase from § 1.704(c)(9) as adopted addressed in this comment explains that a paper filed in reply to a new ground of rejection will not be used to reduce a term adjustment. Applicants will be able to timely reply to a Board of Patent Appeals and Interferences decision containing a new ground of rejection under § 1.196(b) without a reduction of patent term adjustment.

*Comment 41:* Several comments objected to the reference to "or other paper" in proposed § 1.704(c)(15) (§ 1.704(c)(10) as adopted) because a paper filed to correct an examiner's amendment or to request a copy of a PTO-1449 should not be construed as a failure to engage in reasonable efforts to conclude prosecution. One comment suggested instead that only an amendment requiring further examination should be listed under this section.

*Response:* In order to be able to perform the patent term adjustment calculation at the time of mailing the Notice of Allowance, the Office needs to have the calculation performed by a computer program using the Office's records of papers mailed and received as recorded in its PALM system. The PALM system is simply not capable of making value judgments concerning papers filed after allowance. In any event (as discussed above), all papers filed after allowance of an application substantially delay the Office's ability to process an application for a patent because the Office does not wait for payment of the issue fee to begin the process of preparing the application for publication as a patent. Section 1.704(c)(10) as adopted should deter applicants from filing papers after allowance which should have a beneficial impact upon the Office's ability to publish applications as patents more quickly.

Applicants can avoid this reduction being applied to applicant's attempts to correct the record by making a telephone request for a missing copy of a PTO-1449 or other document as soon as possible after receipt of the Notice of Allowance. As to information disclosure statements filed after allowance, pursuant to § 1.704(d) an information disclosure statement citing prior art cited in a communication from the foreign patent office in a counterpart application and filed within thirty days of the communication from the foreign patent office will not reduce the term of any adjustment if the required certification is made. In addition, a status inquiry filed after allowance may result in a reduction of the term adjustment. Applicants are encouraged to either call the Office or use the PAIR system (http://pair.uspto.gov) to monitor the status of an application rather than submitting written status inquiries.

*Comment 42:* One comment argued that proposed § 1.704(c)(16) (§ 1.704(c)(11) as adopted) was unnecessary because time periods before the filing date of an application are not relevant to patent term adjustment and do not constitute delays in the prosecution of the application. Another comment asked whether applicant delays in a prior application would reduce the patent term adjustment in a continuation application.

*Response:* Delays before the filing date of an application are not relevant to whether an application is entitled to patent term adjustment, but the provision is considered necessary to remind applicants of this. Likewise, patent term adjustment will not be reduced by applicant actions or inactions (that amount to a failure to engage in reasonable efforts to conclude processing or examination of the application) occurring in a prior (or other) application.

*Comment 43:* Section 1.705(a) states that the notification of any patent term adjustment under 35 U.S.C. 154(b) will be included on the notice of allowance. One comment asked whether a registered practitioner has an ethical duty to disclose to the Office when the term adjustment indicated is longer period than expected. The comment continues to ask whether attorneys have a similar duty to inform the Office when an examiner indicates subject matter as being allowable with a scope broader than it should be. Finally, the comment asks whether the ethical obligation would be any different if the pre-printed Office form is not used to pay the issue fee and an attorney-generated form is used instead.

*Response:* The Office currently issues a notice of allowance using the Notice of Allowance and Issue Fee Due (PTOL-85). The Notice of Allowance and Issue Fee Due (PTOL-85) is printed in several parts and one part (PTOL-85B) may be returned with the issue fee payment in order to communicate the assignee and attorney data to be printed on the face of the patent. A registered practitioner is under a general obligation of candor and good faith in practice before the Office. Accordingly, if an examiner suggests claims that the attorney knows are not patentable, § 10.18 precludes the attorney from adopting the examiner's suggestions in an amendment. Similarly, a practitioner signing the PTOL-85B does so pursuant to § 10.18, which means, for example, that if assignee data is provided on the PTOL-85B, the assignee is an assignee of the entire interest in the application, and that the patent term adjustment is correct to the best of his or her knowledge, information and belief, formed after an inquiry reasonable under the circumstances. For example, if a registered practitioner receives determination that the application is eligible for a 1,500 day adjustment and the practitioner is not sure exactly what the adjustment should be, but believes that the adjustment should be 1,000 days, the practitioner does have a duty to disclose the error to the Office, regardless of whether the issue fee is paid using the Office-generated form (PTOL-85B) or an attorney-generated equivalent. In order to comply with this duty and where the correct adjustment is thought to be less than indicated by the Office, an application for term adjustment under § 1.705(b) need not be filed. Instead, a letter could be filed with the issue fee payment, indicating that the term adjustment is thought to be longer than appropriate.

*Comment 44:* As to § 1.705(a) one comment asked if the patent term adjustment would be printed in the Official Gazette.

*Response:* The Office has no plans at this time to add the patent term adjustment to the information printed in the Official Gazette.

*Comment 45:* As to § 1.705(b), one comment noted that the reference to § 1.704(b) should be a reference to § 1.704.

*Response:* The suggestion has been adopted in part. The reference to § 1.704(b) has been changed to a reference to § 1.704(a). Section 1.704(a) states that a patent term adjustment shall be reduced by the period of time in which applicant has failed to engage in reasonable efforts to conclude prosecution whereas § 1.704(b) and (c) define when an applicant is determined to have failed to act in such a manner.

*Comment 46:* As to § 1.705(b), one comment stated that the amount of detail of how the patent term adjustment calculation is made was not stated and urged that the Office provide information as to patent term adjustment which applicants can check as an application is prosecuted. One comment asked that a copy of the patent term adjustment worksheet be included with the patent term adjustment determination.

*Response:* The Office does plan to provide information as to how the patent term adjustment calculation has been made through PAIR at http://pair.uspto.gov. This system is now available to all patent applicants who have a customer number. The precise information that will be communicated, and when this information will be available has not yet been determined.

*Comment 47:* One comment asked that the software algorithm for the patent term adjustment determination be made available to the public before being implemented.

*Response:* The computer program written to perform the patent term adjustment determinations of 35 U.S.C. 154 as amended will be written for the Office mainframe computer using the PALM records. It is not anticipated that this software will be capable of being used on another computer. Accordingly, the computer codes are unlikely to be understood by someone outside of the Office. Moreover, the Office does not plan to initially launch a computer program that will perform all necessary patent term adjustment determination, but instead plans to add to the program in stages until it is fully functional. For example, the first patents to be eligible for term adjustment will be when the

Office fails to issue a patent within four months of payment of the issue fee and compliance with all formal requirements. This is unlikely to occur before February of 2001. Accordingly, the first stage of the computer program should be running by November of 2000 to generate a report with the Issue Notification if this four-month deadline is missed. On the other hand, the last part of the program (failing to issue a patent within three years of the filing date of the application) cannot take place before May 29, 2003, and this final stage of the program is not anticipated to be operational until after the remainder of the programming has been completed.

*Comment 48:* One comment argued that applicants should be able to address patent term adjustment with the filing of a reply to an Office action.

*Response:* Although 35 U.S.C. 154(b)(3)(C) states that a showing that the delay was in spite of all due care may be filed prior to the issuance of the patent, the general framework of the 35 U.S.C. 154(b)(3) has the Office first making a patent term adjustment determination and then applicant filing a request for reconsideration of the Office's determination (*i.e.*, an application for term adjustment). Since the initial patent term adjustment determination will be made by the Office's computer system with the mailing of the Notice of Allowance and Issue Fee Due, applicant should file any showing explaining the reasons for a delay with any request for reconsideration of this determination so that the showing can be considered with the request for reconsideration.

In addition, the reinstatement provision of 35 U.S.C. 154(b)(3)(C) applies, by its terms, only to reductions under § 1.704(b) because the reductions under § 1.704 (c)(1) through (c)(11) are not based upon failure to reply to an Office action or notice within three months. Thus, reinstatement of reduced patent term adjustment under 35 U.S.C. 154(b)(3)(C) on the basis of a showing that the delay was in spite of all due care is relevant only if: (1) one of the delays specified in 35 U.S.C. 154(b)(1) (A) through (C) occurred during the application process processing; and (2) patent term adjustment accruing as a result of such delay survives the reductions under § 1.704 (c)(1) through (c)(11). Thus, the Office is requiring that applicants not address patent term adjustment until the Office makes its initial patent term adjustment determination in the notice of allowance to avoid unnecessary expenditures of resources by applicants and the Office

in preparing and handling submissions that turn out to be irrelevant.

*Comment 49:* As to § 1.705(b), several comments asked how the procedure for a request for reconsideration of the term adjustment due to the patent issuing on a date other than the projected issue date will operate. One comment argued that the thirty-day time period was too short and that a three-month time period would be more suitable.

*Response:* The Office is restricted by the provisions of 35 U.S.C. 154(b)(4)(A) which provide that an applicant dissatisfied with a patent term adjustment determination has 180 days to file a civil action against the Office. In order for the Office to treat the request for reconsideration in sufficient time for the applicant to determine whether court review of the Office's determination is appropriate, the Office must require that the request for reconsideration be filed within thirty days of patent grant. The Office does, however, mail an Issue Notification about two weeks before the issue date of the patent and plans to revise the Issue Notification to include the patent term adjustment information that will be printed on the face of the patent, so applicants will (in most situations) have about forty-five days from the date of this Notice to prepare a request for reconsideration.

*Comment 50:* Also as to § 1.705(b), one comment asked if the revised patent term adjustment would be printed on the patent, and asked how a third party would obtain information about any revision to the patent term adjustment.

*Response:* Any petition requesting reconsideration of a patent term adjustment and a decision thereon would be placed into the patent file wrapper and would therefore be available to the public. In addition, the Office is considering establishing procedures where the Office will issue a certificate of correction to add or correct patent term adjustment information printed on the face of the patent, after a decision on a request for reconsideration of a patent term adjustment determination. After the certificate of correction has issued, the Office is considering publishing an Official Gazette Notice of the revised term adjustment determination for the patent.

*Comment 51:* As to § 1.705(c), one comment suggested that the Office should issue guidelines on how the "in spite of all due care" provisions of 35 U.S.C. 154(b)(3)(C) will be interpreted. Another comment argued that the term "reasonable efforts" is more liberal than the term "due diligence" under old 35 U.S.C. 154(b) which was abandoned by

Congress. The comment argued that events that should not be treated as a failure to engage in reasonable efforts to conclude prosecution include: (1) filing of responses after three months accompanied by a submission under the procedures of § 1.132 where reasonable efforts to prepare the submission are shown; (2) periods of time when applicant's attorney is engaged in *inter partes* matters relating to pending lawsuits and interferences and other matters on his/her professional calendar which are appropriately given priority; (3) illness, vacations of reasonable length, and other appropriate reasons for non-attention to an application that occur in everyday life of applicants and attorneys, and (4) time consumed in communications between the applicant, the applicant's foreign agent and the applicant's U.S. representative when the applicant does not reside in the United States.

*Response:* Filing a response outside of three months after an Office action is *per se* a failure to engage in reasonable efforts to conclude prosecution under 35 U.S.C. 154(b)(2)(C)(ii) unless applicant can establish that the delay was "in spite of all due care." The Office "shall reinstate all or part of the cumulative period of time of an adjustment reduced under [35 U.S.C. 154(b)(2)(C)] if the applicant * * * makes a showing that, in spite of all due care, the applicant was unable to respond within the 3-month period * * * ." *See* 35 U.S.C. 154(b)(3)(C) (emphasis added). The "due care" of a reasonably prudent person standard has been applied in deciding petitions under the "unavoidable delay" standard of 35 U.S.C. 133. *See In re Mattullath*, 38 App. D.C. 497, 514–15 (1912)("the word 'unavoidable' * * * is applicable to ordinary human affairs, and requires no more or greater care or diligence than is generally used and observed by prudent and careful men in relation to their most important business") (quoting and adopting *Pratt*, 1887 Dec. Comm'r Pat. at 32–33); *see also Ray v. Lehman*, 55 F.3d 606, 609, 34 USPQ2d 1786, 1787 (Fed. Cir. 1995) ("in determining whether a delay * * * was unavoidable, one looks to whether the party * * * exercised the due care of a reasonably prudent person"). While the legislative history of the American Inventors Protection Act of 1999 is silent as to the meaning of the phrase "in spite of all due care," the phrases "all due care" and "unable to respond" invoke a higher degree of care than the ordinary due care standard of 35 U.S.C. 133, as well as the "reasonable efforts to conclude processing or examination [or prosecution] of an application" standard of 35 U.S.C. 154(b)(2)(C)(i) and (iii). Therefore, applicants should not rely upon decisions relating to the "unavoidable delay" standard of 35 U.S.C. 133 as controlling in a request to reinstate reduced patent term adjustment on the basis of a showing that the applicant was unable to respond within the three-month period in spite of all due care.

Examples of showings that may establish that the applicant was unable to respond within the three-month period in spite of all due care are as follows: (1) a showing that the original three-month period was insufficient to obtain the test data necessary for an affidavit or declaration under § 1.132 that was submitted with a reply filed outside the original three-month period; (2) a showing that the applicant was unable to reply within the original three-month period due to a natural disaster; or (3) a showing that the applicant was unable to reply within the original three-month period due to illness or death of a sole practitioner of record who was responsible for prosecuting the application. Obviously, the patent term adjustment term reinstated would be limited to the period in which the showing establishes that applicant was acting with all due care to reply to the Office notice or action, but circumstances (outside applicant's control) made applicant unable to reply in spite of such due care.

An applicant will not be able to show that he or she was unable to respond within the three-month period "in spite of all due care" if the response was not filed within the three-month period due to reasons within the control of applicant or agencies within the applicant's control. Examples of circumstances that would not establish that the applicant was unable to respond within the three-month period in spite of all due care are: (1) an applicant's or representative's preoccupation with other matters (e.g., an *inter partes* lawsuit or interference) that is given priority over the application; (2) illness or death of the practitioner in charge of the application if the practitioner is associated (in a law firm) with other practitioners (since the other practitioners could have taken action to reply within the three-month period); (3) time consumed with communications between the applicant and his or her representative, regardless of whether the applicant resides in the United States or chooses to communicate with the United States representative via a foreign representative; (4) vacation or other non-attention to an application that results in a failure to reply within the three-month period; (5) applicant filing a reply on or near the last day of the three-month period using first class mail with a certificate of mailing under § 1.8, rather than by Express Mail under § 1.10 or facsimile (if permitted), and the reply is not received (filed) in the Office until after the three-month period; or (6) failure of clerical employees of applicant or applicant's representative to properly docket the Office action or notice for reply or perform other tasks necessary for reply within the three-month period.

Rarely is the power of attorney given to a single attorney and often many attorneys are given power of attorney in an application. An attorney in litigation, working on an interference or taking a vacation is generally aware of that fact before the event and should make plans for another to take over his work so that it is completed and filed in the Office within the three-month period. Thus, failure to reply within the three-month period in 35 U.S.C. 154(b)(2)(C)(ii) due to preoccupation with other matters (e.g., an *inter partes* lawsuit or interference) given priority over the application, or vacation or other non-attention to an application, cannot be relied upon to show that applicant was unable to reply "in spite of all due care" under 35 U.S.C. 154(b)(3)(C).

As to communications between an applicant and others involved in preparing a reply, the attorney's engagement letter with his or her client should impress the importance of reply within three months of any Office action or notice. The letter should also carefully explain to the client that while extensions of time are generally available to reply to Office actions and notices, not only will applicant have to bear the cost of the extension but is likely to experience a reduction in any patent term adjustment as well.

*Comment 52:* As to § 1.705(d), one comment stated that there was no provision in the rules for the patent to be printed with the patent term adjustment information thereon. Another comment asked how the public would be notified of a successful request for reconsideration of the term adjustment due to the patent issuing on a day other than a date projected.

*Response:* Patents filed on or after June 8, 1995, are eligible for term adjustment for certain delays and the patent is printed with the term adjustment information printed thereon in the field below the inventor name. If for some reason the patent is not printed with the term adjustment or is printed with the incorrect adjustment, the Office procedure is to inform the patentee of

the error and to issue a Certificate of Correction if no objection is received. The Office plans to continue to print any term adjustment on the front page of the patent, and to issue a Certificate of Correction if the term adjustment is printed incorrectly.

*Comment 53:* One general comment was received that with patent term adjustment, applicants will be less motivated to take action to expedite prosecution of an application, and suggested that the term adjustment should be shortened if the applicant does not take action to ensure that the application is examined.

*Response:* The suggestion raises a valid objection which cannot be addressed with a specific rulemaking. Applicants often file status letters to determine if and when an application will be taken up for action. The time required to process and reply to a status letter takes away from the time that the Office has to process and reply to other papers and the Office does not want to create rules to encourage the filing of such papers.

*Comment 54:* One comment argued that § 1.705(f) should not exclude a third party from filing a submission or petition of the patent term adjustment. The comment argues that a potential Abbreviated New Drug Application (ANDA) applicant may not have another way of challenging the expiration date of the patent and upon filing a paragraph III certification, be forced to stay off the market for an unnecessary period of time, thereby depriving the public of lower cost drugs.

*Response:* If the patent claims a drug product approved by the Food and Drug Administration, the patent will be listed in the Prescription and OTC Drug Product, Patent and Exclusivity Data section of the Approved Drug Products with Therapeutic Equivalence Evaluations (Orange Book) as covering the drug product and the patent expiration date will be given. If the expiration date listed in the Orange Book is incorrect, the ANDA applicant could dispute the patent expiration date pursuant to 21 CFR 314.53(f). If the date is not corrected, the ANDA applicant could institute a declaratory judgment action with respect to the patent. Alternatively, the ANDA applicant could address the situation by filing a paragraph IV certification (see Food, Drug and Cosmetic Act, Section 505(j)(2)(A)(vii)(IV), 21 U.S.C. 355(j)(2)(A)(vii)(IV)), arguing that because the term adjustment is incorrect, the patent is unenforceable. See 21 CFR 314.94(a)(12)(i)(A)(4).

Pursuant to 35 U.S.C. 154(b)(4)(B) no third party may challenge or appeal a

patent term adjustment determination prior to the grant of a patent. Moreover, the best time and place for the patent term adjustment determination to be challenged by a third party is thought to be during litigation between two interested parties near the expiration date of the patent, before consideration of the term adjustment.

## Classification

### *Regulatory Flexibility Act*

The Chief Counsel for Regulation of the Department of Commerce certified to the Chief Counsel for Advocacy, Small Business Administration, that the changes in this final rule will not have a significant impact on a substantial number of small entities (Regulatory Flexibility Act, 5 U.S.C. 605(b)). This final rule implements the provisions of §§ 4401 and 4402 of the American Inventors Protection Act of 1999. The changes in this final rule provide procedures for the Office's patent term adjustment determination and for filing an application to request reconsideration of the Office's patent term adjustment determination.

The Office mails a notice of allowance in roughly 160,000 applications each year. The Office's patent term adjustment determination will be a calculation based upon time periods involving the dates of various actions by the Office and the applicant during the application process. Because of the number of actions by the Office and the applicant during the application process, the Office anticipates that there will be disagreement on at least one of these dates in roughly fifteen percent of applications (24,000). Based upon the percentage of applicants who are small entities (thirty percent), the Office expects that 7,200 small entities will file an application requesting reconsideration of a patent term adjustment determination each year. Since a small entity applicant who exercises reasonable due care or diligence should be able to reply to any Office action or notice within three months, the Office does not anticipate that any small entities will file a request for reinstatement of reduced patent term adjustment (based upon a showing that the applicant was unable to reply to an Office action or notice within three months in spite of all due care).

Filing an application requesting reconsideration of a patent term adjustment determination (as well as a request for reinstatement of reduced patent term adjustment) is optional. To obtain any benefit from an application requesting reconsideration of the Office's patent term adjustment

determination, the applicant must plan to pay the three maintenance fees required by law (35 U.S.C. 41(b)) to maintain a patent in force until the end of the non-adjusted patent term as specified in 35 U.S.C. 154. The current first, second, and third maintenance fees are $415.00, $950.00, and $1,455.00, respectively. Since the fee ($200) for filing an application requesting reconsideration of the Office's patent term adjustment determination is less than one-tenth of the combined cost of these three maintenance fees (and the fee ($400) for filing a request for reinstatement of reduced patent term adjustment is less than one-sixth of the combined cost of these three maintenance fees), there will not be a significant economic impact on a substantial number of small entities due to the procedures for requesting reconsideration of the Office's patent term adjustment determination.

### *Executive Order 13132*

This final rule does not contain policies with federalism implications sufficient to warrant preparation of a Federalism Assessment under Executive Order 13132 (August 4, 1999).

### *Executive Order 12866*

This final rule has been determined to be not significant for purposes of Executive Order 12866 (September 30, 1993).

### *Paperwork Reduction Act*

This final rule involves information collection requirements which are subject to review by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*). The collection of information involved in this final rule has been reviewed and previously approved by OMB under OMB control number 0651–0020.

As required by the Paperwork Reduction Act of 1995 (44 U.S.C. 3507(d)), the United States Patent and Trademark Office submitted an information collection package to OMB for its review and approval. The United States Patent and Trademark Office submitted this information collection to OMB for its review and approval because this final rule adds the request for reconsideration of a patent term adjustment determination by the United States Patent and Trademark Office and the request for reinstatement of reduced patent term adjustment (based upon a showing that the applicant was unable to reply to an Office action or notice within three months in spite of all due care) provided for in 35 U.S.C. 154(b)(3) to that collection.

The title, description, and respondent description of the information collection is shown below with an estimate of the annual reporting burdens. Included in this estimate is the time for reviewing instructions, gathering, and maintaining the data needed, and completing and reviewing the collection of information. The principal impact of the changes in this final rule is to implement the changes to Office practice necessitated by § 4402 of the American Inventors Protection Act of 1999 (enacted into law by § 1000(a)(9), Division B, of Pub. L. 106–113).

*OMB Number:* 0651–0020.

*Title:* Patent Term Extension.

*Form Numbers:* None.

*Type of Review:* Approved through September of 2001.

*Affected Public:* Individuals or households, businesses or other for-profit, not-for-profit institutions, farms, Federal Government, and state, local, or tribal governments.

*Estimated Number of Respondents:* 26,857.

*Estimated Time Per Response:* 1.15 hour.

*Estimated Total Annual Burden Hours:* 30,902 hours.

*Needs and Uses:* The information supplied to the United States Patent and Trademark Office by an applicant requesting reconsideration of a patent term adjustment determination under 35 U.S.C. 154(b) (§ 1.702 *et seq.*) is used by the United States Patent and Trademark Office to determine whether its determination of patent term adjustment under 35 U.S.C. 154(b) is correct, and whether the applicant is entitled to reinstatement of reduced patent term adjustment. The information supplied to the United States Patent and Trademark Office by an applicant seeking a patent term extension under 35 U.S.C. 156 (§ 1.710 *et seq.*) is used by the United States Patent and Trademark Office, the Department of Health and Human Services, and the Department of Agriculture to determine the eligibility of a patent for extension and to determine the period of any such extension. The applicant can apply for patent term and interim extensions, petition the Office to review final eligibility decisions, withdraw patent term extension applications, and declare his or her eligibility to apply for a patent term extension.

Comments are invited on: (1) whether the collection of information is necessary for proper performance of the functions of the agency; (2) the accuracy of the agency's estimate of the burden; (3) ways to enhance the quality, utility, and clarity of the information to be collected; and (4) ways to minimize the burden of the collection of information to respondents.

Interested persons are requested to send comments regarding these information collections, including suggestions for reducing this burden, to Robert J. Spar, Director, Special Program Law Office, United States Patent and Trademark Office, Washington, DC 20231, or to the Office of Information and Regulatory Affairs of OMB, New Executive Office Building, 725 17th Street, NW., Room 10235, Washington, DC 20503, Attention: Desk Officer for the United States Patent and Trademark Office.

Notwithstanding any other provision of law, no person is required to respond to nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a currently valid OMB control number.

**List of Subjects in 37 CFR Part 1**

Administrative practice and procedure, Courts, Freedom of Information, Inventions and patents, Reporting and recordkeeping requirements, Small businesses.

For the reasons set forth in the preamble, 37 CFR part 1 is amended as follows:

## PART 1—RULES OF PRACTICE IN PATENT CASES

1. The authority citation for 37 CFR part 1 continues to read as follows:

**Authority:** 35 U.S.C. 2(b)(2).

2. Section 1.18 is amended by revising its heading and adding paragraphs (d), (e) and (f) to read as follows:

**§ 1.18  Patent post allowance (including issue) fees.**

\*    \*    \*    \*    \*

(d) [Reserved]

(e) For filing an application for patent term adjustment under § 1.705: $200.00.

(f) For filing a request for reinstatement of all or part of the term reduced pursuant to § 1.704(b) in an application for patent term adjustment under § 1.705: $400.00.

3. The heading for Subpart F of part 1 is revised to read as follows:

## Subpart F—Adjustment and Extension of Patent Term

4. The authority citation for Subpart F of part 1 is revised to read as follows:

**Authority:** 35 U.S.C. 2(b)(2), 154, and 156.

5. A new, undesignated center heading is added to Subpart F before § 1.701 to read as follows:

Adjustment of Patent Term Due to Examination Delay

6. Section 1.701 is amended by revising its heading and adding a new paragraph (e) to read as follows:

**§ 1.701  Extension of patent term due to examination delay under the Uruguay Round Agreements Act (original applications, other than designs, filed on or after June 8, 1995, and before May 29, 2000).**

\*    \*    \*    \*    \*

(e) The provisions of this section apply only to original patents, except for design patents, issued on applications filed on or after June 8, 1995, and before May 29, 2000.

7. New §§ 1.702 through 1.705 are added to read as follows:

**§ 1.702  Grounds for adjustment of patent term due to examination delay under the Patent Term Guarantee Act of 1999 (original applications, other than designs, filed on or after May 29, 2000).**

(a) *Failure to take certain actions within specified time frames.* Subject to the provisions of 35 U.S.C. 154(b) and this subpart, the term of an original patent shall be adjusted if the issuance of the patent was delayed due to the failure of the Office to:

(1) Mail at least one of a notification under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151 not later than fourteen months after the date on which the application was filed under 35 U.S.C. 111(a) or fulfilled the requirements of 35 U.S.C. 371 in an international application;

(2) Respond to a reply under 35 U.S.C. 132 or to an appeal taken under 35 U.S.C. 134 not later than four months after the date on which the reply was filed or the appeal was taken;

(3) Act on an application not later than four months after the date of a decision by the Board of Patent Appeals and Interferences under 35 U.S.C. 134 or 135 or a decision by a Federal court under 35 U.S.C. 141, 145, or 146 where at least one allowable claim remains in the application; or

(4) Issue a patent not later than four months after the date on which the issue fee was paid under 35 U.S.C. 151 and all outstanding requirements were satisfied.

(b) *Failure to issue a patent within three years of the actual filing date of the application.* Subject to the provisions of 35 U.S.C. 154(b) and this subpart, the term of an original patent shall be adjusted if the issuance of the patent was delayed due to the failure of

the Office to issue a patent within three years after the date on which the application was filed under 35 U.S.C. 111(a) or the national stage commenced under 35 U.S.C. 371(b) or (f) in an international application, but not including:

(1) Any time consumed by continued examination of the application under 35 U.S.C. 132(b);

(2) Any time consumed by an interference proceeding under 35 U.S.C. 135(a);

(3) Any time consumed by the imposition of a secrecy order under 35 U.S.C. 181;

(4) Any time consumed by review by the Board of Patent Appeals and Interferences or a Federal court; or

(5) Any delay in the processing of the application by the Office that was requested by the applicant.

(c) *Delays caused by interference proceedings.* Subject to the provisions of 35 U.S.C. 154(b) and this subpart, the term of an original patent shall be adjusted if the issuance of the patent was delayed due to interference proceedings under 35 U.S.C. 135(a).

(d) *Delays caused by secrecy order.* Subject to the provisions of 35 U.S.C. 154(b) and this subpart, the term of an original patent shall be adjusted if the issuance of the patent was delayed due to the application being placed under a secrecy order under 35 U.S.C. 181.

(e) *Delays caused by successful appellate review.* Subject to the provisions of 35 U.S.C. 154(b) and this subpart, the term of an original patent shall be adjusted if the issuance of the patent was delayed due to review by the Board of Patent Appeals and Interferences under 35 U.S.C. 134 or by a Federal court under 35 U.S.C. 141 or 145, if the patent was issued pursuant to a decision reversing an adverse determination of patentability.

(f) The provisions of this section and §§ 1.703 through 1.705 apply only to original applications, except applications for a design patent, filed on or after May 29, 2000, and patents issued on such applications.

**§ 1.703   Period of adjustment of patent term due to examination delay.**

(a) The period of adjustment under § 1.702(a) is the sum of the following periods:

(1) The number of days, if any, in the period beginning on the day after the date that is fourteen months after the date on which the application was filed under 35 U.S.C. 111(a) or fulfilled the requirements of 35 U.S.C. 371 and ending on the date of mailing of either an action under 35 U.S.C. 132, or a

notice of allowance under 35 U.S.C. 151, whichever occurs first;

(2) The number of days, if any, in the period beginning on the day after the date that is four months after the date a reply under § 1.111 was filed and ending on the date of mailing of either an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first;

(3) The number of days, if any, in the period beginning on the day after the date that is four months after the date a reply in compliance with § 1.113(c) was filed and ending on the date of mailing of either an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first;

(4) The number of days, if any, in the period beginning on the day after the date that is four months after the date an appeal brief in compliance with § 1.192 was filed and ending on the date of mailing of any of an examiner's answer under § 1.193, an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first;

(5) The number of days, if any, in the period beginning on the day after the date that is four months after the date of a final decision by the Board of Patent Appeals and Interferences or by a Federal court in an appeal under 35 U.S.C. 141 or a civil action under 35 U.S.C. 145 or 146 where at least one allowable claim remains in the application and ending on the date of mailing of either an action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151, whichever occurs first; and

(6) The number of days, if any, in the period beginning on the day after the date that is four months after the date the issue fee was paid and all outstanding requirements were satisfied and ending on the date a patent was issued.

(b) The period of adjustment under § 1.702(b) is the number of days, if any, in the period beginning on the day after the date that is three years after the date on which the application was filed under 35 U.S.C. 111(a) or the national stage commenced under 35 U.S.C. 371(b) or (f) in an international application and ending on the date a patent was issued, but not including the sum of the following periods:

(1) The number of days, if any, in the period beginning on the date on which a request for continued examination of the application under 35 U.S.C. 132(b) was filed and ending on the date the patent was issued;

(2)(i) The number of days, if any, in the period beginning on the date an

interference was declared or redeclared to involve the application in the interference and ending on the date that the interference was terminated with respect to the application; and

(ii) The number of days, if any, in the period beginning on the date prosecution in the application was suspended by the Office due to interference proceedings under 35 U.S.C. 135(a) not involving the application and ending on the date of the termination of the suspension;

(3)(i) The number of days, if any, the application was maintained in a sealed condition under 35 U.S.C. 181;

(ii) The number of days, if any, in the period beginning on the date of mailing of an examiner's answer under § 1.193 in the application under secrecy order and ending on the date the secrecy order was removed;

(iii) The number of days, if any, in the period beginning on the date applicant was notified that an interference would be declared but for the secrecy order and ending on the date the secrecy order was removed; and

(iv) The number of days, if any, in the period beginning on the date of notification under § 5.3(c) of this chapter and ending on the date of mailing of the notice of allowance under 35 U.S.C. 151; and,

(4) The number of days, if any, in the period beginning on the date on which a notice of appeal to the Board of Patent Appeals and Interferences was filed under 35 U.S.C. 134 and § 1.191 and ending on the date of the last decision by the Board of Patent Appeals and Interferences or by a Federal court in an appeal under 35 U.S.C. 141 or a civil action under 35 U.S.C. 145, or on the date of mailing of either an action under 35 U.S.C. 132, or a notice of allowance under 35 U.S.C. 151, whichever occurs first, if the appeal did not result in a decision by the Board of Patent Appeals and Interferences.

(c) The period of adjustment under § 1.702(c) is the sum of the following periods, to the extent that the periods are not overlapping:

(1) The number of days, if any, in the period beginning on the date an interference was declared or redeclared to involve the application in the interference and ending on the date that the interference was terminated with respect to the application; and

(2) The number of days, if any, in the period beginning on the date prosecution in the application was suspended by the Office due to interference proceedings under 35 U.S.C. 135(a) not involving the application and ending on the date of the termination of the suspension.

(d) The period of adjustment under § 1.702(d) is the sum of the following periods, to the extent that the periods are not overlapping:

(1) The number of days, if any, the application was maintained in a sealed condition under 35 U.S.C. 181;

(2) The number of days, if any, in the period beginning on the date of mailing of an examiner's answer under § 1.193 in the application under secrecy order and ending on the date the secrecy order was removed;

(3) The number of days, if any, in the period beginning on the date applicant was notified that an interference would be declared but for the secrecy order and ending on the date the secrecy order was removed; and

(4) The number of days, if any, in the period beginning on the date of notification under § 5.3(c) of this chapter and ending on the date of mailing of the notice of allowance under 35 U.S.C. 151.

(e) The period of adjustment under § 1.702(e) is the sum of the number of days, if any, in the period beginning on the date on which a notice of appeal to the Board of Patent Appeals and Interferences was filed under 35 U.S.C. 134 and § 1.191 and ending on the date of a final decision in favor of the applicant by the Board of Patent Appeals and Interferences or by a Federal court in an appeal under 35 U.S.C. 141 or a civil action under 35 U.S.C. 145.

(f) The adjustment will run from the expiration date of the patent as set forth in 35 U.S.C. 154(a)(2). To the extent that periods of adjustment attributable to the grounds specified in § 1.702 overlap, the period of adjustment granted under this section shall not exceed the actual number of days the issuance of the patent was delayed. The term of a patent entitled to adjustment under § 1.702 and this section shall be adjusted for the sum of the periods calculated under paragraphs (a) through (e) of this section, to the extent that such periods are not overlapping, less the sum of the periods calculated under § 1.704. The date indicated on any certificate of mailing or transmission under § 1.8 shall not be taken into account in this calculation.

(g) No patent, the term of which has been disclaimed beyond a specified date, shall be adjusted under § 1.702 and this section beyond the expiration date specified in the disclaimer.

### § 1.704 Reduction of period of adjustment of patent term.

(a) The period of adjustment of the term of a patent under §§ 1.703(a) through (e) shall be reduced by a period equal to the period of time during which the applicant failed to engage in reasonable efforts to conclude prosecution (processing or examination) of the application.

(b) With respect to the grounds for adjustment set forth in §§ 1.702(a) through (e), and in particular the ground of adjustment set forth in § 1.702(b), an applicant shall be deemed to have failed to engage in reasonable efforts to conclude processing or examination of an application for the cumulative total of any periods of time in excess of three months that are taken to reply to any notice or action by the Office making any rejection, objection, argument, or other request, measuring such three-month period from the date the notice or action was mailed or given to the applicant, in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date that is three months after the date of mailing or transmission of the Office communication notifying the applicant of the rejection, objection, argument, or other request and ending on the date the reply was filed. The period, or shortened statutory period, for reply that is set in the Office action or notice has no effect on the three-month period set forth in this paragraph.

(c) Circumstances that constitute a failure of the applicant to engage in reasonable efforts to conclude processing or examination of an application also include the following circumstances, which will result in the following reduction of the period of adjustment set forth in § 1.703 to the extent that the periods are not overlapping:

(1) Suspension of action under § 1.103 at the applicant's request, in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the date a request for suspension of action under § 1.103 was filed and ending on the date of the termination of the suspension;

(2) Deferral of issuance of a patent under § 1.314, in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the date a request for deferral of issuance of a patent under § 1.314 was filed and ending on the date the patent was issued;

(3) Abandonment of the application or late payment of the issue fee, in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the date of abandonment or the date after the date the issue fee was due and ending on the earlier of:

(i) The date of mailing of the decision reviving the application or accepting late payment of the issue fee; or

(ii) The date that is four months after the date the grantable petition to revive the application or accept late payment of the issue fee was filed;

(4) Failure to file a petition to withdraw the holding of abandonment or to revive an application within two months from the mailing date of a notice of abandonment, in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date two months from the mailing date of a notice of abandonment and ending on the date a petition to withdraw the holding of abandonment or to revive the application was filed;

(5) Conversion of a provisional application under 35 U.S.C. 111(b) to a nonprovisional application under 35 U.S.C. 111(a) pursuant to 35 U.S.C. 111(b)(5), in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the date the application was filed under 35 U.S.C. 111(b) and ending on the date a request in compliance with § 1.53(c)(3) to convert the provisional application into a nonprovisional application was filed;

(6) Submission of a preliminary amendment or other preliminary paper less than one month before the mailing of an Office action under 35 U.S.C. 132 or notice of allowance under 35 U.S.C. 151 that requires the mailing of a supplemental Office action or notice of allowance, in which case the period of adjustment set forth in § 1.703 shall be reduced by the lesser of:

(i) The number of days, if any, beginning on the day after the mailing date of the original Office action or notice of allowance and ending on the date of mailing of the supplemental Office action or notice of allowance; or

(ii) Four months;

(7) Submission of a reply having an omission (§ 1.135(c)), in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date the reply having an omission was filed and ending on the date that the reply or other paper correcting the omission was filed;

(8) Submission of a supplemental reply or other paper, other than a supplemental reply or other paper expressly requested by the examiner, after a reply has been filed, in which case the period of adjustment set forth in § 1.703 shall be reduced by the number of days, if any, beginning on the day after the date the initial reply was filed and ending on the date that the

**56394**    **Federal Register** / Vol. 65, No. 181 / Monday, September 18, 2000 / Rules and Regulations

supplemental reply or other such paper was filed;

(9) Submission of an amendment or other paper after a decision by the Board of Patent Appeals and Interferences, other than a decision designated as containing a new ground of rejection under § 1.196(b) or statement under § 1.196(c), or a decision by a Federal court, less than one month before the mailing of an Office action under 35 U.S.C. 132 or notice of allowance under 35 U.S.C. 151 that requires the mailing of a supplemental Office action or supplemental notice of allowance, in which case the period of adjustment set forth in § 1.703 shall be reduced by the lesser of:

(i) The number of days, if any, beginning on the day after the mailing date of the original Office action or notice of allowance and ending on the mailing date of the supplemental Office action or notice of allowance; or

(ii) Four months;

(10) Submission of an amendment under § 1.312 or other paper after a notice of allowance has been given or mailed, in which case the period of adjustment set forth in § 1.703 shall be reduced by the lesser of:

(i) The number of days, if any, beginning on the date the amendment under § 1.312 or other paper was filed and ending on the mailing date of the Office action or notice in response to the amendment under § 1.312 or such other paper; or

(ii) Four months; and

(11) Further prosecution via a continuing application, in which case the period of adjustment set forth in § 1.703 shall not include any period that is prior to the actual filing date of the application that resulted in the patent.

(d) A paper containing only an information disclosure statement in compliance with §§ 1.97 and 1.98 will not be considered a failure to engage in reasonable efforts to conclude prosecution (processing or examination) of the application under paragraphs (c)(6), (c)(8), (c)(9), or (c)(10) of this section if it is accompanied by a statement that each item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart application and that this communication was not received by any individual designated in § 1.56(c) more than thirty days prior to the filing of the information disclosure statement. This thirty-day period is not extendable.

(e) Submission of an application for patent term adjustment under § 1.705(b) (with or without request under § 1.705(c) for reinstatement of reduced patent term adjustment) will not be considered a failure to engage in reasonable efforts to conclude prosecution (processing or examination) of the application under paragraph (c)(10) of this section.

**§ 1.705   Patent term adjustment determination.**

(a) The notice of allowance will include notification of any patent term adjustment under 35 U.S.C. 154(b).

(b) Any request for reconsideration of the patent term adjustment indicated in the notice of allowance, except as provided in paragraph (d) of this section, and any request for reinstatement of all or part of the term reduced pursuant to § 1.704(b) must be by way of an application for patent term adjustment. An application for patent term adjustment under this section must be filed no later than the payment of the issue fee but may not be filed earlier than the date of mailing of the notice of allowance. An application for patent term adjustment under this section must be accompanied by:

(1) The fee set forth in § 1.18(e); and

(2) A statement of the facts involved, specifying:

(i) The correct patent term adjustment and the basis or bases under § 1.702 for the adjustment;

(ii) The relevant dates as specified in §§ 1.703(a) through (e) for which an adjustment is sought and the adjustment as specified in § 1.703(f) to which the patent is entitled;

(iii) Whether the patent is subject to a terminal disclaimer and any expiration date specified in the terminal disclaimer; and

(iv)(A) Any circumstances during the prosecution of the application resulting in the patent that constitute a failure to engage in reasonable efforts to conclude processing or examination of such application as set forth in § 1.704; or

(B) That there were no circumstances constituting a failure to engage in reasonable efforts to conclude processing or examination of such application as set forth in § 1.704.

(c) Any application for patent term adjustment under this section that requests reinstatement of all or part of the period of adjustment reduced pursuant to § 1.704(b) for failing to reply to a rejection, objection, argument, or

other request within three months of the date of mailing of the Office communication notifying the applicant of the rejection, objection, argument, or other request must also be accompanied by:

(1) The fee set forth in § 1.18(f); and

(2) A showing to the satisfaction of the Commissioner that, in spite of all due care, the applicant was unable to reply to the rejection, objection, argument, or other request within three months of the date of mailing of the Office communication notifying the applicant of the rejection, objection, argument, or other request. The Office shall not grant any request for reinstatement for more than three additional months for each reply beyond three months from the date of mailing of the Office communication notifying the applicant of the rejection, objection, argument, or other request.

(d) If the patent is issued on a date other than the projected date of issue and this change necessitates a revision of the patent term adjustment indicated in the notice of allowance, the patent will indicate the revised patent term adjustment. If the patent indicates a revised patent term adjustment due to the patent being issued on a date other than the projected date of issue, any request for reconsideration of the patent term adjustment indicated in the patent must be filed within thirty days of the date the patent issued and must comply with the requirements of paragraphs (b)(1) and (b)(2) of this section.

(e) The periods set forth in this section are not extendable.

(f) No submission or petition on behalf of a third party concerning patent term adjustment under 35 U.S.C. 154(b) will be considered by the Office. Any such submission or petition will be returned to the third party, or otherwise disposed of, at the convenience of the Office.

8. A new, undesignated center heading is added to Subpart F before § 1.710 to read as follows:

Extension of Patent Term Due to Regulatory Review

Dated: September 5, 2000.

**Q. Todd Dickinson,**

*Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.*

[FR Doc. 00–23263 Filed 9–15–00; 8:45 am]

**BILLING CODE 3510–16–P**

inform applicants of the requirement to demonstrate compliance prior to proposal preparation instead of prior to award, thereby giving potential applicants advance notice of these requirements. Additionally, the methods for demonstrating compliance with certifications, disclosures, and assurances are clarified. The first method provides for each individual certification, disclosure, and assurance to be signed by the Authorizing Institutional Representative. The second method currently provides that "Signature by the Authorizing Institutional Representative on the proposal Cover Page may confirm that all necessary certifications and assurances are met." This statement is only accurate when the Cover Page includes a notice that lists each certification and assurance, and states that signature by the Authorizing Institutional Representative confirms that these specific certifications and assurances are met. To clarify this requirement, the Handbook will be revised to state: "Signature by the Authorizing Organizational Representative on the proposal Cover Page may confirm that all necessary certifications and assurances are met, provided that the Cover Page includes a notice to that effect." An administrative change is made to change the term "Authorizing Institutional Representative" to "Authorizing Organizational Representative" because the latter term is more commonly used by NASA recipients. Finally, this final rule corrects the list of NASA implementing regulations in paragraph (c) of the Provision at § 1260.32, "Nondiscrimination" by adding "14 CFR 1253".

This is not a significant regulatory action and, therefore, was not subject to review under section 6(b) of Executive Order 12866, Regulatory Planning and Review, dated September 30, 1993. This rule is not a major rule under 5 U.S.C. 804.

**B. Regulatory Flexibility Act**

NASA certifies that this final rule will not have a significant economic impact on a substantial number of small entities within the meaning of the Regulatory Flexibility Act, 5 U.S.C. 601 *et seq.*, because the changes do not impose additional requirements. The changes only modify the timing of existing requirements.

**C. Paperwork Reduction Act**

The Paperwork Reduction Act does not apply because this final rule does not impose any new recordkeeping or information collection requirements, or

collection of information from offerors, contractors, or members of the public that require the approval of the Office of Management and Budget under 44 U.S.C. 3501, *et seq.*

**List of Subjects in 14 CFR Part 1260**

Grant Programs—Science and Technology.

**Tom Luedtke,**
*Assistant Administrator for Procurement.*

■ Accordingly, 14 CFR part 1260 is amended as follows:
■ 1. The authority citation for 14 CFR part 1260 continues to read as follows:

**Authority:** 42 U.S.C. 2473(c)(1), Pub. L. 97–258, 96 Stat. 1003 (31 U.S.C. 6301, *et seq.*)

**PART 1260—GRANTS AND COOPERATIVE AGREEMENTS**

■ 2. Revise paragraph (c) in §1260.10 to read as follows:

**§ 1260.10  Proposals.**

\*    \*    \*    \*    \*

(c)(1) All announcements for grant and cooperative agreement funding opportunities shall require the applicant to submit all required certifications, disclosures, and assurances as part of the proposal. The following certifications and assurance are required to be submitted as part of all proposals:

(i) A certification for debarment and suspension under the requirements of 14 CFR 1265.510.

(ii) A certification, and a disclosure form (SF LLL) if required, on Lobbying under the requirements of 14 CFR 1271.110 for awards exceeding $100,000.

(iii) An assurance of Compliance with NASA Regulations Concerning Nondiscrimination as required by 14 CFR parts 1250 through 1253 or incorporation by reference of a signed NASA Form 1206 that is on file, current, and accurate.

(2) Compliance with certifications, disclosures, and assurances must be demonstrated by one of the following two methods:

(i) Each individual certification, disclosure, and assurance may be signed by the Authorizing Organizational Representative; or

(ii) Signature by the Authorizing Organizational Representative on the proposal Cover Page may confirm that all necessary certifications and assurances are met, provided that the Cover Page includes a notice to that effect.

\*    \*    \*    \*    \*

■ 3. Revise the undesignated headings and paragraph (c) in § 1260.32 to read as follows:

**§ 1260.32  Nondiscrimination.**

**Nondiscrimination**

**April 2004.**

\*    \*    \*    \*    \*

(c) Work on NASA grants is subject to the provisions of Title VI of the Civil Rights Act of 1964 (Pub. L. 88–352; 42 U.S.C. 2000d–1), Title IX of the Education Amendments of 1972 (20 U.S.C. 1680 *et seq.*), section 504 of the Rehabilitation Act of 1973, as amended (29 U.S.C. 794), the Age Discrimination Act of 1975 (42 U.S.C. 6101 *et seq.*), and the NASA implementing regulations (14 CFR parts 1250, 1251, 1252, and 1253).

\*    \*    \*    \*    \*

[FR Doc. 04–9015 Filed 4–21–04; 8:45 am]
**BILLING CODE 7510–01–P**

**DEPARTMENT OF COMMERCE**

**Patent and Trademark Office**

**37 CFR Part 1**

**[Docket No.: 2003–P–029]**

**RIN 0651–AB71**

**Revision of Patent Term Extension and Patent Term Adjustment Provisions**

**AGENCY:** Patent and Trademark Office, Commerce.
**ACTION:** Final rule.

**SUMMARY:** The patent term extension provisions of the Uruguay Round Agreements Act (URAA) and the patent term adjustment provisions of the American Inventors Protection Act of 1999 (AIPA) each provide for the possibility of patent term extension or adjustment if the issuance of the patent was delayed due to review by the Board of Patent Appeals and Interferences (BPAI) or by a Federal court and the patent was issued pursuant to or under a decision in the review reversing an adverse determination of patentability. The United States Patent and Trademark Office (Office) is revising the rules of practice in patent cases to indicate that under certain circumstances a panel remand by the BPAI shall be considered a decision in the review reversing an adverse determination of patentability for purposes of patent term extension or patent term adjustment. The Office is also adopting other miscellaneous changes to the patent term adjustment provisions of the rules of practice.
**DATES:** *Effective Date:* May 24, 2004.

Any request for reconsideration of the patent term extension or adjustment indicated on a patent resulting from an application in which the notice of



allowance was mailed before May 24, 2004 on the basis of the changes to 37 CFR 1.701 or 1.702 in this final rule must be filed no later than July 21, 2004.

**FOR FURTHER INFORMATION CONTACT:** Kery A. Fries, Legal Advisor, Office of Patent Legal Administration, by telephone at (703) 305–1383, by mail addressed to: Box Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313–1450, or by facsimile to (703) 746–3240, marked to the attention of Kery A. Fries.

**SUPPLEMENTARY INFORMATION:** Section 532(a) of the URAA (Pub. L. 103–465, 108 Stat. 4809 (1994)) amended 35 U.S.C. 154 to provide that the term of a patent ends on the date that is twenty years from the filing date of the application, or the earliest filing date for which a benefit is claimed under 35 U.S.C. 120, 121, or 365(c). Public Law 103–465 also contained provisions, codified at 35 U.S.C. 154(b), for patent term extension due to certain examination delays. The Office implemented the patent term extension provisions of the URAA in a final rule published in April of 1995. *See Changes to Implement 20-Year Patent Term and Provisional Applications,* 60 FR 20195 (Apr. 25, 1995), 1174 *Off. Gaz. Pat. Office* 15 (May 2, 1995) (final rule).

The AIPA (Pub. L. 106–113, 113 Stat. 1501, 1501A–552 through 1501A–591 (1999)) further amended 35 U.S.C. 154(b) to include additional bases for patent term extension (characterized as "patent term adjustment" in the AIPA). Original utility and plant patents issuing from applications filed on or after May 29, 2000, may be eligible for patent term adjustment if issuance of the patent is delayed due to one or more of the enumerated administrative delays listed in 35 U.S.C. 154(b)(1). The Office implemented the patent term adjustment provisions of the AIPA in a final rule published in September of 2000. *See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term,* 65 FR 56365 (Sept. 18, 2000), 1239 *Off. Gaz. Pat. Office* 14 (Oct. 3, 2000) (final rule). The patent term adjustment provisions of the AIPA apply to original (*i.e.,* non-reissue) utility and plant applications filed on or after May 29, 2000. *See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term,* 65 FR at 56367, 1239 *Off. Gaz. Pat. Office* at 14–15. The patent term extension provisions of the URAA (for delays due to secrecy order, interference or successful appellate review) continue to apply to original utility and plant applications filed on or after June 8, 1995, and before May 29, 2000. *See id.*

The Office is amending the rules of practice in patent cases to indicate that certain remands by the BPAI shall be considered "a decision in the review reversing an adverse determination of patentability" for patent term adjustment and patent term extension purposes. Specifically, if an application is remanded to a panel of the BPAI and the remand is the last action by a BPAI panel prior to the mailing of a notice of allowance under 35 U.S.C. 151 in the application, the remand shall be considered a decision reversing an adverse determination of patentability for patent term adjustment and patent term extension purposes. However, a panel remand shall not be considered a decision in the review reversing an adverse determination of patentability if there is filed a request for continued examination under 35 U.S.C. 132(b) (§ 1.114) that was not first preceded by the mailing, after such remand, of at least one of an action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151.

The term "panel" of the BPAI means a panel comprised of members of the BPAI as defined in 35 U.S.C. 6(a). The phrase "remanded by a panel" of the BPAI does not pertain to a remand or order returning an appeal to the examiner issued by a BPAI administrator. *See e.g., Revised Docketing Procedures for Appeals Arriving at the Board of Patent Appeals and Interferences,* 1260 *Off. Gaz. Pat. Office* 18 (July 2, 2002). The phrase "remanded by a panel" of the BPAI does not pertain to a remand or order returning an appeal to the examiner that is issued by a BPAI administrator subsequent to the issuance of a docketing notice.

The Office initially took the position that a remand by a BPAI panel was not a "decision" within the meaning of 35 U.S.C. 154(b)(1)(A)(iii), much less "a decision reversing an adverse determination of patentability" as that phrase is used in 35 U.S.C. 154(b)(1)(C)(iii). *See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term,* 65 FR at 56369, 1239 *Off. Gaz. Pat. Office* at 16. The Office has subsequently determined that there are a number of BPAI panel remands that convey the weakness in the examiner's adverse patentability determination in a manner tantamount to a decision reversing the adverse patentability determination. Such a BPAI panel remand generally results in the examiner allowing the application (either with or without further action by applicant) without returning the application with a response to the issues raised in the

remand to the BPAI for a decision on the appeal. The changes in this final rule address the situation in which an examiner responds to a remand by a BPAI panel by allowing the application (either with or without further action by applicant), rather than returning the application with a response to the issues raised in the remand to the BPAI for a decision on the appeal. In this situation, the BPAI panel remand shall be considered "a decision in the review reversing an adverse determination of patentability" for patent term extension and patent term adjustment purposes. The changes in this final rule, however, will not apply if, after the BPAI panel remand, there is filed a request for continued examination under 35 U.S.C. 132(b) (§ 1.114) that was not first preceded by the mailing, after such remand, of at least one of an action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151.

If the patent issues after a remand that is considered "a decision in the review reversing an adverse determination of patentability," the BPAI panel remand is deemed by the Office to be the "final decision in favor of the applicant" for purposes of a patent term extension or adjustment calculation under § 1.701(c)(3) or § 1.703(e) (as applicable). The period of extension or adjustment calculated under § 1.701(c)(3) or § 1.703(e) (as applicable) would equal the number of days in the period beginning on the date on which a notice of appeal to the BPAI was filed under 35 U.S.C. 134 and § 1.191 and ending on the mailing date of the BPAI panel remand.

The Office also proposed changes to §§ 1.704 and 1.705 in a rule making to implement portions of the Office's 21st Century Strategic Plan. *See Changes to Support Implementation of the United States Patent and Trademark Office 21st Century Strategic Plan,* 68 FR 53816, 53843, 53857–58 (Sept. 12, 2003), 1275 *Off. Gaz. Pat. Office* 23, 45–46, 60 (Oct. 7, 2003) (proposed rule) (hereinafter "*21st Century Strategic Plan* notice of proposed rule making"). The Office is adopting changes to §§ 1.704 and 1.705 proposed in the *21st Century Strategic Plan* notice of proposed rule making in this final rule so that all changes to the patent term adjustment provisions of the rule of practice currently under consideration will be adopted in the same final rule.

## Discussion of Specific Rules

*Section 1.701:* Section 1.701(a)(3) is amended by adding the following sentence: If an application is remanded by a panel of the Board of Patent Appeals and Interferences and the

remand is the last action by a panel of the Board of Patent Appeals and Interferences prior to the mailing of a notice of allowance under 35 U.S.C. 151 in the application, the remand shall be considered a decision in the review reversing an adverse determination of patentability as that phrase is used in 35 U.S.C. 154(b)(2) as amended by section 532(a) of the Uruguay Round Agreements Act, Public Law 103–465, 108 Stat. 4809, 4983–85 (1994), and a final decision in favor of the applicant under § 1.701(c)(3). Section 1.701(a)(3) is also amended to provide that a panel remand shall not be considered a decision in the review reversing an adverse determination of patentability as provided in § 1.701(a)(3) if there is filed a request for continued examination under 35 U.S.C. 132(b) (§ 1.114) that was not first preceded by the mailing, after such remand, of at least one of an action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151. Section 1.701(a)(3) is also amended to change "decision reversing an adverse determination of patentability" to "decision in the review reversing an adverse determination of patentability" for consistency with 35 U.S.C. 154(b)(2) as amended by section 532(a) of the URAA.

*Section 1.702:* Section 1.702(e) is amended by adding the following sentence: If an application is remanded by a panel of the Board of Patent Appeals and Interferences and the remand is the last action by a panel of the Board of Patent Appeals and Interferences prior to the mailing of a notice of allowance under 35 U.S.C. 151 in the application, the remand shall be considered a decision by the Board of Patent Appeals and Interferences as that phrase is used in 35 U.S.C. 154(b)(1)(A)(iii), a decision in the review reversing an adverse determination of patentability as that phrase is used in 35 U.S.C. 154(b)(1)(C)(iii), and a final decision in favor of the applicant under § 1.703(e). Section 1.702(e) is also amended to provide that a panel remand shall not be considered a decision in the review reversing an adverse determination of patentability as provided in § 1.702(e) if there is filed a request for continued examination under 35 U.S.C. 132(b) (§ 1.114) that was not first preceded by the mailing, after such remand, of at least one of an action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151. Section 1.702(e) is also amended to change "decision reversing an adverse determination of patentability" to "decision in the review reversing an adverse determination of

patentability" for consistency with 35 U.S.C. 154(b)(1)(C)(iii).

*Section 1.703:* Section 1.703(f) is amended to change "[t]o the extent that periods of adjustment attributable to the grounds specified in § 1.702 overlap" to "[t]o the extent that periods of delay attributable to the grounds specified in § 1.702 overlap" for consistency with 35 U.S.C. 154(b)(2)(A). The language of former § 1.703(f) misled applicants into believing that delays under 35 U.S.C. 154(b)(1)(A) (§§ 1.702(a) and 1.703(a)) and delays under 35 U.S.C. 154(b)(1)(B) (§§ 1.702(b) and 1.703(b)) were overlapping only if the period of delay under 35 U.S.C. 154(b)(1)(A) occurred more than three years after the actual filing date of the application. If an application is entitled to an adjustment under 35 U.S.C. 154(b)(1)(B), the entire period during which the application was pending before the Office (except for periods excluded under 35 U.S.C. 154(b)(1)(B)(i)–(iii)), and not just the period beginning three years after the actual filing date of the application, is the period of delay under 35 U.S.C. 154(b)(1)(B) in determining whether periods of delay overlap under 35 U.S.C. 154(b)(2)(A).

*Section 1.704:* Section 1.704(d) is amended to change "cited in a communication" to "first cited in any communication" in order to clarify that the item must have been first cited in any communication from a foreign patent office in a counterpart application instead of merely being cited in such a communication. An applicant who fails to cite an item, within thirty days of receipt by an individual designated in § 1.56(c) of a first communication from a foreign patent office in a counterpart application citing the item, and instead files an information disclosure statement, within thirty days of a subsequent communication citing the item, cannot be considered to have acted with reasonable efforts to conclude prosecution of the application. The change to require that this thirty-day time period run from a first communication parallels the corresponding language in § 1.97(e)(1). The provisions of § 1.704(d) do not apply if the applicant does not submit the information disclosure statement within thirty days of a first communication including a citation of an item to a party designated in § 1.56(c). In such situations, the submission of an information disclosure statement may be considered a failure to engage in reasonable efforts to conclude prosecution (processing or examination) of the application under § 1.704(c)(6), (c)(8), (c)(9), or (c)(10).

*Section 1.705:* Section 1.705(d) is amended to provide that a patentee may request reconsideration of the patent term adjustment within two months of the date the patent issued if the patent indicates a revised patent term adjustment relative to the patent term adjustment indicated on the notice of allowance. The Office currently includes the patent term adjustment information that will be printed on the face of the patent on the Issue Notification. *See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term,* 65 FR at 56388, 1239 *Off. Gaz. Pat. Office* at 33 (response to comment 49). The Office plans to discontinue the practice of including patent term adjustment information on the Issue Notification, but is changing the period for filing a request for reconsideration under § 1.705(d) of the patent term adjustment indicated in the patent from thirty days to two months. This two-month period in § 1.705(d) is non-extendable. *See* § 1.705(e).

The Patent Application Locating and Monitoring (PALM) system maintains computerized contents records of all patent applications and reexaminations. The Patent Application Information and Retrieval (PAIR) system provides public access to PALM for patents and applications that have been published (*i.e.,* applications no longer being maintained in confidence), which can be accessed over the Internet at *http:// pair.uspto.gov.* The PAIR system also has a private side (*http://pair-direct.uspto.gov*) which may be used by an applicant to access confidential information about his or her pending application. *See Clarification of 37 CFR 1.704(c)(10)—Reduction of Patent Term Adjustment for Certain Types of Papers Filed After a Notice of Allowance has been Mailed,* 1247 *Off. Gaz. Pat. Office* 111, 112 (June 26, 2001). While the Office plans to discontinue the practice of including patent term adjustment information on the Issue Notification, applicants can check PAIR to see the Office's current patent term adjustment determination upon receipt of the Issue Notification to ascertain whether the patent term adjustment determination has been revised since the mailing of the notice of allowance.

Section 1.705(d) is also amended to permit a patentee to file the request for reconsideration if the patent indicates or should have indicated a revised patent term adjustment of a revision to patent term adjustment indicated in the notice of allowance. Section 1.705(d) formerly provided that a request for reconsideration under § 1.705(d) was limited to the situation where the patent issues on a date other than the projected

date of issue. There are a number of papers which if submitted by an applicant after the mailing of the notice of allowance will result in a reduction of any patent term adjustment, such as: (1) Request for refunds; (2) status letter; (3) amendments under § 1.312; (4) late priority claims; (5) a certified copy of a priority document; (6) drawings; (7) letters related to biological deposits; and (8) oaths or declarations. *See* § 1.704(c)(10). In addition, receipt of the payment of the issue fee more than three months after mailing of the notice of allowance will also result in a reduction of any patent term adjustment. *See* § 1.704(b) and § 1.703(f) ("[t]he date indicated on any certificate of mailing or transmission under § 1.8 shall not be taken into account in this calculation"). There are also Office delays that may occur after the mailing of the notice of allowance which may result in an increase in the amount of patent term adjustment, such as the failure to issue the patent within four months after the date the issue fee was paid under 35 U.S.C. 151 and all outstanding requirements were satisfied, or the failure to issue the patent within three years after the date on which an application was filed under 35 U.S.C. 111(a). *See* § 1.702(a)(4) and § 1.702(b).

Section 1.705(d) is also amended to provide that any request for reconsideration under § 1.705(d) that raises issues that were raised, or could have been raised, in an application for patent term adjustment under § 1.704(b) shall be dismissed as untimely as to those issues. The purpose of § 1.705(d) is to provide patentees with an avenue to obtain reconsideration of the patent term adjustment indicated in the patent when the patent term adjustment indicated in the patent differs or should have differed from the patent term adjustment indicated in the notice of allowance due to events occurring after the mailing of the notice of allowance. Section 1.705(d) is not an avenue for patentees to seek review of issues that were raised, or could have been raised, in an application for patent term adjustment under § 1.704(b). Any request for reconsideration of the patent term adjustment indicated in the patent on the basis of issues that were raised, or could have been raised, in an application for patent term adjustment under § 1.704(b) is considered untimely if not filed within the period specified in § 1.705(b).

Requests for reconsideration of patent term adjustment determinations indicated in notice of allowances and patents under 35 U.S.C. 154(b) and §§ 1.702 through 1.704 are provided for in § 1.705. Petitions under § 1.182 or

1.183, or requests for a certificate of correction under either 35 U.S.C. 254 and § 1.323 or 35 U.S.C. 255 and § 1.324, are not substitute for *a* to obtain reconsideration of a patent term adjustment determination indicated in a notice of allowance if an applicant fails to submit a request for reconsideration within the time period specified in § 1.705(b), or to obtain reconsideration of a patent term adjustment determination indicated in a patent if a patentee fails to submit a request for reconsideration within the time period specified in § 1.705(d).

*Response to comments:* The Office published a notice proposing changes to the rules of practice to provide that under certain circumstances a panel remand by the BPAI shall be considered a decision in the review reversing an adverse determination of patentability for purposes of patent term extension or patent term adjustment. *See Revision of Patent Term Extension and Patent Term Adjustment Provisions Related to Decisions by the Board of Patent Appeals and Interferences* 68 FR 67818 (Dec. 4, 2003), 1277 *Off. Gaz. Pat. Office* 227 (Dec. 30, 2003) (proposed rule). The Office received seven written comments (from an intellectual property organization, a law firm, a business, and patent practitioners) in response to this notice of proposed rule making. The Office also received five written comments concerning §§ 1.704 and 1.705 in response to the *21st Century Strategic Plan* notice of proposed rule making. Comments generally in support of a change are not discussed. The comments and the Office's responses to those comments follow:

*Comment 1:* One comment questioned whether the Office has the authority to interpret a remand from the BPAI as a decision by the BPAI reversing an adverse determination of patentability. The comment suggested that the Office should amend the rules of practice to permit the BPAI to designate a remand as a decision by the BPAI reversing an adverse determination of patentability.

*Response:* 35 U.S.C. 2(b)(2) provides that the Office may establish regulations, not inconsistent with law, which shall govern the conduct of proceedings in the Office, 35 U.S.C. 3(a)(2)(A) provides that the Director is responsible for providing policy direction and management supervision for the Office, and 35 U.S.C. 154(b)(3)(A) provides that the Director shall prescribe regulations establishing procedures for the application for and determination of patent term adjustments under 35 U.S.C. 154(b). Therefore, the Office has sufficient rule making authority to promulgate

regulations to avoid situations in which an applicant is deprived of patent term extension or adjustment because a BPAI panel designates a decision as a remand rather than as a reversal coupled with a remand.

*Comment 2:* One comment suggested that the Office should amend the rules of practice to permit the BPAI to designate a remand as a decision by the BPAI reversing an adverse determination of patentability.

*Response:* It is unnecessary to amend the rules of practice to provide that a BPAI panel may designate a remand as a decision by the BPAI reversing an adverse determination of patentability. First, a BPAI panel may do so in essence by designating the decision as a reversal coupled with a remand. Second, a BPAI panel remand will be considered a "decision in the review reversing an adverse determination of patentability" under § 1.701(a)(3) or § 1.702(e) as amended in this final rule if the remand is the last action by a panel of the Board of Patent Appeals and Interferences prior to the mailing of a notice of allowance under 35 U.S.C. 151 in the application (except if there is filed a request for continued examination under 35 U.S.C. 132(b) (§ 1.114) that was not first preceded by the mailing, after such remand, of at least one of an action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151.).

*Comment 3:* One comment suggested that the Office should treat a remand by a BPAI administrator the same as a remand by a BPAI panel in determining whether the remand is considered a decision in the review reversing an adverse determination of patentability for patent term extension and adjustment purposes.

*Response:* The Office cannot treat a remand or other order by an administrator as a "decision in the review reversing an adverse determination of patentability" for patent term extension or adjustment purposes because an administrator is not a member of the BPAI as defined in 35 U.S.C. 6(a) and because 35 U.S.C. 6(b) requires that appeals be heard by at least three members of the BPAI. While the Office has proposed to define BPAI as including a BPAI member or employee acting with the authority of the BPAI for certain purposes (proposed § 41.2(2)), the Office has cautioned that this definition of "BPAI" is not applicable in a situation in which action by a BPAI panel is required by statute, and has also proposed to define BPAI member as a member of the BPAI as set forth in 35 U.S.C. 6(a) (proposed § 41.2(3)). *See Rules of Practice Before the Board of Patent Appeals and*

*Interferences,* 68 FR 66647, 66649 (Nov. 26, 2003), 1277 *Off. Gaz. Pat. Office* 157, 159 (Dec. 23, 2003) (proposed rule).

*Comment 4:* Several comments suggested that the filing of an information disclosure statement or certain amendments should not preclude a remand from being considered a decision in the review reversing an adverse determination of patentability for patent term extension or adjustment purposes. The comments provided the following examples of amendments that should not preclude a remand from being considered a decision in the review reversing an adverse determination of patentability for patent term extension or adjustment purposes: (1) Amendments which only correct formal matters (*e.g.,* update the address of a depository such as the American Type Culture Collection (ATCC); (2) amendments which improve the clarity of the claims; (3) amendments which rejoin claims that were withdrawn pending the allowance of a product claim; (4) amendments which only define the claims over newly cited prior art; (5) an examiner's amendment or examiner requested amendment; (6) amendments that do not address the merits of the claims; (7) amendments that change the title or abstracts to correspond to all of the allowed claims; (8) inconsistencies between reference characters used in the specification and those used in the drawings; (9) inconsistent case use of pronouns; (10) resubmission of documents that were lost by the Office; (11) amendments which incorporate limitations from a dependent claim into an independent claim; and (12) any amendment so long as at least one previously rejected claim is allowed in unamended form. One comment suggested that if an information disclosure statement contains a certification under § 1.704(d), the information disclosure statement should not preclude a remand from being considered a decision in the review reversing an adverse determination of patentability for patent term extension or adjustment purposes. One comment suggested that a remand should be treated as a decision by the BPAI reversing an adverse determination of patentability any time the examiner *sua sponte* withdraws all of the rejections against any one claim. Finally, one comment suggested that if the Office drops any issue raised upon appeal after the remand, the examiner's dropping of an issue raised upon appeal should be considered a decision in the review reversing an adverse determination of patentability.

*Response:* The suggestions are adopted in part as follows. If an application is remanded by a panel of the BPAI and the remand is the last action of a BPAI panel prior to the mailing of a notice of allowance under 35 U.S.C. 151 in the application, the Office will consider that remand to be a decision in the review reversing an adverse determination of patentability. Therefore, if the examiner allows the application (patent term extension or adjustment is not relevant if the application is not ultimately allowed) without returning the application to the BPAI for decision (and thus the BPAI panel remand is the last action by a BPAI panel in the application), the Office will consider that remand to be a decision in the review reversing an adverse determination of patentability. A panel remand, however, shall not be considered a decision in the review reversing an adverse determination of patentability if there is filed a request for continued examination under 35 U.S.C. 132(b) (§ 1.114) that was not first preceded by the mailing, after such remand, of at least one of an action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151.

*Comment 5:* One comment also suggested that the Office should permit applicant to petition under § 1.705 for a case-by-case determination of whether the BPAI remand should be considered a decision in the review reversing an adverse determination of patentability for patent term extension or adjustment purposes.

*Response:* The statutory scheme of 35 U.S.C. 154(b) provides that patent term adjustment and reductions to patent term adjustment are determined by objective criteria rather than on the basis of *ad hoc* determinations. That is, 35 U.S.C. 154(b)(1) specifies certain objective conditions under which (subject to certain conditions and limitations) an applicant is entitled to patent term adjustment, and 35 U.S.C. 154(b)(2)(C) requires the Office to specify (by regulations) the conditions under which there will be a reduction of patent term adjustment under 35 U.S.C. 154(b)(1). Thus, it is more in line with the statutory scheme set forth in 35 U.S.C. 154(b) for the Office to specify objective criteria under which a BPAI panel remand will be considered a decision in the review reversing an adverse determination of patentability for patent term extension or adjustment purposes, than it would be to leave this to case-by-case determinations.

In addition, as discussed in the final rule to implement the patent term adjustment provisions of the AIPA: "the Office must make its patent term

adjustment determinations by a computer program that uses the information recorded in the Office's automated patent application information system (the Patent Application Location and Monitoring system or PALM system). Thus, the Office must determine whether the Board of Patent Appeals and Interferences (or court) decision was of a nature such that 'the patent was issued under a decision in the review reversing an adverse determination of patentability' under 35 U.S.C. 154(b)(1)(C)(iii) from information concerning the decision susceptible of being recorded in the PALM system (rather than by a case-by-case review of each decision)." *See Changes To Implement Patent Term Adjustment Under Twenty-Year Patent Term,* 65 FR at 56370, 1239 *Off. Gaz. Pat. Office* at 17 (quoting 35 U.S.C. 154(b)(1)(C)(iii)).

*Comment 6:* One comment suggests that the rule be automatically retroactively applied or alternately set up a petition procedure where patentees would be allowed to petition for recalculation of the patent term extension or adjustment determination based upon the amended rule.

*Response:* The Office cannot "automatically" apply revised §§ 1.701(a)(3) and 1.702(e) retroactively in applications in which the notice of allowance was mailed before May 24, 2004. However, a patentee who believes that the patent term extension or adjustment indicated on his or her patent would have been calculated differently under § 1.701(a)(3) or § 1.702(e) as amended in this final rule may file a request for reconsideration of the patent term extension or adjustment indicated on the patent. Any such request for reconsideration must be filed no later than July 21, 2004.

For applications in which the notice of allowance is mailed on or after May 24, 2004, any applicant who believes that the URAA patent term extension (§ 1.701) or AIPA patent term adjustment (§§ 1.702 through 1.705) indicated in the notice of allowance was not calculated correctly in view of the changes to § 1.701(a)(3) or § 1.702(e) in this final rule must file a timely petition under § 1.181 or timely request for reconsideration under § 1.705(b) (respectively) to have the patent term extension or adjustment determination corrected. Any applicant who believes that the URAA patent term extension (§ 1.701) or AIPA patent term adjustment (§§ 1.702 through 1.705) indicated in the notice of allowance was not calculated correctly on any basis other than the changes to § 1.701(a)(3) or § 1.702(e) in this final rule must file a

timely petition under § 1.181 or timely request for reconsideration under § 1.705(b) (respectively) to have the patent term extension or adjustment determination corrected.

*Comment 7:* One comment suggests that the period of adjustment for administrative delay should end on the date of the mailing of the notice of allowance, not on the mailing date of the remand.

*Response:* The suggestion is not adopted. If an application is allowed after a panel remand by the BPAI, the period of appellate review ended with the decision (remand) by the BPAI.

*Comment 8:* Several comments indicated that events such as the filing of a request for refund or the filing of a status letter are caused by an Office error or delay, and should not result in a reduction of patent term adjustment under § 1.704(c)(10).

*Response:* The patent term adjustment provisions of 35 U.S.C. 154(b) provide that "[t]he Director shall prescribe regulations establishing the circumstances that constitute a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application." *See* 35 U.S.C. 154(b)(2)(C)(iii). Section 1.704(c)(10) provides that circumstances that constitute a failure of the applicant to engage in reasonable efforts to conclude processing or examination of an application also include "[s]ubmission of an amendment under § 1.312 or other paper after a notice of allowance has been given or mailed, in which case the period of adjustment set forth in § 1.703 shall be reduced by the lesser of: (i) [t]he number of days, if any, beginning on the date the amendment under § 1.312 or other paper was filed and ending on the mailing date of the Office action or notice in response to the amendment under § 1.312 or such other paper; or (ii) [f]our months." The Office did not propose any change to the provisions of § 1.704(c). The *21st Century Strategic Plan* notice of proposed rule making, however, did include a previously published clarification of the provisions of § 1.704(c)(10). *See Clarification of 37 CFR 1.704(c)(10)—Reduction of Patent Term Adjustment for Certain Types of Papers Filed After a Notice of Allowance Has Been Mailed,* 1247 *Off. Gaz. Pat. Office* at 111–12.

The filing of certain papers, such as a request for refund or a status letter, after a notice of allowance has been mailed causes substantial interference with the patent issue process. *See id.* Therefore, pursuant to the authority to 35 U.S.C. 154(b)(2)(C)(iii), the Office has prescribed a regulation (§ 1.704(c)(1))

establishing the filing of such papers after a notice of allowance has been mailed as a failure of an applicant to engage in reasonable efforts to conclude processing or examination of an application.

Section 1.26(b) provides a lengthy (two-year) period for filing any request for refund. Thus, applicants may avoid a reduction of any patent term adjustment by not filing a request for refund during the period between the mailing of a notice of allowance and the date the patent is issued. Applicants who choose to file a request for refund at a time when the filing of such a paper causes interference with the patent issue process must accept the negative impact on patent term adjustment that will result from such a course of action.

As discussed above, the PAIR system provides public access to PALM for patents and applications that have been published which can be accessed over the Internet (at http://pair.uspto.gov), and has a private side *[http://pair-direct.uspto.gov)* which may be used by an applicant to access confidential information about his or her pending application. *See id.* Thus, applicants who choose to file status letters rather than check the status of their applications via the PAIR system must accept the negative impact on patent term adjustment that will result from such a course of action.

*Comment 9:* Several comments indicated that the thirty-day period provided in § 1.704(d) was too short and should be changed to three months for consistency with § 1.97(e).

*Response:* Section 1.704(d) was adopted to permit applicants to submit information cited in a communication from a foreign patent office in a counterpart application to the Office without a reduction in patent term adjustment if an information disclosure statement is promptly (within thirty days of receipt of the communication) submitted to the Office.

*See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term,* 65 FR at 56373, 56385, 1239 *Off. Gaz. Pat. Office* at 20, 30–31. The Office did not propose to change the thirty-day period provided in § 1.704(d).

Section 1.704(d) does not provide that an information disclosure statement must be submitted within its thirty-day period to avoid a reduction of patent term adjustment (or to be considered by the Office), but rather provides a "safe-harbor" against reductions to patent term adjustment under §§ 1.704(c)(6), (c)(8), (c)(9), or (c)(10) that may result from the filing of an information disclosure statement. The filing of an

information disclosure statement during any of the periods set forth in §§ 1.704(c)(6), (c)(8), (c)(9), or (c)(10) will interfere with the patent examination or printing process. Therefore, the Office must limit the time period in § 1.704(d) to thirty days to avoid substantial interference with the Office's ability to meet the time frames specified in 35 U.S.C. 154(b)(1). *See Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term,* 65 FR at 56385, 1239 *Off. Gaz. Pat. Office* at 30.

**Rule Making Considerations**

*Administrative Procedure Act*

The change to § 1.703 in this final rule simply amends its provisions for consistency with 35 U.S.C. 154(b)(2)(A), and the change to § 1.705 concerns only the procedures for requesting reconsideration of the patent term adjustment determination printed on the patent. Therefore, these rule changes involve interpretive rules, or rules of agency practice and procedure under 5 U.S.C. 553(b)(A), and prior notice and an opportunity for public comment were not required pursuant to 5 U.S.C. 553(b)(A) (or any other law). *See Bachow Communications Inc.* v. *FCC,* 237 F.3d 683, 690 (D.C. Cir. 2001) (rules governing an application process are "rules of agency organization, procedure, or practice" and exempt from the Administrative Procedure Act's notice and comment requirement).

*Regulatory Flexibility Act*

As discussed previously, the changes to §§ 1.703 and 1.705 involve interpretive rules, or rules of agency practice and procedure under 5 U.S.C. 553(b)(A), for which prior notice and an opportunity for public comment were not required pursuant to 5 U.S.C. 553(b)(A) (or any other law).

The Deputy General Counsel for General Law of the United States Patent and Trademark Office has certified to the Chief Counsel for Advocacy of the Small Business Administration that changes in this final rule will not have a significant economic impact on a substantial number of small entities (Regulatory Flexibility Act, 5 U.S.C. 605(b)). The provisions of the Regulatory Flexibility Act relating to the preparation of a flexibility analysis are not applicable to this rule making because the changes in this final rule will not have a significant economic impact on a substantial number of small entities.

The primary change in this final rule (§§ 1.701 and 1.702) is to set forth the circumstances under which the Office

will consider a remand by the BPAI to be a decision in the review reversing an adverse determination of patentability for purposes of patent term extension and patent term adjustment. Of the 3,843 decisions in *ex parte* appeals in fiscal year 2003, 454 of these decisions remanded the application without affirming or reversing any of the rejections on appeal. Since approximately 25% of the patents granted in fiscal year 2003 were to small entities, the Office estimates that approximately 114 small entity applicants may be affected by the change to §§ 1.701 and 1.702 in this final rule. Since the Office received over 350,000 nonprovisional applications in fiscal year 2003, the change to §§ 1.701 and 1.702 in this final rule would impact relatively few (fewer than 0.1% of) patent applicants.

The change to § 1.704 merely clarifies that the thirty-day time period in § 1.704(d) runs from the first citation of the information by a foreign patent office, and that a subsequent citation of the same information by another foreign patent office would not start a new thirty-day period. Thus, the change to § 1.704 in this final rule will not have a significant economic impact on any entity.

In any event, the changes in this final rule merely concern the Office's manner of calculating patent term extension or patent term adjustment determination in certain situations, and revise the time period (from thirty days to two months) for requesting reconsideration of the patent term adjustment determination printed on the patent. The changes in this final rule would not impose any additional fees or requirements on any patent applicant. The Office published a notice of proposed rule making and certified that an initial Regulatory Act Analysis was not required. No comment on the changes being adopted in this final rule made reference to any impact of the changes on small entities.

*Executive Order 13132*

This rule making does not contain policies with federalism implications sufficient to warrant preparation of a Federalism Assessment under Executive Order 13132 (Aug. 4, 1999).

*Executive Order 12866*

This rule making has been determined to be not significant for purposes of Executive Order 12866 (Sept. 30, 1993).

*Paperwork Reduction Act*

This final rule involves information collection requirements which are subject to review by the Office of Management and Budget (OMB) under

the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*). The collection of information involved in this final rule has been reviewed and previously approved by OMB under OMB control number 0651–0020. The United States Patent and Trademark Office is not resubmitting an information collection package to OMB for its review and approval because the changes in this final rule do not affect the information collection requirements associated with the information collection under OMB control number 0651–0020.

The title, description and respondent description of this information collection is shown below with an estimate of the annual reporting burdens. Included in the estimate is the time for reviewing instructions, gathering and maintaining the data needed, and completing and reviewing the collection of information. The primary change in this final rule is to set forth the circumstances under which the Office will consider a remand by the BPAI to be a decision in the review reversing an adverse determination of patentability for purposes of patent term extension and patent term adjustment.

*OMB Number:* 0651–0020.
*Title:* Patent Term Extension.
*Form Numbers:* None.
*Type of Review:* Approved through October of 2004.
*Affected Public:* Individuals or households, business or other for-profit institutions, not-for-profit institutions, farms, Federal Government and State, Local and Tribal Governments.
*Estimated Number of Respondents:* 26,859.
*Estimated Time Per Response:* Between 1 and 25 hours.
*Estimated Total Annual Burden Hours:* 30,905 hours.
*Needs and Uses:* The information supplied to the United States Patent and Trademark Office by an applicant requesting reconsideration of a patent term adjustment determination under 35 U.S.C. 154(b) (§ 1.702 *et seq.*) is used by the United States Patent and Trademark Office to determine whether its determination of patent term adjustment under 35 U.S.C. 154(b) is correct, and whether the applicant is entitled to reinstatement of reduced patent term adjustment. The information supplied to the United States Patent and Trademark Office by an applicant seeking a patent term extension under 35 U.S.C. 156 (§ 1.710 *et seq.*) is used by the United States Patent and Trademark Office, the Department of Health and Human Services, and the Department of Agriculture to determine the eligibility of a patent for extension and to determine the period of any such

extension. The applicant can apply for patent term and interim extensions, petition the Office to review final eligibility decisions, withdraw patent term applications, and declare his or her eligibility to apply for a patent term extension.

Comments are invited on: (1) whether the collection of information is necessary for proper performance of the functions of the agency; (2) the accuracy of the agency's estimate of the burden; (3) ways to enhance the quality, utility, and clarity of the information to be collected; and (4) ways to minimize the burden of the collection of information to respondents.

Interested persons are requested to send comments regarding these information collections, including suggestions for reducing this burden, to Robert J. Spar, Director, Office of Patent Legal Administration, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313–1450, or to the Office of Information and Regulatory Affairs, Office of Management and Budget, New Executive Office Building, Room 10235, 725 17th Street, NW., Washington, DC 20503, Attention: Desk Officer for the United States Patent and Trademark Office.

Notwithstanding any other provision of law, no person is required to respond to nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a currently valid OMB control number.

**List of Subjects in 37 CFR Part 1**

Administrative practice and procedure, Courts, Freedom of Information, Inventions and patents, Reporting and record keeping requirements, Small Businesses.

■ For the reasons set forth in the preamble, 37 CFR Part 1 is amended as follows:

**PART 1—RULES OF PRACTICE IN PATENT CASES**

■ 1. The authority citation for 37 CFR Part 1 continues to read as follows:

**Authority:** 35 U.S.C. 2(b)(2).

■ 2. Section 1.701 is amended by revising paragraph (a)(3) to read as follows:

**§ 1.701   Extension of patent term due to examination delay under the Uruguay Round Agreements Act (original applications, other than designs, filed on or after June 8, 1995, and before May 29, 2000).**

(a) * * *

(3) Appellate review by the Board of Patent Appeals and Interferences or by a Federal court under 35 U.S.C. 141 or 145, if the patent was issued pursuant to a decision in the review reversing an adverse determination of patentability and if the patent is not subject to a terminal disclaimer due to the issuance of another patent claiming subject matter that is not patentably distinct from that under appellate review. If an application is remanded by a panel of the Board of Patent Appeals and Interferences and the remand is the last action by a panel of the Board of Patent Appeals and Interferences prior to the mailing of a notice of allowance under 35 U.S.C. 151 in the application, the remand shall be considered a decision in the review reversing an adverse determination of patentability as that phrase is used in 35 U.S.C. 154(b)(2) as amended by section 532(a) of the Uruguay Round Agreements Act, Public Law 103–465, 108 Stat. 4809, 4983–85 (1994), and a final decision in favor of the applicant under paragraph (c)(3) of this section. A remand by a panel of the Board of Patent Appeals and Interferences shall not be considered a decision in the review reversing an adverse determination of patentability as provided in this paragraph if there is filed a request for continued examination under 35 U.S.C. 132(b) that was not first preceded by the mailing, after such remand, of at least one of an action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151.

\*    \*    \*    \*    \*

■ 3. Section 1.702 is amended by revising paragraph (e) to read as follows:

**§ 1.702  Grounds for adjustment of patent term due to examination delay under the Patent Term Guarantee Act of 1999 (original applications, other than designs, filed on or after May 29, 2000).**

\*    \*    \*    \*    \*

(e) *Delays caused by successful appellate review.* Subject to the provisions of 35 U.S.C. 154(b) and this subpart, the term of an original patent shall be adjusted if the issuance of the patent was delayed due to review by the Board of Patent Appeals and Interferences under 35 U.S.C. 134 or by a Federal court under 35 U.S.C. 141 or 145, if the patent was issued under a decision in the review reversing an adverse determination of patentability. If an application is remanded by a panel of the Board of Patent Appeals and Interferences and the remand is the last action by a panel of the Board of Patent Appeals and Interferences prior to the mailing of a notice of allowance under 35 U.S.C. 151 in the application, the remand shall be considered a decision

by the Board of Patent Appeals and Interferences as that phrase is used in 35 U.S.C. 154(b)(1)(A)(iii), a decision in the review reversing an adverse determination of patentability as that phrase is used in 35 U.S.C. 154(b)(1)(C)(iii), and a final decision in favor of the applicant under § 1.703(e). A remand by a panel of the Board of Patent Appeals and Interferences shall not be considered a decision in the review reversing an adverse determination of patentability as provided in this paragraph if there is filed a request for continued examination under 35 U.S.C. 132(b) that was not first preceded by the mailing, after such remand, of at least one of an action under 35 U.S.C. 132 or a notice of allowance under 35 U.S.C. 151.

\*    \*    \*    \*    \*

■ 4. Section 1.703 is amended by revising paragraph (f) to read as follows.

**§ 1.703  Period of adjustment of patent term due to examination delay.**

\*    \*    \*    \*    \*

(f) The adjustment will run from the expiration date of the patent as set forth in 35 U.S.C. 154(a)(2). To the extent that periods of delay attributable to the grounds specified in § 1.702 overlap, the period of adjustment granted under this section shall not exceed the actual number of days the issuance of the patent was delayed. The term of a patent entitled to adjustment under § 1.702 and this section shall be adjusted for the sum of the periods calculated under paragraphs (a) through (e) of this section, to the extent that such periods are not overlapping, less the sum of the periods calculated under § 1.704. The date indicated on any certificate of mailing or transmission under § 1.8 shall not be taken into account in this calculation.

\*    \*    \*    \*    \*

■ 5. Section 1.704 is amended by revising paragraph (d) to read as follows.

**§ 1.704  Reduction of period of adjustment of patent term.**

\*    \*    \*    \*    \*

(d) A paper containing only an information disclosure statement in compliance with §§ 1.97 and 1.98 will not be considered a failure to engage in reasonable efforts to conclude prosecution (processing or examination) of the application under paragraphs (c)(6), (c)(8), (c)(9), or (c)(10) of this section if it is accompanied by a statement that each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent

office in a counterpart application and that this communication was not received by any individual designated in § 1.56(c) more than thirty days prior to the filing of the information disclosure statement. This thirty-day period is not extendable.

\*    \*    \*    \*    \*

■ 6. Section 1.705 is amended by revising paragraph (d) to read as follows:

**§ 1.705  Patent term adjustment determination.**

\*    \*    \*    \*    \*

(d) If there is a revision to the patent term adjustment indicated in the notice of allowance, the patent will indicate the revised patent term adjustment. If the patent indicates or should have indicated a revised patent term adjustment, any request for reconsideration of the patent term adjustment indicated in the patent must be filed within two months of the date the patent issued and must comply with the requirements of paragraphs (b)(1) and (b)(2) of this section. Any request for reconsideration under this section that raises issues that were raised, or could have been raised, in an application for patent term adjustment under paragraph (b) of this section shall be dismissed as untimely as to those issues.

\*    \*    \*    \*    \*

Dated: April 16, 2004.

**Jon W. Dudas,**

*Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office.*

[FR Doc. 04–9144 Filed 4–21–04; 8:45 am]

BILLING CODE 3510–16–P

---

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Part 52**

[AZ 126–0074b; FRL–7650–3]

**Interim Final Determination That State Has Corrected a Deficiency in the Arizona State Implementation Plan, Arizona Department of Environmental Quality**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Interim final determination.

**SUMMARY:** EPA is making an interim final determination to stay and/or defer imposition of sanctions based on a proposed approval of revisions to the Arizona Department of Environmental Quality (ADEQ) portion of the Arizona

(2) Persons desiring to transit the area of a security zone may contact the Captain of the Port at telephone number 415–399–3547 or on VHF–FM channel 16 (156.8 MHz) to seek permission to transit the area. If permission is granted, all persons and vessels must comply with the instructions of the Captain of the Port or his or her designated representative.

(c) *Enforcement.* All persons and vessels shall comply with the instructions of the Coast Guard Captain of the Port or the designated on-scene patrol personnel. Coast Guard personnel comprise commissioned, warrant, and petty officers of the Coast Guard onboard Coast Guard, Coast Guard Auxiliary, local, state, and federal law enforcement vessels. Upon being hailed by U.S. Coast Guard patrol personnel by siren, radio, flashing light, or other means, the operator of a vessel shall proceed as directed.

Dated: June 3, 2004.

**Gerald M. Swanson,**

*Captain, U.S. Coast Guard, Captain of the Port, San Francisco Bay, California.*

[FR Doc. 04–13974 Filed 6–18–04; 8:45 am]

**BILLING CODE 4910–15–P**

---

**DEPARTMENT OF COMMERCE**

**Patent and Trademark Office**

**37 CFR Part 1**

**[Docket No. 2004–P–036]**

**Explanation of 37 CFR 1.703(f) and of the United States Patent and Trademark Office Interpretation of 35 U.S.C. 154(b)(2)(A)**

**AGENCY:** United States Patent and Trademark Office, Commerce.

**ACTION:** Interpretation.

**SUMMARY:** The United States Patent and Trademark Office (Office) recently published a final rule revising the patent term extension and patent term adjustment provisions of the rules of practice. This document further explains the Office's policy since 2000 concerning one of the patent term adjustment provisions of the rules of practice.

**DATES:** *Applicability:* The patent term adjustment provisions of the rules of practice apply to all original (non-reissue) applications, other than for a design patent, filed on or after May 29, 2000, and to patents issued on such applications.

**FOR FURTHER INFORMATION CONTACT:** Kery A. Fries, Legal Advisor, Office of Patent

Legal Administration, by telephone at (703) 305–1383, by mail addressed to: Mail Stop Comments—Patents, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313–1450, or by facsimile to (703) 746–3240, marked to the attention of Kery A. Fries.

**SUPPLEMENTARY INFORMATION:** The Office recently published a final rule revising the patent term extension and patent term adjustment provisions of the rules of practice in title 37 of the Code of Federal Regulations (CFR). *See Revision of Patent Term Extension and Patent Term Adjustment Provisions,* 69 FR 21704 (Apr. 22, 2004), 1282 *Off. Gaz. Pat. Office* 100 (May 18, 2004) (final rule). The primary purpose of this final rule was to revise the rules of practice in patent cases to indicate that under certain circumstances a panel remand by the Board of Patent Appeals and Interferences shall be considered "a decision in the review reversing an adverse determination of patentability" for purposes of patent term extension or patent term adjustment. *See* 69 FR at 21704, 1282 *Off. Gaz. Pat. Office* at 100.

This final rule, however, also adopted other miscellaneous changes to the patent term adjustment regulations. *See* 69 FR at 21704, 1282 *Off. Gaz. Pat. Office* at 100. One such miscellaneous change was a slight revision to 37 CFR 1.703(f) so that its language would more closely track the corresponding language of 35 U.S.C. 154(b)(2)(A). The explanatory text concerning 37 CFR 1.703(f) indicated that:

The language of former § 1.703(f) misled applicants into believing that delays under 35 U.S.C. 154(b)(1)(A) (§§ 1.702(a) and 1.703(a)) and delays under 35 U.S.C. 154(b)(1)(B) (§§ 1.702(b) and 1.703(b)) were overlapping only if the period of delay under 35 U.S.C. 154(b)(1)(A) occurred more than three years after the actual filing date of the application.[1] If an application is entitled to an adjustment under 35 U.S.C. 154(b)(1)(B), the entire period during which the application was pending before the Office (except for periods excluded under 35 U.S.C. 154(b)(1)(B)(i)-(iii)), and not just the period beginning three years after the actual filing date of the application, is the period of delay under 35 U.S.C. 154(b)(1)(B) in determining whether periods of delay overlap under 35 U.S.C. 154(b)(2)(A).

[1] Another way of explaining this is: Based upon the contentions presented in a number of patent term adjustment petitions under 37 CFR 1.705, it has become apparent to the Office that some applicants did not fully appreciate that delays under 35 U.S.C. 154(b)(1)(A) (§§ 1.702(a) and 1.703(a)) and delays under 35 U.S.C. 154(b)(1)(B) (§§ 1.702(b) and 1.703(b)) may still be overlapping delays under 35 U.S.C. 154(b)(2)(A), even if the period of delay under 35 U.S.C. 154(b)(1)(A) did not occur more than three years after the actual filing date of the application.

*See* 69 FR at 21706, 1282 *Off. Gaz. Pat. Office* at 101. The Office has subsequently determined that there is a need for further explanation of the meaning of this statement.

35 U.S.C. 154(b)(2)(A) provides that: "[t]o the extent that periods of delay attributable to grounds specified in paragraph (1) [*i.e.,* 35 U.S.C. 154(b)(1)] overlap, the period of any adjustment granted under this subsection shall not exceed the actual number of days the issuance of the patent was delayed." *See* 35 U.S.C. 154(b)(2)(A). The Office revised 37 CFR 1.703(f) in this final rule to read "[t]o the extent that periods of delay attributable to the grounds specified in § 1.702 overlap, the period of adjustment granted under this section shall not exceed the actual number of days the issuance of the patent was delayed." *See* 69 FR at 21711, 1282 *Off. Gaz. Pat. Office* at 106. Therefore, the change to 37 CFR 1.703(f) in this final rule makes its language track the language of 35 U.S.C. 154(b)(2)(A).

The change to 37 CFR 1.703(f) in this final rule and the accompanying explanatory text in the supplementary information section of this final rule was not a substantive change to 37 CFR 1.703(f) or a change to the Office's interpretation of 35 U.S.C. 154(b)(2)(A). This change was simply a restatement of the position taken by the Office when implementing the patent term adjustment provisions of the American Inventors Protection Act of 1999 (AIPA)[2] in 2000. Specifically, the Office has consistently taken the position that if an application is entitled to an adjustment under the three-year pendency provision of 35 U.S.C. 154(b)(1)(B), the entire period during which the application was pending before the Office (except for periods excluded under 35 U.S.C. 154(b)(1)(B)(i)-(iii)), and not just the period beginning three years after the actual filing date of the application, is the relevant period under 35 U.S.C. 154(b)(1)(B) in determining whether periods of delay "overlap" under 35 U.S.C. 154(b)(2)(A).

The position set forth in the supplementary information section of this final rule is also consistent with the section-by-section analysis[3] of 35 U.S.C.

[2] Pub. L. 106–113, 113 Stat. 1501, 1501A–552 through 1501A–591 (1999).

[3] The AIPA is title IV of the Intellectual Property and Communications Omnibus Reform Act of 1999 (S. 1948), which was incorporated and enacted into law as part of Pub. L. 106–113. The Conference Report for H.R. 3194, 106th Cong. 1st. Sess. (1999), which resulted in Pub. L. 106–113, does not contain any discussion [other than the incorporated language] of S. 1948. A section-by-section analysis of S. 1948, however, was printed in the

Continued

**EXHIBIT**

I

154(b)(2)(A)). The section-by-section analysis of 35 U.S.C. 154(b)(2)(A) indicates that periods of delay overlap where there are multiple grounds for extending the term of a patent that exist simultaneously.[4]

The position set forth in the supplementary information section of this final rule has been the Office's position since the implementation of the AIPA, as shown (for example) by the numerous Office presentations on the AIPA in 2001 which included an example [5] illustrating this position. Specifically, this example demonstrates that a two-month delay in issuing a first Office action (35 U.S.C. 154(b)(1)(A)(i)) and a two-month delay in issuing the patent (35 U.S.C. 154(b)(1)(B)) were considered overlapping delays, even though the two-month delay in issuing the first Office action occurred prior to three years (thirty-six months) after the application's filing date. This is because if the Office does not issue a patent until three years and two months (thirty-eight

Congressional Record at the request of Senator Lott. *See* 145 Cong. Rec. S14,708–26 (1999) (daily ed. Nov. 17, 1999).

[4] The section-by-section analysis of 35 U.S.C. 154(b)(2)(A) specifically provides that:

Section 4402 imposes limitations on restoration of term. In general, pursuant to [35 U.S.C.] 154(b)(2)(A)–(C), total adjustments granted for restorations under [35 U.S.C. 154](b)(1) are reduced as follows: (1) To the extent that there are multiple grounds for extending the term of a patent that may exist simultaneously (*e.g.*, delay due to a secrecy order under [35 U.S.C.] 181 and administrative delay under [35 U.S.C.] 154(b)(1)(A)), the term should not be extended for each ground of delay but only for the actual number of days that the issuance of a patent was delayed; *See* 145 Cong. Rec. S14,718.

[5] The PBG (Patent Business Goals) and AIPA Rulemaking and Patent Examination Guidelines Training and Implementation Guide (August 2001 Supplement) contains a slide presentation (this slide presentation can be found on the Office's Internet Web site at: *http://www.uspto.gov/web/patents/pbgaipaguide/aipa.htm*), in which slide 19 provides an example that indicates this interpretation of the provisions of 35 U.S.C. 154(b)(2)(A). In the example shown in slide 19, the Office did not issue a first action until sixteen months after the application's filing date, thus missing the fourteen-month time frame in 35 U.S.C. 154(b)(1)(A)(i) by two months (shown in red), and the Office did not issue the patent until thirty-eight months after the application's filing date, thus missing the three-year (thirty-six-month) time frame in 35 U.S.C. 154(b)(1)(B) by two months. The slide is used to demonstrate that for an application entitled to an adjustment under the three-year pendency provision of 35 U.S.C. 154(b)(1)(B), the Office considers the entire period during which the application was pending before the Office (shown in green), and not just the period beginning three years after the actual filing date of the application, to be the relevant period under 35 U.S.C. 154(b)(1)(B) in determining whether periods of delay "overlap" under 35 U.S.C. 154(b)(2)(A). In this situation, the relevant periods under 35 U.S.C. 154(b)(1)(A)(i) and 35 U.S.C. 154(b)(1)(B) "overlap" under 35 U.S.C. 154(b)(2)(A), resulting in the applicant being entitled to a patent term adjustment of only two months.

months) after its filing date, the relevant period in determining the Office delay in issuing the patent is not just the period between three years (thirty-six months) after the application's filing date and the date the patent issues (at thirty-eight months after the application's filing date), but is the entire period between the application's filing date and the date the patent issues.

Furthermore, delays resulting in the Office's failure to meet the time frames specified in 35 U.S.C. 154(b)(1)(A) (the "fourteen-four-four-four-" provisions) are not always overlapping with a delay resulting in the Office's failure to issue a patent within the three-year time frame specified in 35 U.S.C. 154(b)(1)(B) because not all application pendency time is counted toward this three-year period. *See* 35 U.S.C. 154(b)(1)(B)(i)–(iii). This situation is illustrated by an example in which: (1) The Office meets the "fourteen-four-four-four" time frames specified in 35 U.S.C. 154(b)(1)(A) but does not mail a final rejection until thirty-seven months after the application's filing date [6]; (2) a RCE [7] (with a reply to the final rejection) is filed at forty months after the application's filing date; (3) the Office issues a notice of allowance under 35 U.S.C. 151 at forty-three months after the application's filing date; (4) the issue fee is paid at forty-seven months after the application's filing date; and (5) the Office issues the patent at fifty-three months after the application's filing date.[8] In this example, the applicant would be entitled to a patent term adjustment of four months due to the Office's failure to issue a patent within three years,[9] plus a patent term adjustment of two months due to the Office's failure to issue a patent within four months after the issue fee has been paid and all outstanding requirements have been met, for a total patent term adjustment of six months. The delay due to the Office's failure to issue a

[6] Meeting the "fourteen-four-four-four" time frames specified in 35 U.S.C. 154(b)(1)(A) but not meeting the three-year time frame in 35 U.S.C. 154(b)(1)(B) may occur if there are numerous non-final Office actions.

[7] A request for continued examination under 35 U.S.C. 132(b) and 37 CFR 1.114.

[8] Thereby missing one of the "fourteen-four-four-four-" month time frames specified in 35 U.S.C. 154(b)(1)(A) by two months: specifically, the four-month time frame in 35 U.S.C. 154(b)(1)(A)(iv) for issuing a patent after the issue fee has been paid and all outstanding requirements have been met.

[9] For purposes of determining patent term adjustment under 35 U.S.C. 154(b)(1)(B), the application will be treated as having been issued at forty months after its filing date because the period subsequent to the filing of the RCE is not included in the three-year time frame specified in 35 U.S.C. 154(b)(1)(B).

patent after the issue fee has been paid and all outstanding requirements have been met within the four-month time frame specified in 35 U.S.C. 154(b)(1)(A)(iv) does not "overlap" with the three-year time frame specified in 35 U.S.C. 154(b)(1)(B) because the period subsequent to the filing of the RCE is not included in the three-year time frame specified in 35 U.S.C. 154(b)(1)(B). *See* 35 U.S.C. 154(b)(1)(B)(i). Thus, the Office does not interpret 35 U.S.C. 154(b)(2)(A) as permitting either patent term adjustment under 35 U.S.C. 154(b)(1)(A)(i)–(iv), or patent term adjustment under 35 U.S.C. 154(b)(1)(B), but not as permitting patent term adjustment under both 35 U.S.C. 154(b)(1)(A)(i)–(iv) and 154(b)(1)(B).

This document involves information collection requirements which are subject to review by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*). The collection of information involved in this notice has been reviewed and previously approved by OMB under OMB control number 0651–0020. The United States Patent and Trademark Office is not resubmitting an information collection package to OMB for its review and approval because this document does not affect the information collection requirements associated with the information collection under OMB control number 0651–0020.

Notwithstanding any other provision of law, no person is required to respond to nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a currently valid OMB control number.

**Authority:** 35 U.S.C. 154(b).

Dated: June 14, 2004.

**Jon W. Dudas,**

*Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office.*

[FR Doc. 04–13765 Filed 6–18–04; 8:45 am]

**BILLING CODE 3510–16–P**



# United States Patent and Trademark Office
## Performance and Accountability Report
### Fiscal Year 2007

accountability

innovation

creativity

*Transforming for the Future Today*

EXHIBIT
J



# Fiscal Year 2007 USPTO Workload Tables

**Index of Tables**

| | | Page |
|---|---|---|
| Table 1 | Summary of Patent Examining Activities | 109 |
| Table 2 | Patent Applications Filed | 110 |
| Table 3 | Patent Applications Pending Prior to Allowance | 111 |
| Table 4 | Patent Pendency Statistics | 112 |
| Table 5 | Summary of Total Pending Patent Applications | 112 |
| Table 6 | Patents Issued | 113 |
| Table 7 | Patent Applications Filed by Residents of the United States | 114 |
| Table 8 | Patents Issued to Residents of the United States | 115 |
| Table 9 | United States Patent Applications Filed by Residents of Foreign Countries | 116 |
| Table 10 | Patents Issued by the United States to Residents of Foreign Countries | 118 |
| Table 11 | Statutory Invention Registrations Published | 119 |
| Table 12 | United States Government Agency Patents | 120 |
| Table 13A | Ex Parte Reexamination | 121 |
| Table 13B | Inter Partes Reexamination | 121 |
| Table 14 | Summary of Contested Patent Cases | 122 |
| Table 15 | Summary of Trademark Examining Activities | 123 |
| Table 16 | Trademark Applications Filed for Registration and Renewal and Trademark Affidavits Filed | 124 |
| Table 17 | Summary of Pending Trademark Applications | 125 |
| Table 18 | Trademarks Registered, Renewed, and Published Under Section 12(C) | 126 |
| Table 19 | Trademark Applications Filed by Residents of the United States | 127 |
| Table 20 | Trademarks Registered to Residents of the United States | 128 |
| Table 21 | Trademark Applications Filed by Residents of Foreign Countries | 129 |
| Table 22 | Trademarks Registered to Residents of Foreign Countries | 131 |
| Table 23 | Summary of Contested Trademark Cases | 133 |
| Table 24 | Actions on Petitions to the Commissioner of Patents and Trademarks | 134 |
| Table 25 | Cases in Litigation | 135 |
| Table 26 | Patent Classification Activity | 136 |
| Table 27 | Scientific and Technical Information Center Activity | 136 |
| Table 28 | End of Year Personnel | 137 |
| Table 29A | Top 50 Trademark Applicants | 138 |
| Table 29B | Top 50 Trademark Registrants | 138 |

| TABLE 1 | SUMMARY OF PATENT EXAMINING ACTIVITIES (FY 2003 - FY 2007)[1] | | | | |
|---|---|---|---|---|---|

**(PRELIMINARY FOR FY 2007)[1]**

| PATENT EXAMINING ACTIVITY | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|
| **Applications filed, total[2]** | 355,418 | 376,984 | 409,532 | 445,613 | 467,243 |
| Utility[3] | 331,729 | 353,319 | 381,797 | 417,453 | 438,576 |
| Reissue | 938 | 996 | 1,143 | 1,204 | 994 |
| Plant | 785 | 1,212 | 1,288 | 1,103 | 1,047 |
| Design | 21,966 | 23,457 | 25,304 | 25,853 | 26,626 |
| **Provisional Applications Filed[4]** | 92,517 | 102,268 | 111,753 | 121,471 | 132,352 |
| **First actions** | | | | | |
| Design | 19,013 | 17,328 | 20,108 | 23,291 | 29,029 |
| Utility, Plant, and Reissue | 283,111 | 288,315 | 297,287 | 320,349 | 367,953 |
| PCT/Chapter | 23,277 | 17,935 | 22,795 | 25,034 | 24,741 |
| **Patent application disposals, total** | 303,635 | 304,921 | 298,838 | 332,535 | 362,227 |
| **Allowed patent applications, total** | 205,879 | 195,611 | 182,254 | 186,593 | 195,530 |
| Design | 17,596 | 16,262 | 18,161 | 20,721 | 25,747 |
| Utility, Plant, and Reissue | 188,283 | 179,349 | 164,093 | 165,872 | 169,783 |
| **Abandoned, total** | 97,745 | 109,295 | 116,564 | 145,912 | 166,690 |
| Design | 1,569 | 1,471 | 1,332 | 2,125 | 2,661 |
| Utility, Plant, and Reissue | 96,176 | 107,824 | 115,232 | 143,787 | 164,029 |
| **Statutory invention registration disposals, total** | 11 | 15 | 20 | 30 | 7 |
| **PCT/Chapter II examinations completed** | 21,005 | 19,439 | 12,594 | 7,295 | 5,336 |
| **Applications Published[5]** | 243,007 | 248,561 | 291,221 | 291,259 | 302,678 |
| **Patents issued[6]** | 189,590 | 187,170 | 165,483 | 183,187 | 184,377 |
| Utility | 171,493 | 169,296 | 151,077 | 162,509 | 160,308 |
| Reissue | 394 | 343 | 195 | 500 | 546 |
| Plant | 1,178 | 998 | 816 | 1,106 | 979 |
| Design | 16,525 | 16,533 | 13,395 | 19,072 | 22,544 |
| Pendency time of average patent application[7] | 26.7 | 27.6 | 29.1 | 31.1 | 31.9 |
| Reexamination certificates issued | 193 | 138 | 223 | 329 | 367 |
| PCT international applications received by USPTO as receiving office[2] | 42,969 | 45,396 | 46,926 | 52,524 | 54,214 |
| National requirements received by USPTO as designated/elected office[2,8] | 32,753 | 37,173 | 41,256 | 48,158 | 52,339 |
| Patents renewed under Public Law (Pub.L.) 102-204[8] | 253,475 | 269,815 | 268,935 | 324,913 | 343,894 |
| Patents expired under Pub.L. 102-204[9] | 57,770 | 63,552 | 67,534 | 72,654 | 67,122 |

[1] FY 2007 data are preliminary and will be finalized in the FY 2008 PAR.
[2] FY 2006 application data has been updated with final end of year numbers
[3] Utility patents include chemical, electrical and mechanical applications.
[4] Provisional applications provided for in Pub.L. 103-465.
[5] Eighteen-month publication of patent applications provided for in the American Inventors Protection Act of 1999, Pub.L. 106-113.
[6] Excludes withdrawn numbers. Past years' data may have been revised from prior year reports.
[7] Average time (in months) between filing and issuance or abandonment of utility, plant, and reissue applications. This average does not include design patents.
[8] FY 2005 data has been updated.
[9] The provisions of Pub.L. 102-204 regarding the renewal of patents superseded Pub.L. 96-517 and Pub.L. 97-247.

| TABLE 2 | PATENT APPLICATIONS FILED (FY 1987 - FY 2007) | | | | |
|---|---|---|---|---|---|
| **(PRELIMINARY FOR FY 2007)[1]** | | | | | |
| Year | Utility | Design | Plant | Reissue | Total |
| 1987 | 125,677 | 10,786 | 364 | 366 | 137,173 |
| 1988 | 136,253 | 11,114 | 377 | 439 | 148,183 |
| 1989 | 150,418 | 11,975 | 418 | 495 | 163,306 |
| 1990 | 162,708 | 11,140 | 395 | 468 | 174,711 |
| 1991 | 166,765 | 10,368 | 414 | 536 | 178,083 |
| 1992 | 171,623 | 12,907 | 335 | 581 | 185,446 |
| 1993 | 173,619 | 13,546 | 362 | 572 | 188,099 |
| 1994 | 185,087 | 15,431 | 430 | 606 | 201,554 |
| 1995 | 220,141 | 15,375 | 516 | 647 | 236,679 |
| 1996 | 189,922 | 15,160 | 557 | 637 | 206,276 |
| 1997 | 219,486 | 16,272 | 680 | 607 | 237,045 |
| 1998 | 238,850 | 16,576 | 658 | 582 | 256,666 |
| 1999 | 259,618 | 17,227 | 759 | 664 | 278,268 |
| 2000 | 291,653 | 18,563 | 786 | 805 | 311,807 |
| 2001 | 324,211 | 18,636 | 914 | 956 | 344,717 |
| 2002 | 331,590 | 19,706 | 1,134 | 974 | 353,394 |
| 2003 | 331,729 | 21,966 | 785 | 938 | 355,418 |
| 2004 | 353,319 | 23,457 | 1,212 | 996 | 378,984 |
| 2005 | 381,797 | 25,304 | 1,288 | 1,143 | 409,532 |
| 2006[2] | 417,453 | 25,853 | 1,204 | 1,103 | 445,613 |
| **2007** | **438,576** | **26,626** | **1,047** | **994** | **467,243** |

[1] FY 2007 data are preliminary and will be finalized in the FY 2008 PAR.
[2] FY 2006 applications data has been updated with final end of the year numbers.

| TABLE 3 | PATENT APPLICATIONS PENDING PRIOR TO ALLOWANCE[1] (FY 1987 - FY 2007) | |
|---|---|---|
| Year | Awaiting action by examiner | Total applications pending[2] |
| 1987 | 65,010 | 209,911 |
| 1988 | 75,678 | 215,280 |
| 1989 | 92,377 | 222,755 |
| 1990 | 104,179 | 244,964 |
| 1991 | 104,086 | 254,507 |
| 1992 | 112,201 | 269,596 |
| 1993 | 99,904 | 244,646 |
| 1994 | 107,824 | 261,249 |
| 1995 | 124,275 | 288,522 |
| 1996 | 139,943 | 303,720 |
| 1997 | 112,430 | 275,295 |
| 1998 | 224,446 | 379,484 |
| 1999 | 243,207 | 414,837 |
| 2000 | 308,056 | 485,129 |
| 2001 | 355,779 | 542,007 |
| 2002 | 433,691 | 636,530 |
| 2003 | 471,382 | 674,691 |
| 2004 | 528,685 | 756,604 |
| 2005 | 611,114 | 885,002 |
| 2006 | 701,147 | 1,003,884 |
| 2007 | 760,924 | 1,112,517 |

[1]  Includes patent applications pending at end of period indicated, and includes utility, reissue, plant, and design applications. Does not include allowed applications.

[2]  Applications under examination, including those in preexamination processing.

| TABLE 4 | PATENT PENDENCY STATISTICS[1] (FY 2007) | |
|---|---|---|
| UPR Pendency Statistics by Technology Center (in months) | Average First Action Pendency | Total Average Pendency |
| Total UPR Pendency | 25.3 | 31.9 |
| Tech Center 1600 - Biotechnology & Organic Chemistry | 22.7 | 34.3 |
| Tech Center 1700 - Chemical & Materials Engineering | 26.1 | 34.4 |
| Tech Center 2100 - Computer Architecture, Software & Information Security | 30.7 | 42.9 |
| Tech Center 2600 - Communications | 34.0 | 43.1 |
| Tech Center 2800 - Semiconductor, Electrical, Optical Systems & Components | 17.7 | 26.5 |
| Tech Center 3600 - Transportation, Construction, Agriculture, & Electronic Commerce | 25.9 | 31.6 |
| Tech Center 3700 - Mechanical Engineering, Manufacturing & Products | 23.1 | 29.8 |

[1] Pendency is calculated based on the most recent filing date.

| TABLE 5 | SUMMARY OF TOTAL PENDING PATENT APPLICATIONS (FY 2007) | | |
|---|---|---|---|
| Stage of processing | Utility, plant and reissue applications | Design applications | Total patent applications |
| **Pending patent applications, total** | **1,145,202** | **39,131** | **1,184,333** |
| **In preexamination processing, total** | **174,256** | **4,130** | **178,386** |
| **Under examination, total** | **908,751** | **24,750** | **933,501** |
| Undocketed | 173,066 | 5,222 | 178,288 |
| Awaiting first action by examiner | 389,966 | 14,284 | 404,250 |
| Rejected, awaiting response by applicant | 241,325 | 4,043 | 245,368 |
| Amended, awaiting action by examiner | 78,695 | 1,096 | 79,791 |
| In interference | 294 | | 295 |
| On appeal, and other[1] | 25,405 | 104 | 25,509 |
| **In post-examination processing, total** | **62,195** | **10,251** | **72,446** |
| Awaiting issue fee | 44,954 | 5,841 | 50,695 |
| Awaiting printing[2] | 14,261 | 4,409 | 18,670 |
| D-10s (secret cases in condition for allowance) | 3,080 | | 3,081 |

[1] Includes cases on appeal and undergoing petitions.
[2] Includes withdrawn cases.

| TABLE 6 | PATENTS ISSUED[1] FY 1987 - FY 2007[2] | | | | |
|---|---|---|---|---|---|
| Year | Utility | Design | Plant | Reissue | Total |
| 1987 | 82,141 | 6,158 | 240 | 254 | 88,793 |
| 1988 | 77,307 | 5,740 | 293 | 244 | 83,584 |
| 1989 | 95,829 | 5,844 | 728 | 309 | 102,710 |
| 1990 | 88,972 | 7,176 | 295 | 282 | 96,725 |
| 1991 | 91,619 | 9,387 | 318 | 334 | 101,658 |
| 1992 | 99,406 | 9,612 | 336 | 375 | 109,728 |
| 1993 | 96,675 | 9,946 | 408 | 302 | 107,331 |
| 1994 | 101,270 | 11,138 | 513 | 346 | 113,267 |
| 1995 | 101,895 | 11,662 | 390 | 294 | 114,241 |
| 1996 | 104,900 | 11,346 | 338 | 291 | 116,875 |
| 1997 | 111,977 | 10,331 | 400 | 267 | 122,975 |
| 1998 | 139,298 | 14,419 | 577 | 284 | 154,578 |
| 1999 | 142,852 | 15,480 | 436 | 393 | 159,161 |
| 2000 | 164,486 | 16,718 | 453 | 561 | 182,218 |
| 2001 | 169,571 | 17,179 | 563 | 504 | 187,817 |
| 2002 | 160,939 | 15,096 | 912 | 465 | 177,312 |
| 2003 | 171,493 | 16,525 | 1,178 | 394 | 189,590 |
| 2004 | 169,296 | 16,533 | 998 | 343 | 187,170 |
| 2005 | 151,077 | 13,395 | 816 | 495 | 165,483 |
| 2006 | 162,509 | 19,072 | 1,106 | 500 | 183,187 |
| 2007[4] | 160,308 | 22,544 | 979 | 546 | 184,377 |

Excludes withdrawn numbers.

Past years' data may have been revised from prior year reports.

[3] Includes chemical, electrical, and mechanical applications.

[4] FY 2007 data is preliminary.

Table 4.
**Patent Pendency and Cycle Time Statistics**

(FY 1999)

| Utility, plant & reissue (UPR) applications | Number of applications | Average pendency (in months) |
|---|---|---|
| **Total** | **209,562** | **25.0** |
| Issued | 145,500 | 26.2 |
| Abandoned | 64,062 | 21.8 |
| Applications in process | 456,679 | 15.7 |

| | UPR pendency statistics by technology center (in months) | | |
|---|---|---|---|
| | To issue | Abandoned | In process |
| Biotechnology, Organic Chemistry & Designs | 29.0 | 22.6 | 19.1 |
| Chemical and Material Engineering | 26.2 | 24.6 | 16.0 |
| Transportation, Construction & Agriculture | 24.4 | 18.6 | 14.4 |
| Mechanical Engineering, Manufacturing & Products | 23.4 | 18.8 | 14.1 |
| Communications and Information Processing | 31.4 | 25.9 | 16.8 |
| Physics, Optics, System Components & Electrical Engineering | 24.8 | 20.9 | 14.5 |

| | Total UPR pendency by technology center (in months) | |
|---|---|---|
| | From invention's original filing date | From most recent filing date[1] |
| **Total UPR pendency** | **26.6** | **25.0** |
| Biotechnology, Organic Chemistry & Designs | 30.9 | 27.1 |
| Chemical and Material Engineering | 26.3 | 25.8 |
| Transportation, Construction & Agriculture | 24.3 | 23.1 |
| Mechanical Engineering, Manufacturing & Products | 23.8 | 22.4 |
| Communications and Information Processing | 31.7 | 30.4 |
| Physics, Optics, System Components & Electrical Engineering | 25.5 | 24.1 |

| | Cycle time by technology center (in months) | |
|---|---|---|
| | PTO time | Time attributable to applicants |
| **Total UPR pendency** | **16.9** | **9.7** |
| Biotechnology, Organic Chemistry & Designs | 17.4 | 13.5 |
| Chemical and Material Engineering | 15.9 | 10.4 |
| Transportation, Construction & Agriculture | 15.8 | 8.5 |
| Mechanical Engineering, Manufacturing & Products | 15.4 | 8.4 |
| Communications and Information Processing | 21.3 | 10.4 |
| Physics, Optics, System Components & Electrical Engineering | 16.6 | 8.9 |

[1] "Pendency from original filing date" and "pendency from most recent filing date" differ in that the former is composed of continuing applications descending from the original, or parent invention. Pendency is calculated based on the most recent filing date, while cycle time is based on the original filing date.



**EXHIBIT**

K