## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WYETH and ELAN PHARMA
INTERNATIONAL LIMITED,

                Plaintiffs,

    v.

HON. JON W. DUDAS,
Under Secretary of Commerce for Intellectual
Property and Director of the United States
Patent and Trademark Office,

            Defendant.

Civil Action No. 1:07-cv-01492 (JR)

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND ANSWERING MEMORANDUM IN OPPOSITION TO THE PTO'S CROSS-MOTION FOR SUMMARY JUDGMENT

David O. Bickart (DC Bar No. 355313)
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, N.W., Suite 1100
Washington, DC  20005-2327
Tel:  (202) 682-3500
Fax: (202) 682-3580

*Attorneys for Plaintiffs Wyeth and
Elan Pharma International Limited*

*Of Counsel*
Richard G. Greco
Patricia A. Carson
Sapna W. Palla
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022-3598
Tel: (212) 836-8000
Fax: (212) 836-8689

31616847.DOC

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

I.    THE PTO'S CONSTRUCTION OF § 154(b) HAS NO BASIS IN THE WORDS
      OF THE STATUTE .......................................................................................... 4

    A.    There is No Ambiguity Regarding the Definition of "Delay" or "Period of
            Delay" 5

    B.    The Statute Is Not Ambiguous As to What Constitutes "Overlap" ......................... 7

    C.    The PTO's False Assumptions and Disregard of the Statutory Language
            Led to Its Erroneous Construction of the Statute ..................................................... 9

II.   THE PTO'S CONSTRUCTION IS NOT ENTITLED TO DEFERENCE, AS
      THE PTO HAS NO SUBSTANTIVE RULEMAKING POWER AND ITS
      CONSTRUCTION IS PLAINLY ERRONEOUS............................................................ 11

III.  THE LEGISLATIVE HISTORY DOES NOT SUPPORT THE PTO .............................. 13

IV.   PLAINTIFFS' INTERPRETATION, UNLIKE THE PTO'S, LEADS TO
      CONSISTENT RESULTS .............................................................................................. 15

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Animal Legal Def. Fund v. Quigg,*
    932 F.2d 920 (Fed. Cir. 1991) ......................................................................11

*Burns v. Alcala,*
    420 U.S. 575 (1975) ......................................................................................8

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ...................................................................................3, 4

*In re De Luxe, N.V.,*
    990 F.2d 607 (Fed. Cir. 1993) ......................................................................12

*In re Donaldson Co.,*
    16 F.3d 1189 (Fed. Cir. 1994) ......................................................................12

*Goldstein v. SEC,*
    451 F.3d 873 (D.C. Cir. 2006) .......................................................................8

*Gonzales v. Oregon,*
    546 U.S. 243 (2006) ....................................................................................11

*Hughes Aircraft Co. v. Jacobson,*
    525 U.S. 432 (1999) ......................................................................................6

*Merck & Co. v. Kessler,*
    80 F.3d 1543 (Fed. Cir. 1996) ................................................................11, 12

*Natural Resources Defense Council, Inc. v. EPA,*
    489 F.3d 1364 (D.C. Cir. 2007) .....................................................................8

*North Haven Bd. of Ed. v. Bell,*
    456 U.S. 512 (1982) ....................................................................................12

*Perrin v. United States,*
    444 U.S. 37 (1979) ........................................................................................8

*Stevens v. Tamai,*
    366 F.3d 1325 (Fed. Cir. 2004) ....................................................................12

Page(s)

## STATUTES AND REGULATIONS

35 U.S.C. § 2(b)(2) ......................................................................................... 11, 12

35 U.S.C. § 6(a) .............................................................................................. 11, 12

35 U.S.C. § 154(b)(1)(A) .................................................................................. *passim*

35 U.S.C. § 154(b)(1)(B) .................................................................................. *passim*

35 U.S.C. § 154(b)(1)(C) ........................................................................................ 4

35 U.S.C. § 154(b)(2) ...................................................................................... *passim*

69 Fed. Reg. 34,283 ............................................................................................ 2, 4

## LEGISLATIVE MATERIALS

145 Cong. Rec. H6944 (1999) ............................................................................... 10

H.R. Conf. Rep. No. 106-464 (1999) ............................................................... 7, 9, 13

## PRELIMINARY STATEMENT

The PTO attempts to portray applicants as ingrates, dissatisfied with patent term adjustments unilaterally deemed generous by the PTO. This portrayal is neither accurate nor fair. The decision to challenge the PTO's actions that precipitated this case was not made lightly. More than five million Americans are currently afflicted with Alzheimer's disease and every 72 seconds another American develops this disease.[1] There is currently no effective treatment available.

The '819 and '892 patents are groundbreaking, reflecting years of intensive research and investment of substantial resources dedicated to developing an effective treatment for this catastrophic illness. Contrary to the PTO's theoretical calculations,[2] both patents as adjusted by the PTO will currently expire in less than 17 years from the date on which they were issued, falling short of the 17-year term that the PTO asserts was Congress' sole intent in enacting 35 U.S.C. § 154(b).[3] Plaintiffs cannot sit idly by and allow these patents to be deprived of the full life-span to which they are entitled under the carefully constructed, unambiguous statutory scheme of § 154(b). The PTO's tortured statutory construction, manufacturing ambiguities where none exist, would deny Plaintiffs the full benefit of their hard-earned patents and should be rejected for at least the following reasons:

---

[1]    *See* Alzheimer's Association, *Alzheimer's Disease Facts and Figures, available at* http://www.alz.org/alzheimers_disease_facts_figures.asp.

[2]    *See* PTO Br. at 4 ¶ 7 & 5 ¶ 10.

[3]    Referred to herein as "the Statute" or § 154(b).

1.      The Statute provides no support whatsoever for the PTO's construction that a patent applicant receives an adjustment for the longer of delays under either (A) or (B),[4] but not for delays under both, i.e., an "either or" approach.  Indeed, the PTO's position here directly contradicts its express representation to the public that "the Office *does not* interpret" the Statute as not "permitting patent term adjustment under both 35 U.S.C. 154(b)(1)(A)(i)-(iv) and 154(b)(1)(B)."[5]

2.      The Statute is not ambiguous regarding the definition of "delay" or "period of delay," nor does it leave the beginning and ending dates for calculating the period of delay open to debate, as the PTO would have this Court believe.  Both Section (A) and (B) define this period by specifying the failure to act or the occurrence of an event that marks the start of the delay, and the action or event that marks the end of the delay.  Once the separate delays are calculated, the Statute instructs a straightforward linear combination of the expressly defined delays, subject to a single limitation regarding "overlap."[6]

3.      That single limitation to the straightforward linear combination for adjustments under (A) and (B) requires that, "to the extent that periods of delay attributable to grounds specified in paragraph (1) overlap," the adjustment "shall not exceed the actual number of days the issuance of the patent was delayed."  § 154(b)(2).  There is nothing ambiguous about the term "overlap" as used in this section – it clearly refers to instances in which two or more

---

[4]      "(A)" is used herein to refer to §154(b)(1)(A) and "(B)" is used herein to refer to §154(b)(1)(B).

[5]      *See* Explanation of 37 CFR 1.703(f) and of the United States Patent and Trademark Office Interpretation of 35 U.S.C. 154(b)(2)(A), 69 Fed. Reg. 34,283, 34,284 (June 21, 2004) ("PTO Interpretation") (emphasis added).

[6]      *See* PTO Interpretation, 69 Fed. Reg. 34,283, 34,284.

statutory delays occur on the same day.  Nor does the language regarding "actual number of days
. . . delayed" justify the PTO's "either or" interpretation.

4.    The PTO premises its flawed construction on the misguided assertion that
a delay under (A) will necessarily result in a delay under (B) such that (A) and (B) delays
inherently overlap.  The PTO's premise is wrong on several levels.  First, it is the *simultaneous*
occurrence of two different periods of delay on a single day that invokes the limitation under
§ 154(b)(2).  The plain language of the Statute dictates that (B) delay does not begin until three
years after the filing date, whereas (A) delays can occur before the three-year date.  Since (A)
delays can occur before (B) delay even exists, they cannot inherently overlap.  The PTO's
reasoning is further belied by the fact that, as illustrated herein, delay under (A) does not
necessarily result in a delay under (B).

5.    Even if the Statute were ambiguous, which it is not, the PTO has not been
granted substantive rulemaking authority by Congress and its statutory construction is not
entitled to deference under *Chevron*.[7]  Moreover, even if such deference were due, the PTO's
construction is entirely at odds with the Statute and should be rejected.

6.    The PTO's "either or" approach is not supported by statements in the
legislative history ensuring a minimum 17-year patent term.  If the Statute had been designed
solely to guarantee a 17-year effective term, as the PTO asserts, there would have been no need
for Congress to carefully craft the three distinct guarantees of the Statute.  Rather, the single
guarantee of (B), requiring that patents issue in three years, would have accomplished that goal.

---

[7]    *See Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

**I.    THE PTO'S CONSTRUCTION OF § 154(b) HAS NO BASIS IN THE WORDS OF THE STATUTE**

The PTO construes the Statute as providing for an adjustment of the longer delay under (A) or (B), but not both. (PTO Br. at 15). Yet this interpretation is directly at odds with the PTO's prior interpretation: "Thus, the Office *does not* interpret 35 U.S.C. 154(b)(2)(A) as permitting either patent term adjustment under 35 U.S.C. 154(b)(1)(A)(i)-(iv), or patent term adjustment under 35 U.S.C. 154(b)(1)(B), but not as permitting patent term adjustment under both 35 U.S.C. 154(b)(1)(A)(i)-(iv) and 154(b)(1)(B)."[8]

Despite the unequivocal position it took in 2004, the PTO now attempts to rewrite the plain statutory language under the rubric of *Chevron*. But not only did the PTO take a contradictory position then to the one it takes now, it has also acknowledged that it requires Congressional intervention to realize its newfound position that the law should provide term adjustment *only* in the event of PTO delays that result in pendency greater than three years. Specifically, in a September 2007 publication, the PTO advocated that the Statute be amended to provide term adjustment only in that case.[9]  While the PTO may wish the Statute to read that way, that is not what it currently provides.  In an effort to bring the Statute closer to its view of what the law *should* be, the PTO attempts to manufacture "ambiguities" centered on the words "delay" and "overlap" where none exist. (PTO Br. at 18)

---

[8]    *See* PTO Interpretation, 69 Fed. Reg. at 34,284 (emphasis added).

[9]    *See* Declaration of Sapna W. Palla filed on January 4, 2008 ("Palla Decl.") Ex. M.

A.    **There is No Ambiguity Regarding the Definition of "Delay" or "Period of Delay"**

The Statute provides three separate "guarantees," ensuring an applicant that it will not be deprived of effective patent term due to certain PTO delays.[10]  Both section (A) and (B) define "delay" by specifying the failure of the PTO to act or the occurrence of an event that marks the start of the delay and the action or event that marks the end of the delay.  Section (A) requires the PTO to take certain specified actions within specified time limits (e.g., issue a first office action within 14 months from the filing date).  Similarly, (B) requires a single straightforward time limit that the PTO must meet:  it must issue the patent within three years of the filing date.  The failure to meet that deadline starts the delay period, which ends when the patent issues.

Characterizing (B) as "different" on the basis that it "does not list any specific grounds causing the delay," the PTO leaps to the unsupportable conclusion that (B) is ambiguous.  (PTO Br. at 20).  Contrary to this self-serving assertion, (B) is neither circular nor ambiguous.  Section (B), just like (A), sets a clear deadline and expressly requires the PTO to extend the patent term for each day the PTO fails to meet that deadline.  The Statute does not leave the beginning and ending dates of time periods for calculating "delay" open to debate.  Each separate guarantee under (A) and (B) defines when the delay begins, e.g., "14 months after" the application was filed, "3 years after the actual filing date of the application," and provides that the delay period ends when the action is taken.  Failure to meet the deadline adds one day of patent term for each day the PTO is delinquent until the required action is taken.  Specifically, under (A) the Statute requires that "the term of the patent shall be extended 1 day

---

[10]    The third category, § 154(b)(1)(C), deals with secrecy orders, interferences, and appeals, and is not at issue in this case.

for each day after the end of the period specified in clause (i), (ii), (iii) or (iv) as the case may be until the action described in such clauses is taken." Similarly, under (B) the Statute requires that "the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued."

In short, the statutory language clearly and unambiguously defines (A) and (B) delays and spells out in no uncertain terms the remedy under each separate guarantee. As such, interpretation of the Statute should end there. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute. And where the statutory language provides a clear answer, it ends there as well.") (internal citations omitted).

Recognizing that the clear, unambiguous language of the Statute utterly contradicts its interpretation, the PTO fabricates "ambiguities," adopting two entirely inconsistent definitions of delay under (B). When calculating the amount of delay that occurred under (B) for purposes of adjustment, the PTO considers the "period of delay" as beginning only three years from the filing date of the application, just as the statute says. Yet in calculating the delay under (B) for purposes of overlap with (A), the PTO irrationally redefines the "period of delay" as beginning on the date the application was filed. The PTO's position is untenable. The guarantee under (B) assures that the application will be pending for no more than three years. Until the three years have elapsed without the patent issuing, there is no "delay" because no deadline has expired.

To support its various interpretations of "period of delay," the PTO relies selectively on § 154(b)(2)(A)'s statement that the period of adjustment "shall not exceed the actual number of days issuance of the patent was delayed." The PTO's reliance is entirely

misplaced, as that portion of (A) does not apply here. On the contrary, when read in context, the phrase the PTO cites modifies "to the extent that periods of delay . . . overlap." "Overlap" is the operative term in considering whether the period of adjustment exceeds the "actual number of days" that the issuance of the patent was delayed. As detailed below, periods overlap only when more than one form of delay occurs on a single day.

Underscoring the error in the PTO's reasoning, its approach treats "actual delay" inconsistently at best. If an applicant experiences delays under (A) only, the PTO will consider those days to be "actual days" of delay, and adjust the patent term accordingly. However, if an applicant has the same (A) delay but experiences a longer (B) delay, the (A) delay will no longer constitute "actual days" of delay. This approach to "actual" delay is not supported by any section of the Statute, including § 154(b)(2)(A), nor is there any indication that Congress intended such an arbitrary interpretation.

**B.** **The Statute Is Not Ambiguous As to What Constitutes "Overlap"**

In further pursuit of its quest to change the law through statutory misconstruction, the PTO asserts that the term "overlap" is ambiguous and assigns a meaning to "overlap" that allows it to consider (A) and (B) delays to "overlap" before any delay under (B) even exists. There is nothing ambiguous about the term "overlap" or the provisions of § 154(b)(2).

Section 154(b)(2) provides a straightforward limitation to simply adding periods of adjustment in recognition of the fact that more than one type of delay can occur on a single day. As Congress explained concerning this section of the original bill, when delays occur simultaneously, the adjustment is for each day of delay and not for the number of separate grounds for delay occurring on a single day. The Conference Report explains:

> To the extent that there are *multiple grounds* for extending the term of a patent that may *exist simultaneously* (e.g., delay due to a secrecy order under section 181 and administrative delay under

> section 154(b)(1)(A)), the term *should not be extended for each
> ground of delay but only for the actual number of days* that the
> issuance of a patent was delayed . . . .

H.R. Conf. Rep. No. 106-464, at 127 (1999) (emphasis added).

It is the *simultaneous* occurrence, i.e., overlap, of two different periods of delay

that invokes the limitation set forth in § 154(b)(2).  Absent such overlap, there is no limitation

applicable, and the adjustment to the patent term must be made for each day of delay.  The

language of the Statute is clear and unambiguous:

> *To the extent that periods of delay attributable to grounds specified
> in paragraph (1) overlap,* the period of any adjustment granted
> under this subsection shall not exceed the actual number of days
> the issuance of the patent was delayed.

§ 154(b)(2) (emphasis added).

Section 154(b)(1) does not give the PTO discretion to decide whether missing one

deadline under (A) caused it to miss the separate deadline of (B), and to deny adjustments based

on supposition regarding the "actual" amount of delay.  Rather, the limitation of § 154(b)(2)

applies in a mechanical way only "[t]o the extent that periods of delay attributable to grounds

specified in paragraph (1) *overlap.*"  If there are no overlapping periods of delay, then there is

simply no limitation applicable from § 154(b)(2).

Finding no definition in the Statute of the word "overlap," the PTO asserts

ambiguity and proceeds to apply a definition that is inconsistent with its ordinary meaning.

"[T]he absence of a statutory definition does not render a word ambiguous." *Natural Resources

Defense Council, Inc. v. EPA*, 489 F.3d 1364, 1374 (D.C. Cir. 2007) (citing *Goldstein v. SEC*,

451 F.3d 873, 878 (D.C. Cir. 2006)).  Moreover, it is a "fundamental canon of statutory

construction" that "unless otherwise defined, words will be interpreted as taking their ordinary,

contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979) (citing *Burns v. Alcala*, 420 U.S. 575, 580-81 (1975)).

The ordinary meaning of "overlap" can be found in any dictionary. For example, Merriam-Webster defines "overlap" as "to occupy the same area in part" and "to have something in common."[11] Two periods of delay overlap when both periods of delay occur on the same calendar days. Congress made this clear in the House Conference Report on the original bill, where it stated that periods of delay "overlap" when there is a *simultaneous occurrence* of more than one ground for a patent term adjustment. *See* H.R. Conf. Rep. No. 106-464, at 127.

Multiple grounds for an adjustment exist "simultaneously" only when more than one ground for adjustment occurs on the same day. In those circumstances there is an adjustment of one day for each actual day of delay, and not one day for each separate ground for adjustment that occurred on a single day.

No rational definition of "overlap" could include, as the PTO wrongly argues, a period from May 12, 2004 to November 22, 2005 (the delay under (A) for the '892 patent) as "overlapping" with a period from March 12, 2006 to February 20, 2007 (the delay under (B) for the '892 patent). (*See* Plaintiffs' Opening Br. at 10, Fig. 1). Each of those periods of delay, and grounds for adjustment, occurred on distinct calendar days – indeed, distinct calendar years – and they do not overlap.

C.    **The PTO's False Assumptions and Disregard of the Statutory Language Led to Its Erroneous Construction of the Statute**

The PTO attempts to justify its irrational approach on the flawed premise that a delay that occurs in the first three years of patent prosecution under (A) necessarily delays the

---

[11]    *See* Merriam-Webster's Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/overlap (last visited March 17, 2008).

issuance of the patent for an equal amount of time beyond three years, causing at least an equal delay under (B). (PTO Br. at 19). The PTO's premise is incorrect and entirely irrelevant to the proper application of the Statute.

Although a patent that fails to issue within three years due to (A) delays will also incur (B) delay, the two delays are not inextricably linked as the PTO asserts. Patent prosecution does not occur on a fixed schedule where every delay in (A) will produce a corresponding delay under (B). A simple example illustrates this point. The PTO could miss the first deadline under (A) by one month, issuing the first office action after fifteen months instead of fourteen. Yet if that office action leads to allowance of some or all of the pending claims, the patent would issue well in advance of the three-year mark and would incur no delay under (B). There are numerous scenarios where despite (A) delays, the patent issues in three years and incurs no (B) delays, undermining the PTO's entire premise.

Even where a delay under (A) in some sense "causes" a "delay" under (B), it is simply irrelevant to the proper application of the Statute. As the PTO's own brief demonstrates, the Statute "codif[ies] what constitutes PTO delay." (PTO Br. at 9 (quoting 145 CONG. REC. H6944 (1999)). As part of this legislative codification, Congress imposed separate obligations on the PTO under section (A) and (B), and each time limit stands on its own. Delays under (A) for failure to take action within the time limit provided in the Statute result in adjustments, whether or not the patent issues within three years. In addition, the Statute imposes a distinct guarantee that the patent will issue no later than three years from the application filing date, whether or not all of the PTO's obligations of timeliness under section (A) have been met. Nothing in the Statute implies that a failure of the PTO to meet a deadline under (A) extends its time to meet the deadline under (B) by an equal amount of time. To the contrary, the separate

deadline set for (B) was in addition to the deadlines required of (A), and does not excuse the PTO if it delays issuance of the patent beyond three years by the amount of delays under (A).

The error of the PTO's interpretation is made clear by the Statute's treatment of delays under Subsection (C), which relates to delays from secrecy orders, interferences, and appeals. The time consumed by such events – an interference for example – is added to the term of the patent in an adjustment on a day-for-day basis, but the three-year clock for issuing a patent under subsection (B) is tolled during the interference. *See* § 154(b)(1)(B)(ii). The time consumed by an interference proceeding thus does not count toward the three years the PTO has to issue the patent under (B). There is, however, no such exclusion from the three-year period of the time for delays under subsection (A). When Congress wanted to excuse a period of delay from counting toward the three-year time limit for issuing a patent, in effect providing an extension of the three-year time limit for a time equal to the delay, it did so expressly. The failure to provide any tolling of the three-year time limit of (B) for delays that arise under (A) shows that no such exclusion or tolling was intended. Nothing in the Statute implies that missing a deadline under (A) extends the three-year deadline for issuing the patent.

**II.    THE PTO'S CONSTRUCTION IS NOT ENTITLED TO DEFERENCE, AS THE PTO HAS NO SUBSTANTIVE RULEMAKING POWER AND ITS CONSTRUCTION IS PLAINLY ERRONEOUS**

The PTO demands that its interpretation be given deference under *Chevron*, but it ignores the case law, cited in Plaintiffs' opening brief, that clearly shows no deference is owed when, as here, no substantive rulemaking authority has been granted by Congress. *See Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006) (quoted in Plaintiffs' Opening Br. at 24).

Under the guise of "rulemaking" authority, the PTO seeks to deprive patentees of substantial rights, i.e., the patent terms to which the '892 and '819 patents are entitled. Yet, even

under its broadest rulemaking authority, the PTO has not been granted the authority to make

substantive rules of law:

> As we have previously held, the broadest of the PTO's rule making
> powers – 35 U.S.C. § 6(a) – authorizes the Commissioner to
> promulgate regulations directed only to "the conduct of
> proceedings in the [PTO]"; it does *not* grant the Commissioner the
> authority to issue substantive rules.

*Merck & Co. v. Kessler*, 80 F.3d 1543, 1549-50 (Fed. Cir. 1996) (quoting *Animal Legal Def.*

*Fund v. Quigg*, 932 F.2d 920, 930 (Fed. Cir. 1991)) (emphasis added).  The holding of *Merck*

remains unchanged with respect to the PTO's authority to issue regulations based on the AIPA,

which came into effect three years after the *Merck* decision. 35 U.S.C. § 2(b)(2), promulgated in

2000, and replacing 35 U.S.C. § 6(a), has the same language of § 6(a) relied on by the Federal

Circuit in *Merck.  See* 35 U.S.C § 2(b)(2)(A) (the PTO shall "establish regulations not

inconsistent with the law").  Indeed, in *Stevens v. Tamai*, the Federal Circuit reiterated the

holding of *Merck* under the new statute, stating that, "as we have previously held, the broadest of

the Office's rulemaking powers is the power to 'establish regulations, not inconsistent with law,

which . . . shall govern the conduct of proceedings in the Office.'" 366 F.3d 1325, 1333 (Fed.

Cir. 2004) (quoting 35 U.S.C. § 2(b)(2)(A), and citing former 35 U.S.C. § 6(a) and *Merck*).

      Moreover, there is no ambiguity in the Statute that would justify deference to the

agency even if it had substantive rulemaking powers.  The concept of "periods of delay" which

"overlap" is quite simply understood from the plain words of § 154(b)(2):  Periods of delay

overlap when there is more than one type of delay giving rise to a ground for adjustment on a

single calendar day.  In such an event, one calendar day of adjustment is awarded.

      As the PTO itself acknowledges, its interpretation of statutory provisions is not

entitled to deference when that interpretation is clearly erroneous.  *See* PTO Br. at 17-18; *see*

*also In re De Luxe, N.V.*, 990 F.2d 607, 608-10 (Fed. Cir. 1993) (finding that the PTO's

interpretation of a provision of the Lanham Act was "wrong" and thus not entitled to deference).

By virtue of its clearly erroneous interpretation, the PTO is not entitled to *any* deference, let

alone the "considerable deference" to which it lays claim.  Nor is the PTO entitled to any special

deference because its incorrect interpretation has "'longstanding' duration." (PTO Br. at 18).

The fact that the PTO may have "failed to adhere to a statutory mandate over an extended period

of time does not justify its continuing to do so." *In re Donaldson Co.*, 16 F.3d 1189, 1194 (Fed.

Cir. 1994).  In *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 522 (1982), cited by the PTO, the

Court did not even consider whether an erroneous agency interpretation, just because it was

long-standing, should be entitled to greater deference. (*See* PTO Br. at 18).  Where the PTO is

clearly wrong in its interpretation of an unambiguous statute, it cannot make that interpretation

correct just because it has consistently construed the statute in that incorrect manner.

### III.    THE LEGISLATIVE HISTORY DOES NOT SUPPORT THE PTO

Statements from the legislative history regarding a "minimum" patent term of 17

years, cited by the PTO, provide no support for the PTO's unsubstantiated "either or" application

of the separate statutory guarantees under (A) and (B).  While the requirement that the patent

issue in three years does provide a minimum term of 17 years, there was no suggestion that the

17-year term was to be the *maximum* term allowed for an adjusted patent.  Indeed, the word

"minimum" indicates that 17 years is the lower limit and that longer terms are permitted.

The PTO accuses Plaintiffs of misinterpreting congressional intent regarding the

length of patent terms.  Yet, Congress explicitly recognized that effective terms greater than 17

years would result from an adjusted patent term, including adjustment for both (A) and (B),

stating that "no patent applicant diligently seeking to obtain a patent will receive a term of less

than the 17 years as provided under the pre-GATT standard; *in fact, most will receive

considerably more*." (*See* Plaintiffs' Opening Br. at 19-20 (quoting H.R. Conf. Rep. No. 106-

464, at 125) (emphasis added)). Congress thus clearly intended that adjustment for (A) and (B) would be additive. Indeed, if Congress intended to guarantee *only* a 17-year term, there would be no need for (A) at all. The three-year time limit of (B) would provide the guarantee of the 17-year effective term without more. Congress clearly intended to require prompt PTO action during prosecution guaranteed by (A) in addition to the guarantee of a maximum three-year pendency of the application as provided in (B). It accordingly mandated adjustments for violation of both time limits.

The PTO is plainly wrong and the Statute is *not* solely directed to ensuring a 17-year patent term. Yet even if it were, that goal is not accomplished by the PTO's flawed statutory approach. The PTO creatively calculates a 17-year term for the '819 patent and a 17-year and 265 day term for the '892 patent.[12] But that calculation does not reflect the patent term that these patents, as extended by the PTO's application of the statute, currently have. In fact, neither patent has received more than 16 years and one month of patent term. Moreover, whether the PTO's improper approach or Plaintiffs' correct approach is applied, both patents fall significantly short of a 17-year term.[13]

---

[12]    *See* PTO Br. at 24 n.8 & 25 n.9.

[13]    Under the PTO's approach, the '819 and '892 patents have terms of 16 years and 1 month and 16 years and 21 days, respectively. The filing date for calculating the 20 year term for each patent is 12/6/01 and the 20 year term for each would thus run to 12/6/21. (Palla Decl. ¶¶ 5, 8) Adding 492 days of PTA to the end of the 20 year term moves the expiration to 4/12/23 for the '819 patent. The '819 patent, which issued on 3/13/07 is thus in effect from 3/13/07 to 4/12/23 – a term of 16 years and 1 month. Similarly, adding 462 days of PTA to the end of the 20 year term moves the expiration to 3/13/23 for the '892 patent. (Palla Decl. ¶ 6(H)) The '892 patent, which issued on 2/20/07 is thus in effect from 2/20/07 to 3/13/23 – a term of 16 years and 22 days. In both cases, even with the full 722 and 756 days of adjustment that the '819 and '892 patents are respectively entitled to under the proper statutory approach, the terms fall short of 17 years.

IV.    **PLAINTIFFS' INTERPRETATION, UNLIKE THE PTO'S, LEADS TO CONSISTENT RESULTS**

It is telling that the PTO must resort to comparing a situation where the Statute is entirely inapplicable to one where the Statute applies, in an effort to portray Plaintiffs' interpretation as leading to inconsistent results.  (PTO Br. at 25-26).  Specifically, the PTO proposes Applicant A, who has no delays under either (A) or (B).  Since Applicant A has no delays, the Statute is irrelevant and Applicant A has a 17-year effective patent term.  In contrast, Applicant B in the PTO's example has a one-month delay under (A) and a one-month delay under (B).  On the basis of this example, the PTO asserts that Plaintiffs' interpretation of the Statute "would compel inconsistencies in treatment of *similar* applicants."  The entire premise of the PTO's example is flawed – the applicants that the PTO purports to compare are not *similar*.  One suffered PTO delay, one did not.

A comparison of situations where the Statute applies to both applicants – i.e., truly *similar* applicants – reveals that it is the PTO's interpretation that results in inconsistent treatment.  For example, take Applicant "C", who like Applicant B files her patent application on January 1, 2000 (the same day as Applicant B).  Applicant C has a one-month delay under (A), but her patent issues at three years, so there is no (B) delay.  Under the PTO's rule, Applicant C would receive the one-month adjustment for (A) delay.  Applicant C's patent would issue on January 1, 2003, and her patent would expire on February 1, 2020 (20 years from filing plus one month), resulting in an effective patent term of 17 years and one month for Applicant C.  Applicant B's patent, with one month delay under (A) and one month delay under (B), would issue on February 1, 2003.  However, the PTO would only give Applicant B a one-month

adjustment, despite the fact that Applicant B's patent issued one month later. Thus, Applicant B's patent would also expire on February 1, 2020 (20 years from filing plus one month). Incredibly, Applicant B's effective patent term would be only 17 years, *one month less than Applicant C's*, who had one delay and not two. Thus, under the PTO's scheme, Applicant B is penalized one month of effective patent life. In short, the PTO's position granting either (A) or (B) results in an applicant with two delays having a shorter effective patent term than an applicant with only one delay. (*See* Plaintiff's Opening Br. at 22, Fig. 3). Such disparate treatment highlights the arbitrary and capricious nature of the PTO's interpretation, is not consistent with the plain language of the Statute, and is not what Congress intended.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' opening brief, this

Court should grant Plaintiffs' motion for summary judgment that the patent term adjustment for

the '892 patent be changed from 462 days to 756 days and that the patent term adjustment for the

'819 patent be changed from 492 days to 722 days, and should deny the PTO's cross-motion.

Dated: March 19, 2008

Respectfully submitted,

David O. Bickart (DC Bar No. 355313)
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, N.W., Suite 1100
Washington, DC 20005-2327
Tel: (202) 682-3500
Fax: (202) 682-3580

*Attorneys for Plaintiffs Wyeth and
Elan Pharma International Limited*

*Of Counsel*
Richard G. Greco
Patricia A. Carson
Sapna W. Palla
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022-3598
Tel: (212) 836-8000
Fax: (212) 836-8689

31616847.DOC